# Exhibit B Cont.

# Cayman Companies Act

**CAYMAN ISLANDS**

# COMPANIES ACT

**(2023 Revision)**

**Supplement No. 3 published with Legislation Gazette No. 1 dated 12th January, 2023.**

## PUBLISHING DETAILS

Cap. 22 [Law 3 of 1961 and 12 of 1962] of the 1963 Revised Edition of the Laws consolidated with Laws 12 of 1962, 9 of 1966, 1 of 1971, 7 of 1973, 24 of 1974, 25 of 1975, 19 of 1977, 16 of 1978, 6 of 1980, 21 of 1981, 34 of 1983, 2 of 1984, 22 of 1984, 15 of 1985, 38 of 1985, 24 of 1987, 14 of 1988, 14 of 1989, 10 of 1990, 3 of 1991, 23 of 1991 (part), 11 of 1992, 3 of 1993, 23 of 1993, 33 of 1993, 2 of 1994, 8 of 1994, 14 of 1996, 26 of 1997, 4 of 1998, 6 of 1998, 20 of 1998 (part), 5 of 1999, 7 of 2000 (part), 5 of 2001, 10 of 2001, 29 of 2001, 46 of 2001, 22 of 2002, 26 of 2002, 28 of 2003, 13 of 2006, 15 of 2007, 12 of 2009, 33 of 2009, 37 of 2010, 16 of 2011, 29 of 2011, 6 of 2012, 14 of 2012, 29 of 2012, 1 of 2013, 6 of 2013, 14 of 2015, 3 of 2016, 2 of 2017, 42 of 2017, 37 of 2018, 46 of 2018, 10 of 2019, 4 of 2020, 19 of 2020 and Acts 56 of 2020, 60 of 2020, 6 of 2021 and the Companies (Amendment of Schedule) Order, 2011, Schedule 4 of the Companies Law Departmental Notice, 2015, Schedule 4 of the Companies Law Departmental Notice, 2017 and the Companies (Amendment of Section 254 Regulations), 2022.

Revised under the authority of the *Law Revision Act (2020 Revision).*

Originally enacted —

| | |
|---|---|
| Cap. 22-1st January, 1964 | Law 10 of 2001-25th May, 2001 |
| Law 9 of 1966-14th March, 1966 | Law 29 of 2001-26th September, 2001 |
| Law 1 of 1971-15th December, 1970 | Law 46 of 2001-14th January, 2002 |
| Law 7 of 1973-28th June, 1973 | Law 22 of 2002-5th December, 2002 |
| Law 24 of 1974-22nd November, 1974 | Law 26 of 2002-5th December, 2002 |
| Law 25 of 1975-9th December, 1975 | Law 28 of 2003-3rd December, 2003 |
| Law 19 of 1977-10th November, 1977 | Law 13 of 2006-1st June, 2006 |
| Law 16 of 1978-8th September, 1978 | Law 15 of 2007-17th September, 2007 |
| Law 6 of 1980-17th March, 1980 | Law 12 of 2009-20th March, 2009 |
| Law 21 of 1981-13th October, 1981 | Law 33 of 2009-2nd December, 2009 |
| Law 34 of 1983-24th November, 1983 | Law 37 of 2010-15th September, 2010 |
| Law 2 of 1984-28th February, 1984 | Law 16 of 2011-11th April, 2011 |
| Law 22 of 1984-7th September, 1984 | Law 29 of 2011-18th November, 2011 |
| Law 15 of 1985-24th May, 1985 | Law 6 of 2012-29th August, 2012 |
| Law 38 of 1985-19th December, 1985 | Law 14 of 2012-31st August, 2012 |
| Law 24 of 1987-17th November, 1987 | Law 29 of 2012-19th November, 2012 |
| Law 14 of 1988-9th September, 1988 | Law 1 of 2013-10th January, 2013 |
| Law 14 of 1989-5th September, 1989 | Law 6 of 2013-15th March, 2013 |
| Law 10 of 1990-18th July, 1990 | Law 14 of 2015-12th August, 2015 |

Law 3 of 1991-21st February, 1991
Law 23 of 1991-12th December, 1991
Law 11 of 1992-13th July, 1992
Law 3 of 1993-26th March, 1993
Law 23 of 1993-29th September, 1993
Law 33 of 1993-29th November, 1993
Law 2 of 1994-9th March, 1994
Law 8 of 1994-23rd September, 1994
Law 14 of 1996-5th September, 1996
Law 26 of 1997-9th March, 1998
Law 4 of 1998-4th March, 1998
Law 6 of 1998-9th March, 1998
Law 20 of 1998-15th February, 1999
Law 5 of 1999-14th April, 1999
Law 7 of 2000- 20th July, 2000
Law 5 of 2001-20th April, 2001
Law 3 of 2016-6th May, 2016
Law 2 of 2017-27th February, 2017
Law 42 of 2017-16th November, 2017
Law 37 of 2018-22nd November, 2018
Law 46 of 2018-17th December, 2018
Law 10 of 2019-26th July, 2019
Law 4 of 2020-31st January, 2020
Law 19 of 2020-20th May, 2020
Act 56 of 2020-7th December, 2020
Act 60 of 2020-16th December, 2020
Act 6 of 2021-8th December, 2021

Consolidated and revised this 31st day of December, 2022.

*Note (not forming part of this Law): This revision replaces the 2022 Revision which should now be discarded.*

**CAYMAN ISLANDS**

# COMPANIES ACT

**(2023 Revision)**

## Arrangement of Sections

Section Page

### PART I - Preliminary

1. Short title ....17
2. Definitions and interpretation ....17
3. Registrar....20
4. Signature of Registrar....20

### PART II - Constitution and Incorporation of Companies and Associations - Memorandum of Association

5. Mode of forming company ....21
6. Mode of limiting liability of members ....21
7. Memorandum of association....21
8. Company limited by shares....22
9. Company limited by guarantee ....22
10. Memorandum of association may be altered....23
11. Address of registered office may be changed ....23
12. Signature and effect of memorandum of association....23
13. Power of company limited by shares to alter its share capital....23
14. Special resolution for reduction of share capital ....25
15. Application to court for confirming order, objections by creditors ....26
16. Order confirming reduction and powers of Court on making such order ....27
17. Registration of order and minute of reduction....27
18. Liability of members in respect of reduced shares....28
19. Penalty for concealment of names of creditors....28

20. Articles prescribing regulations for companies ....29
21. Regulations required in case of unlimited company or company limited by guarantee ....29
22. Adoption and application of Table A in Schedule 1 ....29
23. Printing, stamping and signature of articles....29
24. Alteration of articles by special resolution ....29
25. Adoption and effect of articles of association ....30

**General Provisions** **30**

26. Registration ....30
26A. Registrar to provide information ....31
27. Consequences of incorporation ....32
28. Lack of capacity or power; *ultra vires* ....32
29. Copies of memorandum and articles to be given to members ....33
30. Restrictions on registration of certain names ....33
31. Change of name ....34
32. Company with power to issue bearer shares not to hold land in the Islands ....35

## PART III - Distribution of Capital and Liability of Members of Companies and Associations

**Distribution of Capital** **35**

33. Share or interest in company to be personalty ....35
34. Share premium account....36
35. Power to issue shares at a discount....37
36. Power of company to pay commissions ....38
37. Redemption and purchase of shares ....38
37A. Treasury shares....43
37B. Surrender of shares ....45
38. Definition of member....45
39. Transfer by personal representative....45
40. Register of members ....45
40A. Branch registers of members ....46
40B. Transfer and registration of shares in respect of a company with listed shares ....47
41. Annual list of members and return of capital, shares, calls, etc. ....48
42. Penalty on company not making return ....49
43. Certificate of shares or stock ....50
44. Inspection of register ....50
45. Notice of increase of capital and of members to be given to Registrar ....51
46. Remedy for improper entry or omission of entry in register ....51
47. Notice to Registrar of rectification of register....52
48. Register to be evidence ....52

**Liability of Members** **52**

49. Liability of present and past members of company....52

## PART IV - Management and Administration of Companies and Associations - Provisions for Protection of Creditors

50. Registered office of company....53

51. Notice of situation of registered office .....53
52. Publication of name by a limited company .....54
53. Penalties on non-publication of name .....54
54. Register of mortgages .....54
55. Filing deadline for updated list of directors etc. .....55
55A. Registrar to make list of directors available for inspection .....56
56. Penalty for failing to notify of changes to the register of directors and officers .....56
57. Meetings .....56

**Provisions for Protection of Members 57**

58. General meetings .....57
59. Accounts and audits .....57
60. Definition of special resolution .....58
61. Provisions where no regulations as to meetings .....59
62. Recording of special resolutions .....59
63. Copies of special resolutions .....59
64. Appointment of inspectors to report on affairs of companies .....59
65. Powers of inspectors .....60
66. Report of inspectors .....60
67. Inspection by resolution of the company .....60
68. Inspectors’ report admissible as evidence .....60

**Notices 60**

69. Returns, etc., to Registrar .....60
70. Service of notices on company .....61
71. Postal service .....61
72. Authentication of summons, notice, etc. .....61
73. Minutes of proceedings .....61
74. Security for costs in actions brought by limited companies .....61
75. Declaration in action against members .....62

**Arbitration 62**

76. Power of companies to refer matters to arbitration .....62

**General Penalty 62**

77. General penalty; application of fines .....62

**Unlimited Liability of Directors and Managers 62**

78. Unlimited liability of directors and managers .....62
79. Modification of section 49 .....62

**Association not for Profit 63**

80. Circumstances in which a company may be registered without “limited” in its name .....63
80A. Application for designation under section 80 .....65
80B. Obligations for companies designated under section 80 .....65
80C. Examination by the Registrar .....65
80D. Exempt from Part XVIIA .....66
80E. Penalty for breach of section 80B .....66

**Contracts 67**

81. Contracts and other instruments .....67
82. Bills of exchange and promissory notes .....69
83. Execution of deeds, etc., by attorney .....69
84. Power of company to have official seal for use abroad .....69
85. Authentication of documents .....70

**Arrangements and Reconstructions 70**

86. Power to compromise with creditors and members ....70
87. Provisions for facilitating reconstruction and amalgamation of companies ....71
88. Power to acquire shares of dissentient shareholders ....72

## PART V - Company Restructuring and Winding up of Companies and Associations

**Preliminary** **73**
89. Definitions....73
90. Alternative modes of winding up ....74
91. Jurisdiction of the Court ....74
**Company Restructuring** **75**
91A. Interpretation of “company” ....75
91B. Appointment of a restructuring officer ....75
91C. Appointment of an interim restructuring officer ....76
91D. Restructuring officer....77
91E. Variation or discharge of the order appointing a restructuring ....77
91F. Removal and replacement of restructuring officers ....78
91G. Stay of proceedings ....79
91H. Enforcement of creditors’ security ....79
91I. Power to compromise with creditors and members within restructuring officer proceeding....80
91J. Provisions for facilitating reconstruction and amalgamation of companies ....81
**Winding up by the Court** **82**
92. Circumstances in which a company may be wound up by the Court ....82
93. Definition of inability to pay debts....82
94. Application for winding up ....82
95. Powers of the Court ....83
96. Power to stay or restrain proceedings ....84
97. Avoidance of attachments and stay of proceedings ....85
98. Notice of winding up order ....85
99. Avoidance of property dispositions, etc. ....86
100. Commencement of winding up by the Court ....86
101. Company’s statement of affairs....86
102. Investigation by liquidator ....87
103. Duty to co-operate and the private examination of relevant persons ....88
**Official Liquidators** **89**
104. Appointment and powers of provisional liquidator ....89
105. Appointment of official liquidator ....90
106. Appointment of joint liquidators ....90
107. Removal of official liquidators ....90
108. Qualifications of official liquidators ....90
109. Remuneration of official liquidators and restructuring officers....90
110. Function and powers of official liquidators....91
**General Powers of the Court** **92**
111. Power to stay winding up ....92
112. Settlement of list of contributories ....92
113. Power to make calls....93

114. Inspection of documents by creditors, etc. ....93
115. Meetings to ascertain wishes of creditors or contributories ....93

**Voluntary Winding up 94**

116. Circumstances in which a company may be wound up voluntarily....94
117. Commencement of winding up....94
118. Effect on business and status of the company ....95
119. Appointment of voluntary liquidator ....95
120. Qualifications of voluntary liquidators ....96
121. Removal of voluntary liquidators ....96
122. Resignation of voluntary liquidator ....96
123. Notice of voluntary winding up ....97
124. Application for supervision order ....97
125. Avoidance of share transfers ....97
126. General meeting at year's end ....98
127. Final meeting prior to dissolution ....98
128. Effect of winding up on share capital of company limited by guarantee ....98
129. Reference of questions to Court ....99
130. Expenses of voluntary winding up....99

**Winding up subject to the supervision of the Court 99**

131. Application for supervision order ....99
132. Appointment of official liquidator ....100
133. Effect of supervision order ....100

**Offences of fraud, etc. 100**

134. Fraud, etc. in anticipation of winding up ....100
135. Transactions in fraud of creditors ....101
136. Misconduct in course of winding up ....101
137. Material omissions from statement relating to company's affairs ....102

**General provisions 102**

138. Getting in the company's property....102
139. Provable debts....103
140. Distribution of the company's property ....103
141. Preferential debts ....103
142. Secured creditors ....104
143. Preferential charge on goods distrained ....104
144. Effect of execution or attachment....104
145. Voidable preference....105
146. Avoidance of dispositions made at an undervalue....105
147. Fraudulent trading....106
148. Supply of utilities....106
149. Interest on debts....107
150. Currency of the liquidation ....107

**Dissolution of a Company 108**

151. Dissolution following voluntary winding up ....108
152. Dissolution following winding up by the Court ....108
153. Unclaimed dividends and undistributed assets....108

**Insolvency rules and regulations 109**

154. Insolvency Rules Committee....109
155. Powers of the Insolvency Rules Committee ....109

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 12 of 226



## PART VI - Removal of Defunct Companies

156. Company not operating may be struck off register ....... 110
156A. Striking off for failure to pay fine ....... 110
157. Company being wound up may be struck off register for want of liquidator, etc. ....... 110
158. Registrar to publish fact of company being struck off register ....... 110
159. Company, creditor or member may apply to court for company to be reinstated ....... 111
160. Liability of members of company to remain ....... 111
161. Registrar not liable for any act performed under this Part ....... 111
162. Vesting of property ....... 111

## PART VII - Exempted Companies

163. What companies may apply to be registered as exempted companies ....... 111
164. Registration of exempted companies ....... 112
165. Declaration by proposed company ....... 112
166. Shares shall be non-negotiable ....... 112
167. *Repealed* ....... 112
168. Annual return ....... 112
169. Annual fee ....... 112
170. Failure to comply with section 168 or 169 ....... 113
171. Registrar to give notice ....... 113
172. False statement in declaration ....... 113
173. Penalty for false declaration ....... 113
174. Prohibited enterprises ....... 113
175. Prohibited sale of securities ....... 114
176. Penalty for carrying on business contrary to this Part ....... 114
177. Electronic business by exempted companies ....... 114

## PART VIII - Exempted Limited Duration Companies

178. Exempted company may apply to be registered as an exempted limited duration company ....... 114
179. Registration as an exempted limited duration company ....... 115
180. Contents of articles of association ....... 116
181. Cancellation of registration ....... 116
182. Electronic business by exempted limited duration companies ....... 117

## PART VIIIA - Special Economic Zone Companies

182A. Exempted company may apply to be registered as a special economic zone company ....... 117
182B. Registration as a special economic zone company ....... 117
182C. Cancellation of registration ....... 118

## PART IX - Overseas Companies

183. Definition of foreign company ....... 119
184. Documents, etc., to be delivered to Registrar by foreign companies ....... 119

185. Power of certain foreign companies to hold land ... 120
186. Registration of foreign companies ... 121
187. Return to be delivered to Registrar where documents etc., altered ... 121
188. Obligation to state name of foreign company, whether limited, and country where formed or incorporated ... 121
189. Service on foreign company to which this Part applies ... 122
190. Deeds, etc., of overseas companies ... 122
191. Execution of deeds, etc. ... 122
192. Removing company's name from register ... 123
193. Penalties for failing to comply with this Part ... 123
194. Definitions in this Part ... 123
195. Power of Registrar to prohibit sale ... 124

## PART X - Application of Law to Companies Formed or Registered in the Islands

196. Application to existing companies ... 124
197. Date of incorporation ... 124
198. Articles of association remain ... 124

## PART XI - General

199. Fees in lieu of other provisions ... 125
200. Express fees ... 125
200A. Certificate of good standing ... 126

## PART XII - Transfer by Way of Continuation

201. Application for continuation ... 126
202. Registration under this Part ... 129
203. Amendment, etc., of charter documents ... 130
204. Effect of registration under this Part on companies registered under Part IX ... 131
205. Notice of registration, etc., to be given in Gazette ... 131
206. Deregistration of exempted companies including companies registered under this Part ... 131
207. Certification of deregistration, etc. ... 133
208. Application of Part IX to deregistered companies ... 133
209. Notice of deregistration, etc., to be given in the Gazette ... 134

## PART XIII – Re-registration as a Means of an Ordinary Non-resident Company Becoming Exempted

210. Ordinary non-resident company may be re-registered as exempted company ... 134
211. Effect of re-registration of ordinary non-resident company as an exempted company ... 135

## PART XIV - Segregated Portfolio Companies

212. Definitions in this Part ... 136
213. Applications for registration ... 136
214. Conversions of existing companies ... 137
215. Designation ... 138

216. Segregated portfolios .....138
217. Shares and dividends .....138
218. Company to act on behalf of portfolios .....139
219. Assets .....139
220. Segregated portfolio assets .....140
221. Segregation of liabilities .....141
222. General liabilities and assets .....141
223. Winding-up of company .....141
224. Receivership orders .....142
225. Applications for receivership orders .....142
226. Administration of receivership orders .....143
227. Discharge of receivership orders .....144
228. Remuneration of receiver .....144
228A. Termination and re-instatement .....145

## Part XV – Prohibition on Bearer Shares

229. Issue of bearer shares prohibited .....145
230. *Repealed* .....145
231. *Repealed* .....145
231A. *Repealed* .....145

## PART XVI - Merger and Consolidation

232. Definitions in this Part .....146
233. Merger and consolidation .....146
234. Delay of effective date .....149
235. Termination or amendment .....149
236. Effect of merger or consolidation .....150
237. Merger or consolidation with overseas company .....151
238. Rights of dissenters .....155
239. Limitation on rights of dissenters .....157
239A. Prohibition on being a segregated portfolio company .....157

## PART XVII - International Co-operation

240. Definitions in this Part .....157
241. Ancillary orders .....158
242. Criteria upon which the Court's discretion shall be exercised .....158
243. Publication of foreign bankruptcy proceedings .....159

## PART XVIIA – Beneficial Ownership Registers

**Preliminary** **159**
244. Interpretation .....159
245. Application .....160
246. Competent authority .....162
**Identifying Beneficial Owners, Relevant Legal Entities and Registrable Persons** **162**

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 15 of 226



247. Duty of companies to identify beneficial owners ....162
248. Duty of companies to identify relevant legal entities ....163
249. Duty of companies to give notice to registrable persons....163
250. Duty of beneficial owners and relevant legal entities to supply information....164
251. Individuals and relevant legal entities that are registrable persons ....164
**Establishing Beneficial Ownership Registers 165**
252. Duty to establish and maintain beneficial ownership register....165
253. Role of corporate services provider and Registrar....166
254. Required particulars....166
255. Duty of company to keep register up to date ....167
256. Consequences of failure to disclose beneficial ownership ....168
257. Duty of other persons to update register ....169
258. Removal of entries from company's beneficial ownership register....169
259. Power of the Grand Court to rectify beneficial ownership register ....169
**Access to Beneficial Ownership Information 170**
260. Duty of competent authority to establish search platform ....170
261. Duty of Registrar and corporate services providers....171
262. Limits on searches that may be executed ....171
263. Disclosure of beneficial ownership information by the Cayman Islands Monetary Authority....172
264. Non-disclosure of information concerning requests for beneficial ownership information....172
**Enforcement – Restrictions Notices 173**
265. Right to issue restrictions notice ....173
266. Effect of restrictions notice....173
267. Protection of third party rights ....174
268. Breach of restrictions an offence....174
269. Company issuing shares in breach of restriction ....175
270. Relaxation of restrictions....175
271. Orders for sale....175
272. Proceeds of sale of relevant interest....176
273. Corporate services provider may withdraw restrictions notice ....176
**Offences 177**
274. Failure of a company to establish or maintain beneficial ownership register....177
275. Failure to comply with notices ....177
276. Failure to provide information....177
277. Unlawful search or disclosure of beneficial ownership information ....178
278. Offences by officers and directors....178
**Supplementary Provisions 178**
279. Exemptions....178
279A. Request for additional information....179
280. Regulations ....179
281. Transitional provisions ....181

## PART XVIIB – Administrative fines

281A. Registrar's power to fine ....181
281B. Fine amounts....181
281C. The power to fine....181
281D. Limitation period ....182
281E. Relationship with penalties ....182

281F. Registrar may issue guidance ....182
281G. Registrar's rule-making power for this Part ....182
281H. Regulation-making powers for this Part ....182

## PART XVIII - Miscellaneous

282. Amendment of schedules ....182
283. Regulations ....183

**SCHEDULE 1** **185**

**Table A** **185**

**Regulations for Management of a Company Limited by Shares** **185**

**Preliminary** ....185
**Shares** ....185
**Lien** 186
**Calls on Shares** ....186
**Transfer and Transmission of Shares** ....187
**Forfeiture of Shares** ....188
**Alteration of Capital** ....190
**General Meetings** ....191
**Notice of General Meetings** ....191
**Proceedings at General Meetings** ....192
**Votes of Members** ....193
**Corporations Acting by Representatives at Meetings** ....194
**Directors** ....194
**Powers and Duties of Directors** ....194
**The Seal** ....195
**Disqualification of Directors** ....195
**Rotation of Directors** ....196
**Proceedings of Directors** ....197
**Dividends and Reserve** ....197
**Accounts** ....198
**Audit** 199
**Notices** ....199

**SCHEDULE 1A** **201**

**Required Particulars** **201**

**SCHEDULE 2** **202**

**Categories of Preferred Debts** **202**

**Category 1: Debts due to employees** ....202
**Category 2: Debts due to bank depositors** ....202
**Category 3: Taxes due to the Government** ....204

**SCHEDULE 3** **205**

**Powers of Liquidators** **205**

**PART 1** ........ 205
**Powers exercisable with sanction** **205**
**PART II** ........ 206
**Powers exercisable without sanction** **206**

**SCHEDULE 4** **207**

**APPROVED STOCK EXCHANGES** **207**

**SCHEDULE 5** **209**

**FEES** **209**
**PART 1** ........ 209
**PART 1A** ........ 209
**PART 2** ........ 210
**PART 3** ........ 210
**PART 3A** ........ 210
**PART 4** ........ 211
**PART 5** ........ 211
**PART 6** ........ 211
**PART 6A** ........ 212
**PART 7** ........ 212

**SCHEDULE 6** **214**

**COUNTRIES OR TERRITORIES THAT HAVE ENTERED INTO AGREEMENTS WITH THE GOVERNMENT FOR THE SHARING OF BENEFICIAL OWNERSHIP INFORMATION** **214**

**SCHEDULE 7** **215**

**Administrative fines** **215**

**ENDNOTES** **219**

Table of Legislation history: ........ 219

**CAYMAN ISLANDS**

# COMPANIES ACT

**(2023 Revision)**

## PART I - Preliminary

### Short title

**1**. This Act may be cited as the *Companies Act (2023 Revision)*.

### Definitions and interpretation

**2**. (1) In this Act —

"**Authority**" means the Cayman Islands Monetary Authority established under section 5(1) of the *Monetary Authority Act (2020 Revision)* and includes a person acting under the Authority's authorisation;

"**bearer share**" means a share in the capital of any company incorporated in the Islands which —

(a) is represented by a certificate that does not record the owner's name; and

(b) is transferable by delivery of the certificate;

"**Cayman Islands exempted limited partnership**" means an exempted limited partnership registered in accordance with section 9 of the *Exempted Limited Partnership Act (2021 Revision)*;

"**Cayman Islands Stock Exchange**" means the Cayman Islands Stock Exchange Company incorporated under section 4 of the *Stock Exchange Company Act (2014 Revision)*;

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 20 of 226



"**certified translator**" means a person whose interpretation or translation competence has been tested and approved by a professional association or governmental body or any other person determined by the Registrar;

"**Court**" means the Grand Court of the Cayman Islands;

"**company**" except where the context excludes exempted companies, means a company formed and registered under this Act or an existing company;

"**currency**" includes the ECU and any unit of account used at any time by the European Monetary Fund;

"**dual foreign name**" means an additional name in any language not utilising the Roman alphabet, utilising any letters, characters, script, accents and other diacritical marks, and which does not have to be a translation or transliteration of the name in the Roman alphabet;

"**ECU**" or "**European Currency Unit**" means the former currency basket, which was replaced by the euro on 1st January, 1999, that was, from time to time, used as the unit of account of the European Community as defined in *European Council Regulation No. 3320/94*;

"**euro**" means the common currency of participating member states of the European Union that adopt a single currency in accordance with the Treaty as defined in *European Council Regulation No. 974/98*;

"**exempted company**" means a company registered as an exempted company under section 164;

"**exempted limited duration company**" means an exempted company registered as an exempted limited duration company under section 179;

"**existing company**" means a company which, prior to the 1st December, 1961, has been incorporated and its memorandum of association recorded in the Islands pursuant to the laws relating to companies then in force in the Islands;

"**Insolvency Rules Committee**" means the committee established in accordance with section 154;

"**Judge**" means a Judge of the Grand Court;

"**name**", when relating to the name of a company, means a name in the Roman alphabet or Arabic numerals;

"**non-resident company**" bears the meaning ascribed to that term in section 2(1) of the *Local Companies (Control) Act (2019 Revision)*;

"**officer**" in relation to a company, includes a manager or secretary;

"**overseas company**" means a company, body corporate or corporate entity existing under the laws of a jurisdiction outside the Islands;

"**public notice**" means a public notice (whether in digital form or not) affixed by the Registrar at such place as may be determined, from time to time, by the Registrar;

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 21 of 226



"**Registrar**" means the Registrar of Companies appointed under section 3 and includes, where appropriate, the Deputy Registrar of Companies;

"**regulated business**" means a business which is required to be licensed under one or other of the regulatory laws;

"**regulatory laws**" means any one or more of the following —

(a) *Banks and Trust Companies Act (2021 Revision)*;

(b) *Building Societies Act (2020 Revision)*;

(c) *Companies Management Act (2021 Revision)*;

(d) *Cooperative Societies Act (2020 Revision)*;

(e) *Insurance Act, 2010* [*Law 32 of 2010*];

(f) *Money Services Act (2020 Revision)*;

(g) *Mutual Funds Act (2021 Revision)*;

(h) *Securities Investment Business Act (2020 Revision)*;

(i) *Development Bank Act (2018 Revision);*

(j) *Directors Registration and Licensing Act, 2014*; and

(k) *Private Funds Act (2021 Revision),*

and any other laws that may be prescribed by the Cabinet by regulations made under section 46 of the *Monetary Authority Act (2020 Revision)*;

"**special resolution**" means a special resolution as defined in section 60;

"**special economic zone business**" means any type of business authorised to be carried on in a special economic zone pursuant to any Law in force in the Islands;

"**special economic zone company**" means an exempted company that is registered as such under section 182A;

"**translated name**" means a translation or transliteration of an exempted company's dual foreign name into the English language provided by either a person licensed to provide such company's registered office in the Cayman Islands or a certified translator (together with a statement in the prescribed form as to the foreign language in which such dual foreign name is written); and

"**Treaty**" means the Treaty on European Union signed in Maastricht on 7th February, 1992, as amended by the Treaty of Amsterdam amending the Treaty on European Union, signed in Amsterdam on 2nd October, 1997, the Treaty of Nice and the Convention on the Future of Europe, signed in Nice on 26th February, 2001 and the Treaty of Lisbon amending the Treaty on European Union, signed in Lisbon on 13th December, 2007.

(2) Where, in this Law, it is provided that a company and every officer of the company who is in default shall be liable to a default fine, the company and

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 22 of 226



every such officer shall, for every day during which the default, refusal or contravention continues, be liable to a fine of ten dollars.

(3) In this Law, where it provides that an officer of a company who is in default shall be liable to a default fine, the expression "**officer who is in default**" means any officer of the company who knowingly and wilfully authorises or permits the default, refusal or contravention mentioned in the enactment.

(4) For the purposes of this Act "**paid up**" or "**fully paid**" means, in the case of shares with a nominal or par value, paid up or fully paid as to nominal or par value only and, in the case of shares without nominal or par value, means paid up or fully paid up as to the issue price.

(5) For the purposes of this Act "**carry on business in the Islands**" shall be construed in accordance with the *Local Companies Control Act (2019 Revision)*.

### Registrar

**3**. (1) The Governor shall, by instrument under the Public Seal, appoint a Registrar and a Deputy Registrar of Companies for the purposes of this Law, and the Deputy Registrar may, in the absence of the Registrar, act as Registrar for all purposes of this Law.

(2) Without divesting the Registrar of any of that person's powers or duties the Minister charged with responsibility for Financial Services may authorise by name any officer in the Registrar's department to exercise and perform any of such powers and duties under the direction and control of the Registrar and may, at any time, vary or revoke such authorisation.

### Signature of Registrar

**4**. (1) Any document purporting to bear the signature of the Registrar or of an officer authorised in accordance with section 3(2) shall be deemed, until the contrary is proved, to have been duly given, made or issued by the authority of the Registrar.

(2) In subsection (1) —

"**signature**" includes a facsimile of a signature however reproduced and a digital signature.

# PART II - Constitution and Incorporation of Companies and Associations - Memorandum of Association

## Mode of forming company

**5**. Any one or more persons associated for any lawful purpose may, by subscribing their names to a memorandum of association, and otherwise complying with this Act in respect of registration, form an incorporated company, with or without limited liability.

## Mode of limiting liability of members

**6**. The liability of the members of a company formed under this Act may, according to the memorandum of association, be limited either to the amount, if any, unpaid on the shares respectively held by them, or to such amount as the members may respectively undertake by the memorandum of association to contribute to the assets of the company in the event of its being wound up.

## Memorandum of association

**7**. (1) The memorandum of association shall, subject to subsections (2), (3) and (4) and to sections 8 and 9, contain —

(a) the name of the proposed company which in the case of an exempted company, may be preceded by or followed with a dual foreign name, with the addition, in the case of any company not being an exempted company or a company formed on the principle of having no limit placed on the liability of its members, in this Act referred to as an "unlimited company", of the word "Limited" or the abbreviation "Ltd." as the last word in such name; and

(b) the part of the Islands in which the registered office of the company is proposed to be situate.

(2) No subscriber shall take less than one share.

(3) Each subscriber of the memorandum of association shall write opposite to that suscriber's name the number of shares that person takes.

(4) The memorandum of association may specify objects for which the proposed company is to be established and may provide that the business of the company shall be restricted to the furtherance of the specified objects. If no objects are specified or if objects are specified but the business of the company is not restricted to the furtherance of those objects, then the company shall have full power and the authority to carry out any object not prohibited by this or any other Law.

### Company limited by shares

**8**. (1) Subject to subsection (2), where a company is formed on the principle of having the liability of its members limited to the amount unpaid on their shares, in this Act referred to as a company limited by shares, the memorandum of association shall also contain —

(a) a declaration that the liability of its members is limited; and

(b) the amount of capital with which it proposes to be registered, divided into shares of a certain fixed amount to be also therein specified:

Provided that the capital with which an exempted company proposes to be registered may be divided into shares without nominal or par value in which case the memorandum of association shall contain the amount of the aggregate consideration for which such shares may be issued:

Provided further that no exempted company shall divide its capital into both shares of a fixed amount and shares without nominal or par value.

(2) Where the capital of such a company is divided into shares of more than one class, the memorandum of association may contain a declaration that in a winding up of the company the liability of members holding the shares of a particular class shall be unlimited.

(3) The capital, fixed amount of shares and aggregate consideration referred to in subsection (1) may be expressed, and subscribed for, in any one or more currencies.

(4) No authorisation or issue, or purported authorisation or issue, by an exempted company of any share without nominal or par value shall, if that company has its capital divided into such shares only, be invalid only by reason of the fact it was authorised or issued, or purportedly authorised or issued, prior to the 20th November, 1989.

### Company limited by guarantee

**9**. (1) Subject to subsection (2), where a company is formed on the principle of having the liability of its members limited to such amount as the members respectively undertake to contribute to the assets of the company in the event of the same being wound up, (in this Act referred to as a company limited by guarantee), the memorandum of association shall also contain a declaration that each member undertakes to contribute to the assets of the company, in the event of the same being wound up during the time that that person is a member, or within one year afterwards, for payment of the debts and liabilities of the company contracted before the time at which that person ceases to be a member, and of the costs, charges and expenses of the winding up of the company, and for the adjustment of the rights of the contributories amongst themselves, such amount as may be required, not exceeding a specific amount to be therein named.

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 25 of 226



(2) Where such a company has more than one class of member, the memorandum of association may contain a declaration that in a winding up of the company the amount of the undertaking of the members of a particular class shall be unlimited.

(3) A company limited by guarantee may have a share capital.

### Memorandum of association may be altered

**10**. Subject to section 13, a company may, by special resolution, alter its memorandum of association with respect to any objects, powers or other matters specified therein.

### Address of registered office may be changed

**11**. (1) A company may, by resolution of the directors, change the address of the registered office of the company to another address in the Islands, and shall, within thirty days from the date on which the resolution is made, file with the Registrar a certified copy of the resolution of the directors authorising the change together with the prescribed amendment fee.

(2) Until subsection (1) is complied with, the company shall not be deemed to have complied with this Act with respect to having a registered office.

### Signature and effect of memorandum of association

**12**. The memorandum of association shall be signed by each subscriber in the presence of and be attested by at least one witness. It shall, when registered, bind the company and the members thereof to the same extent as if each member had subscribed that person's name and affixed that person's seal thereto and there were in the memorandum contained on the part of that person, that person's heirs, executors and administrators, a covenant to observe all the conditions of such memorandum, subject to this Law, and all monies payable by any member to the company under such memorandum shall be deemed to be a debt due from such member to the company.

### Power of company limited by shares to alter its share capital

**13**. (1) A company limited by shares or a company limited by guarantee and having a share capital, if so authorised by its articles, may alter the conditions of its memorandum to —

(a) increase its share capital by new shares of such amount as it thinks expedient:

Provided that an exempted company having no shares of a fixed amount may increase its share capital by such number of shares without nominal or par value, or may increase the aggregate consideration for which such shares may be issued, as it thinks expedient;

(b) consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(c) convert all or any of its paid-up shares into stock, and reconvert that stock into paid-up shares of any denomination;

(d) subdivide its shares or any of them, into shares of an amount smaller than that fixed by the memorandum, so, however, that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced share shall be the same as it was in case of the share from which the reduced share is derived; and

(e) cancel shares which, at the date of the passing of the resolution in that behalf, have not been taken or agreed to be taken by any person, and diminish the amount of its share capital by the amount of the shares so cancelled or, in the case of shares without nominal or par value, diminish the number of shares into which its capital is divided.

(1A) Paragraphs (b), (c) and (d) shall have no application to shares without nominal or par value.

(2) The powers conferred by subsection (1) may not be exercised except by a resolution of the members of the company.

(3) If a currency in which any of the capital of a company limited by shares or by guarantee is replaced by the euro, the provisions of the company's memorandum of association and articles of association shall automatically be altered so as to re-denominate in euros the capital that is denominated in the replaced currency, at the conversion rate specified in, or otherwise calculated in accordance with, the relevant regulations adopted by the Council of the European Union, and the company, by resolution of the directors, may —

(a) take such action to round up or down the euro nominal or par value of each share in the company or the euro guarantee amount to such multiple of the euro as the directors may deem appropriate;

(b) notwithstanding the requirement for a special resolution in section 31, if the name of the company includes a reference to a currency replaced by the euro, or an abbreviation thereof —

(i) alter the name of the company to delete the reference or to substitute the reference with a reference to the euro or an abbreviation thereof; and

(ii) add such further distinguishing wording as the directors consider appropriate; and

(c) if the memorandum of association or articles of association of the company include a reference or references to a currency replaced by the euro, alter any or all such references in either or both of the memorandum of association and the articles of association by substituting such references with references to the euro or an abbreviation thereof.

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 27 of 226



(4) A company may, by resolution of the directors, reverse or vary the re-denomination of currency or any other action taken under subsection (3).

(5) A copy of any resolution passed under subsection (3) or (4) shall be forwarded to the Registrar within fifteen days and shall be recorded by that person.

(6) A cancellation of shares or a rounding down of the nominal or par value of shares under this section shall not be deemed to be a reduction of share capital within the meaning of this Law.

(7) If any action is taken by the company under paragraph (a) of subsection (3) to —

(a) round up the euro nominal or par value of any issued share in the company, then an amount equal to the increase in nominal or par value of that share shall be transferred from the share premium account or from the profit and loss account (as the directors shall, in their discretion, determine) and shall thereafter be deemed to be and treated as paid up share capital of the company; or

(b) round down the euro nominal or par value of any issued share in the company, then an amount equal to the decrease in the nominal or par value of that share shall be transferred from the paid up share capital of the company to the share premium account and shall thereafter be deemed to be and treated as share premium for the purposes of this Law.

### Special resolution for reduction of share capital

**14**. (1) Subject to section 37 and to confirmation by the Court, a company limited by shares or a company limited by guarantee and having a share capital may, if so authorised by its articles, by special resolution reduce its share capital in any way, and in particular (but without prejudice to the generality of the foregoing power) may —

(a) extinguish or reduce the liability on any of its shares in respect of share capital not paid up;

(b) either with or without extinguishing or reducing liability on any of its shares, cancel any paid-up share capital which is lost or unrepresented by available assets; or

(c) either with or without extinguishing or reducing liability of any of its shares, pay off any paid-up share capital which is in excess of the needs of the company,

and may, if and so far as is necessary, alter its memorandum by reducing the amount of its share capital and of its shares accordingly.

(2) A special resolution under subsection (1) is, in this Law, referred to as “a resolution for reducing share capital”.

### Application to court for confirming order, objections by creditors

**15**. (1) Where a company has passed a resolution for reducing share capital, it may apply by petition to the Court for an order confirming the reduction.

(2) Where the proposed reduction of share capital involves either diminution of liability in respect of unpaid share capital or the payment to any shareholder of any paid-up share capital, and, in any other case, if the Court so directs, subject to subsection (3), the following shall have effect —

(a) every creditor of the company who at the date fixed by the Court is entitled to any debt or claim which, if that date were the commencement of the winding up of the company, would be admissible in proof against the company, shall be entitled to object to the reduction;

(b) the Court shall settle a list of creditors so entitled to object, and for that purpose shall ascertain as far as possible without requiring an application from any creditor, the names of those creditors and the nature and amount of their debts or claims, and may publish notices fixing a day or period on or within which creditors not entered on the list are to claim to be so entered or are to be excluded from the right of objecting to the reduction; and

(c) where a creditor entered on the list whose debt or claim is not discharged or has not determined does not consent to the reduction, the Court may, if it thinks fit, dispense with the consent of that creditor, on the company securing payment of that person's debt or claim by appropriating as the Court may direct, the following amount —

(i) if the company admits the full amount of the debt or claim, or, though not admitting it, is willing to provide for it, then the full amount of the debt or claim; or

(ii) if the company does not admit and is not willing to provide for the full amount of the debt or claim, or, if the amount is contingent or not ascertained, then an amount fixed by the Court after the like enquiry and adjudication as if the company were being wound up by the Court.

(3) Where a proposed reduction of share capital involves either the diminution of any liability in respect of unpaid share capital or the payment to any shareholder of any paid-up share capital the Court may, if having regard to any special circumstances of the case it thinks proper so to do, direct that subsection (2) shall not apply as regards any class or any classes of creditors.

### Order confirming reduction and powers of Court on making such order

**16**. (1) The Court, if satisfied with respect to every creditor of the company who under section 15 is entitled to object to the reduction, that either that person's consent to the reduction has been obtained or that person's debt or claim has been discharged or has determined, or has been secured, may make an order confirming the reduction on such terms and conditions as it thinks fit.

(2) Where the Court makes any such order, it may —

(a) if for any special reason it thinks proper so to do, direct that the company shall, during such period, commencing on or at any time after the date of the order, as is specified in the order, add to its name as the last word thereof the words "and reduced"; and

(b) require the company to publish as the Court directs the reasons for reduction or such other information in regard thereto as the Court may think expedient with a view to giving proper information to the public, and, if the court thinks fit, the causes which led to the reduction.

(3) Where a company is ordered to add to its name the words "and reduced", those words shall, until the expiration of the period specified in the order, be deemed to be part of the name of the company.

### Registration of order and minute of reduction

**17**. (1) The Registrar, on delivery to that person of a copy of an order of the Court confirming the reduction of the share capital of a company, and of a minute approved by the Court, showing, with respect to the share capital of the company as altered by the order, the amount of the share capital, the number of shares into which it is to be divided and the amount of each share, and the amount, if any, at the date of the registration of the order and minute deemed to be paid up on each share, shall register the order and minute.

(2) On the registration of the order and minute, and not earlier, the resolution for reducing share capital as confirmed by the order so registered shall take effect.

(3) Notice of the registration shall be published in such manner as the Court may direct.

(4) The Registrar shall certify under that person's hand the registration of the order and minute, and that person's certificate shall be conclusive evidence that all the requirements of this Act with respect to reduction of share capital have been complied with, and that the share capital of the company is such as is stated in the minute.

(5) The minute, when registered, shall be deemed to be substituted for the corresponding part of the memorandum, and shall be valid and alterable as if it had been originally contained therein.

### Liability of members in respect of reduced shares

**18**. (1) In the case of a reduction of share capital, a member of the company, past or present, shall not be liable in respect of any share to any call or contribution exceeding in amount the difference, if any, between the amount of the share as fixed by the minute and the amount paid or the reduced amount, if any, which is to be deemed to have been paid on the shares, as the case may be:

Provided that, if any, creditor entitled in respect of any debt or claim to object to the reduction of share capital is, by reason of that person's ignorance of the proceedings for reduction or of their nature and effect with respect to that person's claim, not entered on the list of creditors, and after the reduction the company is unable, within the meaning of this Act with respect to winding up by the Court, to pay the amount of that person's debt or claim, then —

(a) every person who was a member of the company at the date of the registration of the order for reduction and minute shall be liable to contribute for the payment of that debt or claim an amount not exceeding the amount which that person would have been liable to contribute if the company had commenced to be wound up on the day before the said date; and

(b) if the company is wound up, the Court, on the application of any such creditor and proof of that person's ignorance as aforesaid, may if it thinks fit, settle accordingly a list of persons so liable to contribute, and make and enforce calls and orders on the contributories in a winding up.

(2) Nothing in this section shall affect the rights of the contributories among themselves.

### Penalty for concealment of names of creditors

**19**. A person who, being a director, manager, secretary or other officer of the company —

(a) wilfully conceals the name of any creditor entitled to object to the reduction;

(b) wilfully misrepresents the nature or amount of the debt or claim of any creditor; or

(c) aids, abets or is privy to any such concealment or misrepresentation as aforesaid,

commits an offence and is liable on summary conviction to a fine of five thousand dollars or to imprisonment for a term of one year, or to both.

### Articles prescribing regulations for companies

**20**. There may, in the case of a company limited by shares, and there shall, in the case of a company limited by guarantee or unlimited, be registered with the memorandum, articles of association signed by the subscribers to the memorandum and prescribing regulations for the company.

### Regulations required in case of unlimited company or company limited by guarantee

**21**. (1) In the case of an unlimited company the articles must state the number of members with which the company proposes to be registered and, if the company has a share capital, the amount of share capital with which the company proposes to be registered.

(2) In the case of a company limited by guarantee, the articles must state the number of members with which the company proposes to be registered.

### Adoption and application of Table A in Schedule 1

**22**. (1) Articles of association may adopt all or any of the regulations contained in Table A in Schedule 1.

(2) In the case of a company limited by shares and registered after the 1st December, 1961, if articles are not registered or, if articles are registered, insofar as the articles do not exclude or modify the regulations contained in Table A in Schedule 1, those regulations shall, so far as applicable, be the regulations of the company in the same manner and to the same extent as if they were contained in duly registered articles.

### Printing, stamping and signature of articles

**23**. Articles shall —

(a) be divided into paragraphs numbered consecutively;

(b) bear the same stamp as if they were contained in a deed; and

(c) save as otherwise provided in section 25(2), be signed by each subscriber of the memorandum of association or each existing member, as the case may be, in the presence of at least one witness who shall attest the signature, and that attestation shall be sufficient.

### Alteration of articles by special resolution

**24**. (1) Subject to this Act and to the conditions contained in its memorandum, a company may, by special resolution, alter or add to its articles.

(2) Any alteration or addition so made in the articles shall, subject to this Law, be as valid as if originally contained therein, and be subject in like manner to alteration by special resolution.

### Adoption and effect of articles of association

**25**. (1) If the memorandum of association is accompanied by articles of association the articles shall be signed by each subscriber to the memorandum in the presence of and be attested by at least one witness.

(2) If the memorandum of association is not accompanied by articles of association, the company may, subject to the conditions contained in the memorandum of association, adopt articles of association which shall be signed by each existing member of the company in the presence of and be attested by at least one witness, or may, by passing a special resolution under section 60, adopt articles of association.

(3) When registered the said articles of association shall bind the company and the members thereof to the same extent as if each member had subscribed that person's name and affixed that person's seal thereto, and there were in such articles contained a covenant on the part of that person, that person's heirs, executors and administrators to conform to all the regulations contained in such articles subject to this Law; and all monies payable by any member to the company in pursuance of the conditions or regulations shall be deemed to be a debt due from such member to the company.

## General Provisions

### Registration

**26**. (1) The memorandum of association and the articles of association, if any, shall be delivered in duplicate to the Registrar who shall file and retain the original thereof and shall return the duplicate thereof endorsed with a memorandum of registration and a memorandum of the particulars set out in subsection (2).

(2) Each memorandum of association and the articles of association, if any, shall be numbered and filed consecutively and shall be endorsed with the date of the month and year of such filing.

(3) A register of companies shall be kept by the Registrar in which shall be entered the particulars set out in Schedule 1A and, save for the particulars set out in paragraph (i) of Schedule 1A, such particulars shall be annexed to the memorandum of association and articles of association, if any, insofar as they are not included therein.

(3A) The Registrar shall make the register under subsection (3) available for inspection by any person on payment of the fee specified in Part 1A of Schedule 5 and the inspection shall be subject to such conditions as the Registrar may impose.

(3B) The Cabinet may amend Schedule 1A by Order.

(4) Upon the filing of a memorandum of association under this section, there shall be paid to the Registrar the fees specified in Part 1 of Schedule 5.

### Registrar to provide information

**26A.** (1) The Registrar shall, upon request in writing by an entity under subsection (2), provide any information required to discharge any function or exercise any power, under the following Acts —

(a) the *Anti-Corruption Act (2019 Revision);*

(b) the *Monetary Authority Act (2020 Revision)*;

(c) the *Proceeds of Crime Act (2020 Revision);*

(d) the *Tax Information Authority Act (2021 Revision);*

(2) For the purposes of subsection (1), the following entities may request information from the Registrar —

(a) the Anti-Corruption Commission established under section 3 of *the Anti-Corruption Act (2019 Revision)*;

(b) the Authority;

(ba) the Customs and Border Control Service established under section 3 of the *Customs and Border Control Act (2022 Revision)*;

(c) the Financial Crimes Unit of the Royal Cayman Islands Police Service;

(d) the Financial Reporting Authority, as defined under section 2 of the *Proceeds of Crime Act (2020 Revision);*

(e) the Tax Information Authority, designated under section 4 of the *Tax Information Authority Act (2021 Revision)*; or

(f) a competent authority as defined under section 2(1) of the *Proceeds of Crime Act (2020 Revision)*.

(3) Where a request for information is made under subsection (1), the information shall be provided within forty-eight hours of receipt of the request.

(4) The recipient of any information provided by the Registrar under this section shall —

(a) use the information for the purpose for which it was provided;

(b) retain the information for as long as is necessary to carry out the purpose for which it was provided; and

(c) not disclose the information for any purpose other than the purpose for which it was provided, without the consent of the Registrar.

### Consequences of incorporation

**27**. (1) Upon the filing of the memorandum of association a company shall be deemed to be registered, and the Registrar shall issue a certificate under that person's hand and seal of office that the company is incorporated with effect from the date of the registration of the memorandum of association and, in the case of a limited company, that the company is limited.

(2) From the date of incorporation, the subscribers of the memorandum of association, together with such other persons as may, from time to time, become members of the company, shall be a body corporate by the name contained in the memorandum of association, capable forthwith of exercising all the functions of a natural person of full capacity irrespective of any question of corporate benefit, and having perpetual succession with power to hold lands but with such liability on the part of the members to contribute to the assets of the company in the event of its being wound up as is provided in this Law. This subsection applies to companies incorporated before, on or after the 18th January, 1988.

(3) A certificate of incorporation of a company issued under this Act shall be conclusive evidence that compliance has been made with all the requirements of this Act in respect of incorporation and registration.

(4) Every copy of a memorandum or articles of association filed and registered in accordance with this Act or any extract therefrom certified under the hand and seal of office of the Registrar as a true copy shall be received in evidence in any court of the Islands without further proof.

### Lack of capacity or power; *ultra vires*

**28**. (1) No act of a company and no disposition of real or personal property to or by a company shall be invalid by reason only of the fact that the company was without capacity or power to perform the act or to dispose of or receive the property, but the lack of capacity or power may be asserted —

(a) in proceedings by a member or a director against the company to prohibit the performance of any act, or the disposition of real or personal property by or to the company; and

(b) in proceedings by the company, whether acting directly or through a liquidator or other legal representative or through members of the company in a representative capacity, against the incumbent or former officers or directors of the company for loss or damage through their unauthorised act.

(2) This section applies to companies incorporated before, on or after the 18th day of January, 1988.

### Copies of memorandum and articles to be given to members

**29**. A copy of the memorandum of association having annexed thereto the articles of association, if any, shall be forwarded to every member, at that person's request, on payment of such reasonable sum, not exceeding one dollar for each copy as may be fixed by any rule of the company, and in the absence of any such rule, such copy shall be given gratuitously; and whichever company makes default in forwarding a copy of the memorandum of association and articles of association, if any, to a member in pursuance of this section, commits an offence and is liable, for each default, to a penalty of two dollars.

### Restrictions on registration of certain names

**30**. (1) No company shall be registered by a name which —

(a) is identical with a name by which a company in existence is already registered or any translated name entered on the register of companies, or so nearly resembles such name or translated name so as to be calculated to deceive, except where the company in existence is in the course of being dissolved and signified its consent in such manner as the Registrar requires;

(b) contains the words "Chamber of Commerce" unless the company is a company which is to be registered under a licence granted by the Registrar under section 80 without the addition of the word "Limited" or the abbreviation "Ltd." to its name; or

(c) contains the words "building society".

(2) Except with the consent of the Registrar, no company shall be registered by a name which —

(a) contains the words "royal", "imperial" or "empire" or in the opinion of the Registrar suggests, or is calculated to suggest the patronage of His Majesty or of any member of the Royal Family or connection with His Majesty's Government or any department thereof in the United Kingdom or elsewhere;

(b) contains the words "municipal" or "chartered" or any words which in the opinion of the Registrar suggest, or are calculated to suggest, connection with any public board or other local authority or with any society or body incorporated by Royal Charter;

(c) contains the words "co-operative", "assurance", "bank", "insurance", or any similar word which in the opinion of the Registrar connotes any of such activities or any derivative of any of such four words or of such similar words, whether in English or in any other language, or in the opinion of the Registrar suggests or is calculated to suggest any of such activities; or

(d) contains the word "gaming" or "lottery" or any similar word which in the opinion of the Registrar connotes any such activity or any derivative of such words or of such similar word, whether in English or in any other language, or in the opinion of the Registrar suggests or is calculated to suggest any such activity.

(3) A company that is not an exempted limited duration company shall not be registered by a name which includes at its end "Limited Duration Company" or "LDC".

(3A) A company that is not a special economic zone company shall not be registered by a name which includes the words "Special Economic Zone Company" or the letters "SEZC".

(4) The provisions of the regulatory laws shall apply to any translated name as if it were the name of the company and a company shall not have a translated name which is a name —

(a) prohibited under any regulatory laws; or

(b) which requires approval or permission under any regulatory laws unless such approval or permission as is necessary for the use of such name under the relevant regulatory laws has first been obtained.

(5) A company's dual foreign name shall only be entered on the register of companies if its translated name conforms with the provisions of this section and if it does not so conform then such dual foreign name and such translated name shall not be entered on the register of companies.

### Change of name

**31**. (1) Any company may, by special resolution, change its name and, in the case of an exempted company, may adopt a dual foreign name or change its dual foreign name, if any, and any dual foreign name shall precede or follow its name.

(2) Where a company changes its name or its dual foreign name, the Registrar, on receiving the special resolution authorising the same and, in the case of a company changing its dual foreign name, receiving its translated name together with the fees provided under section 199(1), and on being satisfied that the change of name conforms with section 30, shall enter the new name and, if applicable, the new translated name on the register in place of the former name and lodge the special resolution for record and shall issue a certificate of incorporation altered to meet the circumstances of the case.

(3) If, through inadvertence or otherwise, a company on its first registration or on its registration by a new name or new translated name is registered by a name or a translated name which in any way contravenes section 30 or which, in the opinion of the Registrar, is misleading or undesirable, then the company may, with the sanction of the Registrar, change its name or its translated name as the case may be and shall, if the Registrar so directs, change its name or translated

name within six weeks of the date of such direction or within such longer period as the Registrar may think fit.

(4) A company which defaults in complying with a direction under subsection (3) is liable to a fine of ten dollars for every day during which the default continues.

### Company with power to issue bearer shares not to hold land in the Islands

**32**. (1) A company which is empowered by any law or by its articles of association to issue bearer shares, certificates or coupons, has no power to hold land in the Islands:

Provided that the Minister charged with responsibility for Financial Services may, at that Minister's discretion, in the case of an exempt company so empowered that has never issued bearer shares, certificates or coupons, exempt that company in writing from subsection (1) for as long as it does not issue bearer shares, certificates or coupons.

(2) If a company is in breach of subsection (1), section 185(2), (3) and (4) shall apply, *mutatis mutandis*, to the company as if it were a foreign company which had failed to comply with Part IX.

(3) In this section —

"**hold land**" means to be the proprietor of a legal or beneficial interest in or claim to, or over immovable property whether freehold or leasehold and includes being the proprietor of a legal or beneficial interest in the equity capital of a company which holds land; and

"**equity capital**" with respect to a company includes shares, stock and scrip whether registered, inscribed or bearer which (other than by way of a fixed and predetermined right to interest and repayment of subscribed capital at par) entitles the owner to any variable right of participation in the profits of the company whether by way of dividend, bonus or conversion, or to share in the distribution of the assets of the company upon a winding up.

## PART III - Distribution of Capital and Liability of Members of Companies and Associations

## Distribution of Capital

### Share or interest in company to be personalty

**33**. (1) A share or other interest of a member in a company —

(a) is personal estate and not of the nature of real estate; and

(b) is capable of being transferred if —

(i) a transfer is expressly or impliedly permitted by the regulations of the company; and

(ii) any restriction or condition on the transfer of the shares or interest set out in the regulations of the company is observed.

(2) The shares in a company having a capital divided into shares must each be distinguished by an appropriate number except that if, at any time —

(a) all the issued shares in the company; or

(b) all the issued shares in the company of a particular class,

are fully paid up and rank *pari passu* for all purposes, none of those shares need thereafter have a distinguishing number so long as it remains fully paid up and ranks *pari passu* for all purposes with all the shares in the company or all the shares of the particular class of shares, as the case may be, for the time being issued and fully paid up.

(3) A company limited by shares, or a company limited by guarantee and having a share capital, if so authorised by its articles, may issue fractions of a share and, unless and to the extent otherwise provided in its articles, a fraction of a share shall be subject to and carry the corresponding fraction of liabilities (whether with respect to nominal or par value, premium, contribution, calls or otherwise howsoever), limitations, preferences, privileges, qualifications, restrictions, rights and other attributes of a whole share of the same class of shares; and in this Act the expression "**share**" includes a fraction of a share and no issue or purported issue of a fraction of a share shall be invalid by reason only of the fact that it was issued or purportedly issued prior to the 30th September, 1985.

(4) The nominal or par value of a share may be expressed in an amount which is a fraction or a percentage of the lowest available unit of legal tender of the currency in which the capital of the company is expressed.

### Share premium account

**34**. (1) Where a company issues shares at a premium, whether for cash or otherwise, a sum equal to the aggregate amount of the value of the premiums on those shares shall be transferred to an account called "the share premium account". Where a company issues shares without nominal or par value, the consideration received shall be paid up share capital of the company.

(2) The share premium account may be applied by the company subject to the provisions, if any, of its memorandum or articles of association in such manner as the company may, from time to time, determine including, but without limitation —

(a) paying distributions or dividends to members;

(b) paying up unissued shares of the company to be issued to members as fully paid bonus shares;

(c) any manner provided in section 37;

(d) writing off the preliminary expenses of the company; and

(e) writing off the expenses of, or the commission paid or discount allowed on, any issue of shares or debentures of the company.

Provided that no distribution or dividend may be paid to members out of the share premium account unless, immediately following the date on which the distribution or dividend is proposed to be paid, the company shall be able to pay its debts as they fall due in the ordinary course of business; and the company and any director or manager thereof who knowingly and wilfully authorises or permits any distribution or dividend to be paid in contravention of the foregoing provision commits an offence and is liable on summary conviction to a fine of fifteen thousand dollars and to imprisonment for five years.

(3) Where a company had, before the 18th day of January, 1988, issued any shares at a premium, this section shall apply as if the shares had been issued after such date.

(4) At the option of the company, subsection (1) shall not apply to premiums on shares of a company allotted in pursuance of any arrangement in consideration for the acquisition or cancellation of shares in any other company, whether a company within the meaning of this Act or not, and issued at a premium.

(5) At the option of the company, an amount corresponding to any amount representing the premiums or part of the premiums on shares issued by a company which, by virtue of subsection (4), is not included in such company's share premium account may also be disregarded in determining the amount at which any shares or other consideration provided for the shares issued is to be included in such company's balance sheet.

(6) For the purposes of subsection (4) —

"**arrangement**" means any agreement, scheme or arrangement, whether of reconstruction, merger, consolidation, take-over, acquisition, purchase or otherwise whereby the allotting company acquires a controlling interest in the company whose shares it acquires or cancels.

(7) The relief allowed by subsections (4) and (5) shall apply even if the issue of shares took place prior to the 18th day of January, 1988.

### Power to issue shares at a discount

**35**. (1) Subject as provided in this section, it shall be lawful for a company to issue, at a discount, shares in the company of a class already issued:

Provided that —

(a) the issue of the shares at a discount has been authorised by resolution of the company, and has been sanctioned by the Court;

(b) the resolution specify the maximum rate of discount at which the shares are to be issued;

(c) not less than one year, at the date of the issue, has elapsed since the date on which the company was entitled to commence business; and

(d) the shares to be issued at a discount are issued within one month after the date on which the issue is sanctioned by the Court or within such extended time as the Court may allow.

(2) Where a company has passed a resolution authorising the issue of shares at a discount, it may apply to the Court for an order sanctioning the issue, and on any such application the Court, if, having regard to all the circumstances of the case, it thinks proper so to do, may make an order sanctioning the issue on such terms and conditions as it thinks fit.

(3) Every prospectus relating to the issue of the shares must contain particulars of the discount allowed on the issue of the shares or of so much of that discount as had not been written off at the date of the issue of the prospectus and if default is made in complying with this subsection, the company and every officer of the company who is in default is liable to a default fine.

(4) This section does not apply to shares issued, or proposed to be issued, without nominal or par value.

### Power of company to pay commissions

**36**. (1) A company has the power, and shall be deemed always to have had the power, to pay a commission to any person in consideration of that person subscribing or agreeing to subscribe (whether absolutely or conditionally) for any shares in the company, or procuring or agreeing to procure subscriptions (whether absolute or conditional) for any shares in the company, if the payment of the commission is authorised by the articles of association of the company.

(2) Nothing in subsection (1) affects the power of a company to pay such brokerage as has previously been lawful.

(3) A vendor to, or promoter of, or other person who receives payment in money or shares from a company has, and is deemed always to have had, power to apply any part of the money or shares so received in payment of any commission, the payment of which, if made directly by the company, would have been lawful under subsection (1).

### Redemption and purchase of shares

**37**. (1) Subject to this section, a company limited by shares or limited by guarantee and having a share capital may, if authorised to do so by its articles of association, issue shares which are to be redeemed or are liable to be redeemed at the option of the company or the shareholder and, for the avoidance of doubt, it shall be lawful for the rights attaching to any shares to be varied, subject to the

provisions of the company's articles of association, so as to provide that such shares are to be or are liable to be so redeemed.

(2) Subject to this section, a company limited by shares or limited by guarantee and having a share capital may, if authorised to do so by its articles of association, purchase its own shares, including any redeemable shares.

(3) (a) No share may be redeemed or purchased unless it is fully paid.

(b) A company may not redeem or purchase any of its shares if, as a result of the redemption or purchase, there would no longer be any issued shares of the company other than shares held as treasury shares.

(c) Redemption or purchase of shares may be effected in such manner and upon such terms as may be authorised by or pursuant to the company's articles of association.

(d) If the articles of association do not authorise the manner and terms of the purchase, a company shall not purchase any of its own shares unless the manner and terms of purchase have first been authorised by a resolution of the company.

(da) For the avoidance of doubt —

(i) a company's articles of association; or

(ii) a resolution of the company,

may authorise the company's directors to determine the manner or any of the terms of, any such redemption or purchase not being inconsistent with such articles of association or resolution and subject to such restrictions (if any) as may be provided therein.

(e) The premium, if any, payable on redemption or purchase must have been provided for —

(i) out of either or both of the profits of the company or the company's share premium account, before or at the time the shares are redeemed or purchased; or

(ii) in the manner provided for in subsection (5).

(f) Shares may be redeemed or purchased out of profits of the company, out of the share premium account or out of the proceeds of a fresh issue of shares made for the purposes of the redemption or purchase or in the manner provided for in subsection (5).

(g) Subject to section 37A, shares redeemed or purchased under this section shall be treated as cancelled on redemption or purchase, and the amount of the company's issued share capital shall be diminished by the nominal value of those shares accordingly; but the redemption or purchase of shares by a company is not to be taken as reducing the amount of the company's authorised share capital.

(h) Without prejudice to paragraph (g), where a company is about to redeem or purchase shares, it has power to issue shares up to the nominal value of the shares to be redeemed or purchased as if those shares had never been issued:

Provided that where new shares are issued before the redemption or purchase of the old shares the new shares shall not, so far as relates to fees payable on or accompanying the filing of any return or list, be deemed to have been issued in pursuance of this subsection if the old shares are redeemed or purchased within one month after the issue of the new shares.

(4) (a) Where, under this section, shares of a company are redeemed or purchased wholly out of either or both of the company's profits or share premium account, the amount by which the company's issued share capital is diminished in accordance with paragraph (g) of subsection (3) on cancellation of the shares redeemed or purchased shall be transferred to a reserve called the "capital redemption reserve" and the share premium account or company's profits, as the case may be, shall be adjusted accordingly.

(b) If the shares are redeemed or purchased wholly or partly out of the proceeds of a fresh issue and the aggregate amount of those proceeds is less than the aggregate nominal value of the shares redeemed or purchased, the amount of the difference shall be transferred to the capital redemption reserve.

(c) Paragraph (b) does not apply if the proceeds of the fresh issue are applied by the company in making a redemption or purchase of its own shares in addition to a payment out of capital under subsection (5).

(d) The provisions of this Act relating to the reduction of a company's share capital apply as if the capital redemption reserve were paid-up share capital of the company, except that the reserve may be applied by the company in paying up its unissued shares to be allotted to members of the company as fully paid bonus shares.

(5) (a) Subject to this section, a company limited by shares or limited by guarantee and having a share capital may, if so authorised by its articles of association, make a payment in respect of the redemption or purchase of its own shares otherwise than out of its profits, share premium account, or the proceeds of a fresh issue of shares.

(b) References in subsections (6) to (9) to payment out of capital are, subject to paragraph (f), references to any payment so made, whether or not it would be regarded apart from this subsection as a payment out of capital.

(c) The amount of any payment which may be made by a company out of capital in respect of the redemption or purchase of its own shares is such an amount as, taken together with —

(i) any profits and share premium of the company being applied for purposes of the redemption or purchase; and

(ii) the proceeds of any fresh issue of shares made for the purpose of the redemption or purchase, is equal to the price of redemption or purchase, and the payment out of capital permitted under this paragraph is referred to in subsections (6) to (9) as the capital payment for the shares.

Nothing in this paragraph shall be taken to imply that a company shall be obliged to exhaust any profits and share premium before making any capital payment.

(d) Subject to paragraph (f), if the capital payment for shares redeemed or purchased and cancelled is less than their nominal amount, the amount of the difference shall be transferred to the company's capital redemption reserve.

(e) Subject to paragraph (f), if the capital payment is greater than the nominal amount of the shares redeemed or purchased the amount of any capital redemption reserve or fully paid share capital of the company may be reduced by a sum not exceeding, or by sums not in the aggregate exceeding, the amount by which the capital payment exceeds the nominal amount of the shares.

(f) Where the proceeds of a fresh issue are applied by a company in making any redemption or purchase of its own shares in addition to a payment out of capital under this subsection, the references in paragraphs (d) and (e) to the capital payment are to be read as referring to the aggregate of that payment and those proceeds.

(6) (a) A payment out of capital by a company for the redemption or purchase of its own shares is not lawful unless immediately following the date on which the payment out of capital is proposed to be made the company shall be able to pay its debts as they fall due in the ordinary course of business.

(b) The company and any director or manager thereof who knowingly and wilfully authorises or permits any payment out of capital to effect any redemption or purchase of any share in contravention of paragraph (a) commits an offence and is liable on summary conviction to a fine of fifteen thousand dollars and to imprisonment for five years.

(7) (a) Where a company is being wound up and, at the commencement of the winding up, any of its shares which are or are liable to be redeemed have not been redeemed or which the company has agreed to purchase have not been purchased, the terms of redemption or purchase may be enforced against the company, and when shares are redeemed or purchased under this subsection they shall be treated as cancelled.

Provided that this paragraph shall not apply if —

(i) the terms of redemption or purchase provided for the redemption or purchase to take place at a date later than the date of the commencement of the winding up; or

(ii) during the period beginning with the date on which the redemption or purchase was to have taken place and ending with the commencement of the winding up the company could not, at any time, have lawfully made a distribution equal in value to the price at which the shares were to have been redeemed or purchased.

(b) There shall be paid in priority to any amount which the company is liable by virtue of paragraph (a) to pay in respect of any shares —

(i) all other debts and liabilities of the company (other than any due to members in their character as such); and

(ii) if other shares carry rights whether as to capital or as to income which are preferred to the rights as to capital attaching to the first mentioned shares, any amount due in satisfaction of those preferred rights,

but subject to that, any such amount shall be paid in priority to any amounts due to members in satisfaction of their rights (whether as to capital or income) as members.

(8) (a) Any redeemable preference shares issued by a company before the 18th day of January, 1988, are subject to redemption in accordance with this section.

(b) Any capital redemption reserve fund established by a company before the 18th day of January, 1988, is to be known as the company's capital redemption reserve and to be treated as if it had been established for the purposes of subsection (4), and accordingly, a reference in any law, the articles of association of any company or any other instrument to a company's capital redemption reserve fund is to be construed as a reference to the company's capital redemption reserve.

(9) This section shall apply to shares without nominal or par value, and shall, in relation to such shares, be read and construed as if —

(a) in subsection (3) —

(i) for the words "the nominal value of" appearing in paragraph (g), there were substituted the words "an amount equal to the consideration received for"; and

(ii) for the words "nominal value" appearing in paragraph (h), there was substituted the word "number";

(b) in subsection (4) for the words "aggregate nominal value of" appearing in paragraph (b), there were substituted the words "aggregate consideration received for"; and

(c) in subsection (5) —

(i) for the words "their nominal amount" appearing in paragraph (d), there were substituted the words "the consideration received for such shares"; and

(ii) for the words "nominal amount of" appearing in paragraph (e), there were substituted the words "consideration received for".

### Treasury shares

**37A.** (1) Shares that have been purchased or redeemed by a company or surrendered to the company pursuant to sections 37 or 37B shall not be treated as cancelled pursuant to sections 37(3)(g) or 37B(2) but shall be classified as treasury shares and sections 37(4), 37(5)(d) and 37B(2) shall not apply to such shares at the time of such purchase, redemption or surrender, if —

(a) the memorandum and articles of association of the company do not prohibit it from holding treasury shares;

(b) the relevant provisions of the memorandum and articles of association (if any) are complied with; and

(c) the company is authorised in accordance with the company's articles of association or by a resolution of the directors to hold such shares in the name of the company as treasury shares prior to the purchase, redemption or surrender of such shares.

(2) Shares held by a company pursuant to subsection (1) shall continue to be classified as treasury shares until such shares are either cancelled or transferred pursuant to subsection (3).

(3) A company that holds treasury shares may at any time —

(a) cancel the shares in accordance with the provisions of the company's articles of association or (in the absence of any applicable provisions in the company's articles of association) by a resolution of the directors, and if so cancelled the amount of the company's issued share capital shall be diminished by the nominal or par value of those shares accordingly but the company's authorised share capital shall not be reduced and sections 37(4), 37(5)(d) and 37B(2) shall apply as if the shares had been purchased, redeemed or surrendered as at the date of cancellation; or

(b) transfer the shares to any person, whether or not for valuable consideration (including at a discount to the nominal or par value of such shares).

(4) A sum equal to the consideration (if any) received by the company pursuant to the transfer of a treasury share made in accordance with subsection (3)(b) (such consideration referred to as the "transfer consideration") shall be applied in the following manner —

(a) to the extent that any payment out of capital was made with respect to the purchase or redemption of the share being transferred, there shall be credited to the company's share capital an amount equal to the lesser of —

(i) the amount of such payment out of capital; and

(ii) the transfer consideration received in respect of such share;

(b) subject to subsection (5), to the extent that any payment out of share premium was made with respect to the purchase or redemption of the share being transferred, there shall be credited to the company's share premium an amount equal to the lesser of —

(i) the amount of such payment out of share premium; and

(ii) the balance of the transfer consideration received in respect of such share after applying subsection (4)(a); and

(c) subject to subsection (5), the balance of the transfer consideration received in respect of such share after applying subsection (4)(a) and (b) shall be credited to the company's profit and loss account.

(5) Notwithstanding the provisions of subsection (4)(b) and (c) but subject to subsection (4)(a), so long as the company shall be able to pay its debts as they fall due in the ordinary course of business immediately following the transfer of a treasury share in accordance with subsection (3)(b), the directors may by resolution determine that all or any part of the transfer consideration received shall be transferred to the company's profit and loss account, share premium account or share capital (or any combination of the foregoing) in such proportions as the directors may (in their sole and absolute discretion but subject to any express contrary provision in the articles of association of the company) determine.

(6) Notwithstanding subsection (7)(b), a treasury share may be transferred by the company and the provisions of this Act and (subject to any specific provisions with respect to the transfer of treasury shares) the memorandum and articles that apply to the transfer of shares shall apply to the transfer of treasury shares.

(7) For so long as a company holds treasury shares —

(a) the company shall be entered in the register of members as holding those shares;

(b) notwithstanding paragraph (a) —

(i) the company shall not be treated as a member for any purpose and shall not exercise any right in respect of the treasury shares, and any purported exercise of such a right shall be void; and

(ii) a treasury share shall not be voted, directly or indirectly, at any meeting of the company and shall not be counted issued shares at any given time, whether for the purposes of the company's articles of association or this Law; and

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 47 of 226



(c) no dividend may be declared or paid, and no other distribution (whether in cash or otherwise) of the company's assets (including any distribution of assets to members on a winding up) may be made to the company, in respect of a treasury share.

(8) Nothing in subsection (7) prevents an allotment of shares as fully paid bonus shares in respect of a treasury share and shares allotted as fully paid bonus shares in respect of a treasury share shall be treated as treasury shares.

### Surrender of shares

**37B**. (1) Subject to any express provisions of the company's memorandum or articles of association to the contrary, a company may accept the surrender for no consideration of any fully paid share (including a redeemable share) unless, as a result of the surrender, there would no longer be any issued shares of the company other than shares held as treasury shares.

(2) Subject to section 37A, any shares surrendered under subsection (1) shall be treated as cancelled on surrender, and the amount of the company's issued share capital shall be diminished by the nominal value of those shares accordingly; but the surrender of shares by a member is not to be taken as reducing the amount of the company's authorised share capital.

(3) This section is without prejudice to any right or power of a company arising under this Act or otherwise to accept the surrender of a share (not being a fully paid share) in lieu of forfeiture.

### Definition of member

**38**. The subscribers of the memorandum of association of any company shall be deemed to have agreed to become members of the company whose memorandum they have subscribed, and upon the registration of the company shall be entered as members on the register of members hereinafter mentioned, and every other person who has agreed to become a member of a company and whose name is entered on the register of members, shall be deemed to be a member of the company.

### Transfer by personal representative

**39**. Any transfer of the share or other interest of a deceased member of a company made by that person's personal representative, shall, notwithstanding that such personal representative may not themselves be a member, be of the same validity as if that person had been a member at the time of the execution of the instrument of transfer.

### Register of members

**40**. (1) Every company shall cause to be kept in writing, a register of its members and there shall be entered therein —

(a) the names and addresses of the members of the company, with the addition of, in the case of a company having a capital divided into shares, a statement of the shares held by each member, and the statement shall —

(i) distinguish each share by its number (so long as the share has a number);

(ii) confirm the amount paid, or agreed to be considered as paid on the shares of each member;

(iii) confirm the number and category of shares held by each member; and

(iv) confirm whether each relevant category of shares held by a member carries voting rights under the articles of association of the company, and if so, whether such voting rights are conditional;

(b) the date on which the name of any person was entered on the register as a member; and

(c) the date on which any person ceased to be a member.

(2) Any company making default in complying with this section shall incur a penalty of five thousand dollars; and every director or manager of the company who knowingly and wilfully authorises or permits such default shall incur the like penalty.

(3) For the purpose of subsection (1), "**voting rights**" means, —

(a) rights conferred on shareholders, including the right to appoint or remove directors, in respect of their shares or, in the case of an entity not having a share capital, on members, to vote at general meetings of the entity on all or substantially all matters; and

(b) in relation to a legal entity that does not have general meetings at which matters are decided by the exercise of voting rights, the rights conferred upon shareholders or members, as applicable, that are equivalent to those of a person entitled to exercise voting rights in a company.

(4) A voting right is conditional where the voting right arises only in certain circumstances.

### Branch registers of members

**40A.** (1) An exempted company may cause to be kept in any country or territory one or more branch registers of such category or categories of members as the exempted company may determine from time to time.

(2) A branch register is deemed to be part of the exempted company's register of members.

(3) Subject to subsection (6), a branch register shall be kept in the same manner in which a principal register is by this Act required or permitted to be kept.

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 49 of 226



(4) The exempted company shall cause to be kept at the place where the exempted company's principal register is kept a duplicate of any branch register duly entered up from time to time.

(5) If default is made in complying with subsection (4) within twenty-one days after —

(a) establishing a branch register; or

(b) making changes to the details recorded in a branch register,

the exempted company and every officer of the exempted company who is in default is liable to a penalty of five thousand dollars; and every director or manager of the company who knowingly and wilfully authorises or permits such default shall incur the like penalty.

(6) Subject to subsection (4) with respect to a duplicate of any branch register —

(a) the shares registered in a branch register shall be distinguished from those registered in the principal register; and

(b) no transaction with respect to any shares registered in a branch register shall, during the continuance of that registration, be registered in any other register.

(7) An exempted company may discontinue keeping any branch register, and thereupon all entries in that branch register shall be transferred to some other branch register kept by the exempted company or to the principal register.

(8) For the avoidance of doubt a listed share register maintained under section 40B(3) shall not constitute a branch register for the purposes of this section.

(9) In this section —

"**branch register**" means a branch register referred to in subsection (1); and

"**principal register**" means a company's register of members.

### Transfer and registration of shares in respect of a company with listed shares

**40B**.(1) Title to listed shares of a company may, if so authorised by such company's articles of association, or (in the absence of any applicable provisions in the company's articles of association) by a special resolution of such company, be evidenced and transferred in accordance with the laws applicable to and the rules and regulations of the relevant approved stock exchange that are or shall be applicable to such listed shares as referred to or specified in such articles of association or special resolution.

(2) For the purposes of subsection (1), the laws applicable to an approved stock exchange include, without limitation, the laws of the jurisdiction under which such approved stock exchange is established in so far as they would apply to an

entity established under such laws which has listed shares on such approved stock exchange.

(3) Any register of members maintained by a company in respect of its listed shares may be kept by recording the particulars required by section 40 in a form otherwise than legible if such recording otherwise complies with the laws applicable to and the rules and regulations of the relevant approved stock exchange referred to in subsection (1).

(4) To the extent the listed shares register is kept in a form otherwise than legible it must be capable of being reproduced in a legible form.

(5) A company which maintains a listed shares register must also maintain, in respect of any shares which are not listed shares, a separate register of members in accordance with section 40.

(6) References in any enactment or instrument to a company's register of members shall, unless the context otherwise requires, be construed in relation to a company which maintains any listed shares register as referring to each of such company's listed shares register and, if any, its non-listed shares register.

(7) For the purposes of this section —

"**approved stock exchange**" means a stock exchange listed in Schedule 4;

"**listed shares**" means shares which are traded or listed on an approved stock exchange;

"**listed shares register**" means the register of members required to be maintained by a company in respect of its listed shares pursuant to subsection (3); and

"**non-listed shares register**" means the register of members maintained by a company pursuant to subsection (5).

(8) For the purpose of this section —

(a) references to title to shares include any legal or equitable interest in shares; and

(b) references to a transfer of title include a transfer by way of security.

### Annual list of members and return of capital, shares, calls, etc.

**41**. (1) Every company, other than an exempted company that does not hold a licence to carry on business in the Islands to which section 174 refers, having a capital divided into shares shall make a list of all persons who, on the fourteenth day following the date on which the ordinary general meeting, or if there is more than one ordinary general meeting in each year, the first of such ordinary general meetings, is held, are members of the company; and such lists shall state the names and addresses of all the members therein mentioned, and the number of shares held by each of them, and shall contain a summary specifying the —

(a) amount of the capital of the company and the number of shares into which it is divided;

(b) number of shares taken from the commencement of the company up to the date of the summary;

(c) amount of calls made on each share;

(d) total amount of calls received:

(e) total amount of calls unpaid;

(f) total number of shares forfeited;

(g) names and addresses of the persons who have ceased to be members since the last list was made, and the number of shares held by each of them;

(h) names and addresses of directors and officers of the company and the position or office that they hold; and

(i) nature of the business,

and this list and summary shall be contained in a separate part of the register of the company and shall be completed within seven days after such fourteenth day as is mentioned in this section, and a copy shall be forwarded to the Registrar in January of each year after the year of its incorporation.

(2) Every company, other than an exempted company, shall, in January of each year after the year of its registration, pay to the Registrar the annual fee specified in Part 2 of Schedule 5.

(3) Each such annual fee shall be tendered with the list and summary required under subsection (1). A company which has failed to forward to the Registrar any copy required to be forwarded in any January shall be deemed not to have made any default in complying with this section relating to the time within which such copy is required to be forwarded if the company forwards the copy either —

(a) within such further period, if any, as the Registrar, acting in that person's discretion may, by notice, addressed to the company specify; or

(b) within the period of twelve months next following such month of January,

whichever is the shorter, together with the fee payable under subsection (2) and the penalty specified in section 42.

### Penalty on company not making return

**42**. Any company, not being an exempted company, which defaults in forwarding to the Registrar such lists of members or summary or the payment of any fee specified in section 41(1) and (2) shall incur a penalty of —

(a) 33.33% of the annual fee specified in section 41 if the documents are submitted or the fee and penalty are paid between the 1st April and the 30th June;

(b) 66.67% of the annual fee specified in section 41 if the documents are submitted or the fee and penalty are paid between the 1st July and the 30th September; and

(c) 100% of the annual fee specified in section 41 if the documents are submitted or the fee and penalty are paid between the 1st October and the 31st December,

and every director and manager of the company who knowingly and wilfully authorises or permits such default shall incur the like penalty.

### Certificate of shares or stock

**43**. A certificate —

(a) specifying the shares or stock held by a member of a company; and

(b) purportedly signed by a person (including by facsimile or other mechanically affixed signature) with the express or implied authority of that company,

is admissible in evidence as proof of the title of that member to those shares or that stock.

### Inspection of register

**44**. (1) The register of members, commencing from the date of the registration of the company, shall be kept at the registered office of the company or, in the case of an exempted company, at any other place within or outside the Islands except that, in the case of an exempted company that holds a licence to carry on business in the Islands under any applicable law, the register of members shall be kept at its registered office within the Islands.

(2) Except in the case of an exempted company that does not hold a licence to carry on business in the Islands under any applicable law and when closed as hereinafter provided the register of members shall, during business hours, subject to such reasonable restrictions as the company in general meeting may impose, so that no less than two hours in each day be appointed for inspection, be open to the inspection of any member *gratis* and to the inspection of any other person on payment of ten dollars or such less sum as the company may specify for each inspection; and every such member or other person may receive a copy of such register or any part thereof, or of such list or summary of members, on payment of one dollar for every page required to be copied.

(3) If such inspection or copy is refused, the company shall incur for each refusal a penalty of five hundred dollars; and every director and manager of the company who knowingly authorises or permits such refusal shall incur the like penalty; and in addition to the above penalty, a Judge sitting in chambers may, by order, compel an immediate inspection of the register.

(4) A company, including an exempted company, shall make available at the registered office, in electronic form or any other medium, such register, including any branch register in the case of an exempted company, as may be required of it upon service of an order or notice by the Tax Information Authority pursuant to the *Tax Information Authority Act (2021 Revision)*; and if the company fails to comply with the order or notice without reasonable excuse, the company shall incur a penalty of five hundred dollars and a further penalty of one hundred dollars for every day during which such non-compliance continues.

### Notice of increase of capital and of members to be given to Registrar

**45**. (1) Where a company has a capital divided into shares, whether such shares have or have not been converted into stock, notice of any increase in such capital beyond the registered capital, and where a company has not a capital divided into shares, notice of any increase in the number of members beyond the registered number shall be given to the Registrar, in the case of an increase of capital, within thirty days from the date of the passing of the resolution by which such increase has been authorised; and, in the case of an increase of members, within thirty days from the time at which such increase of members has been resolved on or has taken place; and the Registrar shall forthwith record the amount of such increase of capital or members.

(2) The fees payable on an increase of capital shall be as specified in Part 3 of Schedule 5.

(3) If such notice is not given within the period aforesaid the company in default shall incur a penalty of ten dollars for every day during which such neglect to give notice continues, and every director and officer of the company who knowingly and wilfully authorises or permits such default shall incur a like penalty.

### Remedy for improper entry or omission of entry in register

**46**. If the name of any person is, without sufficient cause, entered in or omitted from the register of members of any company, or if default is made or unnecessary delay takes place in entering on the register the fact of any person having ceased to be a member of the company, the person or member aggrieved or any member of the company or the company itself may, by motion to the Court, apply for an order that the register be rectified; and the Court may either refuse such application with or without costs to be paid by the applicant or it may, if satisfied of the justice of the case, make an order for the rectification of the register, and may direct the company to pay all the costs of such motion, application or petition, and any damages the party aggrieved may have sustained. The Court may, in any proceeding under this section, decide any question relating to the title of any person who is a party to such proceeding to have that person's name entered in or omitted from the register, whether such question arises

between two or more members or alleged members, or between any members or alleged members and the company, and generally, the Court may, in any such proceeding, decide any question that it may be necessary or expedient to decide for the rectification of the register:

Provided that the Court may direct an issue to be tried, on which any question of law may be raised.

### Notice to Registrar of rectification of register

**47**. Whenever any order has been made rectifying the register, in the case of a company required by this Act to send a list of its members to the Registrar, the Court shall, by its order, direct that due notice of such rectification be given to the Registrar.

### Register to be evidence

**48**. The register of members shall be *prima facie* evidence of any matters by this Act directed or authorised to be inserted therein.

## Liability of Members

### Liability of present and past members of company

**49**. In the event of a company being wound up every present and past member of such company shall be liable to contribute to the assets of the company to an amount sufficient for payment of the debts and liabilities of the company, and the costs, charges and expenses of the winding up and for the payment of such sums as may be required for the adjustment of the rights of the contributories amongst themselves:

Provided that —

(a) a past member shall not be liable to contribute to the assets of the company if that person has ceased to be a member for a period of one year or upwards prior to the commencement of the winding up;

(b) a past member shall not be liable to contribute in respect of any debt or liability of the company contracted after the time at which that person ceased to be a member;

(c) a past member shall not be liable to contribute to the assets of the company unless it appears to the Court that the existing members are unable to satisfy the contributions required to be made by them under this Law;

(d) in case of a company limited by shares, no contribution shall be required from any member exceeding the amount, if any, unpaid on the shares in respect of which that person is liable as a present or past member except where such member or past member holds or held shares of a class which are expressly stated in the memorandum of association to carry unlimited liability, as provided in section 8(2);

(e) in the case of a company limited by guarantee, no contribution shall be required from any member exceeding the amount of the undertaking entered into on that person's behalf by the memorandum of association, except where the amount of the undertaking of such member is unlimited, as provided in section 9(2);

(f) nothing in this Act shall invalidate any provisions contained in any policy of insurance or other contract whereby the liability of individual members upon any such policy or contract is restricted, or whereby the funds of the company are alone made liable in respect of such policy or contract; and

(g) no sum due to any member of a company in that person's character of a member by way of dividends, profits or otherwise, shall be deemed to be a debt of the company, payable to such member in a case of competition between that person and any other creditor not being a member of the company; but any such sum may be taken into account for the purposes of the final adjustment of the rights of the contributions amongst themselves.

## PART IV - Management and Administration of Companies and Associations - Provisions for Protection of Creditors

### Registered office of company

**50**. (1) Every company shall have a registered office in the Islands to which all communications and notices may be addressed and any company which carries on business without having such an office, shall incur a penalty of ten dollars for every day during which business is so carried on.

(2) In the case of an exempted company or a non-resident company, the address of the registered office referred to in subsection (1) shall be the same as the address of the person licensed by the Authority who provides company management services for the exempted company or non-resident company except where the registered office was located at a different address in the Islands immediately prior to the 10th January, 2013, the date of commencement of this provision by the *Companies (Amendment) Act, 2012 [Law 6 of 2012]*, and remains at such address on or after the date of commencement of this provision.

### Notice of situation of registered office

**51**. (1) Notice of the situation of such registered office shall be given to the Registrar and recorded by that person and shall be published by Public Notice. Until such notice is given and published, the company shall not be deemed to have complied with this Act with respect to having a registered office.

(2) Any member of the public shall be entitled to be informed by the Registrar, on request, of the location of the registered office of any company or exempted company registered under this Law.

### Publication of name by a limited company

**52**. Every company, whether limited by shares or by guarantee, shall paint or affix, and shall keep painted or affixed, its name on the outside of every office or place in which the business of the company is carried on, or in any corridor, passage or hallway adjacent or proximate thereto, in a conspicuous position, in letters easily legible, and shall have its name in legible characters on any seal it uses, and shall have its name set out in legible characters in all notices, advertisements and other official publications of such company, and in all bills of exchange, promissory notes, endorsements, cheques and orders for money or goods purporting to be signed by or on behalf of such company, and in all bills of parcels, invoices, receipts and letters of credit of the company and its name may be followed with or preceded by, at the discretion of the company, its dual foreign name or its translated name, if any, or both.

### Penalties on non-publication of name

**53**. Any company which does not paint or affix, and keep painted or affixed, its name in manner directed by this Act is liable to a penalty of ten dollars for not so painting or affixing its name, and for every day during which such name is not so kept painted or affixed, and every director and manager of the company who knowingly and wilfully authorises or permits such default shall be liable to the like penalty; and any director, manager or officer of such company, or any person on its behalf, who uses or authorises the use of any seal purporting to be a seal of the company, whereon its name is not so engraven as aforesaid, or issues or authorises the issue of any notice, advertisement or other official publication of such company, or signs or authorises to be signed on behalf of such company any bills of exchange, promissory note, endorsement, cheque or order for money or goods, or issues or authorises to be issued any bill of parcels, invoice, receipt or letter of credit of the company, wherein its name is not set out in the manner aforesaid, is liable to a penalty of one hundred dollars, and shall further be personally liable to the holder of any such bill of exchange, promissory note, cheque, or order for money or goods for the amount thereof, unless the same is duly paid by the company.

### Register of mortgages

**54**. (1) Every limited company shall keep at its registered office in writing on one or more sheets, whether bound or unbound, a register of all mortgages and charges specifically affecting property of the company, and shall enter in such register in respect of each mortgage or charge a short description of the property mortgaged or charged, the amount of charge created and the names of the mortgagees or persons entitled to such charge.

(2) If any property of the company is mortgaged or charged without such entry as aforesaid being made, every director, manager or other officer of the company who knowingly and wilfully authorises or permits the omission of such entry, shall incur a penalty of one hundred dollars.

(3) The register of mortgages required by subsection (1) shall be open to inspection by any creditor or member of the company at all reasonable times; and if such inspection is refused, any officer of the company refusing the same, and every director and manager of the company authorising or knowingly and wilfully permitting such refusal shall incur a penalty of four dollars for every day during which such refusal continues; and in addition to the above penalty, the Judge sitting in chambers may, by order, compel an immediate inspection of the register.

### Filing deadline for updated list of directors etc.

**55**. (1) Every company shall keep at its registered office a register containing the names and addresses of its directors, including alternate directors, and officers, and shall —

(a) send a copy of such register to the Registrar within sixty days of the first appointment of any director or officer of the company; and

(b) notify the Registrar of any change in such directors or officers including a change of the name of such directors or officers, within thirty days of any such change.

(2) For the purposes of subsection (1) a person shall be registered by a company as an alternate director if that person is —

(a) appointed by a director of the company to exercise all the powers and perform all the responsibilities of that director;

(b) entitled to receive notice of meetings of the board of directors of the company;

(c) entitled to sign or execute written resolutions of the board of directors of the company; and

(d) considered in all respects to be a director of the company.

(3) Subsection (2) does not apply to a person —

(a) appointed by a director to exercise limited powers or to fulfil limited responsibilities;

(b) appointed for a specified period that is less than ninety days;

(c) appointed to attend a particular meeting or series of meetings or adjournments;

(d) appointed to consider and, if approved, sign a particular written resolution or series of written resolutions of the board of directors of the company;

(e) who is a director of the company; or

(f) who at the time of that person's appointment, is the alternate of another director of the company.

### Registrar to make list of directors available for inspection

**55A.** (1) The Registrar shall maintain a list of the names of the current directors, and where applicable, the current alternate directors of a company.

(2) The Registrar shall make available, the list of the names of the current directors of a company and where applicable, the current alternate directors of a company under subsection (1), for inspection by any person, on payment of the fee specified in Part 6A of Schedule 5, for each inspection, and subject to such conditions as the Registrar may impose.

(3) For the purposes of subsection (1), an alternate director is a person who is registered by a company as an alternate director under section 55.

### Penalty for failing to notify of changes to the register of directors and officers

**56.** (1) A company that breaches the provisions of section 55 shall incur a penalty of five hundred dollars.

(2) Notwithstanding subsection (1), if a company is in breach of section 55(1)(b) —

(a) in respect of more than one change in directors or officers and —

(i) the changes occurred within a thirty day period; and

(ii) the Registrar is notified of the changes on the same day;

the applicable penalty for the breach shall be that specified in subsection (1), irrespective of the number of changes notified to the Registrar; and

(b) in respect of directors or officers of five or more companies, the applicable aggregate penalty in respect of the companies to which the breach relates shall not exceed the sum of two thousand five hundred dollars, which shall be equally apportioned between and paid by, such companies.

(3) In addition to the penalty under subsection (1), where the Registrar is satisfied that a breach of section 55 has been knowingly and wilfully authorised or permitted —

(a) every company to which the breach relates shall incur a penalty of one thousand dollars; and

(b) every director and officer of the company to which the breach relates shall incur a penalty of one thousand dollars and a further penalty of one hundred dollars for every day during which the default continues.

### Meetings

**57.** Subject to the memorandum and articles of association of the company, a meeting of —

(a) members;

(b) a class of members;

(c) the board of directors; or

(d) any committee of the directors,

may be validly convened and business conducted, as provided by the articles of association, with only one such member or director being present in person or otherwise as may be provided by the articles of association.

## Provisions for Protection of Members

### General meetings

**58**. A general meeting of every company, other than an exempted company, shall be held at least once in every year.

### Accounts and audits

**59**. (1) Every company shall cause to be kept proper books of account including, where applicable, material underlying documentation including contracts and invoices with respect to —

(a) all sums of money received and expended by the company and the matters in respect of which the receipt and expenditure takes place;

(b) all sales and purchases of goods by the company; and

(c) the assets and liabilities of the company.

(2) For the purposes of subsection (1), proper books of account shall not be deemed to be kept with respect to the matters aforesaid if there are not kept such books as are necessary to give a true and fair view of the state of the company's affairs and to explain its transactions.

(2A) A company which keeps its books of account at any place other than at its registered office or at any other place within the Islands shall, upon service of an order or notice by the Tax Information Authority pursuant to the *Tax Information Authority Act (2021 Revision)*, make available, in electronic form or any other medium, at its registered office copies of its books of account, or any part or parts thereof, as are specified in such order or notice; and if the company fails to comply with the order or notice without reasonable excuse, the company shall incur a penalty of five hundred dollars and a further penalty of one hundred dollars for every day during which such non-compliance continues.

(2B) A company which keeps its books of account outside of the Islands shall, in the form and manner prescribed, provide to its registered office, annually or with such other frequency and within such time as may be prescribed, information regarding its books of account; and, if a company fails to comply with this subsection without reasonable excuse, the company shall incur a penalty of five hundred dollars and a further penalty of one hundred dollars for every day during which such non-compliance continues.

(2C) Subsection (2B) shall not apply to a company that complies with a requirement under any regulatory law to file information regarding its accounts to the Authority.

(3) A company shall cause all books of account required to be kept under subsection (1) to be retained for a minimum period of five years from the date on which they are prepared.

(4) A company that knowingly and wilfully contravenes subsection (1) or (3) shall be subject to a penalty of five thousand dollars.

### Definition of special resolution

**60**. (1) A resolution is a special resolution when —

(a) it has been passed by a majority of at least two-thirds of such members as, being entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting of which notice specifying the intention to propose the resolution as a special resolution has been duly given, except that a company may in its articles of association specify that the required majority shall be a number greater than two-thirds, and may additionally so provide that any such majority (being not less than two-thirds) may differ as between matters required to be approved by a special resolution; or

(b) if so authorised by its articles of association, it has been approved in writing by all of the members entitled to vote at a general meeting of the company in one or more instruments each signed by one or more of the members aforesaid, and the effective date of the special resolution so adopted shall be the date on which the instrument or the last of such instruments, if more than one, is executed.

(2) At any meeting mentioned in this section, unless a poll is demanded by at least one member, a declaration of the chairperson that the resolution has been carried shall be conclusive evidence of the fact, without proof of the number or proportion of votes recorded in favour of or against the same.

(3) Notice of any meeting shall, for the purposes of this section, be deemed to be duly given and the meeting to be duly held, whenever such notice is given and the meeting held in manner prescribed by the regulations of the company.

(4) In computing the majority under this section when a poll is demanded, regard shall be had to the number of votes to which each member is entitled by the regulations of the company.

### Provisions where no regulations as to meetings

**61**. In default of any regulations as to voting, every member shall have one vote, and in default of any regulations as to summoning general meetings, a meeting shall be held to be duly summoned of which five days' notice has been served on every member; and in default of any regulations as to the persons to summon meetings, three members shall be competent to summon the same; and in default of any regulations as to who is to be chairperson of such meeting, it shall be competent for any person elected by the members present to preside.

### Recording of special resolutions

**62**. A copy of any special resolution passed by any company under this Act shall be forwarded within fifteen days to the Registrar and shall be recorded by that person.

### Copies of special resolutions

**63**. (1) Where articles of association have been registered, a copy of every special resolution for the time being in force shall be annexed to or embodied in, every copy of the articles of association that may be issued after the passing of such resolution.

(2) Where no articles of association have been registered, a copy of any special resolution shall be forwarded in print to any member requesting the same, on payment of ten cents or such less sum as the company may direct.

(3) Any company which fails to comply with this section shall incur a penalty of two dollars for each copy in respect of which such default is made; and every director and manager of the company who shall knowingly and wilfully authorise or permit such default shall incur the like penalty.

### Appointment of inspectors to report on affairs of companies

**64**. The Court may appoint one or more than one competent inspectors to examine into the affairs of any company and to report thereon in such manner as the Court may direct —

(a) in case of a banking company having a capital divided into shares, upon the application of members holding not less than one-third of the shares of the company for the time being issued;

(b) in the case of any other company having a capital divided into shares, upon application of members holding not less than one-fifth of the shares of the company for the time being issued; and

(c) in the case of a company not having a capital divided into shares, upon the application of members being in number not less than one-fifth of the total number of persons for the time being entered on the register of the company as members.

### Powers of inspectors

**65**. It shall be the duty of all officers and agents of the company to produce for examination by an inspector all books and documents in their custody or power; any inspector may examine upon oath the officers and agents of the company in relation to its business, and may administer such oath accordingly; and any officer or agent who refuses or neglects to produce any book or document hereby directed to be produced, or to answer any question relating to the affairs of the company, shall incur a penalty not exceeding forty dollars in respect of each such offence.

### Report of inspectors

**66**. (1) Upon the conclusion of the examination, the inspectors shall report their opinions to the Court.

(2) Such report shall be filed by the Clerk of the Court, but shall not, unless the Court so directs, be open to public inspection.

(3) All expenses of and incidental to any such examination and report shall be defrayed by the members upon whose application the inspectors were appointed, unless the Court shall direct the same to be paid out of the assets of the company, which it is hereby authorised to do.

### Inspection by resolution of the company

**67**. Any company as aforesaid may, by special resolution, appoint inspectors for the purpose of examining into the affairs of such company; and inspectors so appointed shall have the same powers and perform the same duties as inspectors appointed by the Court, except that instead of making their report to the Court, they shall make the same in such manner and to such persons as the company by resolution of its members directs, and the officers and agents of the company shall incur the same penalties in case of any refusal or neglect to produce any book or document hereby required to be produced to such inspectors or answer any question, as they would have incurred if such inspectors had been appointed by the Court.

### Inspectors' report admissible as evidence

**68**. The report of any inspectors appointed under this Law, or any copy thereof certified and signed by the inspectors, shall be admissible in any legal proceeding as evidence of the opinion of the inspectors in relation to any matter contained in such report.

## Notices

### Returns, etc., to Registrar

**69**. Any list, return, notice or information required by this Act to be made, given or supplied to the Registrar shall be authenticated by the signature of the secretary or manager or one of the directors of the company.

### Service of notices on company

**70**. Any writ, notice, order or other document required to be served upon the company may be served by leaving the same, or sending it through the post in a prepaid letter, addressed to the company at its registered office.

### Postal service

**71**. Any document to be served by post on the company shall be posted in such time as to admit of its being delivered in the due course of delivery within the period, if any, prescribed for the service thereof; and in proving service of such document, it shall be sufficient to prove that such document was properly directed, and that it was put as a prepaid letter into the post office.

### Authentication of summons, notice, etc.

**72**. Any summons, notice, order or proceeding requiring authentication by the company may be signed by a director, secretary or other authorised officer of the company, and may be in writing or print or partly in writing and partly in print.

### Minutes of proceedings

**73**. (1) Every company shall cause minutes of all resolutions and proceedings of its members, whether at general meetings or otherwise, and of its directors or managers (where there are directors or managers), whether at meetings or otherwise, to be duly kept in writing.

(2) Any minute of a general meeting of the company or a meeting of the directors or managers, if purporting to be signed by the chairperson of the meeting, or by the chairperson of the next succeeding meeting, shall be received as evidence of the proceedings at that meeting; and until the contrary is proved, every general meeting of the company or meeting of the directors or managers in respect of the proceedings of which minutes have been so made, shall be deemed to have been duly held and convened and all resolutions passed thereat, or proceedings had, to have been duly passed and had, and all appointments of directors, managers or liquidators shall be deemed to be valid, and all acts done by such directors, managers and liquidators shall be valid, notwithstanding any defect that may afterwards be discovered in their appointments or qualifications.

### Security for costs in actions brought by limited companies

**74**. Where a company is plaintiff in any action, suit or other legal proceeding, any Judge having jurisdiction in the matter, if that person is satisfied that there is reason to believe that if the defendant is successful in that person's defence the assets of the company will be insufficient to pay that person's costs, may require sufficient security to be given for such costs, and may stay all proceedings until such security is given.

### Declaration in action against members

**75**. In any action or suit brought by the company against any member to recover any call or other monies due from such member in that person's character of member, it shall not be necessary to set forth the special matter, but it shall be sufficient to allege that the defendant is a member of the company and is indebted to the company in respect of a call made or other monies due whereby a right of action has accrued to the company.

## Arbitration

### Power of companies to refer matters to arbitration

**76**. Any company may, from time to time, by writing, agree to refer and may refer to arbitration any existing or future difference, question or other matter whatsoever in dispute between itself and any other company or person; and the companies, parties to the arbitration, may delegate to the person or persons to whom the reference is made power to settle any terms or to determine any matter capable of being lawfully settled or determined by the companies themselves or by the directors or other managing body of such companies.

## General Penalty

### General penalty; application of fines

**77**. (1) Where a duty is imposed by this Act on any company, director or officer of any company and no special penalty or fine has been provided for the breach of such duty, then any such company director or officer responsible for such breach commits an offence and is liable on conviction to a fine of five thousand dollars.

(2) All fines shall be recovered in a summary way and shall be applied in aid of the general revenue of the Islands.

## Unlimited Liability of Directors and Managers

### Unlimited liability of directors and managers

**78**. The liability of the directors, managers or the managing director of a company may, if so provided by the memorandum of association, be unlimited.

### Modification of section 49

**79**. In the event of a company being wound up, section 49 as respects the contribution to be required from any director or manager whose liability is unlimited by virtue of section 78 shall have effect subject to the following modifications —

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 65 of 226



(a) subject as hereinafter contained, any such director, managing director or manager whether past or present shall, in addition to that person's liability, if any, to contribute as an ordinary member, be liable to contribute as if that person were at the date of the commencement of such winding up a member of an unlimited company;

(b) no contribution required from any past director or manager who has ceased to hold such office for a period of one year or upwards prior to the commencement of such winding up, shall exceed the amount, if any, which that person is liable to contribute as an ordinary member of the company;

(c) no contribution required from any past director or manager in respect of any debt or liability of the company contracted after the time at which that person ceased to hold such office shall exceed the amount, if any, which that person is liable to contribute as an ordinary member of the company; and

(d) subject to the regulations of the company, no contribution required from any director or manager shall exceed the amount, if any, which that person is liable to contribute as an ordinary member, unless the Court thinks it necessary to require such contribution in order to satisfy the debts and liabilities of the company and the costs, charges and expenses of the winding up.

## Association not for Profit

### Circumstances in which a company may be registered without "limited" in its name

**80**. (1) A company registered under this Act or an association applying to be registered under this Law, may in accordance with section 80A, apply to the Registrar to be designated as a company to which this section applies if the company or association —

(a) was formed or is to be formed primarily for the promotion of charitable, philanthropic, religious, cultural, educational, social or fraternal purposes or objects, including, for the avoidance of doubt, a group of persons sharing a common profession or interest which, to the satisfaction of the Registrar, qualifies the company or association for registration under this section; and

(b) has applied or intends to apply the profits, if any, or other income of the company or association primarily for the promotion of charitable, philanthropic, religious, cultural, educational, social or fraternal purposes or objects, including, for the avoidance of doubt, a group of persons sharing a common profession or interest which, to the satisfaction of the

Registrar, qualifies the company or association for registration under this section.

(2) The Registrar shall only approve an application for designation under this section if the memorandum and articles of association of a company registered under this Act or an association being registered under this Act and applying for designation, contain language to the effect that —

(a) the assets, profits, if any, and other income of the company or association applying for designation, shall be applied exclusively in the furtherance of the objects of the company or association; and

(b) no portion of the assets and income of the company or association shall be distributed as profit or dividend directly or indirectly to the controllers, shareholders, owners or members of the company or association, unless such distribution is intended for the legitimate purpose of compensating a person for services to further the objects of the company or association or to pay the liabilities incurred on behalf of the company or association.

(3) Pursuant to an application made under subsection (1), the Registrar may direct that a company registered under this Act or that an association being registered under this Law, be registered with limited liability without the addition of the word “Limited” or the abbreviation “Ltd.” to the company’s name and that upon registration shall enjoy all the privileges and be subject to all the obligations by this Act imposed on companies, except the obligations under this Act requiring a company —

(a) to use the word “Limited” or the abbreviation “Ltd.” as any part of its name;

(b) to send a list of its members to the Registrar;

(c) to comply with the provisions of sections 51 or 55 or pay any fees pursuant to section 199; or

(d) to pay the fees prescribed by sections 26, 41 and 169.

(4) The Registrar may impose any conditions that the Registrar thinks fit to impose on a company designated under this section and shall cause the conditions imposed to be inserted or endorsed on the memorandum or articles of association of the company or association being registered.

(5) Where a company designated under this section is to be dissolved, the person who owns, controls or directs that company shall ensure that any assets of the company remaining after the satisfaction of all debts and liabilities of the company shall be transferred to another company registered under this section or a non-profit organisation registered under the *Non-Profit Organisations Act (2020 Revision)* which has similar objects.

(6) For the purpose of this section "**non-profit organisation**" has the same meaning as that assigned to these words in the *Non-Profit Organisations Act (2020 Revision)*.

### Application for designation under section 80

**80A**.(1) An application for designation as a company under section 80 may be made to the Registrar by a company or an association to which section 80 refers and shall be —

(a) made in the form specified by the Registrar; and

(b) accompanied by the non-refundable application fee prescribed in Part 3A.

(2) A company making an application under subsection (1) shall, at the time of making the application, file with the Registrar a list of the persons who own, control or direct the company.

### Obligations for companies designated under section 80

**80B**. A company designated pursuant to section 80 that is not registered pursuant to the *Non-Profit Organisations Act (2020 Revision)* shall —

(a) file with the Registrar, in the form specified by the Registrar, an annual return confirming the objects and activities of the company;

(b) in the manner specified by the Registrar, notify the Registrar of any change in —

(i) the objects or activities of the company; or

(ii) the address of the registered office or the location of the company,

within thirty days of the date of the change;

(c) maintain the proper books of account for a minimum period of five years;

(d) comply with any conditions imposed by the Registrar upon registration;

(e) establish and maintain internal controls and systems appropriate for the company to identify conduct which may involve the financing of terrorism;

(f) notify the Registrar, in the manner specified by the Registrar, of any change in the person who owns, controls or directs the company, within thirty days of the date of the change; and

(g) pay the fee prescribed in Part 3A for any changes for which the Registrar is required to be notified pursuant to this section.

### Examination by the Registrar

**80C**. To facilitate the monitoring of compliance with section 80B(b) and (c) —

(a) the Registrar may examine all books of account and documents, for a company designated under section 80; and

(b) it shall be the duty of an officer of a company designated under section 80 to produce for examination by the Registrar, all books of account and documents, for the company for which the officer is responsible, that are in the officer's custody or power.

### Exempt from Part XVIIA

**80D.** A company designated under section 80 is exempt from the obligations under Part XVIIA of this Law.

### Penalty for breach of section 80B

**80E.** (1) The Registrar —

(a) may impose a penalty of five hundred dollars on a company designated under section 80, if the company breaches the provisions of section 80B; and

(b) shall within ten days of the date of the imposition of the penalty, inform the company upon which the penalty has been imposed, of the reasons for the imposition of the penalty.

(2) A company, upon which a penalty is imposed pursuant to subsection (1), which disputes the imposition of the penalty may appeal to the Court for review of the Registrar's decision to impose the penalty.

(3) A dispute in relation to the penalty imposed pursuant to subsection (1) shall not be in respect of the amount of the penalty imposed and is limited to a dispute in relation to the grounds upon which the penalty is imposed.

(4) Notwithstanding subsection (1), if a company is in breach of section 80B —

(a) in respect of more than one change in the person who owns, controls or directs a company and —

(i) the changes occurred within a sixty day period; and

(ii) the Registrar is notified of the changes on the same day,

the applicable penalty for the breach shall be that specified in subsection (1), irrespective of the number of changes notified to the Registrar; and

(b) in respect of a person who owns, controls or directs five or more companies, the applicable aggregate penalty in respect of the companies to which the breach relates shall not exceed the sum of two thousand five hundred dollars, which shall be equally apportioned between and paid by such companies.

(5) In addition to the penalty under subsection (1), where the Registrar is satisfied that a breach of section 80B has been knowingly and wilfully authorised or permitted —

(a) every company to which the breach relates shall incur a penalty of one thousand dollars; and

(b) every person who owns, controls or directs the company to which the breach relates shall incur a penalty of one thousand dollars and a further penalty of one hundred dollars for every day during which the default continues.

## Contracts

### Contracts and other instruments

**81**. (1) Contracts, deeds, instruments under seal or other instruments on behalf of any company may be made as follows —

(a) a contract or other instrument which, if made between individuals, would by law be required to be in writing, and to be made by deed or under seal, and a deed or instrument under seal may be made by instrument —

(i) sealed with any seal of the company; or

(ii) which is executed on behalf of the company by any person acting under the express or implied authority of the company and which is either expressed to be executed as, or otherwise makes clear on its face it is intended to be, a deed or instrument under seal;

(b) any contract or other instrument which, if made between private persons, would be by law required to be in writing and signed by the parties to be charged therewith may be made on behalf of the company in writing, signed by any person acting under the express or implied authority of the company; and

(c) any contract which, if made between private persons, would by law be valid although made by parol only and not reduced into writing, may be made by parol on behalf of the company by any person acting under the express or implied authority of the company.

(2) Where a contract or other transaction purports to be made by a company or by a person on its behalf at a time when the company has not been registered, then subject to any agreement to the contrary, the contract or other transaction has effect as one entered into by the person purporting to act on behalf of the company and, subject to subsection (3), that person is personally liable on the contract or other transaction.

(3) A contract or other transaction purported to be entered into by a company prior to its registration or by a person on behalf of the company prior to its registration may be ratified by the company after its registration and thereupon the company shall become bound by and entitled to the benefit thereof from the date of registration, and the person so entering into such contract or other transaction

shall be deemed to have been duly authorised to act on behalf of the company and shall cease to be personally liable on the contract or other transaction.

(4) Any contract, deed or other instrument made according to this section may be varied or discharged in the same manner as it is authorised by this section to be made.

(5) All contracts, deeds or other instruments made according to this section shall be effectual in law and shall be binding upon the company and its successors and all other parties thereto, their heirs, executors or administrators, as the case may be.

(6) A contract or other instrument to be governed by the laws of the Islands which is executed by an overseas company is, and is to be treated as, a deed or instrument under seal if it is —

(a) executed in conformity with subsection (1)(a); and

(b) executed in conformity with the requirements imposed by —

(i) the laws of the jurisdiction in which the overseas company was formed or incorporated; and

(ii) its memorandum or articles of association or other constitutional documents (howsoever called).

(7) A contract or other instrument executed in accordance with subsection (6) meets any requirement of any law of the Islands that the contract or instrument is, and is to be treated as, a deed or instrument executed under seal.

(8) A contract, deed or instrument is executed validly as a contract, deed or instrument under seal where it is executed in any manner contemplated by the parties thereto, including, without limitation —

(a) where the complete contract, deed or instrument is executed; or

(b) where any signature or execution page to the contract, deed or instrument is executed (whether or not the contract, deed or instrument is at such time in final form) which is attached by, or on behalf of, the relevant party to, or otherwise with the relevant party's express or implied authority to, the contract, deed or instrument,

provided always that the contract, deed or instrument is executed in conformity with subsection (1)(a) or (b), or subsection (6), as the case may be.

(9) Subsections (1), (4), (5), (6), (7) and (8) shall apply to contracts, deeds, instruments under seal or other instruments regardless of whether they were made before, on or after 27th April, 2011, the date of commencement of this subsection by the *Companies (Amendment) Act, 2011 [Law 16 of 2011]*, and no contract, deed, instrument under seal or other instrument made before the commencement of this subsection shall be invalid by reason only of any provision of subsections (1), (4), (5), (6), (7) and (8).

### Bills of exchange and promissory notes

**82**. A bill of exchange or promissory note shall be deemed to have been made, accepted or endorsed on behalf of a company if made, accepted or endorsed in the name of, or by or on behalf or on account of, the company by any person acting under its authority.

### Execution of deeds, etc., by attorney

**83**. (1) A company may appoint and empower a person either generally or in respect of a specified matter to execute deeds or instruments under seal on its behalf.

(2) Any appointment under subsection (1) need not be made by deed or instrument under seal, but any person so appointed otherwise than by deed or instrument under seal shall not constitute the donee of a power under the *Powers of Attorney Act (1996 Revision)* (but without prejudice to the authority otherwise conferred upon them by the company).

(3) A deed or instrument under seal signed by a person on behalf of a company pursuant to the authority conferred pursuant to subsection (1) shall bind the company and have effect as if it were executed as such by the company.

### Power of company to have official seal for use abroad

**84**. (1) A company may maintain a common seal, which shall bear the name of the company in legible characters, which may, at the discretion of the company, be followed with or preceded by its dual foreign name or its translated name, if any, or both at such place as the company may, from time to time, determine and in default of any such determination, at its registered office, and may, if so authorised by its articles of association, maintain a duplicate seal or seals, each of which shall be a facsimile of its common seal at such place or places throughout the world as it may authorise and any such duplicate seal may, but shall not be obliged to, bear on its face the name of any country, territory, district, or place where it is to be used.

(2) A deed or instrument under seal to which any such duplicate seal is duly affixed shall bind the company as if it had been sealed with the common seal of the company.

(3) A company having any such duplicate seal may authorise any person appointed for the purpose to affix the duplicate seal to any deed or other document to which the company is party.

(4) The authority of any such agent shall, as between the company and any person dealing with the agent, continue during the period, if any, specified in the instrument conferring the authority, or if no period is so specified, then until notice of the revocation or determination of the authority of the agent has been given to such person.

(5) The person affixing any such duplicate seal shall, by writing under that person's hand, certify on the deed or other instrument to which the seal is affixed the date on which it is affixed.

### Authentication of documents

**85**. A document or proceeding requiring authentication by a company may be signed by a director, secretary or other authorised officer of the company.

## Arrangements and Reconstructions

### Power to compromise with creditors and members

**86**. (1) Where a compromise or arrangement is proposed between a company and its creditors or any class of them, or between the company and its members or any class of them, the Court may, on the application of the company or of any creditor or member of the company, or of a restructuring officer appointed in respect of the company, or where a company is being wound up, of the liquidator, order a meeting of the creditors or class of creditors, or of the members of the company or class of members, as the case may be, to be summoned in such manner as the Court directs.

(2) If a majority in number representing seventy-five per cent in value of the creditors or class of creditors, as the case may be, present and voting either in person or by proxy at the meeting, agree to any compromise or arrangement, the compromise or arrangement shall, if sanctioned by the Court, be binding on all the creditors or the class of creditors, as the case may be, and also on the company or, where a company is in the course of being wound up, on the liquidator and contributories of the company.

(2A) If seventy-five per cent in value of the members or class of members, as the case may be, present and voting either in person or by proxy at the meeting, agree to any compromise or arrangement, the compromise or arrangement shall, if sanctioned by the Court, be binding on all the members or class of members, as the case may be, and also on the company or, where a company is in the course of being wound up, on the liquidator and contributories of the company.

(3) An order made under subsection (2) or (2A) shall have no effect until a copy of the order has been delivered to the Registrar for registration, and a copy of every such order shall be annexed to every copy of the memorandum of association of the company issued after the order has been made, or, in the case of a company not having a memorandum, of every copy so issued of the instrument constituting or defining the constitution of the company.

(4) If a company makes default in complying with subsection (3), the company and every officer of the company who is in default shall be liable to a fine of two dollars for each copy in respect of which default is made.

(5) In this section the expression "**company**" means any company liable to be wound up under this Act and the expression "**arrangement**" includes a reorganisation of the share capital of the company by the consolidation of shares of different classes or by the division of shares into shares of different classes or by both those methods.

### Provisions for facilitating reconstruction and amalgamation of companies

**87**. (1) Where an application is made to the Court under section 86 for the sanctioning of a compromise or arrangement proposed between a company and any such persons as are specified in that section, and it is shown to the Court that the compromise or arrangement has been proposed for the purpose of or in connection with a scheme for the reconstruction of any company or companies or the amalgamation of any two or more companies, and that under the scheme the whole or any part of the undertaking or the property of any company concerned in the scheme (in this section referred to as "a transferor company") is to be transferred to another company (in this section referred to as "the transferee company") the Court, may either by the order sanctioning the compromise or arrangement or by any subsequent order make provision for —

(a) the transfer to the transferee company of the whole or any part of the undertaking and of the property or liabilities of any transferor company;

(b) the allotting or appropriation by the transferee company of any shares, debentures, policies, or other like interests in that company which under the compromise or arrangement are to be allotted or appropriated by that company to or for any person;

(c) the continuation by or against the transferee company of any legal proceedings pending by or against any transferor company;

(d) the dissolution, without winding up, of any transferor company;

(e) the provisions to be made for any person who within such time and in such manner as the Court directs dissents from the compromise or arrangement; and

(f) such incidental, consequential and supplemental matters as are necessary to secure that the reconstruction or amalgamation is fully and effectively carried out.

(2) Where an order under this section provides for the transfer of property or liabilities, that property shall, by virtue of the order, be transferred to and vest in, and those liabilities shall, by virtue of the order, be transferred to and become the liabilities of, the transferee company, and any such property shall, if the order so directs, be freed from any charge which is, by virtue of the compromise or arrangement, to cease to have effect

(3) Where an order is made under this section, every company in relation to which the order is made shall cause a copy thereof to be delivered to the Registrar for

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 74 of 226



registration within seven days after the making of the order, and if default is made in complying with this subsection, the company and every officer of the company who is in default shall be liable to a default fine.

(4) In this section —

"**property**" includes property, rights and powers of every description;

"**liabilities**" includes duties; and

"**transferee company**" means any company or body corporate established in the Islands or in any other jurisdiction.

### Power to acquire shares of dissentient shareholders

**88**. (1) Where a scheme or contract involving the transfer of shares or any class of shares in a company (in this section referred to as "the transferor company") to another company, whether a company within the meaning of this Act or not (in this section referred to as "the transferee company") has, within four months after the making of the offer in that behalf by the transferee company, been approved by the holders of not less than ninety per cent in value of the shares affected, the transferee company may, at any time within two months after the expiration of the said four months, give notice in the prescribed manner to any dissenting shareholder that it desires to acquire that person's shares, and where such notice is given the transferee company shall, unless on an application made by the dissenting shareholder within one month from the date on which the notice was given, the Court thinks fit to order otherwise, be entitled and bound to acquire those shares on the terms on which under the scheme or contract the shares of the approving shareholders are to be transferred to the transferee company.

(2) Where a notice has been given by the transferee company under this section and the Court has not, on an application made by the dissenting shareholder, ordered to the contrary, the transferee company shall, on the expiration of one month from the date on which the notice has been given or, if an application to the Court by the dissenting shareholder is then pending, after that application has been disposed of, transmit a copy of the notice to the transferor company and pay or transfer to the transferor company the amount or other consideration representing the price payable by the transferee company for the shares which by virtue of this section that company is entitled to acquire, and the transferor company shall thereupon register the transferee company as the holder of those shares.

(3) Any sums received by the transferor company under this section shall be paid into a separate bank account, and any such sums and any other consideration so received shall be held by that company on trust for the several persons entitled to the shares in respect of which the said sum or other consideration were respectively received.

(4) In this section —

"**dissenting shareholder**" includes a shareholder who has not assented to the scheme or contract and any shareholder who has failed or refused to transfer that person's shares to the transferee company, in accordance with the scheme or contract.

# PART V - Company Restructuring and Winding up of Companies and Associations

## Preliminary

### Definitions

**89**. In this Part —

"**company**" includes a foreign company in respect of which the Court has made a winding up order;

"**contributory**" means —

(a) every person liable by virtue of section 49 to contribute to the assets of a company in the event that it is wound up under this Law; and

(b) every holder of fully paid up shares of a company;

"**controller**" means a person appointed by the Authority pursuant to the regulatory laws to take control of a company;

"**document**" includes any device by means of which information is recorded or stored;

"**foreign company**" means any body corporate incorporated outside the Islands;

"**foreign practitioner**" means a person who is qualified under the law of a foreign country to perform functions equivalent to those performed by official liquidators under this Act or by trustees in bankruptcy under the *Bankruptcy Act (1997 Revision)*;

"**limited partnership**" means an ordinary limited partnership registered in accordance with section 49 of the *Partnership Act (2013 Revision)* or an exempted limited partnership registered in accordance with section 9 of the *Exempted Limited Partnership Act (2021 Revision)*;

"**official liquidator**" means the liquidator of a company which is being wound up by order of the Court or under the supervision of the Court and includes a provisional liquidator;

"**prescribed**" means prescribed by the Insolvency Rules Committee;

"**professional service provider**" means a person who contracts to provide general managerial or administrative services to a company on an annual or continuing basis;

"**qualified insolvency practitioner**" means a person holding the qualifications specified in the regulations made by the Insolvency Rules Committee under section 155 or such other qualifications as the Court considers appropriate for the conduct of the winding up of a company;

"**Rules**" mean rules prescribed by the Insolvency Rules Committee;

"**shadow director**" means, in relation to a company, any person in accordance with whose directions or instructions the directors of the company are accustomed to act, but the person is not deemed to be a shadow director by reason only that the directors act on advice given by that person in a professional capacity; and

"**winding up order**" includes an order that a voluntary winding up continue under the supervision of the Court and references to a company being wound up by the Court includes a company which is being wound up under the supervision of the Court.

### Alternative modes of winding up

**90**. A company may be wound up —

(a) compulsorily by order of the Court;

(b) voluntarily —

(i) by virtue of a special resolution;

(ii) because the period, if any, fixed for the duration of the company by its articles of association has expired; or

(iii) because the event, if any, has occurred, on the occurrence of which its articles of association provide that the company shall be wound up; or

(c) under the supervision of the Court.

### Jurisdiction of the Court

**91**. The Court has jurisdiction to make winding up orders in respect of —

(a) an existing company;

(b) a company incorporated and registered under this Law;

(c) a body incorporated under any other law; and

(d) a foreign company which —

(i) has property located in the Islands;

(ii) is carrying on business in the Islands;

(iii) is the general partner of a limited partnership; or

(iv) is registered under Part IX.

## Company Restructuring

### Interpretation of "company"

**91A**. For the purposes of sections 91B, 91C, 91D, 91E, 91F, 91G, 91H, 91I and 91J, "**company**" means —

(a) any company liable to be wound up under section 91; or

(b) any other entity or partnership to which the provisions of this Part apply in respect of the entity's or partnership's winding up.

### Appointment of a restructuring officer

**91B**.(1) A company may present a petition to the Court for the appointment of a restructuring officer on the grounds that the company —

(a) is or is likely to become unable to pay its debts within the meaning of section 93; and

(b) intends to present a compromise or arrangement to its creditors (or classes thereof) either, pursuant to this Law, the law of a foreign country or by way of a consensual restructuring.

(2) A petition under subsection (1) may be presented by a company acting by its directors, without a resolution of its members or an express power in its articles of association.

(3) The Court may, on hearing a petition under subsection (1) —

(a) make an order appointing a restructuring officer;

(b) adjourn the hearing conditionally or unconditionally;

(c) dismiss the petition; or

(d) make any other order as the Court thinks fit, except an order placing the company into official liquidation, which the Court may only make in accordance with sections 92 and 95 if a winding up petition has been presented in accordance with sections 91G and 94.

(4) A restructuring officer appointed by the Court under subsection (3)(a) shall have the powers and carry out only such functions as the Court may confer on the restructuring officer in the order appointing the restructuring officer, including the power to act on behalf of the company.

(5) Where the Court makes an order under subsection (3)(a), the Court shall set out in the order —

(a) the manner and time within which the restructuring officer shall give notice of the restructuring officer's appointment to —

(i) the company's creditors, including any contingent or prospective creditors;

(ii) the company's contributories; and

(iii) the Authority, in respect of any company which is carrying on regulated business;

(b) the manner and extent to which the powers and functions of the restructuring officer shall affect and modify the powers and functions of the board of directors; and

(c) any other conditions to be imposed on the board of directors that the Court considers appropriate, in relation to the exercise by the board of directors of its powers and functions.

(6) Where a company which is carrying on a regulated business presents a petition under subsection (1), the directors of the company shall, immediately after presenting the petition, serve notice of the petition on the Authority.

(7) A director who fails to comply with subsection (6) commits an offence and is liable to a fine of ten thousand dollars.

### Appointment of an interim restructuring officer

**91C.**(1) A company may, where it is in the interests of the company to do so, make an *ex parte* application to the Court for the appointment of a restructuring officer on an interim basis pending the hearing of the petition under section 91B(1).

(2) An application under subsection (1) may be presented by a company acting by its directors without a resolution of its members or an express power in its articles of association.

(3) The Court may, on hearing an application under subsection (1), appoint a restructuring officer on an interim basis, on such terms and conditions as the Court thinks fit.

(4) A restructuring officer appointed on an interim basis by the Court under subsection (3) shall have the powers and carry out only such functions as the Court may confer on that restructuring officer in the order appointing the restructuring officer, including the power to act on behalf of the company.

(5) Where the Court makes an order under subsection (3), the Court shall set out in the order —

(a) the manner and time within which the restructuring officer shall give notice of the restructuring officer's appointment to —

(i) the company's creditors, including any contingent or prospective creditors;

(ii) the company's contributories; and

(iii) the Authority, in respect of any company which is carrying on regulated business;

(b) the manner and extent to which the powers and functions of the restructuring officer shall affect and modify the powers and functions of the board of directors; and

(c) any other conditions to be imposed on the board of directors that the Court considers appropriate, in relation to the exercise by the board of directors of its powers and functions.

(6) Where a company which is carrying on a regulated business makes an application under subsection (1), the directors of the company shall, immediately after making the application, serve notice of the application on the Authority.

(7) A director who fails to comply with subsection (6), commits an offence and is liable to a fine of ten thousand dollars.

### Restructuring officer

**91D.** (1) A restructuring officer appointed under section 91B or 91C shall be a qualified insolvency practitioner.

(2) Where two or more persons are appointed as restructuring officers under section 91B or 91C, they shall be authorised to act jointly and severally, unless their powers are expressly limited by an order of the Court.

(3) A restructuring officer appointed under section 91B or 91C is an officer of the Court.

(4) Notwithstanding subsection (1), where the Court has appointed a qualified insolvency practitioner to act as a restructuring officer, the Court may appoint a foreign practitioner to act as a restructuring officer in addition to the qualified insolvency practitioner.

(5) A foreign practitioner appointed by the Court to act as a restructuring officer shall not act as the sole restructuring officer of a company.

(6) The remuneration of a restructuring officer appointed under section 91B or 91C shall, on the application of the restructuring officer, be fixed by the Court from time to time in accordance with section 109.

(7) A restructuring officer, a creditor of the company, including a contingent or prospective creditor, or a contributory of the company may apply to the Court to determine any question arising in the course of carrying out the restructuring officer's functions.

### Variation or discharge of the order appointing a restructuring

**91E.** (1) At any time after the appointment of a restructuring officer by the Court under section 91B or 91C —

(a) the company acting by its directors;

(b) a restructuring officer appointed under section 91B or 91C;

(c) a creditor of the company, including a contingent or prospective creditor;

(d) a contributory of the company; or

(e) the Authority, in respect of any company which is carrying on a regulated business, may apply by way of summons to the Court for the variation or discharge of the order appointing the restructuring officer.

(2) An application under subsection (1)(a) may be presented by a company acting by its directors without a resolution of its members or an express power in its articles of association.

(3) The Court may, on hearing an application under subsection (1) —

(a) vary the order appointing the restructuring officer;

(b) discharge or continue the order appointing the restructuring officer;

(c) adjourn the hearing conditionally or unconditionally;

(d) dismiss the application; or

(e) make any other order as the Court thinks fit, except an order placing the company into official liquidation, which the Court may only make in accordance with sections 92 and 95 if a winding up petition has been presented in accordance with sections 91G and 94.

### Removal and replacement of restructuring officers

**91F.** (1) A restructuring officer may be removed from office and replaced by an alternative restructuring officer by order of the Court made on the application of —

(a) the company acting by its directors;

(b) a creditor of the company, including a contingent or prospective creditor;

(c) a contributory of the company; or

(d) the Authority, in respect of any company which is carrying on a regulated business.

(2) An application under subsection (1)(a) may be presented by a company acting by its directors without a resolution of its members or an express power in its articles of association.

(3) A restructuring officer who has been removed and replaced pursuant to subsection (1) shall prepare a report and accounts for the restructuring officer replacing the removed restructuring officer, within twenty-one days of the date of removal and replacement.

### Stay of proceedings

**91G.**(1) At any time —

(a) after the presentation of a petition for the appointment of a restructuring officer under section 91B, but before an order for the appointment of a restructuring officer is made, and when the petition has not been withdrawn or dismissed; and

(b) when an order for the appointment of a restructuring officer is made, until the order appointing the restructuring officer has been discharged,

no suit, action or other proceedings, other than criminal proceedings, shall be proceeded with or commenced against the company, no resolution shall be passed for the company to be wound up and no winding up petition may be presented against the company, except with the leave of the Court and subject to such terms as the Court may impose.

(2) Where at any time referred to in subsection (1), there are criminal proceedings pending against the company in a summary court, the Court, the Court of Appeal or the Privy Council —

(a) the company acting by its directors;

(b) a creditor of the company, including a contingent or prospective creditor;

(c) a contributory of the company; or

(d) the Authority, in respect of any company which is carrying on regulated business,

may apply to the court in which the proceedings are pending for a stay of the proceedings and the court to which the application is made, may stay the proceedings on such terms as it thinks fit.

(3) In this section —

(a) references to a suit, action or other proceedings include a suit, action or other proceedings in a foreign country; and

(b) references to other proceedings include any court supervised insolvency or restructuring proceedings against the company.

### Enforcement of creditors' security

**91H.** Notwithstanding the presentation of a petition for the appointment of a restructuring officer or the appointment of a restructuring officer by the Court under section 91B or 91C, a creditor who has security over the whole or part of the assets of the company is entitled to enforce the creditor's security without the leave of the Court and without reference to the restructuring officer appointed under section 91B or 91C.

### Power to compromise with creditors and members within restructuring officer proceeding

**91I**. (1) Where a restructuring officer is appointed to a company and a compromise or arrangement is proposed between the company and its creditors or any class of them, or the company and its members or any class of them, the Court may, on the application of the restructuring officer, order a meeting of the creditors or class of creditors, or of the members of the company or class of members, as the case may be, to be summoned in such manner as the Court directs.

(2) If a majority in number representing seventy-five per cent in value of the creditors or class of creditors, as the case may be, present and voting either in person or by proxy at the meeting, agree to any compromise or arrangement, the compromise or arrangement shall, if sanctioned by the Court, be binding on all the creditors or the class of creditors, as the case may be, and also on the company.

(3) If seventy-five per cent in value of the members or class of members, as the case may be, present and voting either in person or by proxy at the meeting, agree to any compromise or arrangement, the compromise or arrangement shall, if sanctioned by the Court, be binding on all the members or class of members, as the case may be, and also on the company.

(4) An order made under subsection (2) or (3) shall have no effect until a copy of the order has been delivered to the Registrar for registration, and a copy of every such order shall be annexed to every copy of the memorandum of association of the company issued after the order has been made, or, in the case of a company not having a memorandum, of every copy so issued of the instrument constituting or defining the constitution of the company.

(5) If a company makes default in complying with subsection (4), the company and every officer of the company who is in default shall be liable to a fine of two dollars for each copy in respect of which default is made.

(6) In this section, "**arrangement**" includes a reorganisation of the share capital of the company by the consolidation of shares of different classes or by the division of shares into shares of different classes or by both those methods.

### Provisions for facilitating reconstruction and amalgamation of companies

**91J**. (1) Where an application is made to the Court under section 91I for the sanctioning of a compromise or arrangement proposed between a company and any such persons as are specified in that section, and it is shown to the Court that the compromise or arrangement has been proposed for the purpose of or in connection with a scheme for the reconstruction of any company or companies or the amalgamation of any two or more companies, and that under the scheme the whole or any part of the undertaking or the property of any company concerned in the scheme (in this section referred to as "**a transferor company**") is to be transferred to another company (in this section referred to as "**the transferee company**") the Court, may either by the order sanctioning the compromise or arrangement or by any subsequent order make provision for —

(a) the transfer to the transferee company of the whole or any part of the undertaking and of the property or liabilities of any transferor company;

(b) the allotting or appropriation by the transferee company of any shares, debentures, policies, or other like interests in that company which under the compromise or arrangement are to be allotted or appropriated by that company to or for any person;

(c) the continuation by or against the transferee company of any legal proceedings pending by or against any transferor company;

(d) the dissolution, without winding up, of any transferor company;

(e) the provisions to be made for any person who within such time and in such manner as the Court directs dissents from the compromise or arrangement; and

(f) such incidental, consequential and supplemental matters as are necessary to secure that the reconstruction or amalgamation is fully and effectively carried out.

(2) Where an order under this section provides for the transfer of property or liabilities, that property shall, by virtue of the order, be transferred to and vest in, and those liabilities shall, by virtue of the order, be transferred to and become the liabilities of, the transferee company, and any such property shall, if the order so directs, be freed from any charge which is, by virtue of the compromise or arrangement, to cease to have effect.

(3) Where an order is made under this section, every company in relation to which the order is made shall cause a copy thereof to be delivered to the Registrar for registration within seven days after the making of the order, and if default is made in complying with this subsection, the company and every officer of the company who is in default shall be liable to a default fine.

(4) In this section —

"**property**" includes property, rights and powers of every description;

"**liabilities**" includes duties; and

"**transferee company**" means any company or body corporate established in the Islands or in any other jurisdiction.

## Winding up by the Court

### Circumstances in which a company may be wound up by the Court

**92**. A company may be wound up by the Court if —

(a) the company has passed a special resolution requiring the company to be wound up by the Court;

(b) the company does not commence its business within a year from its incorporation, or suspends its business for a whole year;

(c) the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association that the company is to be wound up;

(d) the company is unable to pay its debts; or

(e) the Court is of opinion that it is just and equitable that the company should be wound up.

### Definition of inability to pay debts

**93**. A company shall be deemed to be unable to pay its debts if —

(a) a creditor by assignment or otherwise to whom the company is indebted at law or in equity in a sum exceeding one hundred dollars then due, has served on the company by leaving at its registered office a demand under that person's hand requiring the company to pay the sum so due, and the company has for the space of three weeks succeeding the service of such demand, neglected to pay such sum, or to secure or compound for the same to the satisfaction of the creditor;

(b) execution of other process issued on a judgment, decree or order obtained in the Court in favour of any creditor at law or in equity in any proceedings instituted by such creditor against the company, is returned unsatisfied in whole or in part; or

(c) it is proved to the satisfaction of the Court that the company is unable to pay its debts.

### Application for winding up

**94**. (1) An application to the Court for the winding up of a company shall be by petition presented either by —

(a) the company;

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 85 of 226



(b) any creditor or creditors (including any contingent or prospective creditor or creditors);

(c) any contributory or contributories; or

(d) subject to subsection (4), the Authority pursuant to the regulatory laws.

(2) Where expressly provided for in the articles of association of a company, the directors of a company incorporated before the commencement of this amending Act have the authority to —

(a) present a winding up petition; or

(b) where a winding up petition has been presented, apply for the appointment of a provisional liquidator, on behalf of the company without the sanction of a resolution passed at a general meeting.

(2A) Subject to subsection (2B), the directors of a company incorporated after the commencement of this amending Act may present a winding up petition on behalf of the company on the grounds that the company is unable to pay its debts within the meaning of section 93 or where a winding up petition has been presented, applyon behalf of the company, for the appointment of a provisional liquidator.

(2B) The articles of association of a company may expressly remove or modify the directors' authority to present a winding up petition or apply for the appointment of a provisional liquidator on the company's behalf.

(3) A contributory is not entitled to present a winding up petition unless either —

(a) the shares in respect of which that person is a contributory, or some of them, are partly paid; or

(b) the shares in respect of which that person is a contributory, or some of them, either were —

(i) originally allotted to that person, or have been held by that person, and registered in that person's name for a period of at least six months immediately preceding the presentation of the winding up petition; or

(ii) have devolved on that person through the death of a former holder.

(4) A winding up petition may be presented by the Authority in respect of any company which is carrying on a regulated business in the Islands upon the grounds that it is not duly licensed or registered to do so under the regulatory laws or for any other reason as provided under the regulatory laws or any other law.

### Powers of the Court

**95**. (1) Upon hearing the winding up petition the Court may —

(a) dismiss the petition;

(b) adjourn the hearing conditionally or unconditionally;

(c) make a provisional order; or

(d) any other order that it thinks fit,

but the Court shall not refuse to make a winding up order on the ground only that the company's assets have been mortgaged or charged to an amount equal to or in excess of those assets or that the company has no assets.

(2) The Court shall dismiss a winding up petition or adjourn the hearing of a winding up petition on the ground that the petitioner is contractually bound not to present a petition against the company.

(3) If the petition is presented by members of the company as contributories on the ground that it is just and equitable that the company should be wound up, the Court shall have jurisdiction to make the following orders, as an alternative to a winding-up order, namely —

(a) an order regulating the conduct of the company's affairs in the future;

(b) an order requiring the company to refrain from doing or continuing an act complained of by the petitioner or to do an act which the petitioner has complained it has omitted to do;

(c) an order authorising civil proceedings to be brought in the name and on behalf of the company by the petitioner on such terms as the Court may direct; or

(d) an order providing for the purchase of the shares of any members of the company by other members or by the company itself and, in the case of a purchase by the company itself, a reduction of the company's capital accordingly.

(4) Where an alternative order under subsection (3) requires the company not to make any, or any specified, alteration in the memorandum or articles of association, the company does not have power, without the leave of the Court, to make any such alteration in breach of that requirement.

(5) Any alteration in a company's memorandum or articles of association made by virtue of an alternative order under subsection (3) is of the same effect as if duly made by resolution of the company, and the provisions of this Act shall apply to the memorandum or articles of association as so altered accordingly.

(6) A copy of an alternative order made under subsection (3) altering, or giving leave to alter, a company's memorandum or articles of association shall be filed by the company with the Registrar within fourteen days of the making of the order.

### Power to stay or restrain proceedings

**96**. At any time after the presentation of a winding up petition and before a winding up order has been made, the company or any creditor or contributory may —

(a) where any action or proceeding against the company, including a criminal proceeding, is pending in a summary court, the Court, the Court of Appeal or the Privy Council, apply to the court in which the action or proceeding is pending for a stay of proceedings therein; and

(b) where any action or proceeding is pending against the company in a foreign court, apply to the Court for an injunction to restrain further proceedings therein,

and the court to which application is made may, as the case may be, stay or restrain the proceedings accordingly on such terms as it thinks fit.

### Avoidance of attachments and stay of proceedings

**97**. (1) When a winding up order is made or a provisional liquidator is appointed, no suit, action or other proceedings, other than criminal proceedings, shall be proceeded with or commenced against the company except with the leave of the Court and subject to such terms as the Court may impose.

(1A) Where a winding up order is made or a provisional liquidator is appointed in respect of a company, and there are criminal proceedings pending against the company in a summary court, the Court, the Court of Appeal or the Privy Council —

(a) the company;

(b) a creditor of the company;

(c) a contributory of the company; or

(d) subject to section 94(4), the Authority, in respect of any company which is carrying on regulated business, may apply to the court in which the proceedings are pending for a stay of the proceedings and the court to which the application is made, may stay the proceedings on such terms as it thinks fit.

(2) When a winding up order has been made, any attachment, distress or execution put in force against the estate or effects of the company after the commencement of the winding up is void.

### Notice of winding up order

**98**. When a winding up order is made, the liquidator shall —

(a) file a copy of the winding up order with the Registrar; and

(b) publish notice of the winding up in the Gazette and any newspaper in which the winding up petition was advertised.

### Avoidance of property dispositions, etc.

**99**. When a winding up order has been made, any disposition of the company's property and any transfer of shares or alteration in the status of the company's members made after the commencement of the winding up is, unless the Court otherwise orders, void.

### Commencement of winding up by the Court

**100**. (1) If, before the presentation of a petition for the winding up of a company by the Court —

(a) a resolution has been passed by the company for voluntary winding up;

(b) the period, if any, fixed for the duration of the company by the articles of association has expired;

(c) the event upon the occurrence of which it is provided by the articles of association that the company is to be wound up has occurred; or

(d) a restructuring officer has been appointed pursuant to section 91B or 91C and the order appointing the restructuring officer has not been discharged,

the winding up of the company is deemed to have commenced at the time of passing of the relevant resolution or the expiry of the relevant period or the occurrence of the relevant event or the date of the presentation of the petition to appoint a restructuring officer pursuant to section 91B.

(2) In any other circumstance not specified in subsection (1), the winding up of a company by the Court is deemed to commence at the time of the presentation of the petition for winding up.

### Company's statement of affairs

**101**. (1) Where the Court has made a winding up order or appointed a provisional liquidator, the liquidator may require some or all of the persons mentioned in subsection (3) to prepare and submit to that person a statement in the prescribed form as to the affairs of the company.

(2) The statement shall be verified by an affidavit sworn by the persons required to submit it and shall show —

(a) particulars of the company's assets and liabilities, including contingent and prospective liabilities;

(b) the names and addresses of any persons having possession of the company's assets;

(c) the assets of the company held by those persons;

(d) the names and addresses of the company's creditors;

(e) the securities held by those creditors;

(f) the dates when the securities were respectively given; and

(g) such further or other information that the liquidator may require.

(3) The persons referred to in subsection (1) are —

(a) persons who are or have been directors or officers of the company;

(b) persons who are or have been professional service providers to the company; and

(c) persons who are or have been employees of the company, during the period of one year immediately preceding the relevant date.

(4) Where any persons are required under this section to submit a statement of affairs to the liquidator, they shall do so, subject to subsection (5), before the end of the period of twenty-one days beginning with the day after that on which the prescribed notice of the requirement is given to them by the liquidator.

(5) The liquidator may release a person from an obligation imposed on that person under subsection (1) or, when giving the notice mentioned in subsection (4) or subsequently, the liquidator may extend the time for compliance; and if the liquidator refuses to extend the time for compliance, the Court may do so.

(6) In this section —

"**relevant date**" means —

(a) in a case where a provisional liquidator is appointed, the date of that person's appointment; and

(b) in any other case, the commencement of the winding up.

(7) A person who, without reasonable excuse, fails to comply with any obligation imposed under this section commits an offence and is liable on conviction to a fine of ten thousand dollars.

### Investigation by liquidator

**102**. (1) Where a winding up order is made by the Court, the liquidator shall be empowered to investigate —

(a) if the company has failed, the causes of the failure; and

(b) generally, the promotion, business, dealings and affairs of the company,

and to make such report, if any, to the Court as that person thinks fit.

(2) Subject to obtaining the directions of the Court, the liquidator shall have power to —

(a) assist the Authority and the Royal Cayman Islands Police Service to investigate the conduct of persons referred to in section 101(3); and

(b) institute and conduct a criminal prosecution of persons referred to in section 101(3).

(3) Subject to obtaining the prior approval of the company's creditors, if it is insolvent, or its contributories, if it is solvent, the directions given under

subsection (2) may include a direction that the whole or part of the costs of investigation and prosecution be paid out of the assets of the company.

### Duty to co-operate and the private examination of relevant persons

**103**. (1) This section applies to any person who, whether resident in the Islands or elsewhere —

(a) has made or concurred with the statement of affairs;

(b) is or has been a director or officer of the company;

(c) is or was a professional service provider to the company;

(d) has acted as a controller, advisor or liquidator of the company or receiver or manager of its property;

(e) not being a person falling within paragraphs (a) to (c), is or has been concerned or has taken part in the promotion, or management of the company,

and such person is referred to in this section as the "**relevant person**".

(2) It is the duty of every relevant person to co-operate with the official liquidator.

(3) While a company is being wound up, the official liquidator may at any time before its dissolution apply to the Court for an order —

(a) for the examination of any relevant person; or

(b) that a relevant person transfer or deliver up to the liquidator any property or documents belonging to the company.

(4) Unless the Court otherwise orders, the official liquidator shall make an application under subsection (3) if that person is requested in accordance with the rules to do so by one-half, in value, of the company's creditors or contributories.

(5) On an application made under subsection (3)(a), the Court may order that a relevant person —

(a) swear an affidavit in answer to written interrogatories;

(b) attend for oral examination by the official liquidator at a specified time and place, or

(c) do both things specified in paragraphs (a) and (b).

(6) The Court may direct that any creditor or contributory of the company be permitted by the official liquidator to participate in an oral examination.

(7) The Court shall have jurisdiction —

(a) to make an order under this section against a relevant person resident outside the Islands; and

(b) to issue a letter of request for the purpose of seeking the assistance of a foreign court in obtaining the evidence of a relevant person resident outside the jurisdiction.

## Official Liquidators

### Appointment and powers of provisional liquidator

**104**. (1) Subject to this section and any rules made under section 155, the Court may, at any time after the presentation of a winding up petition but before the making of a winding up order, appoint a liquidator provisionally.

(2) An application for the appointment of a provisional liquidator may be made under subsection (1) by a creditor or contributory of the company or, subject to subsection (6), the Authority, on the grounds that —

(a) there is a *prima facie* case for making a winding up order; and

(b) the appointment of a provisional liquidator is necessary in order to —

(i) prevent the dissipation or misuse of the company's assets;

(ii) prevent the oppression of minority shareholders; or

(iii) prevent mismanagement or misconduct on the part of the company's directors.

(3) An application for the appointment of a provisional liquidator may be made under subsection (1) by the company and on such an application the Court may appoint a provisional liquidator if it considers it appropriate to do so.

(4) A provisional liquidator shall carry out only such functions as the Court may confer on that person and that person's powers may be limited by the order appointing that person.

(5) The remuneration of the provisional liquidator shall be fixed by the Court from time to time on that person's application and the Court shall in fixing such remuneration act in accordance with rules made under section 155.

(6) An application for the appointment of a provisional liquidator may be presented by the Authority on the grounds under subsection (2), in respect of any company which is carrying on a regulated business in the Islands upon the grounds that it is not duly licensed or registered to do so under the regulatory laws or for any other reason as provided under the regulatory laws or any other law regardless of whether or not the Authority presented the winding up petition.

### Appointment of official liquidator

**105**. (1) For the purpose of conducting the proceedings in winding up a company and assisting the Court therein, there may be appointed one or more than one person to be called an official liquidator or official liquidators; and the Court may appoint to such office such person as it thinks fit, and if more persons than one are appointed to such office, the Court shall declare whether any act hereby required or authorised to be done by the official liquidator is to be done by all or any or more of such persons.

(2) The Court may also determine whether any and what security is to be given by an official liquidator on that person's appointment; and if no official liquidator is appointed, or during any vacancy in such office, all the property of the company shall be in the custody of the Court.

(3) The liquidator shall, within twenty-eight days of the date upon which the winding up order is made, summon —

(a) a meeting of the company's creditors if the order was made on the grounds that the company is insolvent; or

(b) a meeting of the company's contributories if the order was made on grounds other than insolvency,

for the purposes of resolving any other matters which the liquidator puts before the meeting.

(4) The Court may make an order dispensing with the need to summon a meeting under this section or extending the time within which it shall be summoned.

### Appointment of joint liquidators

**106**. When two or more persons are appointed to the office of liquidator, either provisionally or as official liquidators, they shall be authorised to act jointly and severally, unless their powers are expressly limited by order of the Court.

### Removal of official liquidators

**107**. An official liquidator may be removed from office by order of the Court made on the application of a creditor or contributory of the company.

### Qualifications of official liquidators

**108**. (1) A foreign practitioner may be appointed to act jointly with a qualified insolvency practitioner.

(2) Official liquidators are officers of the Court.

### Remuneration of official liquidators and restructuring officers

**109**. (1) The expenses properly incurred in the winding up, including the remuneration of the liquidator, are , subject to subsection (2), payable out of the company's assets in priority to all other claims.

(2) Where a company is wound up, the expenses properly incurred in any petition for a restructuring officer and during the term of appointment of the restructuring officer appointed —

(a) under section 91B(3)(a); or

(b) on an interim basis under section 91C(3), including the remuneration of the restructuring officer, are payable out of the company's assets in priority to all other claims.

(3) There shall be paid to a restructuring officer, including a restructuring officer appointed on an interim basis, and the official liquidator, such remuneration, by way of percentage or otherwise, that the Court may direct acting in accordance with rules made under section 155.

(4) If more than one restructuring officer, including a restructuring officer appointed on an interim basis, is appointed by the Court under section 91B or 91C, the remuneration paid under subsection (3) shall be distributed among the restructuring officers in such proportions as the Court may direct.

(5) If more than one official liquidator is appointed by the Court when a company is wound up, the remuneration paid under subsection (3) shall be distributed among the official liquidators in such proportions as the Court may direct.

### Function and powers of official liquidators

**110**. (1) It is the function of an official liquidator —

(a) to collect, realise and distribute the assets of the company to its creditors and, if there is a surplus, to the persons entitled to it; and

(b) to report to the company's creditors and contributories upon the affairs of the company and the manner in which it has been wound up.

(2) The official liquidator may —

(a) with the sanction of the Court, exercise any of the powers specified in Part I of Schedule 3; and

(b) with or without that sanction, exercise any of the general powers specified in Part II of Schedule 3.

(3) The exercise by the liquidator of the powers conferred by this section is subject to the control of the Court, and subject to subsection (5), any creditor or contributory may apply to the Court with respect to the exercise or proposed exercise of such powers (hereinafter referred to as a "sanction application").

(4) In the case of —

(a) a solvent company, a sanction application may only be made by a contributory and the creditors shall have no right to be heard;

(b) an insolvent company, a sanction application may only be made by a creditor and the contributories shall have no right to be heard; and

(c) a company whose solvency is doubtful, a sanction application may be made by both contributories and creditors and both contributories and creditors shall have a right to be heard.

(5) For the purposes of exercising the powers specified under paragraph 3 of Part 1 of Schedule 3, a person shall be treated as related to a company if the person —

(a) has acted for the company as a professional service provider;

(b) is or was a shareholder or director of the company or of any other company in the same group as the company;

(c) has a direct or indirect beneficial interest in the shares of the company; or

(d) is a creditor or debtor of the company.

.

## General Powers of the Court

### Power to stay winding up

**111**. (1) The Court may at any time after an order for winding up, on the application either of the liquidator or any creditor or contributory, and on proof to the satisfaction of the Court that all proceedings in the winding up ought to be stayed, make an order staying the proceedings either all together or for a limited time, on such terms and conditions as the Court thinks fit.

(2) The Court may at any time after the liquidation has commenced under section 116(c), but before the final meeting has been held as provided for in section 127, on the application of the liquidator accompanied by —

(a) a special resolution stating that the company will not be wound up and setting out the reasons for such decision;

(b) proof of a recall notice published in the Gazette; and

(c) such other documents as the Court may consider necessary,

make an order to recall the liquidation, place the company into active status and place the company back into good standing as it was prior to the commencement of liquidation under section 116(c), on such terms and conditions as the Court thinks fit.

(3) A company shall, within seven days of the making of an order under this section, forward a copy of the order to the Registrar who shall enter it in the records relating to the company.

### Settlement of list of contributories

**112**. (1) The liquidator shall settle a list of contributories, if any, for which purpose that person shall have power to adjust the rights of contributories amongst themselves.

(2) In the case of a solvent liquidation of a company which has issued redeemable shares at prices based upon its net asset value from time to time, the liquidator shall have power to settle and, if necessary rectify the company's register of members, thereby adjusting the rights of members amongst themselves.

(3) A contributory who is dissatisfied with the liquidator's determination may appeal to the Court against such determination.

### Power to make calls

**113**. (1) The Court may, at any time after making a winding up order, and either before or after it has ascertained the sufficiency of the company's assets, make calls on all or any of the contributories for the time being settled on the list of the contributories —

(a) to the extent of their liability, for the payment of any money which the Court considers necessary to satisfy the company's debts and liabilities and the expenses of winding up; and

(b) to the adjustment of the rights of the contributories among themselves,

and make an order for payment of any call so made.

(2) In making a call the Court may take into consideration the probability that some of the contributories may partly or wholly fail to pay it.

### Inspection of documents by creditors, etc.

**114**. (1) At any time after making a winding up order the Court may make such orders as it thinks fit for —

(a) the inspection of the company's documents by creditors and contributories; and

(b) the preparation of reports by the official liquidator and the provision of such reports to the company's creditors and contributories.

(2) A contributory shall be entitled to make an application under this section notwithstanding that the company is or may be insolvent and the Court shall not refuse to make an order upon the application of a contributory merely by reason of the fact that the company is or may be insolvent.

### Meetings to ascertain wishes of creditors or contributories

**115**. (1) The Court shall, as to all matters relating to the winding up, have regard to wishes of the creditors or contributories and for that purpose it may direct reports to be prepared by the official liquidator and meetings of creditors or contributories to be summoned.

(2) If it considers it necessary to do so, the Court may direct that separate meetings be held of different classes of creditors or contributories.

(3) Subject to Rules made under section 155, meetings may be requisitioned by creditors, if the company is insolvent, or by contributories if the company is solvent.

(4) The votes of creditors and contributories shall be counted by reference to —

(a) the value of their debts, in the case of creditors;

(b) the number of votes, in the case of contributories whose shares carry voting rights under the articles of association of the company; and

(c) the par value of all the shares held, in the case of contributories whose shares do not carry votes under the articles of association of the company and, where there are no par value shares, the net asset value of the company shown.

## Voluntary Winding up

### Circumstances in which a company may be wound up voluntarily

**116**. A company incorporated and registered under this Act or an existing company may be wound up voluntarily —

(a) when the period, if any, fixed for the duration of the company by its memorandum or articles of association expires;

(b) if the event, if any, occurs, on the occurrence of which the memorandum or articles of association provide that the company is to be wound up;

(c) if the company resolves by special resolution that it be wound up voluntarily; or

(d) if the company in general meeting resolves by ordinary resolution that it be wound up voluntarily because it is unable to pay its debts.

### Commencement of winding up

**117**. (1) A voluntary winding up is deemed to commence —

(a) at the time of the passing of the resolution for winding up; or

(b) on the expiry of the period or the occurrence of the event specified in the company's memorandum or articles of association,

notwithstanding that a supervision order is subsequently made by the Court.

(2) Subject to any contrary provision in its memorandum or articles of association, the voluntary winding up of an exempted limited duration company is taken to have commenced upon the expiry of a period of ninety days starting on —

(a) the death, insanity, bankruptcy, dissolution, withdrawal, retirement or resignation of a member of the company;

(b) the redemption, repurchase or cancellation of all the shares of a member of the company; or

(c) the occurrence of any event which, under the memorandum or articles of association of the company, terminates the membership of a member of the company,

unless there remain at least two members of the company and the company is continued in existence by the unanimous resolution of the remaining members pursuant to amended memorandum and articles of association adopted during that period of ninety days.

### Effect on business and status of the company

**118**. (1) In the case of a voluntary winding up, the company shall from the commencement of its winding up cease to carry on its business except so far as it may be beneficial for its winding up.

(2) Notwithstanding anything to the contrary contained in the company's articles of association, its corporate state and powers shall continue until the company is dissolved.

### Appointment of voluntary liquidator

**119**. (1) One or more liquidators shall be appointed for the purpose of winding up the company's affairs and distributing its assets.

(2) When the winding up has commenced in accordance with the company's memorandum or articles of association upon the termination of a fixed period or the occurrence of an event —

(a) the persons designated as liquidators in the memorandum or articles of association shall become such liquidators automatically from the commencement of the winding up; or

(b) if no such person is designated in the memorandum or articles of association or the person designated is unable or unwilling to act, the directors shall convene a general meeting of the company for the purpose of appointing a liquidator.

(3) Except in the case of a person designated as liquidator in the company's memorandum or articles of association, the appointment of a voluntary liquidator shall take effect upon the filing of that person's consent to act with the Registrar.

(4) If a vacancy occurs by death, resignation or otherwise in the office of voluntary liquidator appointed by the company —

(a) the company in a general meeting may fill the vacancy; or

(b) the Court may fill the vacancy on the application of any contributory or creditor.

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 98 of 226



(5) On the appointment of a voluntary liquidator all the powers of the directors cease, except so far as the company in a general meeting or the liquidator sanctions their continuance.

(6) When two or more persons are appointed as voluntary liquidators jointly, they shall be authorised to act jointly and severally unless their powers are expressly limited by the resolution or articles of association under which they are appointed.

### Qualifications of voluntary liquidators

**120**. Any person, including a director or officer of the company, may be appointed as its voluntary liquidator.

### Removal of voluntary liquidators

**121**. (1) A voluntary liquidator may be removed from office by a resolution of the company in a general meeting convened especially for that purpose.

(2) A general meeting of the company for the purpose of considering a resolution to remove its voluntary liquidator may be convened by any shareholder or shareholders holding not less than one fifth of the company's issued share capital.

(3) Whether or not a general meeting has been convened in accordance with subsection (2), any contributory may apply to the Court for an order that a voluntary liquidator be removed from office on the grounds that that person is not a fit and proper person to hold office.

### Resignation of voluntary liquidator

**122**. (1) Where two or more persons are appointed as joint voluntary liquidators, they may resign by filing a notice of resignation with the Registrar, so long as at least one of them continues in office.

(2) Except as provided in subsection (1), a voluntary liquidator wishing to resign shall —

(a) prepare a report and accounts; and

(b) convene a general meeting of the company for the purpose of accepting that person's resignation and releasing that person from the performance of any further duties, and shall cease to hold office with effect from the date upon which the resolution is passed.

(3) In the event that the company fails to pass a resolution accepting that person's resignation, the voluntary liquidator may apply to the Court for an order that that person be released from the performance of any further duties.

### Notice of voluntary winding up

**123**. (1) Within twenty-eight days of the commencement of a voluntary winding up, the liquidator or, in the absence of any liquidator, the directors shall —

(a) file notice of the winding up with the Registrar;

(b) file the liquidator's consent to act with the Registrar;

(c) file the director's declaration of solvency with the Registrar (if the supervision of the court is not sought);

(d) in the case of a company carrying on a regulated business, serve notice of the winding up upon the Authority; and

(e) publish notice of the winding up in the Gazette.

(2) A director or liquidator who fails to comply with this section commits an offence and is liable to a fine of ten thousand dollars.

### Application for supervision order

**124**. (1) Where a company is being wound up voluntarily its liquidator shall apply to the Court for an order that the liquidation continue under the supervision of the Court unless, within twenty-eight days of the commencement of the liquidation, the directors have signed a declaration of solvency in the prescribed form in accordance with subsection (2).

(2) A declaration of solvency means a declaration or affidavit in the prescribed form to the effect that a full enquiry into the company's affairs has been made and that to the best of the directors' knowledge and belief the company will be able to pay its debts in full together with interest at the prescribed rate, within such period, not exceeding twelve months from the commencement of the winding up, as may be specified in the declaration.

(3) A person who knowingly makes a declaration under this section without having reasonable grounds for the opinion that the company will be able to pay its debts in full, together with interest at the prescribed rate, within the period specified commits an offence and is liable on summary conviction to a fine of ten thousand dollars and to imprisonment for two years.

### Avoidance of share transfers

**125**. Any transfer of shares, not being a transfer with the sanction of the liquidator, and any alteration in the status of the company's members made after the commencement of a voluntary winding up is void.

### General meeting at year's end

**126**. (1) In the event of a voluntary winding up continuing for more than one year, the liquidators shall summon a general meeting of the company at the end of the first year from the commencement of the winding up and at the end of each succeeding year and such meetings shall be held within three months of each anniversary of the commencement of the liquidation.

(2) At each meeting the liquidator shall lay before the meeting a report and account of that person's acts and dealings and the conduct of the winding up during the preceding year.

(3) A liquidator who fails to comply with this section commits an offence and is liable on conviction to a fine of ten thousand dollars.

### Final meeting prior to dissolution

**127**. (1) As soon as the company's affairs are fully wound up, the liquidator shall make a report and an account of the winding up showing how it has been conducted and how the company's property has been disposed of and thereupon shall call a general meeting of the company for the purpose of laying before it the account and giving an explanation for it.

(2) At least twenty-one days before the meeting the liquidator shall send a notice specifying the time, place and object of the meeting to each contributory in any manner authorised by the company's articles of association and published in the Gazette.

(3) The liquidator shall, no later than seven days after the meeting, make a return to the Registrar in the prescribed form specifying —

(a) the date upon which the meeting was held; and

(b) if a quorum was present, particulars of the resolutions, if any, passed at the meeting.

(4) A liquidator who fails to call a general meeting of the company as required by subsection (1) or fails to make a return as required by subsection (3) commits an offence and is liable on conviction to a fine of ten thousand dollars.

### Effect of winding up on share capital of company limited by guarantee

**128**. Where a company limited by guarantee and having a capital divided into shares is being wound up voluntarily, any share capital that may not have been called upon shall be deemed to be an asset of the company, and to be a specialty debt due from each member to the company to the extent of any sums that may be unpaid on any shares held by that person, and payable at such time as may be appointed by the liquidator.

### Reference of questions to Court

**129**. (1) The voluntary liquidator or any contributory may apply to the Court to determine any question arising in the voluntary winding up of a company or to exercise, as respects the enforcing of calls or any other matter, all or any of the powers which the Court might exercise if the company were being wound up under the supervision of the Court.

(2) The Court, if satisfied that the determination of the question or the required exercise of power will be just and beneficial, may accede wholly or partly to the application on such terms and conditions as it thinks fit, or make such other order on the application as it thinks just.

(3) The voluntary liquidator shall, within seven days of the making of an order under this section, forward a copy of the order to the Registrar who shall enter it in that person's records relating to the company.

### Expenses of voluntary winding up

**130**. (1) The expenses properly incurred in the winding up, including the remuneration of the liquidator, are payable out of the company's assets in priority to all other claims.

(2) The rate and amount of the liquidator's remuneration shall be fixed and payment authorised by resolution of the company.

(3) Each report and account laid before the company in general meetings by its liquidator shall contain all such information, including the rate at which the liquidator's remuneration is calculated and particulars of the work done, as may be necessary to enable the members to determine what expenses have been properly incurred and what remuneration is properly payable to the liquidator.

(4) If the company fails to approve the liquidator's remuneration and expenses or the liquidator is dissatisfied with the decision of the company, that person may apply to the Court which shall fix the rate and amount of that person's remuneration and expenses.

## Winding up subject to the supervision of the Court

### Application for supervision order

**131**. When a resolution has been passed by a company to wind up voluntarily, the liquidator or any contributory or creditor may apply to the Court for an order for the continuation of the winding up under the supervision of the Court, notwithstanding that the declaration of solvency has been made in accordance with section 124, on the grounds that —

(a) the company is or is likely to become insolvent; or

(b) the supervision of the Court will facilitate a more effective, economic or expeditious liquidation of the company in the interests of the contributories and creditors.

### Appointment of official liquidator

**132**. (1) When making a supervision order the Court —

(a) shall appoint one or more qualified insolvency practitioners; and

(b) may, in addition, appoint one or more foreign practitioners,

as liquidator or liquidators of the company and section 105 shall apply as if the Court had made a winding up order.

(2) Unless a voluntary liquidator is appointed as an official liquidator, that person shall prepare a final report and accounts within twenty-eight days from the date of the supervision order.

### Effect of supervision order

**133**. A supervision order shall take effect for all purposes as if it was an order that the company be wound up by the Court except that —

(a) the liquidation commenced in accordance with section 117; and

(b) the prior actions of the voluntary liquidator shall be valid and binding upon the company and its official liquidator.

## Offences of fraud, etc.

### Fraud, etc. in anticipation of winding up

**134**. (1) Where a company is ordered to be wound up by the Court, or passes a resolution for voluntary winding up, any person, who is or was an officer, professional service provider, voluntary liquidator, restructuring officer or controller of the company and who, within the twelve months immediately preceding the commencement of the winding up, has —

(a) concealed any part of the company's property to the value of ten thousand dollars or more or concealed any debt due to or from the company;

(b) removed any part of the company's property to the value of ten thousand dollars or more;

(c) concealed, destroyed, mutilated or falsified any documents affecting or relating to the company's property or affairs;

(d) made any false entry in any documents affecting or relating to the company's property or affairs;

(e) parted with, altered or made any omission in any document affecting or relating to the company's property or affairs; or

(f) pawned, pledged or disposed of any property of the company which has been obtained on credit and has not been paid for (unless the pawning, pledging or disposal was in the ordinary way of the company's business),

with intent to defraud the company's creditors or contributories commits an offence and is liable on conviction to a fine and to imprisonment for five years.

(2) In this section —

"**officer**" includes a shadow director.

### Transactions in fraud of creditors

**135**. Where a company is ordered to be wound up by the Court or passes a resolution for voluntary winding up, any officer, restructuring officer, controller or professional service provider of the company who —

(a) has made or caused to be made any gift or transfer of, or charge on, or has caused or connived at the levying of any execution against, the company's property; or

(b) has concealed or removed any part of the company's property,

with intent to defraud the company's creditors or contributories commits an offence and is liable on conviction to a fine and to imprisonment for five years.

### Misconduct in course of winding up

**136**. (1) Where a company is being wound up, whether by the Court or voluntarily, a person who is or was a director, officer, restructuring officer, controller or professional service provider of the company and who —

(a) does not to the best of that person's knowledge and belief fully and truly discover to the liquidator —

(i) all the company's property (except such part as has been disposed of in the ordinary way of the company's business);

(ii) the date on which and manner in which the company's property or any part thereof property was disposed of, if it was disposed of;

(iii) the persons to whom any property was transferred, if it was disposed of; or

(iv) the consideration paid for any property which was disposed of;

(b) does not deliver up to the liquidator or does not deliver up in accordance with the directions of the liquidator any of the company's property which is in that person's custody or under that person's control, and which that person is required by law to deliver up;

(c) does not deliver up to the liquidator or does not deliver up, in accordance with the directions of the liquidator, all documents in that person's custody

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 104 of 226



or under that person's control which belong to the company and which that person is required by law to deliver up;

(d) knows or believes that a false debt has been proved by any person in the winding up and fails to inform the liquidator of such knowledge or belief as soon as practicable;

(e) prevents the production of any document affecting or relating to the company's property or affairs; or

(f) destroys, mutilates, alters or falsifies any books, papers or securities, or makes or is privy to the making of any false or fraudulent entry in any register, book of account or document belonging to the company,

with intent to defraud the company's creditors or contributories commits an offence and is liable on conviction to a fine of twenty five thousand dollars or to imprisonment for a term of five years, or to both.

(2) In this section —

"**officer**" includes a shadow director.

### Material omissions from statement relating to company's affairs

**137**. (1) Where a company is being wound up, whether by the Court or voluntarily, a person who is or was a director, an officer, a manager, restructuring officer, controller or a professional service provider of the company, commits an offence if that person makes any material omission in any statement relating to the company's affairs, with intent to defraud the company's creditors or contributories.

(2) A person who commits an offence under subsection (1) is liable on conviction to a fine of twenty-five thousand dollars or to imprisonment for a term of five years, or to both.

(3) In this section —

"**officer**" includes a shadow director.

## General provisions

### Getting in the company's property

**138**. (1) Where any person has in that person's possession any property or documents to which the company appears to be entitled, the Court may require that person to pay, transfer or deliver such property or documents to the official liquidator.

(2) Where the official liquidator seizes or disposes of any property which that person reasonably believed belonged to the company, that person shall not be personally liable for any loss or damage caused to its true owner except in so far as such loss or damage is caused by that person's own negligence.

### Provable debts

**139**. (1) All debts payable on a contingency and all claims against the company whether present or future, certain or contingent, ascertained or sounding only in damages, shall be admissible to proof against the company and the official liquidator shall make a just estimate so far as is possible of the value of all such debts or claims as may be subject to any contingency or sound only in damages or which for some other reason do not bear a certain value.

(2) Foreign taxes, fines and penalties shall be admissible to proof against the company only if and to the extent that a judgment in respect of the same would be enforceable against the company pursuant to the *Foreign Judgments Reciprocal Enforcement Act (1996 Revision)* or any laws permitting the enforcement of foreign taxes, fines and penalties.

### Distribution of the company's property

**140**. (1) Subject to subsection (2), the property of the company shall be applied in satisfaction of its liabilities *pari passu* and subject thereto shall be distributed amongst the members according to their rights and interests in the company.

(2) The collection in and application of the property of the company referred to in subsection (1) is without prejudice to and after taking into account and giving effect to the rights of preferred and secured creditors and to any agreement between the company and any creditors that the claims of such creditors shall be subordinated or otherwise deferred to the claims of any other creditors and to any contractual rights of set-off or netting of claims between the company and any person or persons (including without limitation any bilateral or any multi-lateral set-off or netting arrangements between the company and any person or persons) and subject to any agreement between the company and any person or persons to waive or limit the same.

(3) In the absence of any contractual right of set-off or non set-off, an account shall be taken of what is due from each party to the other in respect of their mutual dealings, and the sums due from one party shall be set-off against the sums due from the other.

(4) Sums due from the company to another party shall not be included in the account taken under subsection (3) if that other party had notice at the time they became due that a petition for the winding up of the company was pending.

(5) Only the balance, if any, of the account taken under subsection (3) shall be provable in the liquidation or, as the case may be, payable to the liquidator as part of the assets.

### Preferential debts

**141**. (1) In the case of an insolvent company, the debts described in Schedule 2 shall be paid in priority to all other debts.

(2) The preferential debts shall —

(a) rank equally amongst themselves and be paid in full unless the assets available, after having exercised any rights of set-off or netting of claims, are insufficient to meet them in which case they shall abate in equal proportions; and

(b) so far as the assets of the company available for payment of general creditors are insufficient to meet them, have priority over the claims of holders of debentures secured by, or holders of any floating charge created by the company, and be paid accordingly out of any property comprised in or subject to that charge.

### Secured creditors

**142**. (1) Notwithstanding that a winding up order has been made, a creditor who has security over the whole or part of the assets of a company is entitled to enforce that person's security without the leave of the Court and without reference to the liquidator.

(2) Where the liquidator sells assets on behalf of a secured creditor, that person is entitled to deduct from the proceeds of sale a sum by way of remuneration equivalent to that which is or would be payable under section 109.

### Preferential charge on goods distrained

**143**. In the event of a landlord or other person entitled to receive rent distraining or having distrained on any goods or effects of the company within three months preceding the date of the winding up order, the debts to which priority is given by section 141 shall be a first charge on the goods or effects so distrained on or the proceeds of sale thereof.

### Effect of execution or attachment

**144**. (1) Where a creditor has issued execution against the goods or land of a company or has attached any debt due to it, and the company is subsequently wound up, that person is not entitled to retain the benefit of the execution or attachment against the liquidator unless that person has completed the execution or attachment before the commencement of the winding up.

(2) Notwithstanding subsection (1) —

(a) where a creditor has had notice of a meeting having been called at which a resolution for voluntary winding up is to be proposed, the date on which that person had notice is substituted for the purpose of subsection (1) for the date of commencement of the winding up;

(b) a person who purchases in good faith under a sale by the bailiff any goods of a company on which execution has been levied in all cases acquires a good title to them against the liquidator; and

(c) the rights conferred by subsection (1) on the liquidator may be set aside by the Court in favour of the creditor to such extent and subject to such terms as the Court thinks fit.

(3) For the purposes of this Act —

(a) an execution against goods is completed by seizure and sale;

(b) an execution against securities is completed upon making a charging order absolute;

(c) an attachment of a debt is completed by receipt of the debt; and

(d) an execution against land is completed by the registration of a charging order.

### Voidable preference

**145**. (1) Every conveyance or transfer of property, or charge thereon, and every payment obligation and judicial proceeding, made, incurred, taken or suffered by any company in favour of any creditor at a time when the company is unable to pay its debts within the meaning of section 93 with a view to giving such creditor a preference over the other creditors shall be voidable upon the application of the company's liquidator if made, incurred, taken or suffered within six months immediately preceding the commencement of a liquidation.

(2) A payment made as aforesaid to a related party of the company shall be deemed to have been made with a view to giving such creditor a preference.

(3) For the purposes of this section a creditor shall be treated as a "related party" if it has the ability to control the company or exercise significant influence over the company in making financial and operating decisions.

### Avoidance of dispositions made at an undervalue

**146**. (1) In this section and section 147 —

(a) "**disposition**" has the meaning ascribed in Part VI of the *Trusts Act (2021 Revision)*;

(b) "**intent to defraud**" means an intention to wilfully defeat an obligation owed to a creditor;

(c) "**obligation**" means an obligation or liability (which includes a contingent liability) which existed on or prior to the date of the relevant disposition;

(d) "**transferee**" means the person to whom a relevant disposition is made and shall include any successor in title; and

(e) "**undervalue**" in relation to a disposition of a company's property means —

(i) the provision of no consideration for the disposition; or

(ii) a consideration for the disposition the value of which in money or monies worth is significantly less than the value of the property which is the subject of the disposition.

(2) Every disposition of property made at an undervalue by or on behalf of a company with intent to defraud its creditors shall be voidable at the instance of its official liquidator.

(3) The burden of establishing an intent to defraud for the purposes of this section shall be upon the official liquidator.

(4) No action or proceedings shall be commenced by an official liquidator under this section more than six years after the date of the relevant disposition.

(5) In the event that any disposition is set aside under this section, then if the Court is satisfied that the transferee has not acted in bad faith —

(a) the transferee shall have a first and paramount charge over the property, the subject of the disposition, of an amount equal to the entire costs properly incurred by the transferee in the defence of the action or proceedings; and

(b) the relevant disposition shall be set aside subject to the proper fees, costs, pre-existing rights, claims and interests of the transferee (and of any predecessor transferee who has not acted in bad faith).

### Fraudulent trading

**147**. (1) If in the course of the winding up of a company it appears that any business of the company has been carried on with intent to defraud creditors of the company or creditors of any other person or for any fraudulent purpose the liquidator may apply to the Court for a declaration under this section.

(2) The Court may declare that any persons who were knowingly parties to the carrying on of the business in the manner mentioned in subsection (1) are liable to make such contributions, if any, to the company's assets as the Court thinks proper.

### Supply of utilities

**148**. (1) If a request is made by or with the concurrence of the liquidator (including a provisional liquidator) or a restructuring officer for the giving, after the effective date, of any of the supplies mentioned in subsection (2), the supplier —

(a) may make it a condition of the giving of the supply that the liquidator (including a provisional liquidator) or restructuring officer personally guarantees the payment of any charges in respect of the supply; but

(b) shall not make it a condition of the giving of the supply, or do anything which has the effect of making it a condition of the giving of the supply,

that any outstanding charges in respect of a supply given to the company before the effective date are paid.

(2) The supplies referred to in subsection (1) are —

(a) a supply of electricity;

(b) a supply of water; and

(c) a supply of telecommunication services.

(3) In this section —

"**effective date**" means —

(a) the date on which the provisional liquidator was appointed;

(b) the date on which the winding up order was made; or

(c) the date on which the restructuring officer was appointed.

### Interest on debts

**149**. (1) Subject to subsection (5), in a winding up interest is payable in accordance with this section on any debt proved in the winding up, including so much of any such debt as represents interest on the remainder of the debt.

(2) Any surplus remaining after the payment of the debts proved in a winding up shall, before being applied for any other purpose, be applied in paying interest on those debts in respect of the period during which they have been outstanding since the company went into liquidation.

(3) All interest under this section ranks equally, whether or not the debts on which it is payable ranked equally.

(4) The rate of interest payable under this section in respect of any debt is the greater of —

(a) the rate applicable to the currency of the liquidation prescribed from time to time by the *Judgment Debts (Rates of Interest) Rules (2021 Revision)* made under section 34 of the *Judicature Act (2021 Revision)*; and

(b) the rate applicable to that debt apart from the winding up.

(5) No interest shall be payable if the liquidation is concluded in less than six months or the accrued amount is less than five hundred dollars.

### Currency of the liquidation

**150**. (1) In the case of a solvent liquidation, a company's creditors are entitled to receive payment of their debts in the currency of the obligation.

(2) In the case of an insolvent liquidation, a company's liabilities shall be translated into the functional currency of the company at the exchange rates ruling —

(a) on the date of the commencement of the voluntary liquidation; or

(b) on the day upon which the winding up order is made.

(3) For the purposes of this section the functional currency of a company is the currency of the primary economic environment in which it operated as at the commencement of the liquidation.

## Dissolution of a Company

### Dissolution following voluntary winding up

**151**. (1) The Registrar shall, within three days of receiving a liquidator's return under section 127(3), register such return.

(2) Upon the expiration of three months from the registration of the return the company is deemed to be dissolved.

(3) Notwithstanding subsection (2), the Court may, on the application of the liquidator or any other person who appears to the Court to be interested, make an order deferring the date at which the dissolution of the company is to take effect to such date as the Court thinks fit.

(4) An application under this section shall not be made after the company is deemed to have been dissolved.

(5) An order of the Court made under this section shall be registered with the Registrar within seven days of the date upon which it was made.

### Dissolution following winding up by the Court

**152**. (1) When the affairs of the company have been completely wound up, the Court shall make an order that the company be dissolved from the date of that order or such other date as the Court thinks fit, and the company shall be dissolved accordingly.

(2) The effect of an order for dissolution in respect of a segregated portfolio is that its creditors' claims against the company shall be extinguished, notwithstanding that the company has not been liquidated and dissolved.

(3) The official liquidator shall file the order for dissolution with the Registrar.

(4) An official liquidator who fails to file the order for dissolution with the Registrar within fourteen days from the date, upon which it was perfected, commits an offence and is liable on summary conviction to a penalty of ten dollars for every day during which that person is so in default.

### Unclaimed dividends and undistributed assets

**153**. (1) Any unclaimed dividends or undistributed assets in the possession or control of the liquidator or former liquidator of a company shall be held by that person as trustee upon trust for the benefit of the contributories or creditors to whom such funds are owed.

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 111 of 226



(2) At the end of one year after the dissolution of the company, the former liquidator shall transfer any funds or other assets held on trust by that person to the Minister charged with responsibility for Finance who shall manage them in accordance with Part VIII of the *Public Management and Finance Act (2020 Revision)*.

## Insolvency rules and regulations

### Insolvency Rules Committee

**154**. (1) There shall be established an Insolvency Rules Committee comprising —

(a) the Chief Justice or other judge nominated by the Chief Justice in that person's place who shall be chairperson;

(b) the Attorney General or that person's nominee;

(c) two attorneys-at-law appointed by the Chief Justice on the recommendation of the Cayman Islands Legal Practitioners Association;

(d) a qualified insolvency practitioner appointed by the Chief Justice upon the recommendation of the Cayman Islands Institute of Professional Accountants;

(e) a person appointed by the Chief Justice who, in that person's opinion, demonstrates a wide knowledge of law, finance, financial regulation or insolvency practice; and

(f) a qualified insolvency practitioner appointed by the Chief Justice on the recommendation of the Recovery and Insolvency Specialists Association.

(2) The quorum of the Insolvency Rules Committee shall be the chairperson and three other members of the Committee; and the chairperson shall have a casting vote.

### Powers of the Insolvency Rules Committee

**155**. (1) The Insolvency Rules Committee shall have power —

(a) to make rules and prescribe forms for the purpose of giving effect to Parts IV, V and XVI;

(b) to prescribe court fees to be paid in connection with —

(i) applications under Part IV;

(ii) winding up proceedings under Part V; and

(iii) applications under Part XVI; and

(c) to make rules for the purpose of specifying —

(i) the qualifications which must be held by a person appointed to the office of official liquidator;

(ii) persons who are disqualified from holding office as official liquidator either generally or in relation to a particular company which is not in liquidation before the court;

(iii) the nature and scope of professional indemnity insurance, if any, required to be held by persons appointed to the office of official liquidators; and

(iv) the nature and scope of security bonds, if any, required to be posted by persons appointed to the office of official liquidator.

(2) The Insolvency Rules Committee, after consultation with the Authority and with any organisation representing insolvency practitioners in the Islands, shall make rules prescribing the rates of fees which may be charged by an official liquidator.

## PART VI - Removal of Defunct Companies

### Company not operating may be struck off register

**156**. (1) Where the Registrar has reasonable cause to believe that a company is not carrying on business or is not in operation, that person may strike the company off the register and the company shall thereupon be dissolved.

(2) A request on behalf of the company to strike the company off the register shall be accompanied by a fee of seventy-five dollars.

### Striking off for failure to pay fine

**156A**. Where an administrative fine imposed in accordance with Part XVIIB remains unpaid for ninety days after imposition of the fine, the Registrar may strike the company off the register and the company shall thereupon be dissolved.

### Company being wound up may be struck off register for want of liquidator, etc.

**157**. Where a company is being wound up, and the Registrar has reasonable cause to believe either that no liquidator is acting, or that the affairs of the company are fully wound up, that person may strike the company off the register and the company shall thereupon be dissolved.

### Registrar to publish fact of company being struck off register

**158**. The Registrar shall immediately publish a Government Notice to the effect that the company in question has been struck off the register, the date on which it has been struck off and the reason therefor. Such notice shall be gazetted.

### Company, creditor or member may apply to court for company to be reinstated

**159**. If a company or any member or creditor thereof feels aggrieved by the company having been struck off the register in accordance with this Law, the Court on the application of such company, member or creditor made within two years or such longer period not exceeding ten years as the Cabinet may allow of the date on which the company was so struck off, may, if satisfied that the company was, at the time of the striking off thereof, carrying on business or in operation, or otherwise, that it is just that the company be restored to the register, order the name of the company to be restored to the register, on payment by the company of a reinstatement fee equivalent to the original incorporation or registration fee and on such terms and conditions as to the Court may seem just, and thereupon the company shall be deemed to have continued in existence as if its name had not been struck off; and the Court may, by the same or any subsequent order, give such directions and make such provisions as seem just for placing the company and all other persons in the same position as nearly as may be as if the name of the company had not been struck off.

### Liability of members of company to remain

**160**. The striking off the register of any company under this Act shall not affect the liability, if any, of any director, manager, officer or member of the company, and such liability shall continue and may be enforced as if the company had not been dissolved.

### Registrar not liable for any act performed under this Part

**161**. No liability shall attach for any act performed or thing done by the Registrar under this Part.

### Vesting of property

**162**. Any property vested in or belonging to any company struck off the register under this Act shall thereupon vest in the Minister charged with responsibility for Finance and shall be subject to disposition by the Cabinet, or to retention for the benefit of the Islands.

## PART VII - Exempted Companies

### What companies may apply to be registered as exempted companies

**163**. Any proposed company applying for registration under this Law, the objects of which are to be carried out mainly outside the Islands or pursuant to a licence to carry on business in the Islands to which section 174 refers, may apply to be registered as an exempted company.

### Registration of exempted companies

**164**. On being satisfied that section 165 has been complied with, the Registrar shall register the company as an exempted company.

### Declaration by proposed company

**165**. A proposed exempted company applying for registration as an exempted company shall submit to the Registrar a declaration signed by a subscriber to the effect that the operation of the proposed exempted company will be conducted mainly outside the Islands or pursuant to a licence to carry on business in the Islands to which section 174 refers.

### Shares shall be non-negotiable

**166**. The shares of an exempted company shall be non-negotiable and shall be transferred only on the books of the company.

### *Repealed*

**167**. **Repealed** by section 3 of the *Companies (Amendment) Act, 2016 [Law 3 of 2016]*.

### Annual return

**168**. In January of each year after the year of its registration each exempted company that does not hold a licence to carry on business in the Islands to which section 174 refers shall furnish to the Registrar a return which shall be in the form of a declaration that —

(a) since the previous return or since registration, as the case may be, there has been no alteration in the memorandum of association, other than an alteration in the name of the company effected in accordance with section 31 or an alteration already reported in accordance with section 10;

(aa) states the nature of the business;

(b) the operations of the exempted company since the last return or since registration of the exempted company, as the case may be, have been mainly outside the Islands; and

(c) section 174 has been and is being complied with.

### Annual fee

**169**. (1) Every exempted company shall, in January of each year after the year of its registration, pay to the revenues of the Islands the annual fee specified in Part 4 of Schedule 5.

(2) Each such annual fee referred to in subsection (1) shall be tendered with the return required by section 168.

(3) An exempted company which defaults in submitting its annual return under section 168 or the fee specified in subsection (1) shall incur a penalty of —

(a) 33.33% of the annual fee specified in subsection (1) if the return is submitted or the fee and penalty are paid between the 1st April and the 30th June;

(b) 66.67% of the annual fee specified in subsection (1) if the return is submitted or the fee and penalty are paid between the 1st July and the 30th September; and

(c) 100% of the annual fee specified in subsection (1) if the return is submitted or the fee and penalty are paid between the 1st October and the 31st December.

### Failure to comply with section 168 or 169

**170**. Any exempted company which fails to comply with section 168 or 169 shall be deemed to be a defunct company and shall thereupon be dealt with as such under Part VI but without prejudice to its being registered again as though it were being registered for the first time.

### Registrar to give notice

**171**. Before taking action under section 170, the Registrar shall give one month's notice to the defaulting company and, if the default is made good before the expiry of such notice, sections 168 and 169 shall be deemed to have been complied with.

### False statement in declaration

**172**. If any declaration under section 165 or 168 contains any wilful false statement or misrepresentation the company shall, on proof thereof, be liable to be immediately dissolved and removed from the register and in such case any fee tendered under section 26(4) or 169 shall be forfeited to the Minister charged with responsibility for Finance for credit to the general revenue.

### Penalty for false declaration

**173**. Every director and officer of a company who knowingly makes or permits the making of any such declaration knowing it to be false commits an offence and is liable on summary conviction to a fine of five thousand dollars and to imprisonment for a term of one year, or to both.

### Prohibited enterprises

**174**. (1) An exempted company shall not carry on a trade or business in the Islands with any person, except in furtherance of the business of the exempted company carried on outside of the Islands, unless that exempted company holds a licence to carry on business in the Islands under any applicable law.

(2) Nothing in this section shall be construed so as to prevent an exempted company effecting and concluding contracts in the Islands and exercising in the Islands all its powers necessary for the carrying on of its business outside the Islands.

(3) An exempted company that holds a licence to carry on business in the Islands under any applicable law, shall from the date of issue of such licence, continue for all purposes as if incorporated and registered as an ordinary resident company under and subject to this Act the provisions of which shall apply to the company and to persons and matters associated with the company as if the company were incorporated and registered under this Act except as provided in section 7(1)(a), 8(1) and (4), 13(1)(a), 26(3), 30(3), 31(1), 41(2), 42, 50(2), 166, 169, 175 or 252(2).

### Prohibited sale of securities

**175**. An exempted company that is not listed on the Cayman Islands Stock Exchange is prohibited from making any invitation to the public in the Islands to subscribe for any of its securities.

### Penalty for carrying on business contrary to this Part

**176**. If an exempted company carries on any business in the Islands in contravention of this Part then, without prejudice to any other proceedings that may be taken in respect of the contravention, the exempted company and every director, provisional director and officer of the exempted company who is responsible for the contravention commits an offence and is liable on summary conviction to a fine of one hundred dollars for every day during which the contravention occurs or continues, and the exempted company shall be liable to be immediately dissolved and removed from the register.

### Electronic business by exempted companies

**177**. Nothing in this Act shall prohibit an exempted company from offering, by electronic means, and subsequently supplying, real or personal property, services or information from a place of business in the Islands or through an internet service provider or other electronic service provider located in the Islands.

## PART VIII - Exempted Limited Duration Companies

### Exempted company may apply to be registered as an exempted limited duration company

**178**. (1) An exempted company may, at any time, apply to the Registrar to be registered as an exempted limited duration company.

(2) An application may also be made under subsection (1) at the same time as an application is made —

(a) to register a proposed company as an exempted company;

(b) to re-register an ordinary non-resident company as an exempted company; or

(c) to register a company by way of continuation as an exempted company.

(3) An application under subsection (1) shall, in addition to any other fee that may be payable, be accompanied by an application fee of two hundred dollars.

### Registration as an exempted limited duration company

**179**. (1) The Registrar shall register as an exempted limited duration company an exempted company that has made application under section 178 if —

(a) the company has at least two subscribers or two members;

(b) where the company was not already registered as a company prior to the application —

(i) the memorandum of association of the company limits the duration of the company to a period of thirty years or less; and

(ii) the name of the company includes at its end "Limited Duration Company" or "LDC"; and

(c) where the company was already registered as a company prior to the application —

(i) the Registrar has been supplied, where the duration of the company is not already limited to a period of thirty years or less with a certified copy of a special resolution of the company altering its memorandum of association to limit the duration of the company to a period of thirty years or less; and

(ii) the Registrar has been supplied, in accordance with section 31, with a copy of a special resolution of the company changing its name to a name that includes at its end "Limited Duration Company" or "LDC".

(2) On registering an exempted company as an exempted limited duration company the Registrar shall —

(a) in the case of a company referred to in paragraph (b) of subsection (1), certify in the certificate of incorporation issued in accordance with section 27(3) or the certificate of registration by way of continuation issued in accordance with section 201(1) that the company is registered as an exempted limited duration company; and

(b) in the case of a company referred to in paragraph (c) of subsection (1), certify in the certificate of incorporation issued in accordance with section 31(2) that the company is registered as an exempted limited duration company stating the date of such registration.

(3) A special resolution passed for the purpose of paragraph (c)(ii) of subsection (1) has no effect until the company is registered as an exempted limited duration company.

## Contents of articles of association

**180**. (1) The articles of association of an exempted limited duration company may provide that the transfer of any share or other interest of a member of the company requires the unanimous resolution of all the other members.

(2) The articles of association of an exempted limited duration company may provide that the management of the company is vested in the members of the company either equally per capita or in proportion to their share or other ownership interest in the company or in such other manner as may be specified in the articles of association.

(3) Where the articles of association of an exempted limited duration company contain the provision referred to in subsection (2), the members of the company are to be considered to be the directors of the company but with power, if so provided by the articles of association, to delegate the management to a board of directors.

## Cancellation of registration

**181**. (1) A company ceases to be an exempted limited duration company if —

(a) the Registrar issues a certificate under section 207 on deregistration of the company;

(b) the Registrar issues a certificate of incorporation in accordance with section 31(2) which records a change of name for the company that does not include at its end "Limited Duration Company" or "LDC"; or

(c) the company passes a special resolution in accordance with section 10 to alter its memorandum of association to provide for a period of duration of the company that exceeds or is capable of exceeding thirty years,

and in the case of paragraph (b) or (c), the company pays a deregistration fee of four hundred dollars.

(2) On a company ceasing to be an exempted limited duration company —

(a) the Registrar shall, where the company has ceased to be an exempted limited duration company by virtue of paragraph (b) or (c) of subsection (1), issue to the company a certificate of incorporation altered to meet the circumstances of the case; and

(b) in all cases the certificate issued by virtue of section 179(2) ceases to have effect.

(3) A special resolution passed for the purpose of paragraph (c) of subsection (1) has no effect until a certificate of incorporation is issued by the Registrar under paragraph (a) of subsection (2).

### Electronic business by exempted limited duration companies

**182**. Nothing in this Act shall prohibit an exempted limited duration company from offering, by electronic means, and subsequently supplying, real or personal property, services or information from a place of business in the Islands or through an internet service provider or other electronic service provider located in the Islands.

## PART VIIIA - Special Economic Zone Companies

### Exempted company may apply to be registered as a special economic zone company

**182A**.(1) An exempted company that does not hold a licence to carry on business in the Islands to which section 174 refers may, at any time, apply to the Registrar to be registered as a special economic zone company.

(2) An application may also be made under subsection (1) at the same time as an application is made —

(a) to register a proposed company as an exempted company;

(b) to re-register an ordinary non-resident company as an exempted company; or

(c) to register a company by way of continuation as an exempted company.

(3) An application under subsection (1) shall be accompanied by a fee which shall be equal to the lowest band of the annual fee payable by an exempted company under section 169(1) as specified in paragraph (a) of Part 4 of Schedule 5.

### Registration as a special economic zone company

**182B**.(1) The Registrar shall register as a special economic zone company an exempted company that has made application under section 182A if —

(a) where the company was not already registered as a company prior to the application —

(i) the memorandum of association of the company specifies that the business of the company includes special economic zone business; and

(ii) the name of the company includes the words "Special Economic Zone Company" or the letters "SEZC"; and

(b) where the company was already registered as a company prior to the application —

(i) the Registrar has been supplied, in accordance with section 62, with a copy of a special resolution of the company altering its memorandum of association to carry on special economic zone business; and

(ii) the Registrar has been supplied, in accordance with sections 31 and 62, with a copy of a special resolution of the company changing its name to a name that includes the words “Special Economic Zone Company” or the letters “SEZC”.

(2) On registering an exempted company as a special economic zone company the Registrar shall —

(a) in the case of a company referred to in subsection (1)(a), certify in the certificate of incorporation issued in accordance with section 27(1) or the certificate of registration by way of continuation issued pursuant to section 201(1) that the company is registered as a special economic zone company; and

(b) in the case of a company referred to in subsection (1)(b), issue a certificate stating that the company is registered as a special economic zone company and stating the date of such registration.

(3) A special resolution passed for the purpose of subsection (1)(b)(ii) has no effect until the company is registered as a special economic zone company.

### Cancellation of registration

**182C**.(1) A company ceases to be a special economic zone company if —

(a) the Registrar issues a certificate under section 207 on deregistration of the company; or

(b) the Registrar issues a certificate of incorporation —

(i) in accordance with section 31(2) which records a change of name for the company that does not include the words “Special Economic Zone Company” or the letters “SEZC”; and

(ii) altered to meet the circumstances of the case, where the company passes a special resolution in accordance with section 10 to alter its memorandum of association to exclude the carrying on of special economic zone business,

and in the case of paragraph (b), the company pays a deregistration fee of four hundred dollars.

(2) On a company ceasing to be a special economic zone company the certificate issued by virtue of section 182B(2) ceases to have effect.

# PART IX - Overseas Companies

### Definition of foreign company

**183**. In this Part, a foreign company means an overseas company which, after the 1st December, 1961, establishes a place of business or commences carrying on business (which expressions in this Part include, without limiting their generality, the sale by or on behalf of an overseas company of its shares or debentures and offering, by electronic means, and subsequently supplying, real or personal property, services or information from a place of business in the Islands or through an internet service provider or other electronic service provider located in the Islands) within the Islands, and all overseas companies which before the 1st December, 1961 established a place of business or carried on business as aforesaid within the Islands at the 1st December, 1961.

### Documents, etc., to be delivered to Registrar by foreign companies

**184**. (1) Every foreign company shall, within one month after becoming a foreign company as defined in section 183, deliver to the Registrar for registration the following —

(a) a certified copy of the foreign company's certificate of formation or incorporation, or the equivalent document issued by the relevant authority as evidence of its formation or incorporation;

(b) a certificate of good standing issued by the relevant authority (or a certified copy thereof), or, if the relevant authority does not issue such certificates of good standing, a declaration signed by a director of the foreign company that the foreign company is in good standing with the relevant authority, in either case, dated no earlier than one month prior to the date of its delivery to the Registrar;

(c) a certified copy of any charter, bye-laws or memorandum or articles of association or other constitutional document (howsoever called) of the foreign company that is required to be filed with the relevant authority under the laws of the relevant jurisdiction in connection with the incorporation or formation of the foreign company;

(d) a list of its directors, containing such particulars with respect to the directors as are by this Act required to be contained with respect to directors in the register of the directors of a company; and

(e) the names and addresses of some one or more than one person resident in the Islands authorised to accept on its behalf service of process and any notices required to be served on it,

and shall pay to the Registrar the fee specified in Part 5 of Schedule 5.

(2) Every foreign company shall, in January of each year pay to the revenues of the Islands the annual fee specified in Part 5 of Schedule 5.

(3) A foreign company which defaults in paying the annual fee specified in subsection (2) shall incur a penalty of —

(a) 33.33% of the annual fee specified in subsection (2) if the fee and penalty are paid between the 1st April and the 30th June;

(b) 66.67% of the annual fee specified in subsection (2) if the fee and penalty are paid between the 1st July and the 30th September; and

(c) 100% of the annual fee specified in subsection (2) if the fee and penalty are paid between the 1st October and the 31st December.

### Power of certain foreign companies to hold land

**185**. (1) An overseas company shall not have power to hold land in the Islands except where it is a foreign company which has delivered to the Registrar documents, particulars and fees specified in section 184.

(2) If an overseas company which is not a foreign company holds land in the Islands or if a foreign company ceases to carry on, or have a place of business in the Islands or ceases to be a foreign company or fails to comply with this Part, the Cabinet may, whenever it appears to it to be necessary in the public interest, order the overseas company to transfer any lands held by, vested in or belonging to it to a person capable of holding such lands and of being registered as proprietor thereof under the *Registered Land Act (2018 Revision)*.

(3) If an overseas company fails to comply with an order under subsection (2), the Registrar may apply to the Court for an order that the land shall vest in the Minister charged with responsibility for Finance for the benefit of the Islands and be subject to the disposition of the Cabinet, and the Court may order accordingly.

(4) An order under subsection (2), and any order or proceedings required by the Court to be served in respect of an application under subsection (3) shall be served by personal service on a person, if any, whose name and address has been delivered by the company to the Registrar under paragraph (e) of section 184(1):

Provided that, in the event any such order or proceedings may not be served by such personal service, it or they may be served by —

(a) personal service on the attorney holding a power of attorney whereunder that person is authorised to accept service of orders and proceedings of the Court;

(b) sending it by registered post to the overseas company at its usual or last known postal address in the Islands;

(c) leaving it at the last known place of business of the overseas company in the Islands;

(d) publication in three consecutive issues of the Gazette;

(e) publication in three consecutive issues of a newspaper published and circulating in the Islands; or

(f) displaying it in a prominent position on the lands and causing it to be kept so displayed for one month.

(5) In this section —

"**hold land**" bears the meaning ascribed to that expression in section 32(3).

### Registration of foreign companies

**186**. (1) Upon compliance with section 184, the Registrar shall issue a certificate under that person's hand and seal of office that the foreign company is registered under this Law.

(2) A certificate of registration of a foreign company issued under subsection (1) shall be conclusive evidence that compliance has been made with all requirements of this Act in respect of registration.

### Return to be delivered to Registrar where documents etc., altered

**187**. If, in the case of any foreign company, an alteration is made in or to any document or other information filed with the Registrar pursuant to section 184(1) (other than a document referred to in section 184(1)(b)) the foreign company shall, within thirty days after the date of such alteration, deliver to the Registrar for registration a return containing the particulars of the alteration.

### Obligation to state name of foreign company, whether limited, and country where formed or incorporated

**188**. Every foreign company shall —

(a) in every prospectus inviting subscriptions for its shares or debentures in the Islands state the country in which the foreign company is formed or incorporated;

(b) conspicuously exhibit on every place where it carries on business in the Islands the name of the foreign company and the country in which the foreign company is formed or incorporated;

(c) cause the name of the foreign company and of the country in which it is formed or incorporated to be stated in legible characters on all bill heads, letter paper, notices, advertisements and other official publications; and

(d) if the liability of the members of the foreign company is limited, cause notice of that fact to be stated in every such prospectus as aforesaid and on all bill heads, letter paper, notices, advertisements and other official publications in the Islands, and to be affixed on every place where it carries on its business in the Islands.

### Service on foreign company to which this Part applies

**189**. Any process or notice required to be served on a foreign company shall be sufficiently served if addressed to any person whose name has been delivered to the Registrar under sections 184 or 187 and left at or sent by post to the address which has been so delivered:

Provided that —

(a) where any such foreign company makes default in delivering to the Registrar the name and address of a person resident in the Islands who is authorised to accept on behalf of the foreign company service of process or notices; or

(b) if, at any time, all the persons whose names and addresses have been so delivered are dead or have ceased so to reside, or refuse to accept service on behalf of the company, or for any reason cannot be served,

a document may be served on the foreign company by leaving it at or sending it by post to any place of business established by the foreign company in the Islands.

### Deeds, etc., of overseas companies

**190**. The execution of a contract or other instrument in accordance with section 81(6)(a) and the fact that it was executed in accordance with a requirement referred to in section 81(6)(b) may be proved by the affidavit or solemn declaration of a witness to the execution of the contract or other instrument sworn or made before a notary public or any other person qualified to administer oaths in any jurisdiction.

### Execution of deeds, etc.

**191**. (1) An overseas company may appoint and empower a person either generally or in respect of a specified matter, to execute deeds or instruments under seal on its behalf.

(2) Any appointment under subsection (1) need not be made by deed or instrument under seal, but any person so appointed otherwise than by deed or instrument under seal shall not constitute the donee of a power under the *Powers of Attorney Act (1996 Revision)* (but without prejudice to the authority otherwise conferred upon them by the overseas company).

(3) A deed or instrument under seal, signed by a person on behalf of an overseas company pursuant to authority conferred pursuant to subsection (1), shall be binding on that overseas company and shall have effect as if it were executed as such by the overseas company.

### Removing company's name from register

**192**. If any foreign company ceases to carry on or have a place of business in the Islands it shall forthwith give notice of the fact to the Registrar and, as from the date on which notice is so given, the obligation of the foreign company to deliver any document to the Registrar shall cease:

Provided that where the Registrar is satisfied by any other means that the foreign company has ceased to carry on or have a place of business in the Islands it shall be lawful for the Registrar to close the file of the foreign company and thereupon the obligation of the foreign company to deliver any document to the Registrar shall cease.

### Penalties for failing to comply with this Part

**193**. Whenever any foreign company fails to comply with any of the foregoing provisions of this Part, it and every officer or agent of it, commits an offence and is liable to a fine of one hundred dollars or, in the case of a continuing offence, a further fine of ten dollars for every day during which the default continues.

### Definitions in this Part

**194**. (1) In this Part —

"**certified copies**" includes copies (whether in the form of an electronic record or otherwise) certified as true copies of the originals by —

(a) the relevant authority;

(b) a notary public in the relevant jurisdiction or in the Islands; or

(c) a person qualified to practise law in the relevant jurisdiction or in the Islands, or

(d) any other person acceptable to the Registrar;

"**director**" in relation to a foreign company, means any director, officer, member or other person (howsoever called) in whom the management of the foreign company is vested;

"**electronic record**" has the same meaning as in Part I of the *Electronic Transactions Act (2003 Revision)*;

"**excluded share transfer or share registration office**" means a share transfer or share registration office provided within the Islands by a person licensed or registered to do so under the regulatory laws;

"**place of business**" includes a share transfer or share registration office (except an excluded share transfer or share registration office);

"**relevant authority**" in respect of a foreign company, means the national, state or local government authority, registry or other body in the relevant jurisdiction that is responsible for forming or incorporating the foreign company; and

"**relevant jurisdiction**" means the jurisdiction in which the foreign company has been formed or incorporated.

(2) In this Part, an overseas company shall not be deemed to have established or to have commenced carrying on business within the Islands solely by reason of having an excluded share transfer or share registration office.

### Power of Registrar to prohibit sale

**195**. The Registrar may, at any time and from time to time, prohibit the sale of any shares or debentures of any foreign company in the Islands or any invitation in the Islands to subscribe for any shares or debentures of a foreign company, and in the event of any violation by a foreign company of such prohibition the foreign company and each of its directors and officers is liable on summary conviction to a fine of one thousand dollars and, in default of payment by any director or officer, to imprisonment for three months.

## PART X - Application of Law to Companies Formed or Registered in the Islands

### Application to existing companies

**196**. In the application of this Act to existing companies, it shall apply in the same manner in the case of —

(a) a limited company, other than a company limited by guarantee, as if the company had been formed and registered under this Act as a company limited by shares;

(b) a company limited by guarantee, as if the company had been formed and registered under this Act as a company limited by guarantee; and

(c) a company other than a limited company, as if the company had been formed and registered under this Act as an unlimited company.

### Date of incorporation

**197**. A reference, express or implied, to the date of incorporation of an existing company shall be, where appropriate, construed as a reference to the date on which the company was incorporated and recorded under the laws relating to companies then in force in the Islands.

### Articles of association remain

**198**. The articles of association of an existing company shall, so far as the same are not contrary to any express provisions of this Law, remain in force until altered or rescinded.

# PART XI - General

### Fees in lieu of other provisions

**199**. (1) Wherever this Act provides for or requires the filing of any document, notice or return with the Registrar or the issue of any certificate or the Registrar provides a copy of any document in respect of which no fee is elsewhere specifically provided, the fees specified in Part 6 of Schedule 5 shall be payable.

(2) The Registrar may, in that person's discretion, extend the time within which any thing is required to be done by this Law, whether the time prescribed therefor has expired or not.

(3) Notwithstanding any provision of this Act which prescribes a specific *per diem* penalty in respect of a default of any obligation to make a filing or to maintain a record set out in this Law, it shall be lawful for the Registrar, in any case where the aggregate *per diem* penalty has exceeded the amount of five hundred dollars and that person is satisfied that the failure is not due to wilful default, to at any time, accept payment of a penalty in the amount of five hundred dollars in lieu thereof.

(4) Without prejudice to the powers exercisable by the Registrar under this Law, all sums that that person is entitled to recover by way of fees or penalties are recoverable either summarily as a civil debt, or as a simple contract debt, in any court of competent jurisdiction.

### Express fees

**200**. (1) The Registrar, on receipt of —

(a) an application for registration under section 26, 178, 184, 201, 233, or 237;

(b) an application for re-registration under section 210;

(c) an application for the registration of a change of name under section 31; or

(d) an application for any other certificate which the Registrar is authorised to provide under this Law,

which is accompanied by an express fee of an amount specified in subsection (2), shall complete the transaction for which the application has been made by —

(i) the end of the working day, where the application and all fees are received by 12 noon; or

(ii) 12 noon on the following working day, where the application and all fees are received after 12 noon.

(2) The express fee referred to in subsection (1) is —

(a) for an application referred to in paragraph (a) or (b) of subsection (1)- $400; and

(b) for an application referred to in paragraph (c) or (d) of subsection (1)- $100.

### Certificate of good standing

**200A.**(1) The Registrar may on application made by a company issue a certificate of good standing to a company that is in good standing in accordance with subsection (2).

(2) A certificate of good standing is evidence of the fact that the company is in good standing on the date that the certificate of good standing is issued.

(3) A company shall be deemed to be in good standing if all fees and penalties under this Act have been paid and the Registrar has no knowledge that the company is in default under this Law.

## PART XII - Transfer by Way of Continuation

### Application for continuation

**201**. (1) A body corporate incorporated, registered or existing with limited liability and a share capital under the laws of any jurisdiction outside the Islands (which body corporate is in this Part referred to as a "registrant") may apply to the Registrar to be registered by way of continuation as an exempted company limited by shares under this Law.

(2) The Registrar shall register a registrant if —

(a) the registrant is incorporated, registered or existing in a jurisdiction whose laws permit or do not prohibit the transfer of the registrant in the manner hereinafter provided in this Part (hereinafter in this section referred to as "a relevant jurisdiction");

(b) the registrant has paid to the Registrar a fee equal to the fee payable on the registration of an exempted company under section 26;

(c) the registrant has delivered to the Registrar the documents listed in paragraphs (a) to (d) of section184(1) (in this Part referred to as "the charter documents");

(d) the name of the registrant is acceptable to the Registrar under section 30 or the registrant has undertaken to change the name to an acceptable name within sixty days of registration;

(e) the registrant has filed with the Registrar notice of the address of its proposed registered office in the Islands;

(f) the registrant has filed with the Registrar a declaration signed by a director of the registrant that the operations of the registrant will be conducted mainly outside the Islands;

(g) no petition or other similar proceeding has been filed and remains outstanding or order made or resolution adopted to wind up or liquidate the registrant in any jurisdiction;

(h) no receiver, trustee, administrator or other similar person has been appointed in any jurisdiction and is acting in respect of the registrant, its affairs or its property or any part thereof;

(i) no scheme, order, compromise or other similar arrangement has been entered into or made in any jurisdiction whereby the rights of creditors of the registrant are and continue to be suspended or restricted;

(j) the registrant is able to pay its debts as they fall due;

(k) the application for registration is *bona fide* and not intended to defraud existing creditors of the registrant;

(l) the registrant has delivered to the Registrar an undertaking signed by a director of the registrant that notice of the transfer has been or will be given within twenty-one days to the secured creditors of the registrant;

(m) any consent or approval to the transfer required by any contract or undertaking entered into or given by the registrant has been obtained, released or waived, as the case may be;

(n) the transfer is permitted by and has been approved in accordance with the charter documents of the registrant;

(o) the laws of the relevant jurisdiction with respect to transfer have been or will be complied with;

(p) the registrant is constituted in a form or substantially a form which could have been incorporated as an exempted company limited by shares under this Law;

(q) the registrant will, upon registration hereunder, cease to be incorporated, registered or exist under the laws of the relevant jurisdiction;

(r) the registrant, if it is (or will when registered by way of continuation be) prohibited from carrying on its business in or from within the Islands unless licensed under any law, has applied for and obtained the requisite licence; and

(s) the Registrar is not aware of any other reason why it would be against the public interest to register the registrant.

(3) Paragraphs (g), (h), (i), (j), (k), (m), (n), (o) and (q) of subsection (2) shall be satisfied by filing with the Registrar a declaration or affidavit of a director of the registrant to the effect that, having made due enquiry, that person is of the opinion that the requirements of those paragraphs have been met, and which declaration or affidavit shall include a statement of the assets and liabilities of the registrant made up to the latest practicable date before making the declaration or affidavit.

(4) A person who, being a director, makes a declaration or affidavit under subsection (3) without reasonable grounds therefor commits an offence and is liable on summary conviction to a fine of fifteen thousand dollars and to imprisonment for five years.

(5) Without prejudice to Part IX, a registrant may apply to be provisionally registered by way of continuation as an exempted company limited by shares under this Law.

(6) The Registrar shall provisionally register a registrant if —

(a) the registrant complies with the requirements of paragraphs (a), (c), (e), (f), (g), (h), (i), (j) and (p) of subsection (2); and

(b) the registrant has paid to the Registrar a fee of one thousand five hundred dollars.

(7) Paragraphs (g), (h), (i), (j) and (p) of subsection (2) shall be satisfied by filing with the Registrar a declaration or affidavit of a director of the registrant to the effect that, having made due enquiry, that person is of the opinion that the requirements of those paragraphs have been met, and subsection (4) shall, *mutatis mutandis* apply with respect to such declaration or affidavit.

(8) The Registrar shall register a registrant which is provisionally registered under this Part upon the requirements of paragraphs (b), (d), (k), (l), (m), (n), (o), (q), (r) and (s) of subsection (2) being met, as to which subsection (3) shall, *mutatis mutandis*, apply where relevant.

(9) A registrant which is provisionally registered shall —

(a) within sixty days after registration, deliver, to the Registrar details of any changes in the information required by paragraphs (c) and (e) of subsection (2);

(b) file with the Registrar in January of each year following provisional registration, a declaration or affidavit in the form described in subsection (7); and

(c) pay to the Registrar in January of each year following provisional registration, a fee of one thousand dollars.

(10) A registrant which is provisionally registered and which fails to comply with paragraphs (b) and (c) of subsection (9) by 30th June in such year shall cease to be provisionally registered but without prejudice to being provisionally registered anew hereunder upon complying with the requirements of this Part.

**Registration under this Part**

**202**. (1) Upon registration of a registrant under this Part, the Registrar shall issue a certificate under that person's hand and seal of office that the registrant is registered by way of continuation as an exempted company and specifying the date of such registration, and section 27(3) shall apply, *mutatis mutandis*, to such certificate.

(2) The Registrar shall enter in the register of companies the date of registration of the registrant and, to the extent possible with respect to the registrant, particulars of the matters specified.

(3) From the date of registration of the registrant it shall continue as a body corporate for all purposes as if incorporated and registered as an exempted company under and subject to this Act the provisions of which shall apply to the company and to persons and matters associated therewith as if such company were so incorporated and registered and such company shall have, but without limitation to the generality of the foregoing —

(a) the capacity to perform all the functions of an exempted company;

(b) the capacity to sue and to be sued;

(c) perpetual succession; and

(d) the power to acquire, hold and dispose of property,

and the members of the company shall have such liability to contribute to the assets of the company in the event of its being wound up under this Act as is provided therein:

Provided always that section 201 and this section shall not operate —

(e) to create a new legal entity;

(f) to prejudice or affect the identity or continuity of the registrant as previously constituted;

(g) to affect the property of the registrant;

(h) to affect any appointment made, resolution passed or any other act or thing done in relation to the registrant pursuant to a power conferred by any of the charter documents of the registrant or by the laws of the jurisdiction under which the registrant was previously incorporated, registered or existing;

(i) except to the extent provided by or pursuant to this Part, to affect the rights, powers, authorities, functions and liabilities or obligations of the registrant or any other person; or

(j) to render defective any legal proceedings by or against the registrant and any legal proceedings that could have been continued or commenced by or against the registrant before its registration hereunder may,

notwithstanding the registration, be continued or commenced by or against the registrant after registration.

(4) Upon provisional registration of a registrant under this Part the Registrar shall issue a certificate under that person's hand and seal of office that the registrant is provisionally registered by way of continuation as an exempted company and specifying the date of such provisional registration.

(5) The Registrar shall enter in a register maintained for the purpose the date of provisional registration and name of the registrant.

(6) If a registrant which is provisionally registered under this Part is registered pursuant to section 201(2) it shall automatically cease to be provisionally registered and the Registrar shall cancel such provisional registration.

(7) Subsection (3) shall not apply to a registrant which is provisionally registered unless and until it is registered under section 201(2), and nothing in this section shall be construed as enabling a registrant which is provisionally registered to carry on business within the Islands unless it complies with the requirements of Part IX.

### Amendment, etc., of charter documents

**203**. (1) A registrant shall, within ninety days of registration by special resolution passed in accordance with this Law, make such amendments, alterations, modifications, variations, deletions and additions (in this section referred to as "changes"), if any, to its charter documents as are necessary to ensure that they comply with the requirements of this Act as they relate to an exempted company.

(2) Within ninety days of registration, the registrant —

(a) may, instead of passing a special resolution making the changes required by subsection (1); or

(b) shall, whether or not it has passed such a special resolution making, or purporting to make, such changes, if the Registrar so directs,

apply to the Court for an order approving such changes and the Court, if satisfied that the changes (with such modifications, if any, as it considers appropriate) are necessary to ensure that the charter documents of the registrant comply with the requirements of this Law, may approve them accordingly and make such consequential orders as it thinks fit. Changes, when so approved, shall take effect as if they formed part of the charter documents.

(3) A copy of the special resolution passed under subsection (1) or of the order of the Court made under subsection (2) shall be filed with and registered by the Registrar whose certificate of registration thereof shall be conclusive evidence that the charter documents comply with the requirements of this Law.

(4) After registration of the registrant and until such time as the charter documents of the registrant are changed to comply with the requirements of this Act or to the extent they cannot be changed so to comply, this Act shall prevail.

(5) The provisions of the charter documents of a registrant which would, if the company had been incorporated under this Law, have been required by this Act to be included in its memorandum of association shall be deemed to be the registered memorandum of association of the company and the provisions of the charter documents that do not by virtue of the foregoing constitute the registered memorandum of association shall be deemed to be the registered articles of association of the company, and the company and its members shall be bound thereby accordingly.

### Effect of registration under this Part on companies registered under Part IX

**204**. Where a registrant is also registered as a foreign company under Part IX it shall, upon registration under Part XII, automatically cease to be registered under Part IX and the Registrar shall cancel such registration.

### Notice of registration, etc., to be given in Gazette

**205**. The Registrar shall forthwith give notice in the Gazette of the registration of a registrant under this Part, the jurisdiction under whose laws the registrant was previously incorporated, registered or existing and the previous name of the registrant if different from the current name.

### Deregistration of exempted companies including companies registered under this Part

**206**. (1) An exempted company incorporated and registered with limited liability and a share capital under this Law, including a company registered by way of continuation under this Part, which proposes to be registered by way of continuation as a body corporate limited by shares under the laws of any jurisdiction outside the Islands (hereinafter called an “applicant”) may apply to the Registrar to be deregistered in the Islands.

(2) The Registrar shall so deregister an applicant if —

(a) the applicant proposes to be registered by way of continuation in a jurisdiction which permits or does not prohibit the transfer of the applicant in the manner provided in this part (hereinafter in this section referred to as “a relevant jurisdiction”);

(b) the applicant has paid to the Registrar a fee equal to three times the annual fee that would have been payable pursuant to section 169 in the January immediately preceding the application for deregistration by an exempt company having the same registered capital as the applicant on the date of that application;

(c) the applicant has filed with the Registrar notice of any proposed change in its name and of its proposed registered office or agent for service of process in the relevant jurisdiction;

(d) no petition or other similar proceeding has been filed and remains outstanding or order made or resolution adopted to wind up or liquidate the applicant in any jurisdiction;

(e) no receiver, trustee or administrator or other similar person has been appointed in any jurisdiction and is acting in respect of the applicant, its affairs or its property or any part thereof;

(f) no scheme, order, compromise or other similar arrangement has been entered into or made whereby the rights of creditors of the applicant are and continue to be suspended or restricted;

(g) the applicant is able to pay its debts as they fall due;

(h) the application for deregistration is *bona fide* and not intended to defraud creditors of the applicant;

(i) the applicant has delivered to the Registrar an undertaking signed by a director that notice of the transfer has been or will be given within twenty-one days to the secured creditors of the applicant;

(j) any consent or approval to the transfer required by any contract or undertaking entered into or given by the applicant has been obtained, released or waived, as the case may be;

(k) the transfer is permitted by and has been approved in accordance with the memorandum and articles of association of the applicant;

(l) the laws of the relevant jurisdiction with respect to transfer have been or will be complied with;

(m) the applicant, if licensed under the *Banks and Trust Companies Act (2021 Revision)*, or the *Insurance Act, 2010 [Law 32 of 2010]* or, if so previously licensed and in respect of which such licence shall have been suspended or revoked and not reinstated, has obtained consent of the Authority to the transfer;

(n) the applicant will upon registration under the laws of the relevant jurisdiction continue as a body corporate limited by shares; and

(o) the Registrar is not aware of any other reason why it would be against the public interest to deregister the applicant.

(3) Paragraphs (d), (e), (f), (g), (h), (j), (k), (l) and (n) of subsection (2) shall be satisfied by filing with the Registrar a declaration or affidavit of a director of the applicant to the effect that, having made due enquiry, that person is of the opinion that the requirements of those paragraphs have been met and which declaration or affidavit shall include a statement of the assets and liabilities of

the applicant made up to the latest practicable date before the making of the declaration or affidavit.

(4) A person who, being a director, makes a declaration or affidavit under subsection (3) without reasonable grounds therefor commits an offence and is liable on summary conviction to a fine of fifteen thousand dollars and to imprisonment for five years.

### Certification of deregistration, etc.

**207**. (1) Upon deregistration of an applicant under this Part, the Registrar shall issue a certificate under that person's hand and seal of office that the applicant has been deregistered as an exempted company and specifying the date of such deregistration.

(2) The Registrar shall enter in the register of companies the date of deregistration of the applicant.

(3) From the commencement of the date of deregistration the applicant shall cease to be a company for all purposes under this Act and shall continue as a company under the laws of the relevant jurisdiction:

Provided always that this shall not operate —

(a) to create a new legal entity;

(b) to prejudice or affect the identity or continuity of the applicant as previously constituted;

(c) to affect the property of the applicant;

(d) to affect any appointment made, resolution passed or any other act or thing done in relation to the applicant pursuant to a power conferred by the memorandum and articles of association of the applicant or by the laws of the Islands;

(e) except to the extent provided by or pursuant to this Part to affect the rights, powers, authorities, functions and liabilities or obligations of the applicant or any other person; or

(f) to render defective any legal proceedings by or against the applicant, and any legal proceedings that could have been continued or commenced by or against the applicant before its deregistration hereunder may, notwithstanding the deregistration, be continued or commenced by or against the applicant after deregistration.

### Application of Part IX to deregistered companies

**208**. Part IX shall, where relevant, apply to any company which is deregistered under this Part.

### Notice of deregistration, etc., to be given in the Gazette

**209**. The Registrar shall forthwith give notice in the Gazette of the deregistration of an applicant under this Part, the jurisdiction under the laws of which the applicant has been registered by way of continuation and name of the applicant, if changed.

## PART XIII – Re-registration as a Means of an Ordinary Non-resident Company Becoming Exempted

### Ordinary non-resident company may be re-registered as exempted company

**210**. (1) Subject to this section and section 211, an ordinary non-resident company may be re-registered as an exempted company if —

(a) the company passes a special resolution that it should be so re-registered; and

(b) an application for re-registration is delivered to the Registrar together with the necessary documents.

(2) Such special resolution shall —

(a) make such alterations in the company's memorandum of association as are necessary to bring it in substance and in form into conformity with the requirements of this Act with respect to the memorandum of association of an exempted company; and

(b) make such alterations in the company's articles of association as are requisite in the circumstances.

(3) Such application shall be signed by a director of the company, and accompanied by —

(a) a copy of the memorandum and articles as altered by the special resolution; and

(b) a declaration by a director of the company that the operation of the company will be conducted mainly outside the Islands.

(4) A special resolution that an ordinary non-resident company be re-registered as an exempted company may change the company's name to any name by which an exempted company could be registered.

(5) The application shall be accompanied by a re-registration fee equal to the fee payable on the registration of an exempted company under section 26.

**Effect of re-registration of ordinary non-resident company as an exempted company**

**211**. (1) If, on an application under section 210, the Registrar is satisfied that an ordinary non-resident company may be re-registered under that section as an exempted company, that person shall —

(a) retain the application and other documents delivered to that person under the section; and

(b) issue to the company a certificate of re-registration stating that the company has been re-registered as an exempted company.

(2) Upon the issue to a company of a certificate of re-registration under this section —

(a) the company, by virtue of the issue of that certificate, becomes an exempted company; and

(b) any alterations in the memorandum and articles set out in the special resolution take effect accordingly:

Provided that the foregoing shall not operate —

(i) to create a new legal entity;

(ii) to prejudice or affect the identity or continuity of the company;

(iii) to affect the property of the company;

(iv) to affect any appointment made, resolution passed or any other act or thing done in relation to the company pursuant to a power conferred by the memorandum and the articles of association of the company or by the laws of the Islands;

(v) to affect the rights, powers, authorities, functions and liabilities or obligations of the company or any other person; or

(vi) to render defective any legal proceedings by or against the company, and legal proceedings that could have been continued or commenced by or against the company before its re-registration hereunder may, notwithstanding the re-registration, be continued or commenced by or against the company after re-registration.

(3) The certificate of re-registration is conclusive evidence —

(a) that the requirements of this Act in respect of registration and of matters precedent and incidental thereto have been complied with; and

(b) that the company is an exempted company.

# PART XIV - Segregated Portfolio Companies

## Definitions in this Part

**212**. In this Part —

"**receiver**" means the person specified in a receivership order for the purposes specified in section 224(3);

"**receivership order**" means an order made under section 224(1);

"**segregated portfolio company**" means an exempted company which is registered under section 213(1);

"**segregated portfolio shares**" means shares issued under section 217(1);

"**segregated portfolio share capital**" means the proceeds of the issue of segregated portfolio shares; and

"**segregated portfolio share dividend**" means a dividend paid under section 217(3).

## Applications for registration

**213**. (1) Subject to subsection (2) and section 214, any exempted company may apply to the Registrar to be registered as a segregated portfolio company.

(2) Nothing in this Part shall derogate from the Authority's powers to determine, where relevant, whether a segregated portfolio company is suitable to be licensed under the regulatory laws.

(3) An application may also be made under subsection (1) at the same time as application is made —

(a) to re-register an ordinary non-resident company as an exempted company;

(b) to register a company by way of continuation as an exempted company; or

(c) to register as an exempted limited duration company.

(4) An application under subsection (1) shall, in addition to any other fee that may be payable, be accompanied by the fee specified in Part 7 of Schedule 5.

(5) A segregated portfolio company shall, on paying the annual fee payable under section 169, pay the additional fee specified in Part 7 of Schedule 5 and the additional annual fee specified in Part 7 of Schedule 5 in respect of each segregated portfolio it has created (other than those in respect of which notice of termination has been given under subsection (6)), both of which shall be tendered in accordance with section 169(2).

(6) At the same time as it tenders the fees in accordance with subsection (5) a segregated portfolio company shall furnish to the Registrar a notice containing the names of each segregated portfolio it has created (other than those in respect of which notice of termination has been given hereunder in a prior year) and

indicating those which have been terminated under section 228A since the date of the last notice under this subsection.

(7) A segregated portfolio company which fails to furnish the notice in accordance with subsection (6) shall incur a penalty of ten dollars for every day after 31st March of each year during which the notice is not filed.

### Conversions of existing companies

**214**. (1) Where an exempted company has been registered prior to an application under section 213(1) the company shall —

(a) file with the Registrar a declaration made by at least two directors setting out an accurate statement —

(i) of the assets and liabilities of the company as at a date within three months prior to the date of the declaration;

(ii) of any transaction or event which, as at the date of the declaration, has occurred or is expected to occur between the date of the statement of assets and liabilities prepared pursuant to subparagraph (i) and the date of registration of the company as a segregated portfolio company which, if it had occurred before the date of the declaration, would have caused material changes to the assets and liabilities disclosed in the declaration;

(iii) that the segregated portfolio company intends to operate, and the assets and liabilities which the company proposes to transfer to each of those segregated portfolios;

(iv) that, on registration as a segregated portfolio company, the company and each segregated portfolio will be solvent;

(v) that each creditor of the company has consented in writing to the transfer of assets and liabilities into segregated portfolios or alternatively that adequate notice has been given in accordance with subsection (2) to all creditors of the company and that ninety-five per cent by value of the creditors have consented to that transfer of assets and liabilities into segregated portfolios;

(b) pass a special resolution authorising the transfer of assets and liabilities into segregated portfolios and attach a copy of such resolution to the declaration in subparagraph (a); and

(c) where the company is licensed by the Authority under the regulatory laws, obtain the written consent of the Authority and attach a copy of such consent to the declaration referred to in paragraph (a).

(2) For the purposes of subsection (1)(a)(v), adequate notice is given if notice in writing is sent to each creditor having a claim against the company exceeding one thousand dollars.

(3) A director who makes a declaration under subsection (1)(a) without reasonable grounds or who knowingly makes a false declaration commits an offence and is liable on summary conviction to a fine of five thousand dollars or to imprisonment for one year.

(4) For the avoidance of doubt, the provisions of the *Fraudulent Dispositions Act (1996 Revision)* shall not apply to an initial transfer of assets and liabilities into segregated portfolios pursuant to an application under section 213(1).

### Designation

**215**. A segregated portfolio company shall include in its name the letters "SPC" or the words "Segregated Portfolio Company".

### Segregated portfolios

**216**. (1) A segregated portfolio company may create one or more segregated portfolios in order to segregate the assets and liabilities of the segregated portfolio company held within or on behalf of a segregated portfolio from the assets and liabilities of the segregated portfolio company held within or on behalf of any other segregated portfolio of the segregated portfolio company or the assets and liabilities of the segregated portfolio company which are not held within or on behalf of any segregated portfolio of the segregated portfolio company.

(2) A segregated portfolio company shall be a single legal entity and any segregated portfolio of or within a segregated portfolio company shall not constitute a legal entity separate from the segregated portfolio company.

(3) Each segregated portfolio shall be separately identified or designated and shall include in such identification or designation the words "Segregated Portfolio" or "SP" or "S.P.".

### Shares and dividends

**217**. (1) A segregated portfolio company may create and issue shares in one or more classes or series (including different classes or series relating to the same segregated portfolio), the proceeds of the issue of which shall be included in the segregated portfolio assets of and accounted for in the segregated portfolio in respect of which the segregated portfolio shares are issued.

(2) The proceeds of the issue of shares, other than segregated portfolio shares, shall be included in the segregated portfolio company's general assets.

(3) A segregated portfolio company may pay a dividend or other distribution in respect of segregated portfolio shares of any class or series and whether or not a dividend is declared on any other class or series of segregated portfolio shares or any other shares.

(4) Segregated portfolio dividends or other distributions shall be paid on segregated portfolio shares by reference only to the accounts of and to and out of the

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 141 of 226



segregated portfolio assets and liabilities of the segregated portfolio in respect of which the segregated portfolio shares were issued and otherwise in accordance with the rights of such shares.

### Company to act on behalf of portfolios

**218**. (1) Any act, matter, deed, agreement, contract, instrument under seal or other instrument or arrangement which is to be binding on or to enure to the benefit of a segregated portfolio shall be executed by the segregated portfolio company on behalf of such segregated portfolio which shall be identified or specified, and such execution shall specify that it is in the name of, or by, or for the account of, such segregated portfolio.

(2) If a segregated portfolio company is in breach of subsection (1) the directors shall, forthwith upon becoming aware of the breach —

(a) make any necessary enquiries to determine the correct segregated portfolio to which the relevant act, matter, deed, agreement, contract, instrument under seal or other instrument or arrangement should be attributed;

(b) make the correct attribution; and

(c) notify in writing all persons who are party to the act, matter, deed, agreement, contract, instrument under seal or other instrument or arrangement that was executed, or who may be adversely affected by any such attribution, of that attribution and the parties' rights under subsection (3).

(3) Any person notified under subsection (2)(c) (or who should have been so notified) who objects to an attribution by the directors under subsection (2) may, within thirty days of receiving written notice under that subsection in the case of persons who received such notice, apply to the Court by petition for a re-attribution; and the Court may, upon hearing the petition and taking account of the intention of the parties and such other factors as are deemed relevant by it, order that the act, matter, deed, agreement, contract, instrument under seal or other instrument or arrangement be deemed to be attributable to a particular segregated portfolio or portfolios or to the general assets (if applicable in particular proportions or on a particular basis) and may make such ancillary orders as may be just and equitable in the case.

(4) Any indemnity given by a segregated portfolio company in favour of a director in respect of a liability incurred by such director on behalf of a segregated portfolio shall only be enforceable against the assets of the segregated portfolio in respect of which such liability arose.

### Assets

**219**. (1) The assets of a segregated portfolio company shall be either segregated portfolio assets or general assets.

(2) The segregated portfolio assets comprise the assets of the segregated portfolio company held within or on behalf of the segregated portfolios of the company.

(3) The general assets of a segregated portfolio company comprise the assets of the company which are not segregated portfolio assets.

(4) The assets of a segregated portfolio comprise —

(a) assets representing the share capital and reserves attributable to the segregated portfolio; and

(b) all other assets attributable to or held within the segregated portfolio.

(5) In subsection (4) —

"**reserves**" includes profits, retained earnings, capital reserves and share premiums.

(6) It shall be the duty of the directors of a segregated portfolio company to establish and maintain (or cause to be established and maintained) procedures —

(a) to segregate, and keep segregated, portfolio assets separate and separately identifiable from general assets;

(b) to segregate, and keep segregated, portfolio assets of each segregated portfolio separate and separately identifiable from segregated portfolio assets of any other segregated portfolio; and

(c) to ensure that assets and liabilities are not transferred between segregated portfolios or between a segregated portfolio and the general assets otherwise than at full value.

### Segregated portfolio assets

**220**. Segregated portfolio assets —

(a) shall only be available and used to meet liabilities to the creditors of the segregated portfolio company and holders of segregated portfolio shares who are creditors or holders of segregated portfolio shares in respect of that segregated portfolio and who shall thereby be entitled to have recourse to the segregated portfolio assets attributable to that segregated portfolio for such purposes; and

(b) shall not be available or used to meet liabilities to, and shall be absolutely protected from, the creditors of the segregated portfolio company and holders of segregated portfolio shares who are not creditors or holders of segregated portfolio shares in respect of that segregated portfolio, and who accordingly shall not be entitled to have recourse to the segregated portfolio assets attributable to that segregated portfolio.

### Segregation of liabilities

**221**. (1) Where a liability of a segregated portfolio company to a person arises from a matter, or is otherwise imposed, in respect of or attributable to a particular segregated portfolio —

(a) such liability shall extend only to, and that person shall, in respect of that liability, be entitled to have recourse only to —

(i) firstly, the segregated portfolio assets attributable to such segregated portfolio; and

(ii) secondly, unless specifically prohibited by the articles of association, the segregated portfolio company's general assets, to the extent that the segregated portfolio assets attributable to such segregated portfolio are insufficient to satisfy the liability, and to the extent that the segregated portfolio company's general assets exceed any minimum capital amounts lawfully required by a regulatory body in the Islands; and

(b) such liability shall not extend to, and that person shall not, in respect of that liability, be entitled to have recourse to the segregated portfolio assets attributable to any other segregated portfolio.

(2) Where a liability of a segregated portfolio company to a person arises or is imposed otherwise than from a matter in respect of a particular segregated portfolio or portfolios, such liability shall extend only to, and that person shall, in respect of that liability, be entitled to have recourse only to, the company's general assets.

### General liabilities and assets

**222**. (1) Liabilities of a segregated portfolio company not attributable to any of its segregated portfolios shall be discharged from the company's general assets.

(2) Income, receipts and other property or rights of or acquired by a segregated portfolio company not otherwise attributable to any segregated portfolio shall be applied to and comprised in the company's general assets.

### Winding-up of company

**223**. (1) Notwithstanding any statutory provision or rule of law to the contrary, in the winding-up of a segregated portfolio company, the liquidator —

(a) shall deal with the company's assets only in accordance with the procedures set out in section 219(6); and

(b) in discharge of the claims of creditors of the segregated portfolio company and holders of segregated portfolio shares, shall apply the segregated portfolio company's assets to those entitled to have recourse thereto under this Part.

(2) Section 140 shall be modified so that it shall apply in relation to protected segregated portfolio companies in accordance with this Part and, in the event of any conflict between this Part and section 140, this Part shall prevail.

### Receivership orders

**224**. (1) Subject to subsections (2) to (5), if in relation to a segregated portfolio company, the Court is satisfied —

(a) that the segregated portfolio assets attributable to a particular segregated portfolio of the company (when account is taken of the company's general assets, unless there are no creditors in respect of that segregated portfolio entitled to have recourse to the company's general assets) are or are likely to be insufficient to discharge the claims of creditors in respect of that segregated portfolio; and

(b) that the making of an order under this section would achieve the purposes set out in subsection (3),

the Court may make a receivership order under this section in respect of that segregated portfolio.

(2) A receivership order may be made in respect of one or more segregated portfolios.

(3) A receivership order shall direct that the business and segregated portfolio assets of or attributable to a segregated portfolio shall be managed by a receiver specified in the order for the purposes of —

(a) the orderly closing down of the business of or attributable to the segregated portfolio; and

(b) the distribution of the segregated portfolio assets attributable to the segregated portfolio to those entitled to have recourse thereto.

(4) A receivership order —

(a) may not be made if the segregated portfolio company is in winding up; and

(b) shall cease to be of effect upon commencement of the winding up of the segregated portfolio company, but without prejudice to prior acts of the receiver or that person's agents.

(5) No resolution for the voluntary winding up of a segregated portfolio company of which any segregated portfolio is subject to a receivership order shall be effective without leave of the Court.

### Applications for receivership orders

**225**. (1) An application for a receivership order in respect of a segregated portfolio of a segregated portfolio company may be made by —

(a) the company;

(b) the directors of the company;

(c) any creditor of the company in respect of that segregated portfolio;

(d) any holder of segregated portfolio shares in respect of that segregated portfolio; or

(e) in respect of a company licensed under the regulatory laws, the Cayman Islands Monetary Authority where the segregated portfolio company is regulated by the Authority.

(2) The Court, on hearing an application —

(a) for a receivership order; or

(b) for leave, pursuant to section 224(5), for a resolution for voluntary winding up,

may make an interim order or adjourn the hearing, conditionally or unconditionally.

(3) Notice of an application to the Court for a receivership order in respect of a segregated portfolio of a segregated portfolio company shall be served upon —

(a) the company;

(b) in respect of a company licensed under the regulatory laws, the Cayman Islands Monetary Authority; and

(c) such other persons, if any, as the Court may direct,

each of whom shall be given an opportunity of making representations to the Court before the order is made.

### Administration of receivership orders

**226**. (1) The receiver of a segregated portfolio —

(a) may do all such things as may be necessary for the purposes set out in section 224(3); and

(b) shall have all the functions and powers of the directors in respect of the business and segregated portfolio assets of or attributable to the segregated portfolio.

(2) The receiver may, at any time, apply to the Court —

(a) for directions as to the extent or exercise of any function or power;

(b) for the receivership order to be discharged or varied; or

(c) for an order as to any matter acting in the course of that person's receivership.

(3) In exercising that person's functions and powers the receiver shall be deemed to act as the agent of the segregated portfolio company, and shall not incur personal liability except to the extent that that person is fraudulent, reckless, negligent, or acts in bad faith.

(4) Any person dealing with the receiver in good faith is not concerned to enquire whether the receiver is acting within that person's powers.

(5) When an application has been made for, and during the period of operation of, a receivership order, no suit, action or other proceedings shall be instituted against the segregated portfolio company in relation to the segregated portfolio in respect of which the receivership order was made except by leave of the Court, which may be conditional or unconditional.

(6) During the period of operation of a receivership order —

(a) the functions and powers of the directors shall cease in respect of the business of or attributable to, and the segregated portfolio assets of or attributable to, the segregated portfolio in respect of which the order was made; and

(b) the receiver of the segregated portfolio shall be entitled to be present at all meetings of the segregated portfolio company and to vote at such meetings, as if that person were a director of the segregated portfolio company, in respect of the general assets of the company, unless there are no creditors in respect of that segregated portfolio entitled to have recourse to the company's general assets.

### Discharge of receivership orders

**227**. (1) The Court shall not discharge a receivership order unless it appears to the Court that the purpose for which the order was made has been achieved, substantially achieved or is incapable of achievement.

(2) The Court, on hearing an application for the discharge or variation of a receivership order, may make any interim order or adjourn the hearing, conditionally or unconditionally.

(3) Upon the Court discharging a receivership order in respect of a segregated portfolio of a segregated portfolio company on the ground that the purpose for which the order was made has been achieved or substantially achieved, the Court may direct that any payment made by the receiver to any creditor of the company in respect of that segregated portfolio shall be deemed full satisfaction of the liabilities of the company to that creditor in respect of that segregated portfolio, and the creditor's claims against the company in respect of that segregated portfolio shall be thereby deemed extinguished.

### Remuneration of receiver

**228**. The remuneration of a receiver and any expenses properly incurred by that person shall be payable, in priority to all other claims, from the segregated portfolio assets attributable to the segregated portfolio in respect of which the receiver was appointed but not from any other assets of the segregated portfolio company.

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 147 of 226



### Termination and re-instatement

**228A**.(1) Where a segregated portfolio has no segregated portfolio assets or liabilities of the segregated portfolio company attributable to it, the segregated portfolio company may by resolution of its directors (or such other authority as may be provided for in, and subject to the provisions of, its articles of association) terminate such segregated portfolio.

(2) A segregated portfolio company may by resolution of its directors (or such other authority as may be provided for in, and subject to the provisions of, its articles of association) reinstate a segregated portfolio which has been terminated under subsection (1).

## Part XV – Prohibition on Bearer Shares

### Issue of bearer shares prohibited

**229**. (1) Notwithstanding any provision in this Act to the contrary, a company incorporated under this Act shall not issue bearer shares.

(2) In relation to a company which has been struck off the companies register, subsection (1) applies to that company if the company is reinstated.

(3) An order of the Court shall not permit a company which has been struck off the companies register to be reinstated with bearer shares in issue.

(4) Bearer shares issued prior to the commencement of the *Companies (Amendment) (No. 3) Act, 2020 [Act 60 of 2020]* or issued contrary to subsection (1) shall be void.

### *Repealed*

**230**. **Repealed** by section 5 of the *Companies (Amendment) (No. 3) Act, 2020 [Act 60 of 2020]*.

### *Repealed*

**231**. **Repealed** by section 5 of the *Companies (Amendment) (No. 3) Act, 2020 [Act 60 of 2020]*.

### *Repealed*

**231A**. **Repealed** by section 5 of the *Companies (Amendment) (No. 3) Act, 2020 [Act 60 of 2020]*.

# PART XVI - Merger and Consolidation

## Definitions in this Part

**232**. In this Part —

"**consolidated company**" means the new company that results from the consolidation of two or more constituent companies;

"**consolidation**" means the combination of two or more constituent companies into a consolidated company and the vesting of the undertaking, property and liabilities of such companies in the consolidated company;

"**constituent company**" means a company that is participating in a merger or consolidation with one or more other companies;

"**merger**" means the merging of two or more constituent companies and the vesting of their undertaking, property and liabilities in one of such companies as the surviving company;

"**parent company**" means, with respect to another company, a company that holds issued shares that together represent at least ninety per cent of the votes at a general meeting of that other company;

"**subsidiary company**" means, with respect to another company, a company of which that other company is the parent company; and

"**surviving company**" means the sole remaining constituent company into which one or more other constituent companies are merged.

## Merger and consolidation

**233**. (1) Without prejudice to sections 86 and 87, but subject to section 239A, two or more companies limited by shares and incorporated under this Law, may, subject to any express provisions to the contrary in the memorandum and articles of association of any of such companies, merge or consolidate in accordance with subsections (3) to (15).

(2) Nothing in this Part shall derogate from the Authority's powers in relation to any constituent company that is a licensee under the regulatory laws and that proposes to participate in a merger or consolidation, or from a constituent company's obligations under the regulatory laws.

(3) The directors of each constituent company that proposes to participate in a merger or consolidation shall on behalf of the constituent company of which they are directors approve a written plan of merger or consolidation.

(4) The plan referred to in subsection (3) shall give particulars of the following matters —

(a) the name of each constituent company and the name of the surviving or consolidated company;

(b) the registered office of each constituent company;

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 149 of 226



(c) in respect of each constituent company, the designation and number of each class of shares;

(d) the date on which it is intended that the merger or consolidation is to take effect, if it is intended to take effect in accordance with section 234, and not in accordance with subsection (13);

(e) the terms and conditions of the proposed merger or consolidation, including where applicable, the manner and basis of converting shares in each constituent company into shares in the consolidated or surviving company or into other property as provided in subsection (5);

(f) the rights and restrictions attaching to the shares in the consolidated or surviving company;

(g) in respect of a merger, any proposed amendments to the memorandum of association and articles of association of the surviving company, or if none are proposed, a statement that the memorandum of association and articles of association of the surviving company immediately prior to merger shall be its memorandum of association and articles of association after the merger;

(h) in respect of a consolidation, the proposed new memorandum of association and articles of association of the consolidated company;

(i) any amount or benefit paid or payable to any director of a constituent company, a consolidated company or a surviving company consequent upon the merger or consolidation;

(j) the name and address of any secured creditor of a constituent company and of the nature of the secured interest held; and

(k) the names and addresses of the directors of the surviving or consolidated company.

(5) Some or all of the shares whether of different classes or of the same class in each constituent company may be converted into or exchanged for different types of property (consisting of shares, debt obligations or other securities in the surviving company or consolidated company or any other corporate entity, or money or other property, or a combination thereof) as provided in the plan of merger or consolidation.

(6) A plan of merger or consolidation shall be authorised by each constituent company by way of —

(a) a special resolution of the members of each such constituent company; and

(b) such other authorisation, if any, as may be specified in such constituent company's articles of association.

(7) Notwithstanding subsection (6)(a), if a parent company incorporated under this Act is seeking to merge with one or more of its subsidiary companies incorporated under this Law, a special resolution under that subsection of the

members of such constituent companies is not required if a copy of the plan of merger is given to every member of each subsidiary company to be merged unless that member agrees otherwise.

(8) The consent of each holder of a fixed or floating security interest of a constituent company in a proposed merger or consolidation shall be obtained but if such secured creditor does not grant that person's consent then the Court may upon application of the constituent company that has issued the security waive the requirement for such consent upon such terms as to security to be issued by the consolidated or surviving company or otherwise as the Court considers reasonable.

(9) After obtaining any authorisations and consents under subsections (6) and (8), the plan of merger or consolidation shall be signed by a director on behalf of each constituent company and filed with the Registrar together with, in relation to each constituent company —

(a) a certificate of good standing;

(b) a director's declaration that the constituent company is, and the consolidated or surviving company will be, immediately after merger or consolidation, able to pay its debts as they fall due;

(c) a director's declaration that the merger or consolidation is *bona fide* and not intended to defraud unsecured creditors of the constituent companies;

(d) a director's declaration that —

(i) no petition or other similar proceeding has been filed and remains outstanding, and that no order has been made or resolution adopted to wind up the company in any jurisdiction;

(ii) no receiver, trustee, administrator or other similar person has been appointed in any jurisdiction and is acting in respect of the constituent company, its affairs, or its property or any part thereof; and

(iii) no scheme, order, compromise or other similar arrangement has been entered into or made in any jurisdiction whereby the rights of creditors of the constituent company are, and continue to be, suspended or restricted;

(e) a director's declaration of the assets and liabilities of the constituent company made up to the latest practicable date before the making of the declaration;

(f) in the case of a constituent company that is not a surviving company, a director's declaration that the constituent company has retired from any fiduciary office held or will do so immediately prior to merger or consolidation;

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 151 of 226



(g) an undertaking that a copy of the certificate of merger or consolidation under subsection (11) will be given to the members and creditors of the constituent company and that notification of the merger or consolidation will be published in the Gazette; and

(h) a director's declaration, where relevant, that the constituent company has complied with any applicable requirements under the regulatory laws.

(10) A director's declaration under subsection (9) shall be in writing, signed by, and shall include the full name and address of, the director making the declaration.

(11) Upon payment of the applicable fees under this Act and upon the Registrar being satisfied that the requirements of subsection (9) in respect of the merger or consolidation have been complied with and that the name of the consolidated company complies with section 30, the Registrar shall register the plan of merger or consolidation including any new or amended memorandum and articles of association and issue a certificate of merger or consolidation under that person's hand and seal of office, and in the case of a consolidation section 27 shall apply in relation to the consolidated company.

(12) A certificate of merger or consolidation issued by the Registrar shall be *prima facie* evidence of compliance with all requirements of this Act in respect of the merger or consolidation.

(13) Subject to section 234, a merger or consolidation shall be effective on the date the plan of merger or consolidation is registered by the Registrar.

(14) A person who, being a director, makes a false declaration under subsection (9) commits an offence and is liable on summary conviction to a fine of twenty thousand dollars or to imprisonment for five years, or both.

(15) In any proceedings for an offence under subsection (14) it shall be a defence for the person charged to prove that that person took all reasonable precautions and exercised all due diligence to avoid the commission of such an offence by that person or any person under that person's control.

(16) Any director's declaration pursuant to this section may be given in the form of a declaration or an affidavit, as the director may determine.

### Delay of effective date

**234**. A plan of merger or consolidation may provide that such merger or consolidation shall not become effective until a specified date or until the date of the occurrence of a specified event subsequent to the date on which the plan of merger or consolidation is registered by the Registrar, but such date shall not be a date later than the ninetieth day after the date of such registration.

### Termination or amendment

**235**. (1) A plan of merger or consolidation may contain a provision that at any time prior to the date that the plan becomes effective it may be —

(a) terminated by the directors of any constituent company; or

(b) amended by the directors of the constituent companies to —

(i) change the name of the consolidated company;

(ii) change the effective date of the merger or consolidation, provided that the new effective date complies with section 234; and

(iii) effect any other changes to the plan as the plan may expressly authorise the directors to effect in their discretion.

(2) If the plan of merger or consolidation is terminated or amended after it has been filed with the Registrar but before it has become effective, notice of termination or amendment of the plan shall be filed with the Registrar, and shall have effect on the date of registration by the Registrar after that person has satisfied that person's self in accordance with section 233(11).

(3) A copy of the notice under subsection (2) shall be sent to any person entitled to vote on, consent to or be notified of the plan of merger or consolidation in accordance with section 233.

(4) The notice of termination or amendment filed in accordance with subsection (2) shall identify the plan of merger or consolidation that is to be terminated or amended and shall state that the plan has been terminated or state the amendments made and in the former case, the Registrar shall issue a certificate of termination.

### Effect of merger or consolidation

**236**. (1) As soon as a merger or consolidation becomes effective —

(a) in the case of a consolidation, the new memorandum of association and articles of association filed with the plan of consolidation shall immediately become the memorandum of association and articles of association of the consolidated company;

(b) the rights, the property of every description including choses in action, and the business, undertaking, goodwill, benefits, immunities and privileges of each of the constituent companies, shall immediately vest in the surviving or consolidated company; and

(c) subject to any specific arrangements entered into by the relevant parties, the surviving or consolidated company shall be liable for and subject, in the same manner as the constituent companies, to all mortgages, charges or security interests, and all contracts, obligations, claims, debts, and liabilities of each of the constituent companies.

(2) Where a merger or consolidation occurs —

(a) an existing claim, cause or proceeding, whether civil (including arbitration) or criminal pending at the time of the merger or consolidation by or against a constituent company, shall not be abated or discontinued

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 153 of 226



by the merger or consolidation but shall be continued by or against the surviving or consolidated company; and

(b) a conviction, judgment, ruling, order or claim, due or to become due, against a constituent company, shall not be released or impaired by the merger or consolidation, but shall apply to the surviving or consolidated company instead of to the constituent company.

(3) Upon a merger or consolidation becoming effective, the Registrar shall strike off the register —

(a) a constituent company that is not the surviving company in a merger; or

(b) a constituent company that participates in a consolidation,

and section 158 shall apply.

(4) The cessation of a constituent company that participates in a consolidation or that is not the surviving company in a merger shall not be a winding up within Part V.

### Merger or consolidation with overseas company

**237**. (1) Subject to section 239A, one or more companies incorporated under this Act may merge or consolidate with one or more overseas companies in accordance with subsections (2) to (18).

(2) Where the surviving or consolidated company is to be a company existing under this Law, in addition to compliance by each constituent company incorporated under this Act with section 233(3) to (10) the Registrar is required to be satisfied in respect of any constituent overseas company that —

(a) the merger or consolidation is permitted or not prohibited by the constitutional documents of the constituent overseas company and by the laws of the jurisdiction in which the constituent overseas company is existing, and that those laws and any requirements of those constitutional documents have been or will be complied with;

(b) no petition or other similar proceeding has been filed and remains outstanding, and no order has been made or resolution adopted to wind up or liquidate the constituent overseas company in the jurisdiction in which the constituent overseas company is existing;

(c) no receiver, trustee, administrator or other similar person has been appointed in any jurisdiction and is acting in respect of the constituent overseas company, its affairs or its property or any part thereof;

(d) no scheme, order, compromise or other similar arrangement has been entered into or made in any jurisdiction whereby the rights of creditors of the constituent overseas company are and continue to be suspended or restricted;

(e) the constituent overseas company is able to pay its debts as they fall due and the merger or consolidation is *bona fide* and not intended to defraud unsecured creditors of the constituent overseas company;

(f) in respect of the transfer of any security interest granted by the constituent overseas company to the surviving or consolidated company —

(i) consent or approval to the transfer has been obtained, released or waived;

(ii) the transfer is permitted by and has been approved in accordance with the constitutional documents of the constituent overseas company; and

(iii) the laws of the jurisdiction of the constituent overseas company with respect to the transfer have been or will be complied with;

(g) the constituent overseas company will, upon the merger or consolidation becoming effective, cease to be incorporated, registered or exist under the laws of the relevant foreign jurisdiction; and

(h) there is no other reason why it would be against the public interest to permit the merger or consolidation.

(3) Subsection (2)(a) to (g) shall be satisfied by filing with the Registrar a declaration of a director of the surviving or consolidated company to the effect that, having made due enquiry, that person is of the opinion that the requirements of those paragraphs have been met; and —

(a) the declaration shall include a statement of the assets and liabilities of the constituent overseas company made up to the latest practicable date before making the declaration; and

(b) a director of the surviving or consolidated company shall be deemed to have made due enquiry for the purposes of subsection (2)(a) to (g) and this subsection if such director has obtained from a director of the constituent overseas company a declaration that the requirements of subsection 2(a) to (g) have been met with respect to such constituent overseas company.

(4) A person who, being a director, makes a false declaration under subsection (3) commits an offence and is liable on summary conviction to a fine of twenty thousand dollars or to imprisonment for five years, or both.

(5) In any proceedings for an offence under subsection (4), it shall be a defence for the person charged to prove that that person took all reasonable precautions and exercised all due diligence to avoid the commission of such an offence by that person or any person under that person's control.

(6) Where the surviving or consolidated company is to be established under this Law, upon payment of the applicable fees under this Act and upon the Registrar being satisfied that the requirements of subsection (2) in respect of the merger or consolidation have been complied with and that the name of the consolidated

company complies with section 30, the Registrar shall register the plan of merger or consolidation including any new or amended memorandum and articles of association and issue a certificate of merger or consolidation under that person's hand and seal of office, and in the case of a consolidation section 27 shall apply in relation to the consolidated company.

(7) Where the surviving or consolidated company is to be an overseas company the Registrar is required to be satisfied, in addition to compliance with section 233(2) to (10) (excluding section 233(9)(g)), by each constituent company incorporated under this Law, that —

(a) the merger or consolidation is permitted or not prohibited by the constitutional documents of the constituent overseas company and by the laws of the jurisdiction in which the constituent overseas company is existing, and that those laws and any requirements of those constitutional documents have been or will be complied with;

(b) no petition or other similar proceeding has been filed and remains outstanding, and no order has been made or resolution adopted to wind up or liquidate the constituent overseas company in any jurisdiction;

(c) no receiver, trustee, administrator or other similar person has been appointed in any jurisdiction and is acting in respect of the surviving company, its affairs or its property or any part thereof;

(d) no scheme, order, compromise or other similar arrangement has been entered into or made in any jurisdiction whereby the rights of creditors of the surviving company are suspended or restricted; and

(e) there are no reasons why it would be against the public interest to allow the merger or consolidation.

(8) Subsection (7)(a) to (d) shall be satisfied by filing with the Registrar a declaration of a director of each constituent company incorporated under this Act to the effect that, having made due enquiry, that person is of the opinion that the requirements of those paragraphs have been met; and a director of each constituent company incorporated under this Act shall be deemed to have made due enquiry for the purposes of subsection (7)(a) to (d) and this subsection (8) if such director has obtained from a director of the constituent overseas company a declaration that the requirements of subsection (7)(a) to (d) have been met with respect to such constituent overseas company.

(9) A person who, being a director, makes a false declaration under subsection (8) commits an offence and is liable on conviction to a fine of twenty thousand dollars or to imprisonment for five years, or both.

(10) Where the surviving or consolidated company is to be an overseas company, the surviving or consolidated overseas company shall file with the Registrar —

(a) an undertaking that it will promptly pay to the dissenting members of a constituent company incorporated under this Act the amount, if any, to which they are entitled under section 238; and

(b) such evidence of the merger or consolidation from the jurisdiction of the surviving or consolidated overseas company as the Registrar considers acceptable, such evidence to include the effective date of the merger or consolidation.

(11) The effect of a merger or consolidation where the surviving or consolidated company is to be an overseas company under this section is the same as in the case of a merger or consolidation under this Part if the surviving or consolidated company is incorporated or established under this Law, and all of the relevant provisions of this Part apply, except insofar as the laws of the jurisdiction of the surviving or consolidated overseas company otherwise provide.

(12) For the purposes of this section —

(a) any references in section 233 to the shares of any constituent company shall be deemed to include references to any other equity interests in such constituent company;

(b) any references in section 233 to memoranda and articles of association shall be deemed to include references to the equivalent organisational documents of an overseas company; and

(c) any reference in section 233 or this section to a director of a company shall be deemed to include a reference to any officer, member or other person (howsoever called) in whom the management of an overseas company is vested.

(13) Where the surviving or consolidated company is to be an overseas company, upon payment of the applicable fees under this Act and upon the Registrar being satisfied that the requirements of subsections (7) and (10) have been complied with the Registrar shall, where the overseas company is the surviving or consolidated company, strike off constituent companies incorporated pursuant to this Act from the register and issue a certificate of strike off by way of merger or consolidation with an overseas company; and section 158 shall apply to the constituent companies so struck off.

(14) A certificate of strike off by way of merger or consolidation with an overseas company issued by the Registrar shall be *prima facie* evidence of compliance with all requirements of this Act in respect of such merger or consolidation.

(15) Subject to section 234, a merger or consolidation shall be effective on the date the plan of merger or consolidation is registered by the Registrar.

(16) The issuance of a certificate of merger or consolidation relating to the merger or consolidation of an overseas company registered under Part IX shall be deemed to constitute notice to the Registrar pursuant to section 192.

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 157 of 226



(17) Any declaration of a director pursuant to this section may be given in the form of a declaration or an affidavit, as the director may determine.

(18) The Registrar shall submit a copy of the certificate of strike off by way of merger or consolidation issued under subsection (13) to the Authority.

**Rights of dissenters**

**238**. (1) A member of a constituent company incorporated under this Act shall be entitled to payment of the fair value of that person's shares upon dissenting from a merger or consolidation.

(2) A member who desires to exercise that person's entitlement under subsection (1) shall give to the constituent company, before the vote on the merger or consolidation, written objection to the action.

(3) An objection under subsection (2) shall include a statement that the member proposes to demand payment for that person's shares if the merger or consolidation is authorised by the vote.

(4) Within twenty days immediately following the date on which the vote of members giving authorisation for the merger or consolidation is made, the constituent company shall give written notice of the authorisation to each member who made a written objection.

(5) A member who elects to dissent shall, within twenty days immediately following the date on which the notice referred to in subsection (4) is given, give to the constituent company a written notice of that person's decision to dissent, stating —

(a) that person's name and address;

(b) the number and classes of shares in respect of which that person dissents; and

(c) a demand for payment of the fair value of that person's shares.

(6) A member who dissents shall do so in respect of all shares that that person holds in the constituent company.

(7) Upon the giving of a notice of dissent under subsection (5), the member to whom the notice relates shall cease to have any of the rights of a member except the right to be paid the fair value of that person's shares and the rights referred to in subsections (12) and (16).

(8) Within seven days immediately following the date of the expiration of the period specified in subsection (5), or within seven days immediately following the date on which the plan of merger or consolidation is filed, whichever is later, the constituent company, the surviving company or the consolidated company shall make a written offer to each dissenting member to purchase that person's shares at a specified price that the company determines to be their fair value; and if, within thirty days immediately following the date on which the offer is made,

the company making the offer and the dissenting member agree upon the price to be paid for that person's shares, the company shall pay to the member the amount in money forthwith.

(9) If the company and a dissenting member fail, within the period specified in subsection (8), to agree on the price to be paid for the shares owned by the member, within twenty days immediately following the date on which the period expires —

(a) the company shall (and any dissenting member may) file a petition with the Court for a determination of the fair value of the shares of all dissenting members; and

(b) the petition by the company shall be accompanied by a verified list containing the names and addresses of all members who have filed a notice under subsection (5) and with whom agreements as to the fair value of their shares have not been reached by the company.

(10) A copy of any petition filed under subsection (9)(a) shall be served on the other party; and where a dissenting member has so filed, the company shall within ten days after such service file the verified list referred to in subsection (9)(b).

(11) At the hearing of a petition, the Court shall determine the fair value of the shares of such dissenting members as it finds are involved, together with a fair rate of interest, if any, to be paid by the company upon the amount determined to be the fair value.

(12) Any member whose name appears on the list filed by the company under subsection (9)(b) or (10) and who the Court finds are involved may participate fully in all proceedings until the determination of fair value is reached.

(13) The order of the Court resulting from proceeding on the petition shall be enforceable in such manner as other orders of the Court are enforced, whether the company is incorporated under the laws of the Islands or not.

(14) The costs of the proceeding may be determined by the Court and taxed upon the parties as the Court deems equitable in the circumstances; and upon application of a member, the Court may order all or a portion of the expenses incurred by any member in connection with the proceeding, including reasonable attorneys' fees and the fees and expenses of experts, to be charged *pro rata* against the value of all the shares which are the subject of the proceeding.

(15) Shares acquired by the company pursuant to this section shall be cancelled and, if they are shares of a surviving company, they shall be available for re-issue.

(16) The enforcement by a member of that person's entitlement under this section shall exclude the enforcement by the member of any right to which that person might otherwise be entitled by virtue of that person holding shares, except that this section shall not exclude the right of the member to institute proceedings to obtain relief on the ground that the merger or consolidation is void or unlawful.

### Limitation on rights of dissenters

**239**. (1) No rights under section 238 shall be available in respect of the shares of any class for which an open market exists on a recognised stock exchange or recognised interdealer quotation system at the expiry date of the period allowed for written notice of an election to dissent under section 238(5), but this section shall not apply if the holders thereof are required by the terms of a plan of merger or consolidation pursuant to section 233 or 237 to accept for such shares anything except —

(a) shares of a surviving or consolidated company, or depository receipts in respect thereof;

(b) shares of any other company, or depository receipts in respect thereof, which shares or depository receipts at the effective date of the merger or consolidation, are either listed on a national securities exchange or designated as a national market system security on a recognised interdealer quotation system or held of record by more than two thousand holders;

(c) cash in lieu of fractional shares or fractional depository receipts described in paragraphs (a) and (b); or

(d) any combination of the shares, depository receipts and cash in lieu of fractional shares or fractional depository receipts described in paragraphs (a), (b) and (c).

(2) **Repealed** by section 11 of the *Companies (Amendment) (No. 2) Act, 2018 [Law 46 of 2018]*.

### Prohibition on being a segregated portfolio company

**239A**. No constituent company incorporated under this Act or any consolidated company existing under this Act may be a segregated portfolio company.

## PART XVII - International Co-operation

### Definitions in this Part

**240**. In this Part —

"**debtor**" means a foreign corporation or other foreign legal entity subject to a foreign bankruptcy proceeding in the country in which it is incorporated or established;

"**foreign bankruptcy proceeding**" includes proceedings for the purpose of reorganising or rehabilitating an insolvent debtor; and

"**foreign representative**" means a trustee, liquidator or other official appointed in respect of a debtor for the purposes of a foreign bankruptcy proceeding.

### Ancillary orders

**241**. (1) Upon the application of a foreign representative the Court may make orders ancillary to a foreign bankruptcy proceeding for the purposes of —

(a) recognising the right of a foreign representative to act in the Islands on behalf of or in the name of a debtor;

(b) enjoining the commencement or staying the continuation of legal proceedings against a debtor;

(c) staying the enforcement of any judgment against a debtor;

(d) requiring a person in possession of information relating to the business or affairs of a debtor to be examined by and produce documents to its foreign representative; and

(e) ordering the turnover to a foreign representative of any property belonging to a debtor.

(2) An ancillary order may only be made under subsection (1)(d) against —

(a) the debtor itself; or

(b) a person who was or is a relevant person as defined in section 103(1).

### Criteria upon which the Court's discretion shall be exercised

**242**. (1) In determining whether to make an ancillary order under section 241, the Court shall be guided by matters which will best assure an economic and expeditious administration of the debtor's estate, consistent with —

(a) the just treatment of all holders of claims against or interests in a debtor's estate wherever they may be domiciled;

(b) the protection of claim holders in the Islands against prejudice and inconvenience in the processing of claims in the foreign bankruptcy proceeding;

(c) the prevention of preferential or fraudulent dispositions of property comprised in the debtor's estate;

(d) the distribution of the debtor's estate amongst creditors substantially in accordance with the order prescribed by Part V;

(e) the recognition and enforcement of security interests created by the debtor;

(f) the non-enforcement of foreign taxes, fines and penalties; and

(g) comity.

(2) In the case of a debtor which is registered under Part IX, the Court shall not make an ancillary order under section 241 without also considering whether it should make a winding up order under Part V in respect of its local branch.

### Publication of foreign bankruptcy proceedings

**243**. (1) Where a company incorporated under Part II or registered under Part IX is made the subject of a foreign bankruptcy proceeding, notice of this fact shall be filed with the Registrar and published in the Gazette.

(2) The notice shall contain the prescribed particulars and shall be filed by the company's liquidator or, if no liquidator has been appointed under this Law, by its directors within fourteen days of the date upon which the foreign bankruptcy proceeding commenced.

(3) A liquidator or a director who fails to comply with this section commits an offence and is liable on summary conviction to a fine of ten thousand dollars.

## PART XVIIA – Beneficial Ownership Registers

## Preliminary

### Interpretation

**244**. (1) In this Part —

"**beneficial owner**", in relation to a company, has the meaning assigned by sections 247(3), (4) and (5);

"**beneficial ownership register**" means a register of adequate, accurate and current beneficial ownership information maintained by a company pursuant to section 252, containing the required particulars of registrable persons in relation to the company;

"**competent authority**" means the Minister referred to in section 246(1) and includes the person designated by the Minister under that section;

"**corporate services provider**" means an individual or legal entity that provides corporate services under the *Companies Management Act (2021 Revision)*, the *Banks and Trust Companies Act (2021 Revision),* the *Insurance Act, 2010 [Law 32 of 2010]* or any other regulatory law pursuant to which the individual or legal entity is licensed or permitted to provide registered office services;

"**individual**" means a natural person;

"**legal entity**" means a company, limited liability company or other body that is a legal person under the law by which it is governed;

"**prescribed**" means prescribed by regulations made under section 280;

"**registered shareholder**" means a person who is named as a shareholder of a company or member of a company on the register of members of the company;

"**registrable person**" means an individual or relevant legal entity that is a registrable person under section 251;

"**regulatory law**" means a law defined as such in section 2 of the *Monetary Authority Act (2020 Revision)*, other than the *Directors Registration and Licensing Act, 2014 [Law 10 of 2014]*;

"**relevant interest**" means an interest that a person holds in a company consisting of —

(a) shares or voting rights in the company; or

(b) the right to appoint or remove a majority of the directors of the company;

"**relevant legal entity**", in relation to a company, has the meaning assigned by section 248(3);

"**required particulars**" means particulars in respect of a registrable person required to be kept in a company's beneficial ownership register pursuant to sections 253 and 254;

"**restrictions notice**" means a notice issued under section 265; and

"**specified conditions**" means the conditions specified in sections 247(3), (4) and (5).

(2) This Part is to be read and have effect as if each of the following were an individual, even if they are legal persons under the laws by which they are governed —

(a) a corporation sole;

(b) a government or government department of a country or territory or a part of a country or territory;

(c) an international organisation whose members include two or more countries or territories (or their governments);

(d) a local authority or local government body.

### Application

**245**. (1) This Part applies in respect of companies incorporated or registered by way of continuation under this Law, except a legal entity or subsidiary of one or more legal entities, any of which is —

(a) listed on the Cayman Islands Stock Exchange or an approved stock exchange in Schedule 4;

(b) registered or holding a licence under a regulatory law;

(c) managed, arranged, administered, operated or promoted by an approved person as a special purpose vehicle, private equity fund, collective investment scheme or investment fund, including where the vehicle, fund or scheme is a Cayman Islands exempted limited partnership;

(d) regulated in a jurisdiction that is designated as having measures for combating money laundering and the financing of terrorism which are

equivalent to that of the Islands in accordance with section 5(2) of the *Proceeds of Crime Act (2020 Revision)*;

(e) a general partner of a vehicle, fund or scheme referred to in paragraph (c) which vehicle, fund or scheme —

(i) is registered or holds a licence under a regulatory law; or

(ii) is managed, arranged, administered, operated or promoted by an approved person;

(f) holding directly a legal or beneficial interest in the shares of a legal entity which holds a licence under the *Banks and Trust Companies Act (2021 Revision)*, the *Companies Management Act (2021 Revision)*, the *Insurance Act, 2010 [Law 32 of 2010]*, Part III of the *Mutual Funds Act (2021 Revision)* or the *Securities Investment Business Act (2020 Revision)*; or

(g) exempted by the Regulations.

(2) In this section, "**approved person**" means a person or a subsidiary of a person that is —

(a) regulated, registered or holding a licence in the Islands under a regulatory law;

(b) regulated in a jurisdiction that is designated as having measures for combating money laundering and the financing of terrorism which are equivalent to that of the Islands in accordance with section 5(2) of the *Proceeds of Crime Act (2020 Revision)*; or

(c) listed on the Cayman Islands Stock Exchange or an approved stock exchange in Schedule 4.

(2A) For the avoidance of doubt, a legal entity shall not be considered —

(a) to be operated or managed by an approved person solely as a consequence of the entity having appointed an individual who is an employee of a legal entity which holds a licence under a regulatory law as a director; or

(b) to be managed, arranged, administered, operated or promoted by an approved person solely as a consequence of the entity having appointed an approved person to provide its registered office in the Cayman Islands.

(3) For the purposes of this section, a company ("company S") is a subsidiary of one or more legal entities described in subsection (1) if —

(a) such legal entities, separately or collectively, hold seventy-five percent or more of the shares or voting rights in company S;

(b) each such legal entity is a member of company S and, separately or collectively, such legal entities have the right to appoint or remove a majority of its board of directors; or

(c) it is a subsidiary of one or more legal entities each of which is itself a subsidiary of one or more legal entities described in subsection (1).

### Competent authority

**246**. (1) The Minister charged with responsibility for Financial Services is the competent authority for the purposes of this Part and shall exercise the functions of the competent authority under this Part acting alone or through a person designated by the Minister to act for a specific purpose.

(2) The competent authority may do all things necessary or convenient to be done in the performance of the competent authority's functions under this Law.

## Identifying Beneficial Owners, Relevant Legal Entities and Registrable Persons

### Duty of companies to identify beneficial owners

**247**. (1) Companies to which this Part applies shall take reasonable steps to identify any individual who is a beneficial owner of the company.

(2) For the purpose of identifying individuals who are beneficial owners under subsection (1), a company is entitled to rely, without further enquiry, on the response of a person to a notice in writing sent in good faith by the company, unless the company has reason to believe that the response is misleading or false.

(3) An individual ("X") is a beneficial owner of a company ("company Y") if the individual meets one or more of the following conditions in relation to the company —

(a) X must hold, directly or indirectly, twenty-five percent or more of the shares in company Y;

(b) X must hold, directly or indirectly, twenty-five percent or more of the voting rights in company Y;

(c) X must hold the right, directly or indirectly, to appoint or remove a majority of the board of directors of company Y.

(4) If no individual meets the conditions in subsection (3), X is a beneficial owner of company Y if X has the absolute and unconditional legal right to exercise, or actually exercises, significant influence or control over company Y through the ownership structure or interests described in subsection (3), other than solely in the capacity of a director, professional advisor or professional manager.

(5) If no individual meets the conditions in subsections (3) and (4) but the trustees of a trust (or the members of a partnership or other entity that, under the law by which it is governed is not a legal person) meet one of those conditions in relation to company Y in their capacity as such, X is a beneficial owner of company Y if X has the absolute and unconditional legal right to exercise, or actually exercises, significant influence or control over the activities of that trust (or partnership or other entity), other than solely in the capacity of a director, professional advisor or professional manager.

### Duty of companies to identify relevant legal entities

**248**. (1) A company to which this Part applies shall take reasonable steps to identify all relevant legal entities that exist in relation to the company.

(2) For the purpose of identifying relevant legal entities under subsection (1), a company is entitled to rely, without further enquiry, on the response of a legal entity to a notice in writing sent in good faith by the company, unless the company has reason to believe that the response is misleading or false.

(3) A "**relevant legal entity**", in relation to a company, is a legal entity that —

(a) is incorporated, formed or registered (including by way of continuation or as a foreign company) in the Islands under the laws of the Islands; and

(b) would be a beneficial owner of the company if it were an individual.

### Duty of companies to give notice to registrable persons

**249**. (1) Subject to subsection (5), a company to which this Part applies shall give notice in writing to beneficial owners and relevant legal entities identified under sections 247 and 248 and to any person that it knows or has reasonable cause to believe is a registrable person in relation to it.

(2) The notice shall require the persons to whom it is addressed, within one month of the date of receipt of the notice —

(a) to state whether or not they are registrable persons, within the meaning of this Part; and

(b) if they are registrable persons, to confirm or correct any required particulars that are included in the notice and supply any required particulars that are missing from the notice.

(3) A company may also give notice in writing to a registered shareholder or a legal entity that the company knows or has reasonable cause to believe is a relevant legal entity in relation to that company (or would be a relevant legal entity if it were registered under this Law), if the company knows or has reasonable cause to believe that such shareholder or legal entity knows the identity of a registrable person.

(4) A notice under subsection (3) may require the persons to whom it is addressed —

(a) to state whether or not they know the identity of a registrable person or any person likely to have that knowledge; and

(b) if so, within one month of receipt of the notice, to supply, at the expense of the company, any required particulars respecting such registrable persons that are within the addressee's knowledge, and to state whether the particulars are being supplied with or without the knowledge of the person concerned.

(5) A company is not required to give a notice to an individual or a relevant legal entity if —

(a) the company knows that the individual or entity is not a registrable person; or

(b) the company has already been informed of the individual's or entity's status as a registrable person in relation to it, and has received all the required particulars.

(6) A person to whom a notice under this section is given is not required by that notice to disclose any information —

(a) in respect of which a claim to legal professional privilege could be maintained in legal proceedings; or

(b) that the person is prohibited by any law applicable in the Islands from disclosing.

### Duty of beneficial owners and relevant legal entities to supply information

**250**. (1) This section applies to a person if —

(a) the person is a registrable person in respect to a company to which this Part applies;

(b) the person knows the facts referred to in paragraph (a);

(c) the person has no reason to believe that the person's required particulars are stated in the company's beneficial ownership register;

(d) the person has not received a notice from the company under section 249; and

(e) the circumstances described in paragraphs (a), (b), (c) and (d) have continued for a period of at least one month.

(2) The person shall —

(a) notify the company of the person's status as a registrable person in relation to the company;

(b) state the date, to the best of the person's knowledge, on which the person acquired that status; and

(c) give the company the required particulars.

(3) The duty under subsection (2) must be complied with by the end of the period of one month beginning with the day on which the conditions in subsection (1)(a), (b) and (c) were first met with respect to the person.

### Individuals and relevant legal entities that are registrable persons

**251**. (1) The following are registrable persons in relation to a company —

(a) an individual whom the company identifies pursuant to section 247 as a beneficial owner of the company;

(b) a relevant legal entity identified by the company pursuant to section 248 that —

(i) holds an interest in the company or meets one or more of the specified conditions directly in respect of that company; and

(ii) through which any beneficial owner or relevant legal entity indirectly owns an interest in the company.

(2) Whether a person holds an interest in a company or meets a specified condition in relation to the company directly or indirectly shall be determined in accordance with the Regulations.

## Establishing Beneficial Ownership Registers

### Duty to establish and maintain beneficial ownership register

**252**. (1) A company to which this Part applies by virtue of section 245(1) shall keep its beneficial ownership register at the company's registered office.

(2) A corporate services provider engaged for the provision of registered office services by —

(a) an exempted company;

(b) an ordinary non-resident company; or

(c) a company registered to carry on a special economic zone business in a special economic zone under the *Special Economic Zones Act (2017 Revision)*,

shall keep the beneficial ownership register of the company.

(3) An ordinary resident company to which this Part applies may engage the Registrar to assist the company to establish and maintain its beneficial ownership register.

(3A) Where an ordinary resident company does not engage the Registrar under subsection (3), the corporate services provider engaged by the ordinary resident company shall keep the beneficial ownership register of the ordinary resident company.

(4) The Registrar may charge the prescribed fees for establishing and maintaining a beneficial ownership register on behalf of an ordinary resident company.

(5) In this section —

"**ordinary non-resident company**" means a company designated by the Financial Secretary as a non-resident company in accordance with section 2(3) of the *Local Companies (Control) Act (2019 Revision)*; and

"**ordinary resident company**" means a company which carries on business in the Islands in accordance with section 2(2) of the *Local Companies (Control) Act (2019 Revision)*.

### Role of corporate services provider and Registrar

**253**. (1) A company to which this Part applies shall provide in writing to a corporate services provider or to the Registrar, as the case may be, the required particulars of registrable persons in respect of that company, once those particulars have been confirmed.

(1A) A company that is exempt from the application of this Part under section 245(1) shall provide in the prescribed manner to the corporate services provider or the Registrar, as the case may be —

(a) written confirmation of the exemption —

(i) identifying the paragraph under section 245(1) that provides for the exemption; and

(ii) including the prescribed information about the regulated legal entity, regulated parent entity or approved person referred to in that paragraph; and

(b) instructions to file the written confirmation with the competent authority.

(2) The company referred to in subsection (1) shall instruct the corporate services provider or the Registrar, as the case may be, to enter the required particulars of registrable persons in the company's beneficial ownership register in the prescribed form and manner, or if no registrable persons are identified to enter a nil return.

(3) Particulars need not be entered concerning an individual or relevant legal entity that is not a registrable person.

(4) For the purposes of this section, particulars are considered to have been confirmed if —

(a) the company has reasonable grounds to believe that they were supplied or confirmed by the individual or entity to whom the particulars relate;

(b) another person supplied or confirmed them to the company, and the company has reasonable grounds to believe that this was done with the knowledge of the individual or entity to whom the particulars relate; or

(c) the particulars were included in a statement of initial significant control delivered to the Registrar by subscribers wishing to form a company.

### Required particulars

**254**. (1) The required particulars of an individual are —

(a) full legal name;

(b) residential address and, if different, an address for service of notices under this Law;

(c) date of birth;

(d) information identifying the individual from the individual's unexpired and valid passport, driver's licence or other government-issued document, including —

(i) identifying number;

(ii) country of issue; and

(iii) date of issue and of expiry; and

(e) the date on which the individual became or ceased to be a registrable person in relation to the company in question.

(2) In the case of a person in relation to whom this Part has effect by virtue of section 244(2), the required particulars are —

(a) name;

(b) principal office;

(c) the legal form of the person and the law by which the person is governed; and

(d) the date on which the person became or ceased to be a registrable person in relation to the legal entity in question.

(3) The required particulars of a relevant legal entity are —

(a) corporate or firm name;

(b) registered or principal office;

(c) the legal form of the entity and the law by which it is governed;

(d) if applicable, the register of companies in which it is entered and its registration number in that register; and

(e) the date on which it became or ceased to be a registrable person in relation to the company in question.

### Duty of company to keep register up to date

**255**. (1) If a company to which this Part applies becomes aware of a relevant change with respect to a registrable person whose required particulars are stated in its beneficial ownership register, the company shall give notice to the registrable person, as soon as reasonably practicable after it learns of the change or first has reasonable cause to believe that the change has occurred, requesting confirmation of the change.

(2) If the person to which a notice is sent under subsection (1) confirms the relevant change, the company shall record the details of the change and instruct the

corporate services provider or the Registrar, as the case may be, to enter in the company's beneficial ownership register in the prescribed form and manner —

(a) the details of the relevant change confirmed by the company;

(b) the date on which the change was made; and

(c) whether there are further alterations to be made.

(3) For the purposes of this section, a relevant change occurs if —

(a) the registrable person ceases to be a registrable person in relation to the company; or

(b) any other change occurs as a result of which the required particulars stated respecting the registrable person in the company's beneficial ownership register are materially incorrect or incomplete.

(4) A relevant change with respect to a registrable person is considered to have been confirmed if —

(a) the company has given notice to the person requesting confirmation, within the period of one month from the date of the notice, of the relevant change, the date of the change and the required particulars included in the notice; and

(b) the details, date and particulars of the change have been supplied or confirmed to the company by the registrable person, or by another person, with the knowledge of the registrable person.

### Consequences of failure to disclose beneficial ownership

**256**. (1) If a company's corporate services provider or the Registrar, as the case may be, is of the opinion that the company has failed to comply with section 253 or 255 without reasonable excuse or has made a statement to them that is false, deceptive or misleading in respect of a material particular, the corporate services provider or the Registrar, as the case may be, shall give notice of their opinion to the company.

(2) On receipt of a notice under subsection (1), the company shall provide the corporate services provider or the Registrar, as the case may be, with —

(a) the missing particulars required under section 253 or 255 pertaining to registrable persons; and

(b) a justification or correction respecting any statement identified in the notice.

(3) If the company fails, due to the failure of a registrable person to comply with their obligations under this Law, to provide the missing particulars referred to in subsection (2)(a) within one month of receipt of the notice, the corporate services provider shall —

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 171 of 226



(a) subject to section 265, issue a restrictions notice to the registrable persons whose particulars are missing with regard to the shares or other relevant interest of such registrable persons in the company; and

(b) send a copy of the notice to the competent authority within two weeks of issuing it.

(4) A person to whom a restrictions notice is issued under this section may apply to the Grand Court to set aside any restriction imposed by the notice.

### Duty of other persons to update register

**257**. (1) This section applies to persons if —

(a) they have stated that they are registrable persons, within the meaning of this Part, in response to a notice received under section 249 or they have reason to believe that their required particulars are stated in a company's beneficial ownership register;

(b) a relevant change, within the meaning of section 255(3), occurs with respect to the person;

(c) they know of the change;

(d) they have no knowledge that the beneficial ownership register has been altered to reflect the change; and

(e) they have not received a notice from the company under section 255 by the end of the period of one month beginning with the day on which the change occurred.

(2) A person to which this section applies shall —

(a) notify the company of the relevant change;

(b) state the date on which it occurred; and

(c) give the company any information needed to update the company's beneficial ownership register.

(3) The duty under subsection (2) shall be complied with by the end of the period of one month beginning with the day on which the person discovered the relevant change.

### Removal of entries from company's beneficial ownership register

**258**. A company may cause an entry relating to a person that is no longer a registrable person to be removed from its beneficial ownership register on the expiration of five years from the date on which the person ceased to be a registrable person in relation to the company.

### Power of the Grand Court to rectify beneficial ownership register

**259**. (1) If —

(a) the name of any individual or relevant legal entity is, without sufficient cause, entered in or omitted from a company's beneficial ownership register as a registrable person; or

(b) default is made or unnecessary delay takes place in entering on a company's beneficial ownership register the fact that the individual or relevant legal entity has ceased to be a registrable person,

the person aggrieved, or any individual or relevant legal entity that is a registrable person in relation to the company, may apply to the Grand Court for rectification of the company's beneficial ownership register.

(2) The Grand Court may —

(a) refuse the application; or

(b) order rectification of the beneficial ownership register and payment by the company of any damages sustained by any person aggrieved.

(3) On an application under this section, the Grand Court may decide any question —

(a) as to whether the name of any person who is a party to the application should or should not be entered in or omitted from the company's beneficial ownership register; and

(b) that is necessary or expedient to be decided for rectification of the company's beneficial ownership register.

(4) If the Grand Court makes an order for rectification of a company's beneficial ownership register against the company, it shall direct notice of the rectification to be given to the competent authority.

## Access to Beneficial Ownership Information

### Duty of competent authority to establish search platform

**260**. (1) The competent authority shall establish a search platform by means of which access may be provided to information on all beneficial ownership registers maintained on behalf of companies subject to this Part by corporate services providers or the Registrar.

(2) The search platform must —

(a) be secure and accessible only by the competent authority;

(b) be able to search all company beneficial ownership information provided to the competent authority by corporate service providers or the Registrar by the name of an individual, legal entity or company; and

(c) prevent communication to any person of the fact that a search is being made or has taken place, except where the competent authority expressly discloses such communication.

### Duty of Registrar and corporate services providers

**261**. (1) A corporate services provider engaged by a company pursuant to section 252, or the Registrar if so engaged, shall provide an information technology solution, either directly or through another corporate services provider, that enables the corporate services provider or Registrar, as the case may be —

(a) to establish and maintain the company's beneficial ownership register on its behalf; and

(b) to provide the information on the beneficial ownership register to the competent authority by way of the search platform established pursuant to section 260.

(2) The corporate services provider shall regularly deposit beneficial ownership information received from the companies that have engaged the provider, in such place, in such manner and at such intervals as may be prescribed.

(3) If default is made in complying with subsection (2), the corporate services provider and any officer of the corporate services provider who is in default —

(a) shall incur a penalty of five hundred dollars; and

(b) if the competent authority is satisfied that the default was knowingly or wilfully authorised or permitted, shall incur an additional penalty of one thousand dollars and a further penalty of one hundred dollars for every day during which the default continues.

### Limits on searches that may be executed

**262**. (1) The competent authority shall execute a search of a company's beneficial ownership register by means of the search platform if formally requested to do so by a senior official designated by name or position by the Minister, representing one of the following bodies —

(a) the financial intelligence unit, as defined in the *Proceeds of Crime Act (2020 Revision)*;

(b) the Financial Reporting Authority, as defined in the *Proceeds of Crime Act (2020 Revision)*;

(c) the Cayman Islands Monetary Authority;

(ca) the Anti-Corruption Commission established under section 3 of the *Anti-Corruption Act (2019 Revision)*;

(d) the Tax Information Authority, designated under section 4 of the *Tax Information Authority Act (2021Revision)*; and

(e) any other body which is assigned responsibility for monitoring compliance with money laundering regulations under section 4(9) of the *Proceeds of Crime Act (2020 Revision)*.

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 174 of 226



(2) **Repealed** by section 8(b) of the *Companies (Amendment) Act, 2020 [Law 4 of 2020]*.

(3) The competent authority shall execute a search of a company's beneficial ownership register by means of the search platform if formally requested to do so by the Financial Crime Unit of the Royal Cayman Islands Police Service if a senior official of the Unit certifies that the request for the search is in response to a request from a jurisdiction listed in Schedule 6 that has entered into an agreement with the Government respecting the sharing of beneficial ownership information made —

(a) by a law enforcement official designated by the agreement; and

(b) in compliance with that agreement.

(3A) The competent authority may execute a search of the beneficial ownership register of a company in accordance with this Part for the purpose of verifying the accuracy of the information provided by the company.

(4) No person shall use the search platform to search a company's beneficial ownership register except the competent authority.

### Disclosure of beneficial ownership information by the Cayman Islands Monetary Authority

**263**. (1) Notwithstanding section 245(1), the Cayman Islands Monetary Authority may, on the request of the competent authority, disclose any information —

(a) relating to a company or a subsidiary of a company which is exempt from this Part pursuant to sections 245(1)(b),(c), (e) or (f); and

(b) that the company or subsidiary which is exempt from this Part pursuant to sections 245(1)(b),(c), (e) or (f) would be required to provide under this Part as required particulars, if this Part applied to that company or subsidiary.

(2) For greater certainty, section 50(1) of the *Monetary Authority Act (2020 Revision)* does not apply to a disclosure made under this section.

### Non-disclosure of information concerning requests for beneficial ownership information

**264**. (1) Neither the competent authority nor any employee, servant or agent of the competent authority shall disclose any information relating to a request for beneficial ownership information, including the fact that such a request was made or that a search was carried out, to any person other than the authorised personnel of the competent authority or the law enforcement agency that requested the search.

(2) Information maintained by a corporate services provider or the Registrar in respect of the beneficial ownership of a company is deemed to be confidential

information under the *Confidential Information Disclosure Act, 2016 [Law 23 of 2016]*.

(3) Subject to sections 18 and 19 of the *Tax Information Authority Act (2021 Revision)*, information deemed to be confidential under subsection (2) shall only be disclosed in accordance with the *Confidential Information Disclosure Act, 2016 [Law 23 of 2016]*.

## Enforcement – Restrictions Notices

### Right to issue restrictions notice

**265**. (1) The corporate services provider of a company to which this Part applies may send a restrictions notice to a person who has a relevant interest in that company if, by the end of the period of one month beginning with the date of receipt of the notice —

(a) a notice under section 249 or 255 was served on the person;

(b) the person has not —

(i) complied with the notice; or

(ii) provided the company with a valid reason sufficient to justify the person's failure to comply with the notice; and

(c) the relevant interest is not subject to a security interest granted to a third party who is not affiliated with the person.

(2) In deciding whether to send a restrictions notice, the corporate services provider shall have regard to the effect of the notice on the rights of persons in respect of the relevant interest, including third parties, persons with a security interest over the relevant interest, shareholders and other beneficial owners.

### Effect of restrictions notice

**266**. (1) The effect of a restrictions notice with respect to a relevant interest is as follows —

(a) any transfer or agreement to transfer the interest is void;

(b) no rights are exercisable in respect of the interest;

(c) no shares may be issued in respect of the interest or in pursuance of an offer made to the interest-holder;

(d) except in a liquidation, no payment may be made of sums due from the company in respect of the interest, whether in respect of capital or otherwise; and

(e) other than in a liquidation, an agreement to transfer any of the following associated rights in relation to the relevant interest is void —

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 176 of 226



(i) a right to be issued with any shares issued in respect of the relevant interest; or

(ii) a right to receive payment of any sums due from the company in respect of the relevant interest.

(2) This section does not apply to an agreement to transfer a relevant interest referred to in subsection (1)(a) or to an associated right referred to in subsection (1)(e), if the agreement results from the making of an order referred to in section 270(2)(b).

### Protection of third party rights

**267**. (1) The Grand Court may, on application by any person aggrieved, give a direction for the purpose of protecting the rights of third parties, persons with a security interest over the relevant interest, shareholders or other beneficial owners in respect of a relevant interest, if the Court is satisfied that a restrictions notice unfairly affects those rights.

(2) An order under this section —

(a) shall direct, subject to such terms as the Court thinks fit, that certain acts will not constitute a breach of the restrictions placed on the relevant interest by the restrictions notice;

(b) shall specify the acts that will not constitute a breach of the restrictions; and

(c) may confine the direction to cases where those acts are done by persons, or for purposes, described in the order.

### Breach of restrictions an offence

**268**. (1) A person commits an offence who, knowing that a relevant interest is subject to restrictions —

(a) exercises or purports to exercise any right to dispose of the relevant interest;

(b) exercises or purports to exercise any right to dispose of any right to be issued with the relevant interest; or

(c) votes in respect of the relevant interest (whether as holder of the interest or as proxy) or appoints a proxy to vote in respect of the relevant interest.

(2) A person who has a relevant interest that the person knows to be subject to restrictions commits an offence if the person —

(a) knows a person to be entitled (apart from the restrictions) to vote in respect of the interest, whether as holder or as proxy;

(b) does not know the person to be aware of the fact that the interest is subject to restrictions; and

(c) fails to notify the person of that fact.

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 177 of 226



(3) A person commits an offence if the person —

(a) has a relevant interest that the person knows to be subject to restrictions or is entitled to an associated right; and

(b) enters into an agreement that is void by virtue of section 266(1)(a) or (e).

(4) A person who commits an offence under this section is liable on summary conviction to a fine of five thousand dollars.

(5) No person commits an offence who contravenes subsections (1) to (3) in compliance with a direction of the Grand Court given under section 267 or 270.

### Company issuing shares in breach of restriction

**269**. Subject to a direction given under section 267 or 270, a company that issues shares in contravention of a restriction imposed by virtue of a restrictions notice, commits an offence and is liable on summary conviction to a fine of five thousand dollars.

### Relaxation of restrictions

**270**. (1) A corporate services providerthat issues a restrictions notice, or any person aggrieved by such notice, may apply to the Grand Court for an order directing that the relevant interest cease to be subject to restrictions.

(2) The Grand Court may only make an order under this section if —

(a) the Court is satisfied that the information required by the notice served under section 249 or 255 has been disclosed to the company and no unfair advantage has accrued to any person as a result of the earlier failure to make that disclosure; or

(b) the relevant interest is to be transferred for valuable consideration and the Court approves the transfer.

(3) An order made by virtue of subsection (2)(b) may continue, in whole or in part, the restrictions mentioned in section 266(1)(c) and (d) so far as they relate to a right acquired or offer made before the transfer.

(4) Where any restrictions continue in force by virtue of subsection (3) —

(a) an application may be made under this section for an order directing that the relevant interest cease to be subject to those restrictions; and

(b) subsection (2) does not apply in relation to the making of such an order.

### Orders for sale

**271**. (1) On application by a corporate services providerthat issues a restrictions notice, the Grand Court may order that the relevant interest subject to restrictions be sold, provided that the Court approves the sale.

(2) A Court that makes an order under subsection (1) may make such further order relating to the sale or transfer of the interest as it thinks fit on application by —

(a) the corporate services provider that issued the restrictions notice;

(b) the person appointed in pursuance of the order to effect the sale; or

(c) any person with an interest in the relevant interest.

(3) On making an order under subsection (1) or (2), the Court may order that the applicant's costs be paid from the proceeds of sale.

### Proceeds of sale of relevant interest

**272**. (1) If a relevant interest is sold pursuant to an order under section 271, the proceeds of the sale, less the costs of the sale, must be paid into the Grand Court for the benefit of persons who are beneficially interested in the relevant interest.

(2) A person who is beneficially interested in the relevant interest may apply to the Grand Court for the whole or part of those proceeds to be paid to that person.

(3) On an application under subsection (2), the Court shall order the payment to the applicant of —

(a) the whole of the proceeds of sale together with any interest on the proceeds; or

(b) if another person was also beneficially interested in the relevant interest at the time of the sale, such proportion of the proceeds (and any interest) as the value of the applicant's interest bears to the total value of the relevant interest.

(4) Where the Court has ordered under section 271(3) that the costs of an applicant be paid from the proceeds of sale, the applicant is entitled to payment of those costs before any person receives any part of the proceeds under this section.

### Corporate services provider may withdraw restrictions notice

**273**. A corporate services providerthat issues a restrictions notice to a person shall by notice withdraw the restrictions notice if —

(a) it is satisfied that there is a valid reason sufficient to justify the person's failure to comply with the notice served under section 249 or 255;

(b) the notice served under section 249 or 255 is complied with; or

(c) the corporate services providerdiscovers that the rights of a third party in respect of the relevant interest are being unfairly affected by the restrictions notice.

### *Offences*

### Failure of a company to establish or maintain beneficial ownership register

**274**. (1) A company that knowingly and wilfully contravenes section 247(1), 248(1), 252, 253(1) or (1A) or 255(2) or knowingly and wilfully fails to issue a notice as required by section 249, 255 or 256(3) commits an offence and is liable on summary conviction for each such contravention —

(a) in the case of a first offence, to a fine of twenty-five thousand dollars; or

(b) in the case of a second or subsequent offence, to a fine of one hundred thousand dollars.

(2) Where a company is convicted of a third offence under subsection (1), the court may order that the company be struck off the register by the Registrar in accordance with Part VI, as if it is a company that the Registrar has reasonable cause to believe is not carrying on business or is not in operation.

### Failure to comply with notices

**275**. (1) A person to whom a notice under section 249 or 255 is addressed commits an offence if the person —

(a) knowingly and wilfully fails to comply with the notice; or

(b) in purported compliance with the notice —

(i) makes a statement that the person knows to be false in a material particular; or

(ii) recklessly makes a statement that is false in a material particular.

(2) A person does not commit an offence under subsection (1)(a) if the person proves that the requirement to give information was frivolous or vexatious.

(3) A person who commits an offence under this section is liable —

(a) on conviction on indictment —

(i) in the case of a first offence, to a fine of twenty-five thousand dollars; or

(ii) in the case of a second or subsequent offence, to a fine of fifty thousand dollars or to imprisonment for a term of two years, or to both; or

(b) on summary conviction to imprisonment for a term of twelve months or a fine of five thousand dollars, or to both.

### Failure to provide information

**276**. (1) A person commits an offence if the person —

(a) knowingly and wilfully fails to comply with a duty under section 250 or 257 within the time required by that section; or

(b) in purported compliance with such a duty —

(i) makes a statement that the person knows to be false in a material particular; or

(ii) recklessly makes a statement that is false in a material particular.

(2) A person who commits an offence under this section is liable —

(a) on conviction on indictment —

(i) in the case of a first offence, to a fine of twenty-five thousand dollars; or

(ii) in the case of a second or subsequent offence, to a fine of fifty thousand dollars or to imprisonment for a term of two years, or to both; or

(b) on summary conviction to imprisonment for a term of twelve months or to a fine of five thousand dollars, or to both.

### Unlawful search or disclosure of beneficial ownership information

**277**. A person who conducts a search of a company's beneficial ownership register contrary to section 262(3), (3A) or (4) or discloses beneficial ownership information contrary to section 264 commits an offence and is liable on summary conviction to a fine of five thousand dollars or imprisonment for twelve months, or to both.

### Offences by officers and directors

**278**. (1) Where a company or a legal entity commits an offence under this Part, and it is proved that the offence was committed with the consent or connivance of, or was attributable to wilful default on the part of a director or other officer concerned in the management of the company or legal entity, the director or other officer commits the same offence and is liable to the same penalty as the company or legal entity.

(2) In subsection (1), "**director**" includes a member, in relation to a company whose affairs are managed by its members.

## Supplementary Provisions

### Exemptions

**279**. (1) The competent authority, if satisfied, having regard to any undertaking given by an individual or a legal entity, that there are special reasons for an exemption from compliance with a notice or duty under this Part, may exempt —

(a) the individual or legal entity from complying with a notice issued under section 249 or 255 ;

(b) a company from taking steps to identify that individual or legal entity or give notice under section 249 or 255 to or with respect to them;

(c) anyone from sending a notice or giving information pursuant to a notice under section 249(3);

(d) the individual or legal entity from the duties imposed by sections 250 and 255 ; or

(e) the individual or legal entity from being entered on a company's beneficial ownership register as a registrable person in relation to any company.

(2) The competent authority shall exercise the exemption powers in subsection (1) in accordance with the prescribed criteria.

### Request for additional information

**279A**.(1) The competent authority may request by notice in writing, additional information from a company or corporate services provider for the purposes of carrying out its functions under this Part.

(2) A company or corporate services provider which receives a notice for information under subsection (1) shall comply with the notice within the period and in the manner specified in the request.

(3) **Repealed** by section 8 of the *Companies (Amendment) (No. 3) Act, 2020 [Act 60 of 2020]*.

### Regulations

**280**. (1) The Cabinet may make regulations respecting anything required to carry out this Part or prescribing anything required to be prescribed under this Part, including regulations —

(a) specifying criteria for the exercise of the competent authority's exemption powers under section 279;

(b) respecting the giving of notices under section 249 or 255, including the form, content and manner of giving such notices;

(c) to add to or remove from any of the lists of required particulars, including specifying the particulars required respecting the nature of control of a person referred to in section 254 over the company referred to in the particulars;

(d) requiring additional matters to be noted in a company's beneficial ownership register;

(e) requiring the competent authority, the Registrar, a corporate services provider or a company to refrain from using or disclosing particulars of a prescribed kind from a company's beneficial ownership register (or to refrain from doing so except in prescribed circumstances) where an application is made to the competent authority requesting them to refrain from so doing;

(f) specifying the manner and form in which a company shall keep its beneficial ownership register;

(g) setting the fees that the Registrar may charge for services pursuant to an engagement by a company under section 252 to establish and maintain the company's beneficial ownership register;

(h) respecting the procedure to be followed by corporate services providers issuing and withdrawing restrictions notices, including regulations providing for —

(i) the form and content of restrictions notices, and the manner in which they must be given;

(ii) the factors to be taken into account in deciding what counts as a reason sufficient to justify a person's failure to comply with a notice issued under section 249 or 255;

(iii) the effect of withdrawing a restrictions notice on matters that are pending with respect to the relevant interest when the notice is withdrawn; and

(i) adding the name of any country or territory to Schedule 6, or deleting the name of any country or territory from that Schedule.

(2) The Cabinet may make regulations respecting the interpretation of the terms "beneficial owner", "registrable person" and "relevant interest", "significant influence or control", "specified conditions", including regulations —

(a) to replace any or all references in section 247(3) to a percentage figure with references to some other (larger or smaller) percentage figure;

(b) to change or supplement the specified conditions in section 247(3) so as to include circumstances (for example, circumstances involving more complex structures) that give individuals a level of control over company Y broadly similar to the level of control given by the other specified conditions; and

(c) specifying the circumstances in which a person holds an interest in a company or meets a specified condition in relation to the company directly or indirectly through any number of persons or arrangements of any description.

(3) The Cabinet may, by affirmative resolution make regulations to add to, remove from or otherwise revise the list of legal entities or subsidiaries of legal entities to which this Part applies or does not apply under section 245(1)(g).

### Transitional provisions

**281**. (1) No prosecution may be commenced against a company for an offence under section 274, unless the act or omission that constituted the offence took place at least one year after the coming into force of that section in the *Companies (Amendment) Act, 2017 [Law 2 of 2017]*.

(2) A company which is incorporated or registered after the date of the commencement of the *Companies (Amendment) Act, 2019 [Law 10 of 2019]* shall comply with section 40 as amended no later than three months after the date of the commencement of the *Companies (Amendment) Act, 2019 [Law 10 of 2019]*.

(3) A company which is incorporated or registered at the date of the commencement of the *Companies (Amendment) Act, 2019 [Law 10 of 2019]* shall comply with section 40 as amended by the *Companies (Amendment) Act, 2019 [Law 10 of 2019]* no later than six months after the date of the commencement of the *Companies (Amendment) Act, 2019 [Law 10 of 2019]*.

## PART XVIIB – Administrative fines

### Registrar's power to fine

**281A**.The Registrar has the power to impose an administrative fine on a person who breaches a provision of this Act that is specified in Schedule 7.

### Fine amounts

**281B**.The fine shall be five thousand dollars for a breach and the Registrar may, in addition to the fine for the initial breach, impose a further fine of one thousand dollars for every month that the breach continues, until one of the following occurs —

(a) the breach stops or is remedied;

(b) payment of the initial fine and all fines imposed for the continuing breach; or

(c) the total of the initial fine and all fines for the continuing breach amounts to twenty-five thousand dollars.

### The power to fine

**281C**. For the avoidance of doubt —

(a) a fine may be imposed for a breach that is not an offence;

(b) where a breach set out in Schedule 7 is also an offence, a fine for the breach is not limited by the penalty under the provision or by sections 6(2)(ii) and 8 of the *Criminal Procedure Code (2021 Revision)*; and

(c) the Registrar shall not impose a fine where criminal proceedings have commenced or have been concluded in relation to the acts that constitute the breach.

### Limitation period

**281D**.(1) The Registrar shall not impose a fine after the expiration of six months after the date on which the Registrar became aware of the occurrence of the breach.

(2) For the purpose of subsection (1), the Registrar becomes aware of the breach when information is first received from which the breach could reasonably have been inferred.

### Relationship with penalties

**281E**.If a breach set out in Schedule 7 is an offence, a fine for the breach shall not preclude a prosecution for the breach or liability for any relevant fees.

### Registrar may issue guidance

**281F**.The Registrar may issue guidance on the enforcement of administrative fines.

### Registrar's rule-making power for this Part

**281G**.The Registrar may, by rules published in the Gazette, provide for —

(a) aggravating and mitigating factors for fines; and

(b) the publishing of fines imposed in accordance with this Part.

### Regulation-making powers for this Part

**281H**.Regulations made by Cabinet may provide for —

(a) forms and procedures for imposing fines;

(b) appeals against decisions under this Part;

(c) how fines shall be paid and may be enforced;

(d) interest on outstanding fines;

(e) evidentiary provisions for proceedings relating to this Part; and

(f) such other matters that are necessary or convenient to give effect to the purposes or provisions of this Part.

## PART XVIII - Miscellaneous

### Amendment of schedules

**282**. The Cabinet may by Order amend Schedule 4, Schedule 5 or Schedule 7.

### Regulations

**283**. The Cabinet may make regulations prescribing all matters that are required or permitted under this Act to be prescribed, or are necessary or convenient to be prescribed for giving effect to the purposes of this Law.

# SCHEDULE 1

*(section 22(1))*

## Table A

## Regulations for Management of a Company Limited by Shares

### *Preliminary*

1. (1) In these regulations —

"**Law**" means the *Companies Act (2023 Revision)*.

(2) Where any provision of the Law is referred to, the reference is to that provision as modified by any law for the time being in force.

(3) Unless the context otherwise requires, expressions defined in the Law or any statutory modification thereof in force at the date at which these regulations become binding on the company, shall have the meanings so defined.

### *Shares*

2. Subject to the provisions, if any, in that behalf of the memorandum of association, and without prejudice to any special rights previously conferred on the holders of existing shares, any share may be issued with such preferred, deferred or other special rights, or such restrictions, whether in regard to dividend, voting, return of share capital or otherwise as the company may, from time to time, by special resolution determine, and any preference share may, with the sanction of a special resolution, be issued on the terms that it is, or at the option of the company is liable, to be redeemed.

3. If, at any time, the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) may be varied with the consent in writing of the holders of seventy-five per cent of the issued shares of that class or with the sanction of a special resolution passed at a separate general meeting of the holders of the shares of the class. To every such separate general meeting the provisions of these regulations relating to general meetings shall, *mutatis mutandis*, apply, but so that the necessary quorum shall be two persons at least holding or representing by proxy one-third of the issued shares of the class and that any holder of shares of the class present in person or by proxy may demand a poll.

4. Every person whose name is entered as a member in the register of members shall, without payment, be entitled to a certificate of the company specifying the share or shares held by that person and the amount paid up thereon:

Provided that in respect of a share or shares held jointly by several persons the company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all.

5. If a share certificate is defaced, lost or destroyed it may be renewed on payment of such fee, if any, not exceeding twenty cents and on such terms, if any, as to evidence and indemnity, as the directors think fit.

### *Lien*

6. The company shall have a lien on every share (not being a fully paid share) for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share, and the company shall also have a lien on all shares (other than fully paid shares) standing registered in the name of a single person for all moneys presently payable by that person or that person's estate to the company; but the directors may, at any time, declare any share to be wholly or in part exempt from this regulation. The company's lien, if any, on a share shall extend to all dividends payable thereon.

7. The company may sell, in such manner as the directors think fit, any shares in which the company has a lien, but no sale shall be made unless some amount in respect of which the lien exists is presently payable nor until the expiration of fourteen days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the persons entitled thereto by reason of that person's death or bankruptcy.

8. For giving effect to any such sale the directors may authorise some person to transfer the shares sold to the purchaser thereof. The purchaser shall be registered as the holder of the shares comprised in any such transfer and that person shall not be bound to see to the application of the purchase money, nor shall that person's title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

9. The proceeds of the sale shall be received by the company and applied in payment of such part of the amount in respect of which the lien exists as is presently payable, and the residue shall (subject to a like lien for sums not presently payable as existed upon the shares prior to the sale) be paid to the person entitled to the shares at the date of the sale.

### *Calls on Shares*

10. The directors may, from time to time, make calls upon the members in respect of any moneys unpaid on their shares provided that no call shall exceed twenty-five per cent of the nominal amount of the share, or be payable earlier than one month from the last call; and each member shall (subject to receiving at least fourteen days' notice specifying the time or times of payment) pay to the company at the time or times so specified the amount called on that person's shares.

11. The joint holders of a share shall be jointly and severally liable to pay calls in respect thereof.

12. If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest upon the sum at the rate of six per cent per annum from the day appointed for the payment thereof to the time of the actual payment but the directors shall be at liberty to waive payment of that interest wholly or in part.

13. The provisions of these regulations as to the liability of joint holders and as to payment of interest shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the amount of the share, or by way of premium, as if the same had become payable by virtue of a call duly made and notified.

14. The directors may make arrangements on the issue of shares for a difference between the holders in the amount of calls to be paid and in the times of payment.

15. The directors may, if they think fit, receive from any member willing to advance the same all or any part of the moneys uncalled and unpaid upon any shares held by that person; and upon all or any of the moneys so advanced may (until the same would, but for such advance, become presently payable) pay interest at such rate (not exceeding, without the sanction of the company in general meeting, six per cent) as may be agreed upon between the member paying the sum in advance and the directors.

### *Transfer and Transmission of Shares*

16. The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof.

17. Shares shall be transferred in the following form, or in any usual or common form approved by the directors —

I, A.B., of in consideration of the sum of $ paid to me by C.D., of (hereinafter called "the said transferee") do hereby transfer to the said transferee the share (or shares) numbered in the undertaking called the Company Limited, to hold unto the said transferee, subject to the several conditions on which I hold the same; and I, the said transferee, do hereby agree to take the said share (or shares) subject to the conditions aforesaid.

As witnessed our hands the day of , 20 .

Witness to the signatures of, etc.

18. The directors may decline to register any transfer of shares, not being fully paid shares, to a person of whom they do not approve, and may also decline to register any transfer of shares on which the company has a lien. The directors may also suspend the registration of transfers during the fourteen days immediately preceding the ordinary general meeting in each year. The directors may decline to recognise any instrument of transfer unless —

    (a) a fee not exceeding fifty cents is paid to the company in respect thereof; and

    (b) the instrument of transfer is accompanied by the certificate of the shares to which it relates and such other evidence as the directors may reasonably require to show the right of the transferor to make the transfer:

    Provided that if the directors refuse to register a transfer of any shares, they shall, within two months after the date on which the transfer was lodged with the company, send to the transferee notice of the refusal.

19. The legal personal representative of a deceased sole holder of a share shall be the only person recognised by the company as having any title to the share. In the case of a share registered in the names of two or more holders, the survivors, survivor or the legal personal representatives of the deceased survivor, shall be the only person recognised by the company as having any title to the share.

20. Any person becoming entitled to a share in consequence of the death or bankruptcy of a member shall, upon such evidence being produced as may from time to time be properly required by the directors, have the right either to be registered as a member in respect of the share or, instead of being registered, to make such transfer of the share as the deceased or bankrupt person could have made; but the directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by the deceased or bankrupt person before the death or bankruptcy.

21. A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which that person would be entitled if that person were the registered holder of the share, except that that person shall not, before being registered as a member in respect of the share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the company.

### *Forfeiture of Shares*

22. If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the directors may, at any time thereafter during such time as any part of such call or instalment remains unpaid, serve a notice on that person requiring payment of so much of the call or instalment as is unpaid, together with any interest which may have accrued.

23. Such notice shall name a further day (not earlier than the expiration of fourteen days from the date of the notice) on or before which the payment required by the notice is to be made, and shall state that, in the event of non-payment at or before the time appointed, the shares in respect of which the call was made will be liable to be forfeited.

24. If the requirements of such notice are not complied with, any share in respect of which the notice has been given may at any time thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect.

25. A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and at any time before a sale or disposition the forfeiture may be cancelled on such terms as the directors think fit.

26. A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the company all moneys which at the date of forfeiture were payable by that person to the company in respect of the shares, but that person's liability shall cease if and when the company receives payment in full of the nominal amount of the shares.

27. A statutory declaration in writing that the declarant is a director of the company, and that a share in the company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share. The company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and that person shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall that person's title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

28. The provisions of these regulations as to forfeiture shall apply in the case of non-payment of any sum which by the terms of issue of a share becomes payable at a fixed time, whether on account of the amount of the share, or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

29. The company may, by ordinary resolution, convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination.

30. The holders of stock may transfer the same, or any part thereof, in the same manner and subject to the same regulations as and subject to which the shares from which the stock arose might prior to conversion have been transferred, or as near thereto as circumstances admit; but the directors may, from time to time, fix the minimum amount of stock transferable and restrict or forbid the transfer of fractions of that minimum, but the minimum shall not exceed the nominal amount of the shares from which the stock arose.

31. The holders of stock shall, according to the amount of the stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose, but no such privilege or advantage (except participation in the dividends and profits of the company) shall be conferred by any such aliquot part of stock as would not, if existing shares, have conferred that privilege or advantage.

32. Such of the regulations of the company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

### *Alteration of Capital*

33. The company may, from time to time by ordinary resolution, increase the share capital by such sum, to be divided into shares of such amount, as the resolution shall prescribe.

34. Subject to any direction to the contrary that may be given by the company in general meeting, all new shares shall, before issue, be offered to such persons as at the date of the offer are entitled to receive notices from the company of general meetings in proportion, as nearly as the circumstances admit, to the amount of the existing shares to which they are entitled. The offer shall be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, will be deemed to be declined, and after the expiration of that time, or on receipt of an intimation from the person to whom the offer is made that that person declines to accept the shares offered, the directors may dispose of those shares in such manner as they think most beneficial to the company. The directors may likewise so dispose of any new shares which (by reason of the ratio which the new shares bear to shares held by persons entitled to an offer of new shares) cannot, in the opinion of the directors, be conveniently offered under this article.

35. The new shares shall be subject to the same provisions with reference to the payment of calls, lien, transfer, transmission, forfeiture and otherwise as the shares in the original share capital.

36. The company may, by ordinary resolution —

(a) consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(b) sub-divide its existing shares, or any of them, into shares of smaller amounts than is fixed by the memorandum of association, subject nevertheless to section 13 of the Law; and

(c) cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

37. The company may, by special resolution, reduce its share capital and any capital redemption reserve fund in any manner and with, and subject to, any incident authorised and consent required by law.

### *General Meetings*

38. A general meeting shall be held once in every calendar year at such time (not being more than fifteen months after the holding of the last preceding general meeting) and place as may be resolved by the company in general meeting, or in default, at such time in the third month following that in which the anniversary of the company's incorporation occurs, and at such place as the directors shall appoint. In default of a general meeting being so held, a general meeting shall be held in the month next following, and may be convened by any two members in the same manner as nearly as possible as that in which meetings are to be convened by the directors.

39. Such general meetings shall be called ordinary general meetings; all other general meetings shall be called extraordinary general meetings.

40. The directors may, whenever they think fit, convene an extraordinary general meeting. If, at any time, there are not in the Island sufficient directors capable of acting to form a quorum, any director or any two members of the company may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the directors.

### *Notice of General Meetings*

41. Subject to section 60 of the Law relating to special resolutions, at least seven days' notice (exclusive of the day on which the notice is served or deemed to be served, but inclusive of the day for which notice is given) specifying the place, day and hour of meeting and, in case of special business, the general nature of that business shall be given in manner hereinafter provided, or in such other manner, if any, as may be prescribed by the company in general meetings, to such persons as are, under the regulations of the company, entitled to receive such notices from the company; but with the consent of all the members entitled to receive notice of some particular meeting, that meeting may be convened by such shorter notice and in such manner as those members may think fit.

42. The accidental omission to give notice of a meeting to, or the non-receipt of a notice of a meeting by any member shall not invalidate the proceedings at any meeting.

### *Proceedings at General Meetings*

43. All business shall be deemed special that is transacted at any extraordinary meeting, and also all that is transacted at an ordinary meeting, with the exception of sanctioning a dividend, consideration of the accounts, balance sheets and the ordinary report of the directors and auditors, election of directors and other officers in the place of those retiring by rotation, and fixing of the remuneration of the auditors.

44. No business shall be transacted at any general meeting unless a quorum of members is present at the time when the meeting proceeds to business; save as herein otherwise provided, three members personally present shall be a quorum.

45. If, within half an hour from the time appointed for the meeting, a quorum is not present, the meeting, if convened upon the requisition of members, shall be dissolved; in any other case it shall stand adjourned to the same day in the next week, at the same time and place, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting the members present shall be a quorum.

46. The chairperson, if any, of the board of directors shall preside as chairperson at every general meeting of the company.

47. If there is no such chairperson, or if at any meeting that person is not present within fifteen minutes after the time appointed for holding the meeting or is unwilling to act as chairperson, the members present shall choose one of their number to be chairperson.

48. The chairperson may, with the consent of any meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place. When a meeting is adjourned for ten days or more, notice of the adjourned meeting shall be given as in the case of an original meeting. Save as aforesaid it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting.

49. At any general meeting a resolution put to the vote of the meeting shall be decided on a show of hands, unless a poll is (before or on the declaration of the result of the show of hands) demanded by at least three members present in person or by proxy entitled to vote or by one member or two members together holding not less than fifteen per cent of the paid up capital of the company, and, unless a poll is so demanded, a declaration by the chairperson that a resolution has, on a show of hands, been carried, carried unanimously, carried by a particular majority or lost, and an entry to that effect in the book of the proceedings of the company, shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of, or against, that resolution.

50. If a poll is duly demanded it shall be taken in such manner as the chairperson directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

51. In the case of an equality of votes, whether on a show of hands or on a poll, the chairperson of the meeting at which the poll is demanded shall be entitled to a second or casting vote.

52. A poll demanded on the election of a chairperson or on a question of adjournment shall be taken forthwith; a poll demanded on any other question shall be taken at such time as the chairperson of the meeting directs.

### *Votes of Members*

53. On a show of hands every member present in person shall have one vote. On a poll every member shall have one vote for each share of which that person is the holder.

54. In the case of joint holders the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders, and for this purpose seniority shall be determined by the order in which the names stand in the register of members.

55. A member of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by that person's committee or other person in the nature of a committee appointed by that court, and any such committee or other person may, on a poll, vote by proxy.

56. No member shall be entitled to vote at any general meeting unless all calls or other sums presently payable by that person in respect of shares in the company have been paid.

57. On a poll votes may be given either personally or by proxy.

58. The instrument appointing a proxy shall be in writing under the hand of the appointor or that person's attorney duly authorised in writing or, if the appointor is a corporation, either under seal or under the hand of an officer or attorney duly authorised. A proxy need not be a member of the company.

59. The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed, or a notarially certified copy of that power or authority shall be deposited at the registered office of the company not less than forty-eight hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote, and in default the instrument of proxy shall not be treated as valid.

60. An instrument appointing a proxy may be in the following form or any other form approved by the directors —

Company Limited

I, , of being a member of the

Company Limited hereby appoint of

as my proxy, to vote for me and on my behalf at the (ordinary or extraordinary, as the case may be) general meeting of the company to be held on the day of , 20 , and at any adjournment thereof.

Signed this day of , 20 .

61. The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

### *Corporations Acting by Representatives at Meetings*

62. Any corporation which is a member of the company may, by resolution of its directors or other governing body, authorise such person as it thinks fit to act as its representative at any meeting of the company or of any class of members of the company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which that person represents as that corporation could exercise if it were an individual member of the company.

### *Directors*

63. The number of the directors and the names of the first directors shall be determined in writing by a majority of the subscribers of the memorandum of association.

64. The remuneration of the directors shall, from time to time, be determined by the company in general meeting.

65. The qualification of a director shall be the holding of at least one share in the company.

### *Powers and Duties of Directors*

66. The business of the company shall be managed by the directors, who may pay all expenses incurred in setting up and registering the company and may exercise all such powers of the company as are not, by the Law or these articles, required to be exercised by the company in general meeting, subject nevertheless, to any regulation of these articles, to the Law and to such regulations, being not inconsistent with the aforesaid regulations or Law, as may be prescribed by the company in general meeting; but no regulation made by the company in general meeting shall invalidate any prior act of the directors which would have been valid if that regulation had not been made.

67. The directors may, from time to time, appoint one or more of their body to the office of managing director or manager for such term and at such remuneration (whether by way of salary, commission or participation in profits, or partly in one way and partly in another) as they may think fit and a director so appointed shall not, while holding that office, be subject to retirement by rotation, or taken into account in determining the rotation or retirement of directors; but that person's appointment shall be subject to determination *ipso facto* if that person ceases from any cause to be a director, or if the company in general meeting resolves that that person's tenure of the office of managing director or manager be determined.

68. The amount for the time being remaining undischarged of moneys borrowed or raised by the directors for the purposes of the company (otherwise than by the issue of share capital) shall not, at any time, exceed the issued share capital of the company without the sanction of the company in general meeting.

69. The directors shall cause minutes to be made in books provided for the purpose —

(a) of all appointments of officers made by the directors;

(b) of the names of the directors present at each meeting of the directors and of any committee of the directors; and

(c) of all resolutions and proceedings at all meetings of the company, and of the directors and of committees of directors,

and every director present at any meeting of directors or committee of directors shall sign that person's name in a book to be kept for that purpose.

### *The Seal*

70. Any seal of the company shall not be affixed to any instrument except by the authority of a resolution of a board of directors, and in the presence of a director and of the secretary or such other person as the directors may appoint for the purpose; and that director and the secretary or other person as aforesaid shall sign every instrument to which any seal of the company is so affixed in their presence.

### *Disqualification of Directors*

71. The office of director shall be vacated, if the director —

(a) without the consent of the company in general meeting holds any other office of profit under the company except that of managing director or manager;

(b) becomes bankrupt;

(c) is found to be or becomes of unsound mind;

(d) resigns that person's office by notice in writing to the company; or

(e) is directly or indirectly interested in any contract with the company or participates in the profits of any contract with the company:

Provided however, that a director shall not vacate that person's office by reason of that person being a member of any corporation which has entered into contract with or done any work for the company if that person has declared the nature of that person's interest at the first meeting of the directors of the company held after that person became interested in the contract, but the director shall not vote in respect of any such contract or work or any matter arising thereout, and if that person does so vote that person's vote shall not be counted.

### *Rotation of Directors*

72. At the first ordinary general meeting of the company the whole of the directors shall retire from office, and at the ordinary general meeting in every subsequent year one-third of the directors for the time being, or, if their number is not three or a multiple of three, then the number nearest one-third, shall retire from office.

73. The directors to retire in every year shall be those who have been longest in office since their last election but as between persons who became directors on the same day those to retire shall (unless they otherwise agree among themselves) be determined by lot.

74. A retiring director shall be eligible for re-election.

75. The company at the general meeting at which a director retires in manner aforesaid may fill the vacated office by electing a person thereto and in default the retiring director shall be deemed to have been re-elected unless at such meeting it is resolved not to fill such vacated office.

76. The company may, from time to time in general meeting, increase or reduce the number of directors, and may also determine in what rotation the increased or reduced number is to go out of office.

77. Any casual vacancy occurring in the board of directors may be filled by the directors, but the person so chosen shall be subject to retirement at the same time as if that person had become a director on the day on which the director in whose place that person is appointed was last elected a director.

78. The directors shall have power, at any time and from time to time, to appoint a person as an additional director, who shall retire from office at the next following ordinary general meeting, but shall be eligible for election by the company at that meeting as an additional director.

79. The company may, by special resolution, remove a director before the expiration of that person's period in office, and may, by an ordinary resolution, appoint another person in that person's stead. The person so appointed shall be subject to retirement at the same time as if that person had become a director on the day on which the director in whose place that person is appointed was last elected a director.

### *Proceedings of Directors*

80. The directors may meet together for the despatch of business, adjourn and otherwise regulate their meetings, as they think fit. Questions arising at any meeting shall be decided by a majority of votes. In case of an equality of votes the chairperson shall have a second or casting vote. A director may, and the secretary on the requisition of a director shall, at any time, summon a meeting of the directors.

81. The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed shall, when the number of directors exceeds three, be three, and when the number of directors does not exceed three, be two.

82. The continuing directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the regulations of the company as the necessary quorum of directors, the continuing directors may act for the purpose of increasing the number of directors to that number, or of summoning a general meeting of the company, but for no other purpose.

83. The directors may elect a chairperson of their meetings and determine the period for which that person is to hold office; but if no such chairperson is elected, or if at any meeting the chairperson is not present within five minutes after the time appointed for holding the same, the directors present may choose one of their number to be chairperson of the meeting.

84. The directors may delegate any of their powers to committees consisting of such member or members of their body as they think fit; any committee so formed shall, in the exercise of the powers so delegated, conform to any regulations that may be imposed on it by the directors.

85. A committee may elect a chairperson of its meetings; if no such chairperson is elected, or if at any meeting the chairperson is not present within five minutes after the time appointed for holding the same, the members present may choose one of their number to be chairperson of the meeting.

86. A committee may meet and adjourn as it thinks proper. Questions arising at any meeting shall be determined by a majority of votes of the members present and, in case of an equality of votes, the chairperson shall have a second or casting vote.

87. All acts done by any meeting of the directors or of a committee of directors, or by any person acting as a director, shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a director.

### *Dividends and Reserve*

88. The company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by directors.

89. The directors may, from time to time, pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

90. No dividends shall be paid otherwise than out of profits.

91. Subject to the rights of persons, if any, entitled to shares with special rights as to dividends, all dividends shall be declared and paid according to the amounts paid on the shares, but if and so long as nothing is paid up on any of the shares in the company, dividends may be declared and paid according to the amounts of the shares. No amount paid on a share in advance of calls shall, while carrying interest, be treated for the purposes of this article as paid on the share.

92. The directors may, before recommending any dividend, set aside out of the profits of the company such sums as they think proper as a reserve or reserves which shall, at the discretion of the directors, be applicable for meeting contingencies or for equalising dividends or for any other purpose to which the profits of the company may be properly applied, and pending such application may, at the like discretion, either be employed in the business of the company or be invested in such investments (other than shares of the company) as the directors may, from time to time, think fit.

93. If several persons are registered as joint holders of any share, any of them may give effectual receipts for any dividend or other moneys payable on or in respect of the share.

94. Any dividend may be paid by cheque or warrant sent through the post to the registered address of the member or person entitled thereto or in the case of joint holders to any one of such joint holders at that person's registered address or to such person and such address as the member or person entitled or such joint holders, as the case may be, may direct. Every such cheque or warrant shall be made payable to the order of the person to whom it is sent or to the order of such other person as the member or person entitled or such joint holders, as the case may be, may direct.

95. No dividend shall bear interest against the company.

### *Accounts*

96. The directors shall cause proper books of account to be kept with respect to —

   (a) all sums of money received and expended by the company, and the matters in respect of which the receipt and expenditure takes place; and

   (b) all sales and purchases of goods by the company and the assets and liabilities of the company.

97. The books of account shall be kept at the registered office of the company, or at such other place or places as the directors think fit, and shall always be open to the inspection of the directors.

23-01165-mew Doc 67-4 Filed 03/22/24 Entered 03/22/24 18:20:04 Exhibit B - Combined Cases (3) Pg 201 of 226



98. The directors shall, from time to time, determine whether and to what extent, at what times and places and under what conditions or regulations the accounts and books of the company or any of them shall be open to the inspection of members not being directors, and no member (not being a director) shall have any right of inspecting any account, book or document of the company except as conferred by law or authorised by the directors or by the company in general meeting.

99. At the ordinary general meeting in every year the directors shall cause to be prepared and shall lay before the company a profit and loss account and a balance sheet for the period since the preceding account or, (in the case of the first ordinary general meeting) since the commencement of business by the company, made up to a date not more than six months before such meeting.

100. A copy of every balance sheet (including every document required by law to be annexed thereto) which is to be laid before the company in general meeting together with a copy of the auditor's report shall, not less than seven days before the date of the meeting, be sent to all persons entitled to receive notices of general meetings of the company.

### *Audit*

101. The accounts relating to the company's affairs shall be audited in such manner as may be determined from time to time by the company in general meeting or, failing any such determination, by the directors.

### *Notices*

102. (1) A notice may be given by the company to any member either personally or by sending it by post to that person to that person's registered address, or (if that person has no registered address in the Islands) to the address, if any, in the Islands supplied by that person to the company for the giving of notices to that person.

(2) Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, prepaying and posting a letter containing the notice, and to have been effected in the case of a notice of a meeting at the expiration of twenty-four hours after the letter containing the same is posted, and in any other case at the time at which the letter would be delivered in the ordinary course of post.

103. If a member has no registered address in the Islands and has not supplied to the company an address in the Islands for the giving of notices to that person, a notice addressed to that person and advertised in a daily newspaper circulating in the Islands shall be deemed to be duly given on that person at noon on the day following the day on which the newspaper is circulated and the advertisement appeared therein.

104. A notice may be given by the company to the joint holders of a share by giving the notice to the joint holder named first in the register of members in respect of the share.

105. A notice may be given by the company to the persons entitled to a share in consequence of the death or bankruptcy of a member by sending it through the post in a prepaid envelope addressed to them by name, by the title of representatives of the deceased or trustee of the bankrupt or by any like description, at the address, if any, within the Islands, supplied for the purpose by the persons claiming to be so entitled, or (until such an address has been so supplied), by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

106. Notice of every general meeting shall be given in some manner hereinbefore authorised to —

(a) every member except those members who (having no registered address in the Islands) have not supplied to the company an address in the Islands for the giving of notices to them; and

(b) every person entitled to a share in consequence of the death or bankruptcy of a member who, but for that person's death or bankruptcy, would be entitled to receive notice of the meeting.

No other person shall be entitled to receive notices of general meetings.

# SCHEDULE 1A

*(section 26(3) )*

## Required Particulars

The required particulars are —

(a) the name of the company and, in the case of an exempted company, the exempted company's dual foreign name (if any) together with its translated name;

(b) the part of the Islands in which the registered office of the company is proposed to be situate;

(c) the amount of capital of the company and, in the case of a company having its share capital divided into shares of a nominal or par value, the number of shares into which it is divided and the fixed amounts thereof;

(d) the names and addresses of the subscribers to the memorandum and the number of shares taken by each subscriber;

(e) the date of execution of the memorandum of association;

(f) the date of filing of the memorandum of association;

(g) the number assigned to the company;

(h) in the case of a company limited by guarantee or a company that has no limit placed on the liability of its members —

    (i) a statement that the company is limited by guarantee or is unlimited, as the case may be; and

    (ii) the omission of any of the particulars specified in this Schedule which are irrelevant or inappropriate;

(i) the nature of the business; and

(j) the date of the end of the company's financial year.

# SCHEDULE 2

*(section 141)*

## Categories of Preferred Debts

### *Category 1: Debts due to employees*

1. Any sum due by the company to an employee, whether employed in the Islands or elsewhere, in respect of —

   (a) salaries;

   (b) wages; and

   (c) gratuities,

   accrued due during the four months immediately preceding the commencement of the liquidation.

2. Any sum due and payable by the company on behalf of an employee in respect of medical health insurance premiums or pension fund contributions.

3. Where a contract of employment has been terminated as a consequence of the company going into liquidation, any sum due by the company to any former employee in respect of:

   (a) severance pay; and

   (b) earned vacation leave.

4. Any sum payable to a workman in respect of compensation pursuant to the *Workmen's Compensation Act (1996 Revision)*.

5. An employee may claim in the liquidation as an ordinary creditor in respect of any other sum due to that person pursuant to or by virtue of the breach of that person's contract of employment or any tortious claim against the company.

6. The words and expressions used in paragraphs 1 and 2 have the meanings ascribed to them by the *Labour Act (2021 Revision)*.

### *Category 2: Debts due to bank depositors*

1. Any sum due to eligible depositors who have deposits with a company which —

   (a) is incorporated in the Islands; and

   (b) held an "A" licence issued under the *Banks and Trust Companies Act (2021 Revision)*,

   and which does not exceed the deposit limit.

2. The following depositors are not eligible depositors —

(a) a person who holds or is considered to hold a deposit after the presentation of the petition for the winding up of the bank or the commencement of the voluntary winding up of the bank (except in the case of the death of the owner of the deposit); and

(b) the following persons making deposits as —

(i) a person licensed under section 6(1) of the *Banks and Trust Companies Act (2021 Revision)*;

(ii) a person authorised, licensed or recognised as a bank or deposit holder in a country or territory outside the Islands;

(iii) a person who, in the opinion of the Court, has any responsibility for, or may have profited, or may profit, directly or indirectly, from the winding up;

(iv) a person who was, at the date of presentation of the petition for the winding up of the bank or the commencement of the voluntary winding up of the bank, a director, controller or manager of the bank or who, in the opinion of the court exercised such functions;

(v) a person who is the legal or beneficial owner of five percent or more of the shares of all classes issued by the bank; or

(vi) a company or corporation, whether or not incorporated in the Islands, which is, at the date of the presentation of the petition for the winding up of the bank or the commencement of the voluntary winding up of the bank, a parent, subsidiary or fellow subsidiary of the bank, or which is in common ownership with the bank.

3. The deposit limit is twenty thousand dollars in respect of each eligible depositor or its equivalent in any foreign currency for which purpose the applicable exchange rate shall be that determined by the Court in accordance with section 150.

4. For the purpose of calculating the amount of eligible deposits —

(a) separate deposits in the same legal or beneficial ownership shall be aggregated and treated as one deposit;

(b) the ownership of a deposit in joint names shall be deemed to be divided equally between the joint depositors;

(c) the ownership of a deposit in the name of a partnership shall be deemed to be divided equally among the partners;

(d) a deposit which is a client account, and which is designated as such, shall be treated as a separate deposit, made by the client of the depositor, of amounts corresponding to the amount to which such client is entitled; and

(e) the amount of each eligible deposit shall be reduced by the amount of any liability of the depositor to the bank in respect of which a right of set-off

existed at the date of the presentation of the petition for the winding up of the bank, or the commencement of the voluntary winding up of the bank.

### *Category 3: Taxes due to the Government*

1. Sums due in respect of duty and penalties payable under the *Customs and Border Control Act (2022 Revision).*
2. Sums due in respect of fees payable under this Law.
3. Sums due in respect of duty and penalties payable under the *Stamp Duty Act (2019 Revision)*.
4. Sums due in respect of licence fees payable under the regulatory laws.
5. Sums due in respect of taxes payable under the *Tourist Accommodation (Taxation) Act (2013 Revision)*.

# SCHEDULE 3

## Powers of Liquidators

*(section 110)*

### *PART 1*

### Powers exercisable with sanction

1. Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.
2. Power to carry on the business of the company so far as may be necessary for its beneficial winding up.
3. Power to dispose of any property of the company to a person who is or was related to the company.
4. Power to pay any class of creditors in full.
5. Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.
6. Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.
7. Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.
8. The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.
9. The power to raise or borrow money and grant securities therefor over the property of the company.
10. The power to engage staff (whether or not as employees of the company) to assist that person in the performance of that person's functions.
11. The power to engage attorneys and other professionally qualified persons to assist that person in the performance of that person's functions.

## *PART II*

## Powers exercisable without sanction

1. The power to take possession of, collect and get in the property of the company and for that purpose to take all such proceedings as that person considers necessary.
2. The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.
3. The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against that person's estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.
4. The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.
5. The power to promote a scheme of arrangement pursuant to section 86.
6. The power to convene meetings of creditors and contributories.
7. The power to do all other things incidental to the exercise of that person's powers.

# SCHEDULE 4

*(section 40B)*

## APPROVED STOCK EXCHANGES

The following are approved stock exchanges —

| | | |
|---|---|---|
| American Stock Exchange (AMEX) | Euronext Brussels | NYSE Euronext |
| Amman Stock Exchange | Euronext Lisbon | NYSE MKT LLC |
| Athens Stock Exchange | Euronext NV | New Zealand Stock Exchange |
| Australian Securities Exchange | Euronext Paris | OMX Nordic Exchange |
| Barcelona Stock Exchange | Frankfurt Stock Exchange | Osaka Securities Exchange |
| BATS Global Markets | Fukuoka Stock Exchange | Oslo Stock Exchange |
| Berlin Stock Exchange | The Gretai Securities Market of Taiwan | Philadelphia Stock Exchange |
| Bermuda Stock Exchange | Hamburg-Hannover Stock Exchange | Philippine Stock Exchange |
| Bilbao Stock Exchange | Helsinki Stock Exchange | Prague Stock Exchange |
| BM&F Bovespa | Hong Kong Stock Exchange (including the Growth Enterprise Market) | Riga Stock Exchange |
| BME Spanish Exchanges | Iceland Stock Exchange | Rio de Janeiro Stock Exchange |
| Bolsa de Comercio de Buenos Aires | Indonesia Stock Exchange | São Paulo Stock Exchange (Bovespa) |
| Bolsa de Comercio de Santiago | Intercontinental Exchange | Saudi Stock Exchange (Tadawul) |
| Bolsa de Valores de Caracas | International Securities Exchange | Shanghai Stock Exchange Shenzhen, S.E. |
| Bolsa de Valores de Lima | Irish Stock Exchange | Shenzhen Stock Exchange |
| Bolsa de Valores de Colombia | Johannesburg Stock Exchange | Singapore Stock Exchange (including Catalist) |
| Borsa Italiana SPA | Korea Exchange (including KOSPI and KOSDAQ Market Divisions) | SIX Swiss Exchange |
| Bombay Stock Exchange | London Stock Exchange (including AIM) | Stock Exchange of Mauritius |
| Borsa Istanbul | Luxembourg Stock Exchange | Stockholm Stock Exchange |

| | | |
|---|---|---|
| Boston Stock Exchange | Madrid Stock Exchange | Stuttgart Stock Exchange |
| Bucharest Stock Exchange | Malta Stock Exchange | SWX Stock Exchange |
| Budapest Stock Exchange | Mexican Stock Exchange | Taiwan Stock Exchange |
| Bursa Malaysia (including the Main Market and the ACE Market) | Montreal Stock Exchange | Tallinn Stock Exchange |
| Chicago Board Options Exchange | Moscow Exchange | Tel Aviv Stock Exchange |
| Chicago Stock Exchange | Munich Stock Exchange | The Egyptian Exchange |
| CME Group | Nagoya Stock Exchange | The Stock Exchange of Thailand |
| Colombo Stock Exchange | NASDAQ | Tokyo Stock Exchange |
| Copenhagen Stock Exchange | NASDAQ Dubai | Toronto Stock Exchange |
| Cyprus Stock Exchange | National Stock Exchange of Australia | Valencia Stock Exchange |
| Deutsche Borse | National Stock Exchange of India | Vienna Stock Exchange |
| Dusseldorf Stock Exchange | New York Stock Exchange | Vilnius Stock Exchange |
| Eurex | NYSE Arca | Warsaw Stock Exchange |
| Any stock exchange that the Registrar may from time to time designate as an approved stock exchange by way of a public notice which shall be gazetted. | | |

# SCHEDULE 5

## FEES

*(sections 26(3A), 26(4), 41(2), 45(2), 55A(2), 80A, 80B, 169(1), 184(2), 199(1), 213(4) and 213(5))*

### *PART 1*

*(section 26(4))*

The fees payable upon the filing of a memorandum of association under section 26 are as follows —

(a) in respect of a non-resident company —

(i) with no registered capital, or a registered capital not exceeding $42,000, a fee of $575; and

(ii) with a registered capital exceeding $42,000, a fee of $815;

(b) in respect of an exempted company except a special economic zone company —

(i) with no registered capital, or a registered capital not exceeding $42,000, a fee of $600;

(ii) with a registered capital exceeding $42,000, but not exceeding $820,000 a fee of $900;

(iii) with a registered capital exceeding $820,000 but not exceeding $1,640,000, a fee of $1,884; and

(iv) with a registered capital exceeding $1,640,000, a fee of $2,468;

(ba) in respect of a special economic zone company a fee equal to the lowest band of the fee payable upon filing of a memorandum of articles of association by an exempted company as set out in paragraph (b)(i); and

(c) in respect of any other company —

(i) with no registered capital or a registered capital not exceeding $42,000, a fee of $300; and

(ii) with a registered capital exceeding $42,000, a fee of $500.

### *PART 1A*

The fee payable for the inspection of the register under section 26(3A) is $50.

## *PART 2*

*(section 41(2))*

The fees payable by a company, other than an exempted company, in January of each year after the year of its registration, to the Registrar under section 41(2) are as follows —

(a) in the case of a non-resident company —

(i) with no registered capital, or a registered capital not exceeding $42,000, an annual fee of $675; and

(ii) with a registered capital exceeding $42,000, an annual fee of $915; and

(b) in the case of any other company —

(i) with no registered capital, or a registered capital not exceeding $42,000, an annual fee of $300; and

(ii) with a registered capital exceeding $42,000, an annual fee of $500.

## *PART 3*

*(section 45(1))*

The fees payable under section 45(2) on an increase of capital shall be in the case of —

(a) an exempted company which has a capital divided into shares, $500;

(b) an exempted company which has not a capital divided into shares, $500;

(c) a company other than an exempted company which has a capital divided into shares, $500; and

(d) a company which has not a capital divided into shares, $500.

## *PART 3A*

*(sections 80A and 80B)*

1. The non-refundable application fee payable under section 80A is $300.

2. The fee payable under section 80B on filing a change to —

(a) the objects or activities of a company;

(b) the address of the registered office or the location of a company; or

(c) the information to be submitted to the Registrar pursuant to section 80B(f), is $25.

## *PART 4*

*(section 169(1))*

1. The annual fee payable by an exempted company except a special economic zone company, in January of each year after the year of its registration, to the revenues of the Islands under section 169(1) is as follows —

    (a) in the case of an exempted company with no registered capital, or a registered capital not exceeding $42,000, an annual fee of $700;

    (b) in the case of an exempted company with a registered capital exceeding $42,000 but not exceeding $820,000, an annual fee of $1000;

    (c) in the case of an exempted company with a registered capital exceeding $820,000 but not exceeding $1,640,000, an annual fee of $1,984; and

    (d) in the case of an exempted company with a registered capital exceeding $1,640,000, an annual fee of $2,568.

2. The annual fee payable by a special economic zone company, in the January of each year of its registration to the revenues of the Islands under section 169(1) is a fee equal to the lowest band of the annual fee by an exempted company as set out in item 1(a).

## *PART 5*

*(section 184(2))*

1. The fee payable by a foreign company under section 184(1) is $1,350.
2. The annual fee payable by a foreign company under section 184(2) is $1,350.

## *PART 6*

*(section 199(1))*

The fee payable under section 199(1) wherever this Act provides for or requires the filing of any document, notice or return with the Registrar or the issue of any certificate or the Registrar provides a copy of any document in respect of which no fee is elsewhere specifically provided is as follows —

| | | |
|---|---|---|
| (a) | filing any resolution, notice, return or any other document; | $75 |
| (b) | issuing any certificate; | $125 |
| (c) | providing a copy of any document (per folio of 72 words); | $125 |
| (d) | general search fee; | $30 |
| (e) | | |
| (i) | filing a plan of merger or consolidation; | $600 |
| (ii) | in the case where the surviving or consolidated company is | |

a foreign company, each constituent company other than the surviving company pays a fee equal to three times the annual fee that would have been payable pursuant to section 169 in the January immediately preceding the filing of the plan of merger or consolidation by an exempt company having the same registered capital as the constituent company on the date of filing of the plan of merger or consolidation;

(f) filing an application in respect of a dual foreign name. $100

*(section 55A(2))*

## *PART 6A*

1. The fee payable under section 55A(2) for each inspection of the list of the current directors of a company, and where applicable, the current alternate directors of a company is $50.

## *PART 7*

*(section 213(4) and (5))*

1. The fee payable under section 213(4) to accompany an application under section 213(1) is $500.
2. The fees payable by a segregated portfolio company under section 213(5) are —
   (a) an additional fee of $2,000; and
   (b) an additional annual fee of $300 in respect of each segregated portfolio up to a maximum of $1,500.

*Note as to savings and transitional provisions:*

*Section 8 of the Companies (Amendment) Act, 2007 [Law 15 of 2007] hereinafter called "the 2007 Act" provides that —*

*1. All proceedings in respect of offences committed or alleged to have been committed against any enactment repealed by the 2007 Act may be commenced or continued as if the 2007 Act had not come into force.*

*2. Every proceeding commenced under such a repealed enactment may be continued and completed —*

*(a) if the proceeding has been wholly or partly heard, as if the enactments repealed by the 2007 Act were still in force; and*

*(b) in other cases, as if the proceeding had been commenced under the 2007 Act.*

*3. Where, apart from this section, anything done under or for the purposes of the Law before the coming into force of the 2007 Act would cease to have effect by virtue of the repeal of any enactment in force before the coming into force of the 2007 Act it shall have effect as if it had been done under and for the purposes of the corresponding provisions of the 2007 Act.*

# SCHEDULE 6

*(section 262)*

## COUNTRIES OR TERRITORIES THAT HAVE ENTERED INTO AGREEMENTS WITH THE GOVERNMENT FOR THE SHARING OF BENEFICIAL OWNERSHIP INFORMATION

1. United Kingdom.

# SCHEDULE 7

*(section 281A)*

## Administrative fines

| No. | Section | Description of breach |
|---|---|---|
| 1. | 247(1) | Failure of a company to take reasonable steps to identify any beneficial owner of the company |
| 2. | 248(1) | Failure of a company to take reasonable steps to identify any relevant legal entities that exist in relation to the company |
| 3. | 249(1) | Failure of a company to give notice in writing to beneficial owners and relevant legal entities identified under section 249(1). |
| 4. | 250(2) | Failure of a beneficial owner or relevant legal entity to supply information under section 250(2) within the timeframe specified at 250(3). |
| 5. | 252(1) | Failure of a company to keep its beneficial ownership register at the company's registered office. |
| 6. | 252(2) | Failure of a corporate services provider engaged for the provision of registered office services to establish and maintain the company's beneficial ownership register in accordance with section 252(2). |
| 7. | 252(3) and 252(3A) | Failure of an ordinary resident company to either engage a corporate services provider or the Registrar to assist the ordinary resident company to establish and maintain the beneficial ownership register. |
| 8. | 253(1) | Failure of a company to provide in writing to a corporate services provider or to the Registrar the required particulars of registrable persons in respect of the company once the particulars have been confirmed. |

| No. | Section | Description of breach |
|---|---|---|
| 9. | 253(1A) | Failure of a company to provide-<br>(a) written confirmation of the exemption to the corporate services provider; or<br>(b) instructions to file the written confirmation with the competent authority under section 253(1A). |
| 10. | 253(1A)(a)(i) | Failure to provide the corporate services provider or the Registrar with written confirmation of exemption under s.245(1), and specifying the paragraph under s. 245(1) that provides for the exemption. |
| 11. | 255(1) | Failure of a company to give notice requesting confirmation of a change under section 255(1) to a registrable person as soon as reasonably practicable after the company becomes aware of a relevant change with respect to a registrable person. |
| 12. | 255(2) | Failure of a company that receives confirmation of a relevant change to instruct the corporate services provider or the Registrar to enter the change in the company's beneficial ownership register in accordance with section 255(2). |
| 13. | 256(1) | Failure of the corporate services provider to give notice of its opinion to a company if it is of the opinion that the company has failed to comply with section 253 or 255 without reasonable excuse, or has made a statement that is false, deceptive or misleading in accordance with section 256(1). |
| 14. | 256(2) | Failure of a company to provide the corporate services provider or the Registrar with a response to a notice under section 256(2). |
| 15. | 256(3) | Failure of a corporate services provider to —<br>(a) issue a restrictions notice; and<br>(b) send a copy of the notice to the competent authority within two weeks,<br>where the registrable person does not comply with the obligations under section 256(3). |

| No. | Section | Description of breach |
|---|---|---|
| 16. | 257(2) | Failure of a person to whom the section applies —<br>(a) to notify the company of the relevant changes;<br>(b) to state the date the change occurred; and<br>(c) to give the company the information needed to update the beneficial ownership register under section 257(2),<br>within the timeframe specified under section 257(3). |
| 17. | 261(2) | Failure of the corporate services provider to regularly deposit beneficial ownership information in such place, such manner and at such intervals as may be prescribed in accordance with section 261(2). |
| 18. | 266(1) | Failure of an entity to act in a manner consistent with the terms of a restrictions notice under section 266(1). |
| 19. | 279A | Failure of a company or a corporate services provider to respond to a request for additional information under section 279A within the time specified. |

**Publication in consolidated and revised form authorised by the Cabinet this 10th day of January, 2023.**

**Kim Bullings**
*Clerk of the Cabinet*

# ENDNOTES

## Table of Legislation history:

| SL # | Law/Act # | Legislation | Commencement | Gazette |
|---|---|---|---|---|
| 28/2022 | | Companies (Amendment) ) Act, 2021 (Commencement) Order, 2022 | 29-Jul-2022 | LG27/2022/s1 |
| 19/2022 | | Companies (Amendment of Section 254) Regulations, 2022 | 10-Jun-2022 | LG21/2022/s1 |
| | | **Companies Act (2022 Revision)** | 14-Jan-2022 | LG2/2022/s5 |
| | 6/2021 | Companies (Amendment) Act, 2021 | 31-Aug-2022 | LG72/2021/s3 |
| 9/2021 | | Companies (Amendment) (No. 3) Act, 2020 (Commencement) Order, 2021 | 20-Jan-2021 | LG5/2021/s6 |
| | 60/2020 | Companies (Amendment) (No. 3) Act, 2020 | 1-Mar-2021 | LG1/2021/s4 |
| | 56/2020 | Citation of Acts of Parliament Act, 2020 | 3-Dec-2020 | LG89/2020/s1 |
| | | **Companies Act (2021 Revision)** | 12-Jan-2021 | LG4/2021/s8 |
| | 56/2020 | Citation of Acts of Parliament Act, 2020 | 3-Dec-2020 | LG89/2020/s1 |
| 115/2020 | | Companies (Amendment) (No. 2) Law, 2020 (Commencement) (No. 2) Order, 2020 | 20-Aug-2020 | LG60/2020/s2 |
| 78/2020 | | Companies (Amendment) (No. 2) Law, 2020 (Commencement) Order, 2020 | 9-Jun-2020 | LG44/2020/s1 |
| | 19/2020 | Companies (Amendment) (No. 2) Law, 2020 | 1-Oct-2020 | LG39/2020/s3 |
| 27/2020 | | Companies (Amendment) Law, 2020 (Commencement) (No. 2) Order, 2020 | 27-Mar-2020 | LG22/2020/s1 |
| 11/2020 | | Companies (Amendment) Law, 2020 (Commencement) Order, 2020 | 18-Feb-2020 | LG11/2020/s1 |
| | 4/2020 | Companies (Amendment) Law, 2020 | 15-May-2020 | LG10/2020s1 |
| | | **Companies Law (2020 Revision)** | 9-Jan-2020 | LG4/2020/s8 |
| 34/2019 | | Companies (Amendment) Law, 2019 (Commencement of Section 5) Order, 2019 | 19-Sep-2019 | LG34/2019/s1 |
| | 10/2019 | Companies (Amendment) Law, 2019 | 19-Sep-2019 | LG28/2019/s1 |
| | 46/2018 | Companies (Amendment) (No. 2) Law, 2018 | 1-Jan-2019 | GE98/2018/s3 |
| 6/2019 | | Companies (Amendment) Law, 2017 (Commencement) Order, 2019 | 1-Feb-2019 | GE9/2019/s2 |
| | 37/2018 | Companies (Amendment) Law, 2018 | 1-Mar-2019 | GE97/2018/s12 |
| 62/2017 | | Schedule 4 of the Companies Law Departmental Notice, 2017 | 26-Jul-2017 | GE61/2017/p3 |
| 62/2015 | | Schedule 4 of the Companies Law Departmental Notice, 2015 | 13-Feb-2015 | GE12/2015/p28 |

| SL # | Law/Act # | Legislation | Commencement | Gazette |
|---|---|---|---|---|
| | | **Companies Law (2018 Revision)** | 16-Mar-2018 | GE22/2018 s6 |
| 94/2017 | | Companies (Amendment) (No.2) Law, 2017 (Commencement) Order, 2017 | 13-Dec-2017 | GE105/2017/s1 |
| | 42/2017 | Companies (Amendment) (No. 2) Law, 2017 | 13-Dec-2017 | GE100/2017/s2 |
| 21/2017 | | Companies (Amendment) Law, 2017 (Commencement) Order, 2017 | 21-Apr-2017 | GE34/2017s2 |
| | 2/2017 | Companies (Amendment) Law, 2017 | 1-Jul-2017 | GE31/2017/s1 |
| | | **Companies Law (2016 Revision)** | 2-Sep-16 | GE68/2016/s5 |
| E5/2013 | | *ERRATUM*: Companies Law (2016 Revision) | | GE93/2013/p42 |
| | 3/2016 | Companies (Amendment) Law, 2016 | 13-May-2016 | GE36/2016/s1 |
| 43/2015 | | Companies (Amendment) Law, 2015 (Commencement) Order, 2015 | 21-Oct-2015 | GR82/2015/s1 |
| | 14/2015 | Companies (Amendment) Law, 2015 | 2-Nov-2015 | GE73/2015/s1 |
| | | **Companies Law (2013 Revision)** | 11-Oct-2013 | GE82/2013/s6 |
| | 6/2013 | Companies (Amendment) (No. 2) Law, 2013 | 6-May-2013 | G9/2013/s2 |
| | 1/2013 | Companies (Amendment) Law, 2013 | 10-Jan-2013 | GE8/2013/s1 |
| | 29/2012 | Companies (Amendment) (No. 3) Law, 2012 | 11-Dec-2012 | GE123/2012/s4 |
| | 14/2012 | Companies (Amendment) (No.2) Law, 2012 | 5-Oct-2012 | GE94/2012/s1 |
| | 6/2012 | Companies (Amendment) Law, 2012 | 10-Jan-2013 | GE4/2013/s6 |
| 3/2012 | | Companies (Amendment of Schedule) Order, 2011 | 31-Jan-2012 | GE10/2012/s2 |
| | | **Companies Law (2012 Revision)** | 8-Oct-2012 | G21/2012/s4 |
| | 29/2011 | Companies (Amendment) (No.2) Law, 2011 | 12-Dec-2011 | GE108/2011/s2 |
| | | **Companies Law (2011 Revision)** | 24-Oct-2011 | G21/2011/s4 |
| | 16/2011 | Companies (Amendment) Law, 2011 | 27-Apr-2011 | GE/32/2011/s3 |
| | 37/2010 | Companies (Amendment) Law, 2010 | 28-Sep-2010 | GE59/2010/s1 |
| | | **Companies Law (2010 Revision)** | 19-Jul-2010 | G15/2010/s1 |
| | 33/2009 | Companies (Amendment) (No.2) Law, 2009 | 1-Jan-2010 | GE91/2009/s4 |
| | | **Companies Law (2009 Revision)** | 31-Aug-2009 | G18/2009/s2 |
| | 12/2009 | Companies (Amendment) Law, 2009 | 11-May20-2009 | G10/2009/s4 |
| 5/2009 | | Companies (Amendment) Law, 2007 (Commencement) Order, 2009 | 22-Jan-2009 | GE5/2009/s1 |
| | 15/2007 | Companies (Amendment) Law, 2007 | 1-Mar-2009 | G23/2007/s4 |
| | | **Companies Law (2007 Revision)** | 9-Jul-2007 | G14/2007/s6 |
| | 13/2006 | Companies (Amendment) Law, 2006 | 1-Jul-2006 | GE14/2006/s5 |
| | | **Companies Law (2004 Revision)** | 26-Jul-2004 | G15/2007/s4 |
| | 28/2003 | Companies (Amendment) (Disposition of Property) Law, 2003 | 27-Jun-2004 | G2/2004/s6 |

| SL # | Law/Act # | Legislation | Commencement | Gazette |
|---|---|---|---|---|
| | 26/2002 | Companies (Amendment) (No.2) Law, 2002 | 3-Feb-2002 | GE2/2002/s6 |
| | 22/2002 | Companies (Amendment) Law, 2002 | 28-Jan-2003 | GE/2003/s2 |
| | 46/2001 | Companies (Amendment) (Segregated Portfolio Companies) Law, 2001 | 19-Mar-2002 | GE13/2002/s3 |
| | | **Companies Law (2002 Revision)** | 2-Jul-2002 | GE13/2002/s1 |
| | 29/2001 | Companies (Amendment) Law, 2001 | 12-Dec-2001 | GE30/2001/s7 |
| | 10/2001 | Companies (Amendment) (Fees) Law, 2001 | 1-Jun-2001 | GE11/2001/s14 |
| | | **Companies Law (2001 Second Revision)** | 30-Apr-2001 | GE8/2001/s2 |
| | 5/2001 | Companies (Amendment) (Control of Bearer Shares) Law, 2001 | 26-Apr-2001 | GE7/2001/s5 |
| | | **Companies Law (2001 Revision)** | 26-Mar-2001 | G7/2001/s2 |
| | 7/2000 | Electronic Transactions Law, 2000 (part) | 11-Sep-2000 | G19/2000/s2 |
| | | **Companies Law (2000 Revision)** | 8-May-2000 | G10/2000/s1 |
| | 5/1999 | Companies (Amendment) (Euro) Law, 1999 | 7-Jun-1999 | G12/1999/s3 |
| | 20/1998 | Finance Law, 1998 (part) | 16-Nov-1998 | G7/1999/s10 |
| | | **Companies Law (1998 Revision)** | 3-Aug-1998 | G16/1998/s2 |
| | 6/1998 | Companies (Amendment) (Segregated Portfolio Companies) Law | 11-May-1998 | G10/1998/s4 |
| | 4/1998 | Companies (Amendment) (Exempted Companies) Law, 1998 | 14-Apr-1998 | G8/1998/s4 |
| | 26/1997 | Companies (Amendment) (Protection of Depositors) Law, 1997 | 10-Mar-1998 | G16/1998/s16 |
| | 14/1996 | Companies Law (1995 Revision) (Amendment) (Authorised Signatures) Law | 25-Nov-1996 | G25/1996/s4 |
| | | **Companies Law (1995 Revision)** | 21-Aug-1995 | G17/1995/s1 |
| | 8/1994 | Companies (Amendment) (No.2) Law, 1994 | 15-Nov-1994 | G23/1994/s4 |
| | 2/1994 | Companies (Amendment) Law, 1994 | 28-Mar-1994 | GE/1994/s2 |
| | 33/1993 | Companies (Amendment) (No.3) Law, 1993 | 14-Dec-1993 | GE/1993/s10 |
| | 23/1993 | Companies (Amendment) (No.2) Law, 1993 | 13-Dec-1993 | GE25/1993/s2 |
| | 3/1993 | Companies (Amendment) Law, 1993 | 18-May-1993 | GE10/1993/s7 |
| | 11/1992 | Companies (Amendment) Law, 1992 | 2-Sep-1992 | GE/1992/s1 |
| | 23/1991 | The Fees (Miscellaneous Amendment) Law, 1991 (part) | 15-Jan-1992 | GE/1991/s1 |
| | 3/1991 | Companies (Amendment) Law, 1991 | 6-May-1991 | G9/1991/s6 |
| | 10/1990 | Companies (Amendment) Law, 1990 | 21-Sep-1990 | GE/1990/s3 |
| | 14/1989 | Companies (Amendment) Law, 1989 | 20-Nov-1989 | G24/1989/s8 |
| | 14/1988 | Companies (Amendment) Law, 1988 | 13-Mar-1989 | G6/1988/s4 |
| | 24/1987 | Companies (Amendment) Law, 1987 | 18-Jan-1988 | G2/1988/s1 |

| SL # | Law/Act # | Legislation | Commencement | Gazette |
|---|---|---|---|---|
| | 38/1985 | Companies (Amendment) (No.2) Law, 1985 | 6-Jan-1986 | G1/1986/s6 |
| | 15/1985 | Companies (Amendment) Law, 1985 | 30-Sep-1985 | G14/1985/s7 |
| | 22/1984 | Companies (Amendment) (No.2) Law, 1984 | 29-Oct-1984 | G22/1984/s5 |
| | 2/1984 | Companies (Amendment) Law, 1984 | 30-Apr-1984 | G9/1984/s7 |
| | 34/1983 | Companies (Amendment) Law, 1983 | 1-Jan-1984 | G9/1984/s11 |
| | 21/1981 | Companies (Amendment) Law, 1981 | 1-Jan-1982 | G23/1981/s3 |
| | 6/1980 | Companies (Amendment) Law, 1980 | 19-May-1980 | G10/1980/s6 |
| | 16/1978 | Companies (Amendment) Law, 1978 | 25-Sep-1978 | G20/1987/s1 |
| | 19/1977 | Companies (Amendment) Law, 1977 | 21-Nov-1977 | G24/1977/s2 |
| | 25/1975 | Companies (Amendment) Law, 1975 | 1-Jan-1976 | G26/1975/s11 |
| | 24/1974 | Companies (Amendment) Law, 1974 | 1-Jan-1975 | G1/1975/s6 |
| | 7/1973 | Companies (Amendment) Law, 1973 | 2-Aug-1973 | GN128/1973 |
| | 1/1971 | Companies (Amendment) Law, 1970 | 8-Jan-1971 | GN 2 of 1971 |
| | 9/1966 | Companies (Amendment) Law, 1966 | 1-Aug-1966 | GN 79 of 1996 |
| | Cap 22 | Companies Law | 1-Jan-1964 | Laws of the CI (Vol I – p.283) |

(Price: $44.80)