# Exhibit A

C. A.
1952
Young v. Buckles.
Hodson L.J.

challenged in this court or the court below) to be met before the total of £525 was reached. In those circumstances, that is an answer to the appellant's case.

If that conclusion is wrong, it is necessary to consider the construction of reg. 56A of the Defence (General) Regulations, 1939. The argument for the appellant is based on para. 4 of reg. 56A. Counsel for the appellant argued that the words "regard shall be had to the value of any goods or services used "for the purposes thereof" (that is, the cost of a building operation) must be taken to cover the professional services of a surveyor. Taken in isolation, I think there is force in that argument, but when the whole of the regulation is read, particularly para. 1, which deals with the execution of the operation, para. 2, which refers to the carrying out of the work or maintenance work upon a building, and para. 6, which draws a distinction between the work of architects or other persons employed in an advisory capacity and persons who actually execute the operation or carry out the work, it seems to me that the contention of the respondent is right. Paragraph 4 is not apt to bring into the range of control some new type of work, and the object is, as my Lord has said, to extend the control of the total cost of the operation to work done in the operation concerned, and in that connexion the value of the goods and services used has to be regarded.

I agree that the appeal fails.

*Appeal dismissed.*

Solicitors: *Pritchard, Englefield & Co., for M. J. Canter & Co., Liverpool; Woodcock, Ryland & Co., for Lancashire, Humphreys, Grundy & Cartwright, Manchester.*

H. C. G.

---

C. A.
1951
*Nov.* 21, 22, 23, 26, 27, 28, 29; *Dec.* 20.
Singleton, Birkett and Romer L.JJ.

## ARMSTRONG AND ANOTHER *v.* STRAIN AND OTHERS.

[1949 A. No. 3084.]

*Fraud—Principal and agent—Constructive fraud—False representation made by agent, innocently—Knowledge by principal of facts which falsified representation—Both principal and agent innocent of fraud —No liability of principal for fraud, on ground of agency.*

Strain employed a firm of estate agents to find a purchaser for his bungalow. Skinner, a member of that firm, made a representation to the plaintiffs which was untrue. The representation was material, the plaintiffs believed it and purchased the bungalow. Strain did not authorize Skinner, his agent, to make the representation and did not know Skinner was making it, but he knew of facts

which rendered it untrue; i.e., if he had made it himself to the plaintiffs he would have been guilty of fraudulent misrepresentation. In an action by the plaintiffs claiming damages against Strain and Skinner for fraudulent misrepresentation, the trial judge found that neither Strain nor Skinner were guilty of fraud. It was contended for the plaintiffs that the representation made by Skinner being untrue to the knowledge of Strain (though not to the knowledge of Skinner) principal and agent being one in law, fraud was thereby established, and *London County Freehold & Leasehold Properties Ld.* v. *Berkeley Property & Investment Co. Ld.* [1936] 2 All E.R. 1039, was cited as establishing that proposition:—

*Held*, that this was not so, since there is no way of combining an innocent principal and agent so as to produce dishonesty. *Cornfoot* v. *Fowke* (1840) 6 M. & W. 358; *Derry* v. *Peek* (1889) 14 App.Cas. 337 and *Gordon Hill Trust Ld.* v. *Segall* [1941] 2 All E.R. 379 followed.

Singleton and Birkett L.JJ. held that the decision in *London County Freehold & Leasehold Properties Ld.* v. *Berkeley Property & Investment Co. Ld.* (supra) had been misunderstood since, on the facts, the Court of Appeal held that there should have been a finding of fraud on the part of the defendants' agent Addis. The decision did not establish the contention put forward by the plaintiffs.

Devlin J., the trial judge, considered that the Court of Appeal in the *London County* case (supra) made no such finding of fraud on the part of Addis, and Romer L.J. in the Court of Appeal considered that M. L. Romer L.J. in 1936, by his observations in the *London County* case (supra), (with which apparently Eve J. had agreed), supported the plaintiffs' contention, so that if those observations were applied to the case now before the court, since Strain knew the facts which falsified Skinner's representations he must be treated as having vicariously made a fraudulent representation, notwithstanding that he never authorized Skinner to make the representation and did not know that Skinner was making it. Devlin J. refused to follow these observations of M. L. Romer L.J. in the *London County* case (supra) preferring the decision of *Gordon Hill Trust Ld.* v. *Segall* [1941] 2 All E.R. 379, and Romer L.J. said that M. L. Romer L.J. in the *London County* case (supra) had no intention of enunciating a new doctrine, being of opinion that the principle he was stating emerged from *S. Pearson & Son Ld.* v. *Dublin Corporation* [1907] A.C. 351. In this he was wrong; since all that that case decided was that "a principal was liable for the fraudulent representations "of his agent, although those representations reached the third "party through and by the innocent channel of the principal, just "as the principal would be liable if he, the principal, fraudulently "caused an innocent agent to communicate a misrepresentation to "the third party." See the judgment of Atkinson J. in *Anglo-Scottish Beet Sugar Corporation Ld.* v. *Spalding Urban District Council* [1937] 2 K.B. 607, 621.

Decision of Devlin J. [1951] 1 T.L.R. 856 affirmed.

APPEAL from Devlin J.

