# Exhibit D

GRAND COURT
FINANCIAL SERVICES DIVISION
CAYMAN ISLANDS

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 226 OF 2021 (DDJ)**

**IN THE MATTER OF THE COMPANIES ACT (2021 REVISION)**
**AND IN THE MATTER OF PORTON CAPITAL INC AND PORTON CAPITAL LIMITED**

**ENIGMA DIAGNOSTICS LIMITED (IN LIQUIDATION)**

**Petitioner**

**AND**

**HARVEY BOULTER**

**Respondent**

| | |
|---|---|
| **Appearances:** | Charles Samek QC, Peter Hayden and Jonathan Moffatt of Mourant Ozannes (Cayman) LLP for Enigma Diagnostics Limited (in liquidation), the Petitioner<br>David Quest QC, Peter Tyers-Smith and Ilona Groark of Kobre & Kim (Cayman) for Harvey Boulter, the Respondent |
| **Before:** | The Hon. Justice David Doyle |
| **Heard:** | 3 February 2022 |
| **Date Extempore Judgment delivered:** | 3 February 2022 |
| **Draft transcript of Judgment circulated:** | 3 February 2022 |
| **Date transcript of Judgment approved:** | 8 February 2022 |

GRAND COURT FINANCIAL SERVICES DIVISION CAYMAN ISLANDS

**HEADNOTE**

*Determination of application to strike out pleadings - application for case management stay and application to strike out affidavit evidence - pleading fraud*

**JUDGMENT**

**Introduction**

1. The Respondent in this case by summons dated 14 December 2021 (the "Summons") applies for orders under Order 18 rule 19 of the Grand Court Rules, alternatively under the inherent jurisdiction of the court, that the Petitioner's pleadings be struck out on the grounds that:

    a. the Petitioner has confirmed that it does not intend to present evidence with a view to proving the existence of fraud in relation to the "Enigma Investment Scheme" referred to in the Petitioner's pleadings;

    b. if the Petitioner is not alleging and/or seeking to prove such fraud, then the Petitioner's pleadings disclose no reasonable cause of action and/or the inclusion of allegations relating to or arising out of the Enigma Investment Scheme is (i) scandalous, frivolous or vexatious; (ii) may prejudice, embarrass or delay the fair trial of the action; and/or (iii) is otherwise an abuse of the process of the court.

2. Alternatively the Respondent requests that the proceedings be stayed until there is a final order in the proceedings commenced in the High Court in England by the Petitioner against the Respondent, DLA Piper UK LLP and Charles Cook (claim number BL-2021-001208).

3. If the proceedings are not struck out or stayed the Respondent in the Summons asks that the Petitioner provides security for the Respondent's costs in the amount of US$1,175,901.50 (paragraph 3a. of the Summons) and that the third affidavit of Paul David Allen sworn on 3 December 2021 be struck out (paragraph 3b. of the Summons). The Respondent no longer seeks an order for security for costs, but there is apparently an argument as to the costs of the security for costs part of the Summons.

GRAND COURT
FINANCIAL SERVICES DIVISION
CAYMAN ISLANDS

**Appearances**

4. David Quest QC and Peter Tyers-Smith and Ilona Groark of Kobre & Kim (Cayman) appeared for the Respondent. Charles Samek QC and Peter Hayden and Jonathan Moffatt of Mourant Ozannes (Cayman) LLP appeared for the Petitioner.

**Submissions**

5. I have considered the concise skeleton argument of the Respondent and the concise written submissions of the Petitioner and the oral submissions presented to the court today. I do not set them all out in detail in this relatively short extempore judgment, but I have full regard to them.