The plaintiffs, husband and wife, bought a bungalow belonging to Strain, the first defendant, through a firm of estate agents, James Abbott, the sixth defendant, whose partners were Skinner and Allcoat, the fourth and fifth defendants. Strain was a partner in an estate agent's business with one Uren, the second defendant, and this firm was the third defendant. Strain had become an estate agent in 1933, though he appeared to have devoted most of his time to the auctioneering of chattels, rather than to real property. In October, 1935, he decided to carry on business at Rayleigh from a private house, and he moved from Southend. The two firms of estate agents had arranged to share the commission on the sale of the bungalow in certain events. The plaintiffs paid a deposit of £30 on May 6, 1949. The contract of sale was executed on May 19 and completion was effected on June 16, 1949. The price paid was £2,400, the plaintiffs obtaining £1,100 from a building society. The bungalow had just been repaired and decorated when the plaintiffs bought it.

The plaintiffs soon after their occupation saw cracks appear and the bungalow began to settle. Subsequent investigation showed that there had been settlement on four previous occasions. Expert evidence called at the trial on behalf of the plaintiffs that the bungalow could not be regarded as a fit security went unchallenged. Allcoat, the fifth defendant, said that with knowledge of the previous history of the bungalow he would have advised a building society to have nothing to do with it and would have sent no applicant to see it. The trial judge said that the evidence as a whole confirmed his view that the real value of the house in May, 1949, was not sufficient for it to form the security for any advance.

The plaintiffs brought an action claiming damages against the defendants for fraudulent misrepresentation under four heads. The first was that Skinner on May 6 had said to the plaintiffs that he had seen the bungalow and that any building society would lend £1,200 on it, as it represented a small percentage. Devlin J. found that the representation was made, that it was a representation as to value, that it was material, and that it was untrue. These findings were not challenged on the appeal. Devlin J. said that the statement made by Skinner was perhaps rather a rash statement but it was hardly possible to say that it was fraudulent. He thought it would have been natural for Skinner to make further inquiries, but he could not infer dishonesty from the fact that he did not do so.

The second allegation was that Uren made fraudulent misrepresentations on May 13. Devlin J. said that he did not think Uren was fraudulent or that what he said really deceived the plaintiffs.

The third allegation was that if these representations by Skinner and Uren were made innocently, they were deliberately kept ignorant of the true facts by Strain with the dishonest intention that they should mislead a prospective purchaser—that is to say, fraud on the part of Strain: see *Ludgater* v. *Love*.[1] Devlin J. said that he did not form a favourable impression of Strain; indeed he said that he did not believe some of his evidence. Yet with this in mind and after consideration, he was not satisfied beyond reasonable doubt that Strain was guilty of fraud. He acquitted him of fraud "with reservations." Devlin J., therefore, found no fraud on the part of Strain, Uren or Skinner.

The fourth allegation was alternative to the third that the representations made by Skinner and/or Uren were untrue to the knowledge of Strain and that, though Strain did not authorize them or, indeed know that they were being made, principal and agent being one in law, fraud was thereby established. *London County Freehold and Leasehold Properties Ld.* v. *Berkeley Property and Investment Co. Ld.*[2] was cited as establishing that proposition. Devlin J. said that it was admitted that facts which falsified the representation made by Skinner were known to Strain, the principal. He was of opinion that the case relied on was an authority supporting the proposition for which the plaintiffs contended, but that this decision was in direct conflict with *Gordon Hill Trust Ld.* v. *Segall*,[3] both being decisions of the Court of Appeal. He preferred the decision in *Segall's* case,[3] and, accepting it, held that the plaintiffs' claim under this head failed. Accordingly, Devlin J. gave judgment for the defendants.

The plaintiffs appealed.

The report is confined to the arguments and judgment on the fourth allegation.

*Marlowe K.C.* and *Eric Myers* for the plaintiffs. The problem presented by this case was stated by Mr. Patrick Devlin, before he became a judge, in an article on "Fraudulent Misrepresentation: Division of Responsibility between Principal and Agent" (53 L.Q.R. 344): "But let it be supposed that the ingredients"

1 (1881) 44 L.T. 694.

2 (1936) 155 L.T. 190; [1936] 2 All E.R. 1039.

3 [1941] 2 All E.R. 379.

(of fraud) "are divided between A" (the principal) "and C" (the agent) "and that A possesses the knowledge that a state- "ment would be false, while C, without that knowledge, makes "the statement. On this hypothesis the answer to the question "of whether A is liable or not depends in the first instance upon "whether he withheld the information from C deliberately, "hoping that C would make the statement which A knew to be "false, or whether he did so inadvertently—upon whether, in "short, there was a 'fraudulent division' of ingredients or an "'innocent division.' Where there has been a 'fraudulent "'division' it has been held, as will be seen hereafter, that A "is liable. It is the case of the innocent division that has given "rise to doubt. It might be said on the one hand that since "principal and agent are one in law, and since between them all "the necessary ingredients of deceit are present, A must be "liable." Mr. Patrick Devlin then wrote that most of the text-books then regarded the point as unsettled, but that *London County Freehold and Leasehold Properties Ld.* v. *Berkeley Property and Investment Co. Ld.*[4] had decided that in the case of an "innocent division" of ingredients A was liable, and he commented on that decision.

Devlin J. in this case negatived the fraudulent division of the ingredients of fraud between Strain (the principal) and Stringer (the agent), but the facts found being those of "innocent "division" of the ingredients of fraud, he refused to follow the *London County* case,[4] by which it is submitted that he was bound.