6. Mr Quest's main submissions were as follows:

(1) the court cannot fairly make a finding at trial that Mr Boulter knew that Porton Capital Inc. and Porton Capital Limited (the "Porton Companies") had debts arising out of the so-called Porton Claims without at least some consideration of the merits of those claims. This presents a fundamental problem as the Petitioner's pleadings deliberately seek to avoid engaging with that issue;

(2) the Petitioner's decision to pursue the present proceedings without pursuing the allegations made about the Enigma Investment Scheme and the involvement in it of the Porton Companies and/or Mr Boulter in the English proceedings and before any findings have been made about them, gives rise to a fatal problem. In such circumstances there can be no proper basis for the allegation that Mr Boulter knew that the claims intimated as arising from the scheme constituted debts of the Porton Companies. The court must be satisfied that the claims had at least the requisite degree of substance and were not just unsubstantiated assertions or complaints;

(3) the allegation that the existence of the Porton Claims made the declarations of solvency fraudulent cannot succeed on the current state of the pleadings and nor can the similar allegation about the letters signed by Mr Boulter on the same day;

GRAND COURT
FINANCIAL SERVICES DIVISION
CAYMAN ISLANDS

(4) the other allegations of fraud should be struck out for the same reasons as each is dependent on the court finding that Mr Boulter knew that the Porton Companies were indebted in relation to the alleged Porton Claims, or that he was reckless as to that;

(5) paragraph 9 of the Amended Particulars of Fraud is defective as there is no allegation that what was said was true or correct or gave rise to any liabilities of the Porton Companies;

(6) paragraph 10 of the Amended Particulars of Fraud was likewise defective because there was a missing step namely whether these gave rise to any liability;

(7) similar arguments are applicable to the other sections of the Amended Particulars of Fraud;

(8) the pleading ignores the issue as to whether the Porton Claims were good claims or had a sufficient degree of merit or substance;

(9) there is an incomplete chain of reasoning in the pleading; and

(10) the Petitioner cannot properly separate the issues in respect of the Enigma Investment Scheme from the issues in respect of the alleged fraud in the liquidation.

**Law and procedure**

7. I record that I also have regard to the relevant law and procedure as outlined by the attorneys appearing for the parties including Order 18 rule 19 of the Grand Court Rules.

**Determination**

8. I dismiss the Summons for the following reasons.

GRAND COURT FINANCIAL SERVICES DIVISION CAYMAN ISLANDS

9. The court's power to strike out should only be exercised in a plain and obvious case (*Three Rivers DC and others v Bank of England (No3)* [2003] 2 AC 1 at page 77E). This is not a plain and obvious case. Based on what I have read and heard I am not persuaded that the Petitioner's currently pleaded case cannot succeed. It is far more appropriate to permit these proceedings to proceed to trial in early March and to reach judgment on the claim after having heard relevant evidence and considered detailed submissions.

10. I entirely accept that it is trite law that fraud must be expressly and specifically pleaded. It is often said that fraud must be distinctly alleged and distinctly proved. Allegations of fraud must always be properly particularised. There must be relevant particulars where the court is being asked to draw an inference, setting out the facts alleged from which the inference can be drawn. Those making serious allegations of fraud cannot proceed on Mr Micawber's optimistic belief that something will turn up. Mr Quest referred the court to paragraphs 183 to 185 of Lord Millett's judgment in *Three Rivers* and paragraphs 145 to 148 of Mrs Justice Cockerill's judgment in *King v Stiefel* [2021] EWHC 1045 (Comm). It is right that pleadings of fraud must be subjected to close scrutiny. Fraud and any necessary suggested inferences which justify and support such a plea must be properly pleaded out with some particularity, see Parker J in *Ritchie Capital Management LLC v Lancelot Investors Fund Ltd* (FSD; judgment 15 December 2020) especially at paragraphs 84 and 85.

11. With these principles in mind, as long ago as 10 September 2021, I made an order that the Petitioner file and serve particulars by 17 September 2021 in support of its contention that the proceedings for the voluntary liquidation and dissolution of the Porton Companies are to be set aside for fraud. 9 pages of Particulars of Fraud dated 17 September 2021 were subsequently provided and an 8 page pleaded Response dated 15 October 2021 followed. With leave, the Petitioner produced on 20 January 2022 Amended Particulars of Fraud (some 11 pages) and the Respondent's Amended Response dated 28 January 2022 (some 11 pages) followed. I have considered the pleadings for the purposes of determining the Summons.

12. In my judgment the allegations of fraud are adequately pleaded in the Amended Particulars of Fraud and the Respondent knows the case he has to meet and he can properly continue to prepare for the trial in March. A summary of the Petitioner's case in fraud is contained at

paragraph 5 of the Amended Particulars of Fraud and the details of the Petitioner's case follow in the remaining sections of the pleading.