It has been suggested that in the *London County* case[4] the Court of Appeal reversed the finding of Goddard J. in the court below and found Addis guilty of fraud. But no judge in the Court of Appeal said so. No doubt Addis made a false statement, but there is no finding that he knew it to be untrue. It is clear from the observations of M. L. Romer L.J., with which Eve J. agreed, that where the facts were as they are here between Strain and Stringer, neither being found guilty of fraud, but Strain having the knowledge that what Stringer represented was untrue, Strain was liable for fraudulent misrepresentation. The statement made by Skinner innocently, which was in fact untrue, put Strain in the same position as if he had made it to the plaintiffs himself. Principal and agent are one. Mr. Spencer Bower, in his work on The Law of Actionable Misrepresentation (2nd ed.), para. 163 at

[4] [1936] 2 All E.R. 1039.

p. 167, writes: "The question was at last clearly and definitely "put upon its proper basis" (in *S. Pearson & Son Ld.* v. *Dublin Corporation* [5]) "and made to depend on the governing principle, "so strangely lost sight of in nearly all the previous decisions, "that the principal and agent are one, and it does not signify "which of them made the incriminated statement, or which of "them possessed the guilty knowledge." [6]

[SINGLETON L.J. Devlin J. does not appear to have dealt with the case on the basis that Stringer could be said to have made his representation recklessly, not caring whether it were true or false.]

No; that was not found to be so by the trial judge. Winfield, in the fifth edition of his textbook of the Law of Tort, at p. 400, writes that silence on the principal's part in such circumstances is suppressio veri, which amounts to suggestio falsi. "That "would certainly cover a case like *Cornfoot* v. *Fowke.*[7]" But that is a case of a "fraudulent division" in the words of Mr. Patrick Devlin. On p. 401 Winfield deals with the *London County* case,[8] in which he stated that the Court of Appeal held that the knowledge of A and D was the knowledge of the corporation itself, and then states that it is not clear why the knowledge of D, one only of the directors, was imputed to the whole board.

The Court of Appeal in the *London County* case [8] was right in relying on the observations of Lord Loreburn L.C. and of Lord Halsbury in *S. Pearson & Son Ld.* v. *Dublin Corporation.*[9] In the 14th edition of Pollock on Torts (1939), Mr. P. A. Landon writes, at p. 241, that if the information is withheld from the agent with a fraudulent purpose there is actual fraud in the principal with the ordinary consequences. "But if the same "thing happens by inadvertence it seems inconvenient to treat "such inadvertence as venial or except it from the like con-"sequences; whether properly to be described, under common "law forms of pleading as an action of deceit, or as an analogous "but special action on the case, there is no occasion to con-"sider." [10] And in a note he cites the *London County* case [8]

[5] [1907] A.C. 351.
[6] Ibid. 354, *per* Lord Loreburn L.C.
[7] (1840) 6 M. & W. 358.
[8] (1936) 155 L.T. 190, 193, 195; [1936] 2 All E.R. 1039, 1047, 1050.
[9] [1907] A.C. 351, 354, 357.
[10] But in Pollock on Torts (15th ed.), in a note at p. 227, Mr. Landon writes: "This view was criticized by "Atkinson J. in *Anglo-Scottish Beet* "*Sugar Corporation* v. *Spalding* "*U.D.C.* [1937] 2 K.B. 607, and by "Devlin J. (then at the Bar) in 53 "L.Q.R. 344. In 1941, however, in "*Gordon Hill Trusts Ld.* v. *Segall* "[1941] 2 All E.R. 379, the C.A. "mentioned *Cornfoot* v. *Fowke* (1840) "6 M. & W. 358 with approval, and "Devlin J. has recently judicially "accepted the authority of the case,

C. A.
1951

ARMSTRONG
v.
STRAIN.

where it was said that *Cornfoot* v. *Fowke* [11] "was finally dis- "approved by *Pearson's* case,[9] and *cf. Anglo-Scottish Beet Sugar* "*Corporation* v. *Spalding Urban District Council.*" [12]

In *Gordon Hill Trust Ld.* v. *Segall* [13] it appears that neither *S. Pearson & Son Ld.* v. *Dublin Corporation* [9] nor *London County Freehold and Leasehold Properties Ld.* v. *Berkeley Property and Investment Co. Ld.*[8] was cited. Accordingly, that decision, which was followed by Devlin J., appears to have been given per incuriam. Had the Court of Appeal been aware of the *London Property* case [8] they would have been bound to follow it, and Devlin J. should have taken the view that he was bound by the decision of the *London County* case.[8] The view expressed by Atkinson J. of the *London County* case [8] in *Anglo-Scottish Beet Sugar Corporation Ld.* v. *Spalding Urban District Council* [12] is wrong.

*Neil Lawson* and *Percy Bloomfield* for the first three defendants, Strain, Uren and their firm. There is no way of combining an innocent principal and agent so as to produce dishonesty or a guilty mind, and without a guilty mind or a mind which is completely reckless, not caring whether statements made are true or false, there can be no fraudulent misrepresentation: *Derry* v. *Peek.*[14]

The case of *London County Freehold and Leasehold Properties Ld.* v. *Berkeley Property and Investment Co. Ld.*[15] is no authority for the proposition put forward by the plaintiffs. The plaintiffs in that case appealed on the ground that Goddard J. was wrong in finding no fraud on the part of Addis, and they succeeded. Addis being found guilty of fraud, that is sufficient to support the decision. Further, in the *London County* case [15] the principal was a company, and a company can only have knowledge by the knowledge of its servants and agents. In the case before the court Strain and Skinner, the principal and agent, were individuals.