13. Paragraph 5 of the Amended Particulars of Fraud summarises the Petitioner's position as to why the dissolutions of the Porton Companies are void and/or should in any event be set aside because of the Respondent's fraud in the following way:

(1) The Respondent made fraudulent declarations of solvency and/or fraudulent misrepresentations that the Porton Companies had no contingent liabilities, potential creditors, or unrecognised claims;

(2) The Respondent acted in fraudulent breach of his fiduciary duties owed to the Porton Companies in the course of the process leading up to their dissolutions;

(3) The Respondent made fraudulent misrepresentations to the JVLs during the course of the voluntary liquidations; and/or

(4) The Respondent fraudulently approved the final report and accounts of the Porton Companies.

14. There then follows detailed particulars under various section headings namely:

(1) Fraudulent Declarations of Solvency (some 5 pages);

(2) Fraudulent breach of fiduciary duties owed to the Porton Companies (1 page);

(3) Fraudulent misrepresentations to the JVLs (2 pages); and

(4) Fraudulent approval of the Final Accounts (1 page).

15. It is correct that at paragraph 8 of the Amended Particulars of Fraud the Petitioner does plead that, at the time the Respondent made the declarations and/or representations, claims had been initiated against the Porton Companies arising from the Enigma Investment Scheme (which

scheme is described at paragraphs 14 to 25 of the petition) "as well as from investments in other companies promoted by the Porton Companies" but the Petitioner does not plead that the Enigma Investment Scheme was fraudulent and does not invite the court to make any findings of fraud in respect of the Enigma Investment Scheme. Paul David Allen, one of the joint liquidators of the Petitioner, in his third affidavit sworn on 3 December 2021 at paragraph 8 states:

> "For the avoidance of doubt, this affidavit does not seek to present evidence with a view to proving the existence of fraud in relation to the Enigma Investment Scheme. I understand that this is a separate issue which is the subject of the proceedings in England. This affidavit (and indeed the Petition) is concerned only with the narrow issue of whether Mr Boulter's actions in relation to the liquidations and dissolutions of the Porton Companies amount to a fraud in those liquidations."

16. It is clear that the Petitioner is not asking the court to make any findings that the Enigma Investment Scheme was conducted fraudulently and I am not presently persuaded that its failure to do so means that its pleaded claim gives rise to a "fatal problem" to the extent that the Petitioner's pleadings must be struck out. The Petitioner's case is that it does not need to prove the existence of a fraud in relation to the Enigma Investment Scheme as all it is required to do is to prove that there was a fraud in connection with the voluntary liquidation, full particulars of which it has pleaded.

17. In my judgment, the best place to fairly and properly consider whether the Petitioner has a valid case is at the trial after consideration of the relevant evidence and detailed submissions. This case is not suitable for summary determination by way of a strike out. The hearing of the Summons is not the place for a mini-trial. At the trial I shall consider the pleadings, the evidence, the law, the detailed submissions and come to a conclusion as to whether the Petitioner is entitled to the relief it seeks. This should not be a complicated or unduly protracted process.

18. This case is fit to go to trial. On the basis of what I have read and heard to date I cannot say that it is bound to fail. The allegations of fraud are not unsustainable or inadequately pleaded. At this summary stage it is not plain and obvious to me that the Amended Particulars of Fraud

GRAND COURT FINANCIAL SERVICES DIVISION CAYMAN ISLANDS

should be struck out on the basis, as alleged on behalf of the Respondent, that they fail to plead a coherent and sufficient case of fraud against the Respondent.

19. Moreover I have not been persuaded that the Petitioner's pleading insofar as it includes reference to the Enigma Investment Scheme is (a) scandalous, frivolous or vexatious; (b) may prejudice, embarrass or delay the fair trial of the action; and/or (c) is otherwise an abuse of the process of the court, such that it should be struck out.

20. It may be that the Petitioner will be able to persuade the court to grant the relief it seeks. It may be that the Respondent will be successful in his attempts to defeat the petition. The less said about all that at this stage the better. What is clear to me at this pre-trial stage, however, is that this court should not, on a summary determination basis, make orders preventing the trial from going ahead in early March.