[SINGLETON L.J. M. L. Romer L.J., in the *London County* case,[15] does not base his judgment on that ground.]

M. L. Romer L.J., in the *London County* case,[15] based his judgment on a misapprehension of the effect of observations of

"*Armstrong* v. *Strain* [1951] 1 "T.L.R. 856. This, with all respect "to Pollock, seems the better view." —C. G. M.

[8] 155 L.T. 190, 193, 195; [1936] 2 All E.R. 1039, 1047, 1050.

[9] [1907] A.C. 351, 354, 357.

[11] 6 M. & W. 358.

[12] [1937] 2 K.B. 607.

[13] [1941] 2 All E.R. 379.

[14] (1889) 14 App.Cas. 327.

[15] [1936] 2 All E.R. 1039.

Lord Loreburn L.C. and of Lord Halsbury in *S. Pearson & Son Ld.* v. *Dublin Corporation.*[16] The best analysis of the *London County* case[15] will be found in the judgment of Atkinson J. in *Anglo-Scottish Beet Sugar Corporation Ld.* v. *Spalding Urban District Council*,[17] and I venture to adopt as my argument what was there said by that judge. Atkinson J. said of *S. Pearson & Son Ld.*,[16] on which, it is stated, the *London County* case[15] is founded: "All that was decided in that case was that a principal "was liable for the fraudulent representations of his agent, "although those representations reached the third party through "and by the innocent channel of the principal."

There was no fraudulent representation here since neither principal nor agent were shown to have been guilty of fraud: *Cornfoot* v. *Fowke.*[18] The perilous history of *Cornfoot* v. *Fowke*[18] is fully related in the article by Mr. Patrick Devlin on "Fraudulent Misrepresentation: Division of Responsibility "between Principal and Agent," and that decision survived until, and was established by, *Derry* v. *Peek*,[19] which destroyed legal fraud as a cause of action at common law. If in the *London County* case[20] M. L. Romer L.J. and Eve J. have laid down a new principle of law, they have done so without hearing legal argument on this issue. It is submitted that they should not have done that, and, if they did, the new principle should not be followed. Devlin J., it is plain, thought that they did then lay down a new principle of law.

[ROMER L.J. I am sure that M. L. Romer L.J. was not of opinion that he was laying down any new principle of law, but that he thought that he was following what had been said in the House of Lords in *S. Pearson & Son Ld.* v. *Dublin Corporation.*[21]]

If the plaintiffs are right in saying that M. L. Romer L.J. and Eve J. did lay down this new principle, another far more recent decision of the Court of Appeal is in direct conflict with it, that of *Gordon Hill Trust Ld.* v. *Segall.*[22] And it is open to the Court of Appeal to make their choice between the two decisions. In *Gordon Hill Trust Ld.* v. *Segall*[22] Luxmoore L.J. cited a passage from Williams on Vendor and Purchaser which included the words: "But if the principal was aware of the untruth or "recklessness of the statement, and the agent was not, and the "representation was made by the agent without fraud and in the

15 [1936] 2 All E.R. 1039.
16 [1907] A.C. 351.
17 [1937] 2 K.B. 607, 617–21.
18 6 M. & W. 358.
19 14 App.Cas. 337.
20 [1936] 2 All E.R. 1039.
21 [1907] A.C. 351.
22 [1941] 2 All E.R. 379.

"honest belief that it was true, and without express authority of "the principal, but within the scope of the agent's employment, "it appears that in order to charge the principal in the action of "deceit the party misled must prove some conduct positively "fraudulent." That is the position here, and the plaintiffs have failed to prove that. Luxmoore L.J. then said: "That statement is a correct summary of the law as stated in *Cornfoot* v. "*Fowke*.[23] If the *London County* case [20] did decide that there "could be liability without there being a guilty mind on the part "of either principal or agent [our contention is that it did not]; "if it did, it is not in accordance with the authorities."

[SINGLETON L.J. We need not trouble you on the statement made to the plaintiffs by Uren.]

*George Pollock K.C.* and *Nigel Bridge* for the fourth, fifth and sixth defendants, Skinner, Allcoat and their firm. Devlin J. found that Skinner was not guilty of fraud and it is not open to this court to displace that finding unless the trial judge arrived at it on a wrong test or principle, or unless it were plainly wrong.

[BIRKETT L.J. See the observations on this of Lord Halsbury L.C. in *Montgomerie & Co. Ld.* v. *Wallace-James*.[24] But did Devlin J. consider the issue whether Skinner's statement to the plaintiffs was not reckless, made without caring whether it was true or false?]

Fraud, since the decision in *Derry* v. *Peek*,[25] has been clearly defined, and the trial judge found in clear terms that Skinner was not guilty of fraud. The point was not taken in the court below specifically that Skinner was reckless as apart from his having a guilty mind. [Counsel referred to *Derry* v. *Peek*,[25] and the observations of Lord Halsbury,[26] of Lord Bramwell,[27] and of Lord Herschell [28] in that case.] We are not concerned here with the legal point at issue, except to support the finding of Devlin J. that Skinner had no guilty mind within the definition of fraud.