21. I do not take the view that to proceed to trial based on the existing pleadings would, in some way, be unfair to the Respondent. The Respondent knows the case he has to meet and can properly prepare in respect of the allegations of fraud as pleaded. Nothing in the arguments so eloquently presented by Mr Quest on the Respondent's behalf persuades me that it would be wrong or somehow unfair to let this case proceed to trial.

22. As to the alternative case management stay relief claimed, I am not persuaded that there is any good reason to stay these proceedings in the Cayman Islands pending the determination of the proceedings in England. The jurisdiction to grant such case management stays is only exercised in rare and compelling circumstances which do not exist in this case. It is well established that such exceptional jurisdiction should be exercised with caution and only for very good reason (*Nanfong International Investments Limited* 2018(2) CILR 321). I have not been persuaded that there is a good reason let alone a very good reason for granting such a stay in the circumstances of this case. I am not persuaded that a case management stay would better serve the interests of justice (*Unwired Planet International Ltd v Huawei Technologies (UK) Co Ltd* [2020] UKSC 37 at paragraph 99). These proceedings in the Cayman Islands should not be unduly delayed and do not need to await the outcome of the proceedings in England. The interests of justice are best served by proceeding to trial in March.

23. Furthermore I am not persuaded that I should strike out the third affidavit of Paul David Allen sworn on 3 December 2021. It contains, on the face of it, some relevant factual information and exhibits documentation that, on the face of them, may well assist the court in the fair and just determination of the issues before it at the hearing in March 2022.

24. The grounds for the application to strike out the third affidavit of Paul David Allen sworn on 3 December 2021 were not specified in the Summons and wisely did not make an appearance in the skeleton argument of the Respondent dated 25 January 2022. Eventually, I found them buried under divider 10 of Volume 1 of the hearing bundle at paragraph 35 of the affidavit of Stephen Richard Dillon Hayes sworn on 14 December 2021. Mr Quest submitted today that Mr Allen's affidavit did not contain any relevant personal knowledge on his behalf and as such was inadmissible. It is somewhat ironic that Mr Hayes, the Respondent's English solicitor, at paragraph 4 of his affidavit refers to the position where facts are not within his own knowledge and yet he and Mr Quest on the Respondent's behalf complain that Mr Allen "has no first-hand knowledge." Mr Hayes also provides his commentary on various matters and yet he goes on to attempt to criticise Mr Allen's third affidavit saying it consists "largely of commentary on the documents".

25. I note that Mr Boulter sensibly does not object to the documents in exhibit PDA-3 being included in the trial bundle.

26. It would have been better if both Mr Hayes and Mr Allen had resisted the temptation of descending into commentary on the documents and trying to argue the case through affidavits. Legal argument is best left out of affidavits. The place for legal argument is in skeleton arguments and oral submissions from attorneys. Having said all that I am not persuaded that the affidavits in this case filed on behalf of the Petitioner and Respondent should be struck out. In fairness Mr Quest rightly did not pursue the relief claimed at paragraph 3b. of the Summons with any great vigour and I do not grant it.

27. I record that by order made on 19 January 2022 the Respondent was given an extended period of time to 3pm on 9 February 2022 to file and serve any responsive evidence. This was the extended period of time requested by his attorney Mr Tyers-Smith if I was not with him on vacating the trial date. It can be seen from my extempore judgment delivered on 19 January

2022 that I did not grant the Respondent's application for the March trial date to be vacated. The Respondent has been given ample opportunities to respond to the Petitioner's evidence.

28. The Summons is devoid of merit and I have no hesitation in dismissing it.

29. I look forward to receipt of the list of issues for determination by the court before 3pm on 25 February 2022 as previously ordered. It would also be helpful if the attorneys could within the same time scale produce an agreed chronology, list of main characters, timetable for trial including time allocations for any concise opening submissions and the identities of the witnesses and the time allocations for their evidence and whether they will be giving evidence in person or whether a video link is proposed.

30. Having heard submissions on costs I make an order that the Respondent pay the Petitioner's costs of the Summons save and except paragraph 3a. of the Summons in respect of which I make no order as to costs.

**THE HON. JUSTICE DAVID DOYLE**
**JUDGE OF THE GRAND COURT**