*Marlowe K.C.* in reply. There were two lines of authority from the 'forties in last century: *Cornfoot* v. *Fowke* [29] and *Fuller* v. *Wilson*.[30] The last-mentioned decision of the Queen's Bench was set aside on another ground, i.e., that there was no evidence that the purchaser had relied on the representation. On the issue

20 [1936] 2 All E.R. 1039.
23 6 M. & W. 358.
24 [1904] A.C. 73, 75.
25 14 App.Cas. 337.
26 Ibid. 344.
27 Ibid. 350.
28 Ibid. 360, 369.
29 6 M. & W. 358.
30 (1842) 3 Q.B. 59.

which is here material the decision of the Queen's Bench was not touched by the Exchequer Chamber. Bramwell B., in *Udell* v. *Atherton*[31] accepted this view. The case of *Fuller* v. *Wilson*[30] is almost this case on the facts, and it has never been overruled on this issue. [*Williams* v. *Glassbrook Brothers Ld.*[32] was referred to.]

*Cur. adv. vult.*

December 20. The court dismissed the appeal. They refused to interfere with the findings of Devlin J. that Strain, Skinner and Uren had not been proved guilty of fraudulent representation.

SINGLETON L.J., having given his judgment on the first three heads of claim, continued:—Before coming to the fourth head it is right that I should state my view upon the findings already mentioned, and which were attacked by counsel for the plaintiffs. This court hesitates to interfere with the findings of fact of a judge. The trial judge, who sees and hears the witnesses, is in a much better position to form an opinion upon them than we are. It was submitted by Mr. Marlowe that in regard to Strain we were in the same position as Devlin J., who formed a poor opinion of him and who did not believe him. I do not consider that that is a sound proposition; if the judge, who did not accept some part of Strain's evidence, still felt that upon all the facts fraud was not proved against him, I find it difficult to see why we should do so. Clearly he was an unsatisfactory witness; equally clearly the reasons which influenced the judge in his decision against a finding of fraud are weighty. Without doubt Devlin J. gave full consideration to the evidence and to the arguments addressed to him. He might have found that Skinner was fraudulent; he might have found that Strain was fraudulent. If he had found fraud against either of them, or against both, I do not think that it would have been right for this court to interfere. The judge was not satisfied that fraud was proved against either of them. I do not find material on which this court can say that he was wrong or that he misdirected himself upon the facts. I am satisfied that we ought to accept Devlin J.'s findings of fact.

Under the fourth head the judge said that he had already reached the conclusion that the representation of the agent (Skinner) was a false and a material statement of fact, and he added that it was admitted that the facts which falsified it were

[30] (1842) 3 Q.B. 59.
[31] (1861) 7 H. & N. 172, 193.
[32] [1947] 2 All E.R. 884.

known to the principal (Strain). He then proceeded to consider the decision in *London County Freehold and Leasehold Properties Ld.* v. *Berkeley Property and Investment Co. Ld.*,[33] on which the claim under this head was based. He was of opinion that it was an authority supporting the proposition for which the plaintiffs contended and, subject to any other authority, binding upon him. After a careful examination of the authorities Devlin J. arrived at the conclusion that a later decision of the Court of Appeal, *Gordon Hill Trust Ld.* v. *Segall*,[34] was in direct conflict with the decision in the *London County Freehold and Leasehold Properties* case [33]; he preferred the decision in *Gordon Hill Trust Ld.* v. *Segall*,[34] and, accepting it, he held that the plaintiffs' claim under this head failed. I should say that it does not appear that the earlier case was cited when the case of *Gordon Hill Trust Ld.* v. *Segall* [34] was before the court.

In my view there has been in some quarters a misunderstanding of the decision in *London County Freehold and Leasehold Properties Ld.* v. *Berkeley Property and Investment Co. Ld.*[33] It does not provide any support for the plaintiffs' case in the absence of proof of fraud or of dishonesty. In that case Goddard J. had found that there was a breach of warranty, and had awarded damages. The defendants appealed, and the plaintiffs cross-appealed, submitting that there ought to have been a finding of fraud on the part of the defendants' agent Addis, a finding which Goddard J. had declined to make. Both appeal and cross-appeal succeeded. As the report shows [35]: "There "was a cross-appeal in which the plaintiffs asked, in substance, "that the finding of the learned judge as to fraud be reversed "and that there be judgment for the plaintiffs on that issue." The whole of the argument of counsel on the cross-appeal was directed to the issue of fraud, or no fraud, on the part of Addis. (Vide the submissions of Mr. Norman Birkett K.C. on the one side and of Mr. Wallington K.C. on the other.) And it is clear from the judgment of Slesser L.J. that Addis knew the purpose for which his answer or statement was to be used. In those circumstances it was open to the Court of Appeal on the cross-appeal to find that Addis was fraudulent if they were clearly satisfied that the judge's finding on this point was wrong. It cannot have been open to them to find that there was some form of liability in the absence of fraud—a case which had not been argued or suggested so far as the report shows. Nor did they do

[33] 155 L.T. 190; [1936] 2 All E.R. 1039.
[34] [1941] 2 All E.R. 379.
[35] [1936] 2 All E.R. 1039, 1040.

so. The considered judgment of Slesser L.J. and his examination of the facts show that his mind was directed to the question of fraud on the part of Addis.

The uncertainty as to the true meaning of the decision may well arise from the other judgments. It may be, though I hesitate to say it, that M. L. Romer L.J. overlooked the fact that the arguments in *S. Pearson & Son Ld.* v. *Dublin Corporation* [36] were founded on an allegation of fraud on the part of the engineers who had prepared the plans. The citation of the Lord Justice from that case [37] embraces the words "guilty "knowledge." [38] Those words are an essential part of the judgment from which they are taken. "Guilty knowledge" means knowledge of the fraud or dishonesty, on the part of someone, and without it there can be no finding of fraudulent misrepresentation. Again, as Lord Herschell said in *Derry* v. *Peek* [39]: "First, in order to maintain an action of deceit there must be "proof of fraud, and nothing short of that will suffice." I maintain that, at least since the year 1889, it has not been open to any court to find for the plaintiff in an action of fraudulent misrepresentation unless there is proof of fraud or dishonesty.

In *Anglo-Scottish Beet Sugar Corporation Ld.* v. *Spalding Urban District Council* [40] Atkinson J. was called on to consider the *London County Freehold and Leasehold Properties Ld.'s* case, and in the course of a masterly analysis of it, and of the authorities on the subject, he said [41]: "I cannot myself see how "a principal can be held liable for fraud when there has been no "element of fraud either on the part of himself or on the part "of anyone for whose acts he is responsible"; and again [42]: "In my opinion all that was decided in the case" (*London County Freehold and Leasehold Properties Ld.* v. *Berkeley Property and Investment Co. Ld.* [33]) "was that a principal is liable "for fraud where the fraudulent information supplied by one "agent is handed on to a third party by an innocent agent."

I agree with the reasoning of Atkinson J., and, with all respect, I think that Devlin J. took a wrong view of the decision of the Court of Appeal in the *London County Freehold and Leasehold Properties Ld.'s* case.[43] That may well have arisen from the somewhat nebulous way in which the judgments in the case are expressed.

[33] 155 L.T. 190; [1936] 2 All E.R. 1039.
[36] [1907] A.C. 351.
[37] [1936] 2 All E.R. 1039, 1050.
[38] [1907] A.C. 354.
[39] 14 App.Cas. 337, 374.
[40] [1937] 2 K.B. 607.
[41] Ibid. 625.
[42] Ibid. 627.
[43] [1936] 2 All E.R. 1039.

Difficulties may arise in a claim against a company which can only speak or act through its agents or officers, but if an officer of a company writes and represents that which is untrue when many other officers of the company know the true facts, it may well be found that he made the representation without belief in its truth, or that he made it recklessly, careless whether it was true or false. That must depend on the evidence. In the case before us the principal is an individual; it was the agent who made the representation which was false. The judge negatived fraud on the part of both. In those circumstances an action for fraudulent misrepresentation cannot succeed against either.

The case of *London County Freehold and Leasehold Properties Ld.* v. *Berkeley Property and Investment Co. Ld.*[43] has led to much misunderstanding. For myself I feel that it should not be treated as an authority except and in so far as the decision based on the fraud of Addis. Devlin J. took a different view of it. That does not affect the result of this appeal, for he preferred to follow the decision in *Segall's* case.[34] In my judgment this appeal should be dismissed.

I ought to add that Mr. Marlowe desired to reserve the question whether the plaintiffs had a right of action on the ground of negligence which was not open to him in this court in view of the decision in *Candler* v. *Crane, Christmas & Co.*[44]

BIRKETT L.J., having considered the first three heads of claim, continued:—Mr. Marlowe has argued that, notwithstanding the findings of the judge, the decision of the Court of Appeal in *London County Freehold and Leasehold Properties Ld.* v. *Berkeley Property and Investment Co. Ld.*[45] still allowed the plaintiffs to succeed, and that Devlin J. should have applied it to the facts of this case. The all-important question is: What does that case decide? The acutest controversy has raged about it and still rages, and, I suppose, will continue to rage. Devlin J. and Atkinson J. are on opposite sides. Both these judges have discussed the case in its relation to other authorities with great learning and force, Devlin J. in the present case and Atkinson J. in *Anglo-Scottish Beet Sugar Corporation Ld.* v. *Spalding Urban District Council.*[46]

The essential point of difference between them was that Atkinson J. took the view that the basis of the decision in the

[34] [1941] 2 All E.R. 379.
[43] [1936] 2 All E.R. 1039.
[44] [1951] 2 K.B. 164.
[45] [1936] 2 All E.R. 1039.
[46] [1937] 2 K.B. 607.

*London County* case [47] was a finding of fraud against one Addis, an agent of the company, whereas Devlin J. took the view that the Court of Appeal made no such finding of fraud against Addis, and came to its decision against the company notwithstanding the absence of any such finding. He interpreted the decision as meaning that, if an agent makes a representation on behalf of his principal which is untrue in fact, but which he honestly believes to be true, the principal is guilty of fraud if the true facts are known to another agent, although that other agent knows nothing of the representation, supplies no inaccurate information, and in no way fails in his duty. Atkinson J. rejected the interpretation altogether, for the reasons he gave at some length.

It is enough for me for the purposes of this judgment to say that I agree with the judgment of Atkinson J., but I will just add a word or two. It is to be observed that in the *London County* case [47] the only point argued for the plaintiffs in the Court of Appeal was that Addis, who was the manager of the department which collected the rents of the flats for the defendant company and who answered the questions of the plaintiffs, was guilty of fraud, and that Goddard J. should have so found. No argument was submitted to the court that the plaintiffs would be entitled to succeed if none of the servants of the company were guilty of fraud. It is true that none of the Lords Justices said expressly: "We base our decision on the fraud of Addis and we reverse the "finding of the trial judge." This was a point which greatly influenced Devlin J. But it is equally true that none of the Lords Justices said: "Although the only point argued before us was "that Addis was fraudulent, we need not decide that point, for "we propose to decide the appeal on another point altogether, "although it was never raised or argued by either side."

These two features by themselves are enough to make the case remarkable, but nowhere do the Lords Justices seem to be impressed by the novelty or the vast importance of their decision. When the decision in *Derry* v. *Peek* [48] is kept in mind, and the language that has been used to define fraud in that case and in scores of others, it would have been a natural thing for some emphasis to be laid upon the novelty of the decision and its far-reaching importance if the interpretation of the case be such as Devlin J. has suggested.

In the present case Mr. Marlowe contended that the decision covered the facts in this case where Strain, Skinner and Uren

[47] [1936] 2 All E.R. 1039.

[48] 14 App.Cas. 337.

were found to be guiltless of fraud, for although Skinner made a representation quite innocently, and although Strain had not authorized him to make it at all, and indeed was completely without knowledge that Skinner was in fact making it, nevertheless, as Strain knew the facts which would make Skinner's innocent representation false, Strain is therefore to be held liable for fraudulent misrepresentation because the plaintiffs were in fact deceived. I cannot think that the decision in the *London County* case [49] justifies any such view.

Atkinson J. said in *Anglo-Scottish Beet Sugar Corporation Ld.* v. *Spalding Urban District Council* [50]: "There is nothing whatever in that judgment to suggest the principle now contended for by Mr. Wallington. There is nothing there to suggest that Slesser L.J. would have held the defendants liable if the fact had been that Mr. Addis had not been communicated with in any way at all, and if he had not communicated any untrue information to Mr. De Rees. On the contrary, it seems to me to indicate that the fraud of Addis was essential for a judgment against the defendants. His knowledge could fairly and properly be described as guilty knowledge; he knew the statement was going to be made; he knew it was untrue and he knew it was untrue because of the wrong information which he had himself supplied. That is the basis of the judgment of Slesser L.J."

In the judgment of Devlin J. in the present case he said: "It is precisely that conscious knowledge—whether it be termed 'a mens rea,' 'a wicked mind,' or 'a dishonest purpose'—which can never be present in the case of an innocent division of ingredients, as, in such a case, the knowledge which the principal has is impliedly the knowledge which a man is able to display under direct questioning"; and again: "There is no way of combining an innocent principal and agent so as to produce dishonesty. You may add knowledge to knowledge, or, as Slesser L.J. put it, state of mind to state of mind. But you cannot add an innocent state of mind to an innocent state of mind and get as a result a dishonest state of mind."

The chief difficulty in the *London County* case [49] is, as my Lord has already pointed out, the judgment of M. L. Romer L.J., as was pointed out by Atkinson J. in *Anglo-Scottish Beet Sugar Corporation Ld.* v. *Spalding Urban District Council.* [51] M. L.

[49] [1936] 2 All E.R. 1039.
[50] [1937] 2 K.B. 607, 623–4.
[51] [1937] 2 K.B. 607, 624.

Romer L.J. said [52]: "There was at one time a difference of "judicial opinion upon the question whether a representation "made by an agent innocently on behalf of a principal can be "treated as a fraudulent representation for which the principal "is liable, when the principal, though having no knowledge that "the representation is made, knows that it is untrue. But it "has now been laid down by the House of Lords that in such a "case the principal is as much liable as though he had himself "made the representation knowing it to be untrue: *S. Pearson "& Son Ld.* v. *Dublin Corporation.* [53] In that case it was said "by Lord Loreburn L.C. that 'the principal and agent are one, "'and it does not signify which of them made the incriminated "'statement or which of them possessed the guilty know-"'ledge.' [53a]" The facts of *S. Pearson & Son Ld.* v. *Dublin Corporation* [53] have been referred to by my Lord, and the principle extracted from the case by M. L. Romer L.J. does not appear to be justified.

Atkinson J. in *Anglo-Scottish Beet Sugar Corporation Ld.* v. *Spalding Urban District Council* [54] said of the *London County* case [49]: "In my opinion all that was decided in the case was "that a principal is liable for fraud where the fraudulent informa-"tion supplied by one agent is handed on to a third party by an "innocent agent." I think the appeal ought to be dismissed.

Romer L.J. I agree that this appeal should be dismissed. Notwithstanding the searching analysis to which the evidence was subjected before us by Mr. Marlowe for the plaintiffs, I can see no sufficient ground for disturbing any of the judge's findings of fact. Of these findings the most important, for present purposes, were that neither Strain, nor either of his agents, Uren and Skinner, was fraudulent. Inasmuch as there are no intermediate stages recognized by the law between fraud on the one hand and innocence on the other, the case has accordingly, on these findings, to be approached on the footing that each of these men was entirely guiltless in relation to the sale transaction in general and, in particular, to the representations on which the plaintiffs bought the bungalow. Strain, Uren and Skinner are, however, being sued for deceit, and the essentials of such an action have been prescribed by the highest authority. Lord Herschell said,

[49] [1936] 2 All E.R. 1039.
[52] 155 L.T. 190, 195; [1936] 2 All E.R. 1039, 1050.
[53] [1907] A.C. 351.
[53a] Ibid. 354.
[54] [1937] 2 K.B. 607, 627.

C. A.
1951

ARMSTRONG v. STRAIN.

Romer L.J.

in *Derry* v. *Peek*[55]: "The whole current of authorities . . . "shows . . . conclusively that fraud is essential to found an "action of deceit and that it cannot be maintained where the "acts proved cannot properly be so termed." "The fraud "proved must be actual fraud, a mens rea, an intention to "deceive. It is an action of deceit," said Lord Dunedin in *Nocton* v. *Ashburton*.[56] "In an action founded on deceit and in "which deceit is a necessary factor, actual dishonesty, involving "mens rea, must be proved," said Lord Parmoor in the same case.[57]

Having regard to the law as so formulated, the position may be syllogistically presented somewhat as follows: An action of deceit cannot succeed against defendants who are guiltless of fraud. This is an action of deceit against defendants who are guiltless of fraud. The action, therefore, cannot succeed.

I myself think it is true to say (as Devlin J. thought) that the observations of the late Lord Romer (then M. L. Romer L.J.) in *London County Freehold and Leasehold Properties Ld.* v. *Berkeley Property and Investment Co. Ld.*[58]—in which Eve J. apparently concurred—would lead to a different conclusion if applied to the present case. So applied, it appears to me that, as Strain knew facts which falsified Skinner's representation, he must be treated as having vicariously made a fraudulent misrepresentation, notwithstanding that he never authorized Skinner to give the assurance which he in fact gave, nor knew that Skinner was giving it. I feel sure that M. L. Romer L.J., in expressing the views which would seem to lead to this result, had no intention of enunciating any doctrine that was new. His impression seems to have been that the doctrine or principle which he was stating emerged from *S. Pearson & Son Ld.* v. *Dublin Corporation*.[59] After a most careful consideration, however, of the facts and speeches in that case, I cannot but think that that impression was mistaken. I respectfully agree with what Atkinson J. said in *Anglo-Scottish Beet Sugar Corporation Ld.* v. *Spalding Urban District Council*[60] as to *S. Pearson & Son Ld.* v. *Dublin Corporation*.[59] The case decided, he said, that "a principal was liable "for the fraudulent representations of his agent although those "representations reached the third party through and by the "innocent channel of the principal, just as the principal would "be liable if he, the principal, fraudulently caused an innocent

[55] 14 App.Cas. 337, 375.
[56] [1914] A.C. 932, 963.
[57] Ibid. 978.
[58] [1936] 2 All E.R. 1039.
[59] [1907] A.C. 351.
[60] [1937] 2 K.B. 607, 621.

"agent to communicate a misrepresentation to the third party." It does not appear to me that the decision of the House of Lords went further than this, and I cannot find that it affords any authority for the view that the innocent acts or intentions of a principal or his agents, whatever detrimental effect they may have on a third party, can amount to a fraudulent misrepresentation upon which such third party can bring an action in deceit. If that be so, the force of the judgments of M. L. Romer L.J. and Eve J. on this point in the *London County* case [58] must largely disappear. For, as I have said, I think that the Lord Justice was doing no more than applying to the facts before him a principle which he believed derived from *Pearson's* case [59]; and, if it did not so derive, it has but little independent basis, for my impression is that the Lord Justice was not intending to found it upon his own authority.

In these circumstances, and inasmuch as the principle, if accepted, would lead to results in conflict with (a) the essentials in actions for deceit to which I have above referred, (b) the decision in *Cornfoot* v. *Fowke*,[61] and (c) one of the two grounds upon which the decision in *Gordon Hill Trust Ld.* v. *Segall* [62] was based, the principle should not, in my judgment, now receive the recognition of this court.

*Appeal dismissed.*

Solicitors: *Manley & Cooke; Richardson Sowerby, Holden & Co., for William Bygott & Co., Rayleigh, Essex; Bentleys, Stokes & Lowless, for Brandreth & Iles, Southend-on-Sea.*

C. G. M.

[58] [1936] 2 All E.R. 1039.
[59] [1907] A.C. 351.
[61] 6 M. & W. 358.
[62] [1941] 2 All E.R. 379.

---

## BENNETT *v.* BENNETT.

[1951 B. 953.]

C. A.
1952
*Jan.* 16, 17; *Feb.* 1.
Somervell, Denning and Romer L.JJ.

*Divorce — Deed — Provision for maintenance for wife and child — Covenant by wife not to apply to court for maintenance for herself and child — Divorce decree subsequently obtained by wife — Application by wife for arrears of maintenance under deed — Deed contrary to public policy and unenforceable—Covenants purporting to oust jurisdiction of Divorce Court—Supreme Court of Judicature (Consolidation) Act,* 1925 (15 & 16 *Geo.* 5, *c.* 49), *s.* 190 (1); *s.* 193 (1).