# Exhibit G

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

**FSD NO. 203 OF 2020 (NSJ)**

**BETWEEN:**

**ABDULHAMEED DHIA JAFAR**

**Plaintiff**

**and**

**(1) ABRAAJ HOLDINGS**
(in official liquidation)

**(2) GHF GENERAL PARTNER LIMITED**
(in its capacity as general partner of GHF Fund LP (formerly Abraaj Growth Markets Health Fund LP) and GHF Fund (B) LP (formerly Abraaj Growth Markets Health Fund (B) LP))

**(3) THE GHF GROUP LIMITED**
(formerly The Abraaj Healthcare Group Limited)

**(4) ABRAAJ GENERAL PARTNER VIII LIMITED**
(in its capacity as general partner of Neoma Private Equity Fund IV LP (formerly known as Abraaj Private Equity Fund IV LP))

**Defendants**

**IN CHAMBERS**

| | |
|---|---|
| **Appearances:** | **Mr Michael Bloch QC instructed by Nelsons on behalf of the Plaintiff** |
| | **Mr Peter Sherwood of Carey Olsen on behalf of the First Defendant** |
| | **Mr Stephen Atherton QC and Sarah Tresman instructed by Walkers on behalf of the Second and Third Defendants** |
| | **Mr Andrew Ayres QC instructed by Ogier for the Fourth Defendant** |
| **Heard:** | **29-30 November 2021** |
| **Draft judgment circulated:** | **15 December 2021** |
| **Judgment delivered:** | **20 December 2021** |

**JUDGMENT**

**Introduction**

1. This is my judgment dealing with the Plaintiff's application for leave to amend his Statement of Claim in these proceedings.

2. The application was heard on 29 and 30 November 2021. The Second and Third Defendants (the ***GHF Parties***) (represented by Mr Atherton QC) argued that the Plaintiff's application should only be granted on condition that a number of the allegations and averments in the Plaintiff's Amended Statement of Claim were amended, deleted, or better particularised and sought various orders with respect to costs. The Fourth Defendant (represented by Mr Ayres QC) did not object to the Plaintiff's leave application but sought an amendment to or clarification of one paragraph in the Plaintiff's Amended Statement of Claim and also sought various orders with respect to costs. The First Defendant, acting by its joint official liquidators (the ***JOLs***) (represented by Mr Sherwood of Carey Olsen), also did not object to the Plaintiff's leave application but sought various orders with respect to costs. Mr Bloch QC appeared for the Plaintiff.

3. Three issues arise on the Plaintiff's application. First, should leave to amend be granted and should conditions be attached, as the GHF Parties contend? Secondly, if leave to amend is granted, what form should the amendment take (which version of the Amended Statement of Claim put forward by the Plaintiff should be adopted and how should the amendments be shown on the Amended Statement of Claim)? Thirdly, if leave is granted, what is the appropriate costs order? This judgment only deals with the first and second issues. Because directions need to be given as soon as possible for the future conduct of the proceedings, I wish to inform the parties of my decision on the first two issues without further delay. My decision on the costs issues will be dealt with in a further judgment which I shall hand down shortly.

**The leave to amend application**

4. On 3 November 2021, the Plaintiff filed a summons (the ***Original Summons***) seeking leave to amend his Writ of Summons and Statement of Claim filed on 10 September 2020 (the ***SOC***) on

the terms of and in the manner set out in the draft Amended Statement of Claim annexed to the summons (the ***ASOC***) and seeking the necessary consequential directions. The ASOC contained substantial amendments to the SOC and presented the amendments by identifying additions in red and deletions by way of striking through the text.

5. On 19 November 2021, the Plaintiff filed an amended summons (the ***Amended Summons***). The Amended Summons sought leave to amend the SOC either in the terms and by way of (a) an entirely new and substantially slimmed down statement of claim (the ***Concise Statement of Claim***) or (b) the ASOC The Concise Statement of Claim was attached as annex 1 to the Amended Summons while the ASOC was attached as annex 2. The Concise Statement of Claim was an entirely new document with fresh drafting and was presented without showing the amendments made to the SOC. Since the Concise Statement of Claim was, as I have said, an entirely new document, a traditional mark-up of the SOC would show all the text of the SOC as struck through and the whole of the Concise Statement of Claim in red.

**<u>The position of the parties in brief</u>**

6. The Plaintiff's position can be summarised as follows:

(a) the Plaintiff submitted, and noted that the other parties did not contest, that the Court had jurisdiction under GCR O.20, r.5(1) to allow an amendment in whatever form it sees fit. Furthermore, permission to amend should ordinarily be granted where there is a good reason for the amendment, and it serves the Overriding Objective. Permission will ordinarily be granted where the amendment does not come too late in proceedings and where prejudice can properly be met by an award of costs.

(b) he submitted that while the amendments he proposed to make were substantial, the case which he was seeking to advance was not a new one. It was a greatly simplified version of the case he had been advancing. The Plaintiff said that he had offered to pay the Defendants' costs and there were a number of advantages for all parties that would flow from the proposed amendments. As regards costs, the Plaintiff accepted that the other parties were entitled to their costs of and occasioned by his amending his case and which were only referrable to those claims which he no longer wished to pursue (on a standard basis). As regards the advantages flowing from the amendments, the Plaintiff submitted that the principal amendments he was seeking to make should substantially reduce the need

to investigate facts and matters relating to a number of issues and enable the real dispute between the parties to be determined faster and more efficiently. He further submitted that the amendments will enable the case to be made ready for trial more quickly, allow the trial of the case to take up less court time, and save legal and other professional expenses. These amendments, the Plaintiff argued, will simplify his case dramatically and provide the other parties with an opportunity to simplify their cases dramatically too.

(c) the Plaintiff preferred the Concise Statement of Claim since he considered that it set out clearly and directly the Plaintiff's case as now formulated and would be easier for all parties to use going forward, although he accepted that the ASOC adopted a more conventional approach and ultimately it was for the Court to decide what was preferable in the interests of justice and having regard to the Overriding Objective (he argued that the case pleaded in both documents was as a matter of substance the same). The Plaintiff said that he accepted that the amendments needed to be identified and shown in a suitable manner and that this could be done in a number of different ways.

(d) the GHF Parties' objections were not justifiable and did not require further amendments and particulars at this stage. The Plaintiff noted that the GHF Parties had made objections to and criticisms in correspondence of the drafts of the ASOC and Concise Statement of Claim provided to them and that he had already made a number of significant amendments to respond to these objections. A number of the outstanding requests for particulars could not be met sensibly by the Plaintiff prior to discovery. For example, the GHF Parties had asserted that the Plaintiff had failed to give adequate particulars of the falsity of Mr. Naqvi's representations, or Mr. Naqvi's knowledge of the same. However, the Plaintiff did not have complete knowledge of the financial affairs or mismanagement (or misgovernance) of the Defendants and other relevant Abraaj entities or of Mr. Naqvi's knowledge (which was not conveyed to the Plaintiff). Furthermore, there was no need for further particulars where other Defendants had made pertinent admissions and, at least in the period before discovery, where it was clear that the GHF Parties intended to maintain non-admissions (the GHF Parties had made numerous non-admissions to pleadings that are retained in the ASOC and the Concise Statement of Claim). The Plaintiff argued that in a fraud case there often were details of the fraud which the victim of the fraud was unable to particularise prior to discovery and which may not be open to dispute once there has been discovery. He argued that in this case the vast majority of the documents relating to the conduct and financial affairs of the Defendants were held by the First Defendant

(and the JOLs) and therefore the Plaintiff's ability to provide further particulars prior to discovery was seriously limited. It was also likely, he said, that the other parties would not in any event admit the facts and matters averred by the Plaintiff pending discovery, regardless of what further and better particulars he might provide in relation to them at this stage.

7. Mr Atherton QC explained the GHF Parties' position:

(a) he referred to the extensive correspondence (in particular the letter from Walkers, the Cayman Islands attorneys advising the GHF Parties, dated 4 November 2021) in which the GHF Parties had set out their objections to the ASOC and the Concise Statement of Claim. He noted the confusion caused because it was at least initially unclear whether the Plaintiff was intending to rely on and file both the ASOC and the Concise Statement of Claim, and that there were inconsistencies between them.

(b) the GHF Parties did not accept that the case which the Plaintiff was seeking to advance pursuant to his amended pleading was substantially the same as the case advanced in the SOC. In substance, the Plaintiff was proposing to discontinue most of the claims that formed the basis of the SOC, and the ASOC and Concise Statement of Claim discarded almost all of the original factual matrix set out in the SOC and the causes of action that were predicated (and pleaded) upon it.

(c) however, subject to obtaining the order as to costs which they sought and permission to amend being made conditional on the Plaintiff deleting or properly particularising certain allegations and averments made in the ASOC and the Concise Statement of Claim, the GHF Parties were prepared to leave it to the Court to decide whether, if the Court was otherwise satisfied that permission to amend should be granted, the amendments should be made by way of the ASOC or the Concise Statement of Claim.

(d) the GHF Parties vigorously maintained that the ASOC or the Concise Statement of Claim remained, even after the changes made by the Plaintiff in response to the objections raised in correspondence, seriously deficient in certain respects. The GHF Parties identified two categories of proposed amendments to which they objected. First, the category 2 proposed amendments, which were the amended allegations and averments in the ASOC and the Concise Statement of Claim to which the GHF Parties objected on the grounds that they were unjust, doomed to fail or otherwise improper. These, the GHF Parties said, needed to

be amended or deleted. Secondly, the category 3 proposed amendments, which were the amended allegations and averments in the ASOC and the Concise Statement of Claim to which the GHF Parties objected on the ground that they needed to be properly and better particularised. I discuss each of the category 2 amendments and the category 3 amendments in general terms below.

8. Mr Ayres QC explained that the Fourth Defendant, while adopting the submissions made by the GHF Parties as to the nature and impact of the extensive amendments which the Plaintiff sought leave to make, consented to the Plaintiff's application for leave to amend by way of the ASOC and did not object to leave being granted to amend by way of the Concise Statement of Claim subject to the Plaintiff being required to reformulate and clarify the drafting of paragraph 49 of the Concise Statement of Claim (which I discuss below). While the Fourth Defendant sympathised with the position taken by the GHF Parties and considered that a number of the allegations and averments contained in the ASOC and the Concise Statement of Claim were inadequately particularised or poorly drafted, it did not wish to object to the granting of leave to amend on these grounds or to raise these objections at this stage.

If the Court decided to grant leave to amend by permitting the filing of the Concise Statement of Claim, the Fourth Defendant and the GHF Parties, considered that it was important and necessary to ensure that a suitable form of mark-up showing the amendments to the SOC also be filed.

9. Mr Sherwood explained that on the first and second issues, the First Defendant adopted the submissions and approach of the GHF Parties and Fourth Defendant as to the applicable principles but, like the Fourth Defendant, it did not oppose the application for leave to amend and was content to leave it to the Court to decide the form that the amendment should take, provided that the costs orders it sought were granted.

**<u>Discussion and decision</u>**

*Leave to amend and the manner in which the amendments should be shown*

10. In my view, the Plaintiff should be given leave to amend the SOC by adding the Concise Statement of Claim to its pleading in red and by deleting and striking through the SOC (with the Concise Statement of Claim appearing first before the deleted SOC). Granting leave on terms

that provide for the Plaintiff to pay the costs of the Defendants (on the basis to be set out in my judgment dealing with costs) will avoid any injustice to the Defendants and promote the efficient, fair, and cost-effective conduct of the proceedings.

11. Both the ASOC and the Concise Statement of Claim result in the removal and withdrawal of a significant number of the claims and substantially reformulate the other claims contained in the SOC, and the Concise Statement of Claim substitutes a wholly new Statement of Claim. Nonetheless, while the circumstances in which the application for leave to amend is made and the extent of the proposed amendments have significant implications on the orders as to costs to be made upon giving leave to amend, it was not argued that the Court did not have the power to permit such wide-ranging amendments including an amendment by way of a substitution of an entire pleading, pursuant to GCR O.20, r.5 (while the GHF Parties argued that the Plaintiff was in substance starting again and discontinuing most of his claims and that this had cost implications, they did not suggest that the Plaintiff was required to start again by issuing a new Writ and Statement of Claim). It seems to me that the Concise Statement of Claim is to be preferred because it represents the Plaintiff's preferred way of pleading his case and because it pleads the Plaintiff's claims in a clear and direct way that will assist the Defendants in responding to the claims and promote the achievement of the Overriding Objective (although the simplified and reduced format of the Concise Statement of Claim does not mean that the Plaintiff can short-circuit and circumvent the need for proper precision and particulars, and if anything it makes the need to observe such standards even more important). In a case where the Plaintiff has in substance reformulated and redrafted the entirety of his claim, it seems to me to make sense (without prejudice to the Plaintiff's submissions as to the cost implications of his proposed amendments), to use the new document which sets out afresh the revised claim rather than a document based on the old SOC which incorporates very extensive amendments and which as a result becomes difficult to read and follow.

12. GCR O 20, r.13 states that "*In all cases in which a writ, pleading or other document is amended, the amended copy which is filed should make it clear what has been deleted and what has been added or altered so that the Court when reading the amended document shall be able to see at once the exact nature and extent of the amendments made.*" In this case, the best way of giving effect to this rule is to require that the amended version of the Plaintiff's pleading to be filed sets out first and in red the new Concise Statement of Claim followed by the old SOC which should be struck through to show that it has been deleted in its entirety.

*The GHF Parties' objections – general considerations*

13. I now turn to consider the GHF Parties' objections. Having decided that the Plaintiff be given leave to amend by adding and using the Concise Statement of Claim, I shall consider these objections by reference to the Concise Statement of Claim.

14. Before considering the specific allegations and averments in the Concise Statement of Claim to which the GHF Parties objected, I would note that it seems to me that the Plaintiff is right to say that substantial weight is to be given to the fact that prior to discovery he does not have access to many of the documents that relate to the fraud that he alleges and relies on (as I have noted, the Plaintiff referred to not being in possession of the majority of the documents relating to the conduct and financial affairs of the Defendants) so that his ability to provide further particulars prior to discovery is very limited. It is well established that where a party has proper grounds for his claim but can only plead it in a general way because of a justifiable lack of relevant documents, he will be allowed discovery before being ordered to serve or include within his pleading detailed particulars. In this case, all the parties are operating under a disability, as is often the position where fraud is alleged by outsiders against corporate officers and controllers and the companies concerned are subject to an insolvency proceeding and under the control of insolvency officeholders (which is the case for the First Defendant). The Plaintiff as an outsider does not have access to many of the key internal documents produced and held by the corporate Defendants and the insolvency officeholders do not have personal knowledge of what went on before their appointment. In this case, it appears that most of the critical documents relating to Mr Naqvi's conduct and to the management and conduct of the affairs, and the financial condition, of the Defendants and the other related Abraaj entities are held by the First Defendant (and the JOLs) and will need, and are, to be produced by the First Defendant on discovery (a CMC dealing with discovery has been listed for next March).

15. I note, of course, and give due weight to the requirements with respect to the pleading of fraud (in GCR O.18, r.12(1) and r.12(3)), and the critical importance in the Plaintiff's pleading of the allegations concerning Mr Naqvi's knowledge of the falsity of the representations he is said to have made and to his relationship with the Defendants and other related Abraaj entities. But these requirements need to be applied in the relevant procedural context and having regard to the Overriding Objective. I consider and accept the Plaintiff's submission that prior to discovery, there are limitations on the particulars that can be provided in these areas in the Plaintiff's pleading. It is, in my view, inappropriate to apply an unduly strict test to the amended pleading

in these areas at this stage. After discovery and the amendments to all the pleadings that will be needed thereafter, the position can be reviewed, and greater precision and particularity will then be needed and required. As Mr Bloch QC submitted, the Defendants are not placed in serious difficulties at this stage in pleading to the Concise Statement of Claim since they can respond by stating that they do not admit the fact averred or its relevance. This appears to be the view and position also taken by the Fourth Defendant.

16. Having said that, these limitations are not an excuse for vague pleading where that can reasonably be avoided. At this stage, the Plaintiff should give as many particulars and plead material facts with as much precision as he reasonably can (and should avoid pleading such facts too broadly or vaguely where possible) so as to ensure that the Defendants are as well informed as reasonably possible as to the nature of the case they have to meet and can plead to it and so as to facilitate the formulation of the list of issues that will guide the discovery process (significantly, the parties have already made good progress in agreeing the list of issues for discovery in the related proceedings).

17. I discuss and set out below my views on each of the GHF Parties' category 2 objections, taking into account the factors I have referred to above and the points made by Walkers in correspondence, in particular the arguments made in their 4 November 2021 letter. I first set out in italics the relevant objection as formulated by the GHF Parties in their document relating to the Concise Statement of Claim filed during the hearing and then briefly provide my view on each objection. I adopt and use the definitions of the relevant parties as set out in the Concise Statement of Claim. Following my discussion of the category 2 objections, I deal, more briefly, with the category 3 objections.

*The GHF Parties' objections – the category 2 objections*

18. It seems to me that most of the category 2 objections are unjustifiable at this stage. I understand why the GHF Parties consider that the pleading in parts of the Concise Statement of Claim is vague and too broadly expressed but, in my view, with two exceptions, the proportionate approach is to allow the pleading to stand and to review the position after the pleadings have been amended and further particularised to take account of the results of discovery. There is no proper basis for concluding that the deficiencies identified will seriously prejudice the position of the GHF Parties or make it impossible for them to plead their defences or that these deficiencies will materially interfere with settlement of the list of issues for discovery.

19. *Sub-paragraphs 11(3)-(11): [The]allegations are said to form part of the basis of the allegation that Mr Naqvi knew that what he told Mr Jafar, or gave Mr Jafar to understand, by way of the "Overarching Message" was untrue, see paragraph 30(1). However, they are of no relevance to and cannot be supportive of the allegation in paragraph 30(1) and are embarrassing, vexatious and (if permitted as amendments) would prejudice or embarrass the fair trial of the Proceeding and would be liable to be struck out.*

Two points arise:

(a) paragraph 11 of the Concise Statement of Claim appears under the heading "*Arif Naqvi*" and identifies a number of roles held or performed by Mr Naqvi. Paragraph 30(1) states that Mr Naqvi would have been expected to have acquainted himself with certain material in these roles (as well as in those pleaded in paragraph 10), from which the unsound financial position of the First Defendant, the Healthcare Fund and APEF IV would have been apparent.

(b) only some of the sub-paragraphs of paragraph 11 refer to roles and I accept that it is very difficult at this stage to see how the matters pleaded at paragraph 11 (5) – (7) could be relevant to the allegation made in paragraph 30(1). But I do not consider that it is justifiable at this stage to require that these references be deleted. They represent the Plaintiff's view as to the roles and positions held by, and activities of, Mr Naqvi that are relevant to his claim that Mr Naqvi was (or was likely to be) sufficiently well informed and competent to be able to appreciate and be aware of the financial difficulties of AIML, AH, the Healthcare Fund and APEF IV. After discovery, when the full documentary picture is available, the Plaintiff will need to identify with greater precision why the roles and activities referred to are relevant and relate to Mr Naqvi's knowledge, understanding and competences and the documents and information derived from these activities which Mr Naqvi had in his possession or to which he had access. I appreciate that since Mr Naqvi is not a defendant to these proceedings, the Plaintiff does not need to wait for discovery in order to obtain, and discovery will not directly assist the Plaintiff in obtaining, further relevant details as to why and how Mr Naqvi's alleged roles as a contributor to humanitarian causes endorsed by the Pope or as a sponsor of the arts gave him or contributed to his knowledge and understanding of matters related and relevant to the financial affairs and difficulties of the Abraaj entities referred to. But in my view, there is little and certainly not a proportionate benefit in requiring the Plaintiff to provide such further particulars before discovery rather than following when the pleading will need to be reviewed and further particularised, in light of the better view of the case and Mr Naqvi's activities provided by discovery.

20. *The only asserted cash shortfalls in the AGHF [the Healthcare Fund] are those pleaded at paragraphs 30(2) and 32(4)(f) of the [Concise Statement of Claim]. No particulars of the alleged shortfalls have been given. Mr Jafar pleads the alleged reason or purpose for the alleged circular transfers i.e., to conceal the alleged shortfalls, but fails to plead or particularise the fact of and amount of the shortfalls.*

Paragraphs 30(2) and 32(4)(f) of the Concise Statement of Claim appear under the heading "*Knowledge of Falsity*" and follow the averment in the introductory words of paragraph 30 that "*Mr Naqvi knew that what he told Mr Jafar, or gave Mr Jafar to understand, was untrue*." The complaint made by the GHF Parties is that the Concise Statement of Claim fails to plead or particularise "*the fact of and amount of the shortfalls*." In my view, for the reasons I have already given, the Plaintiff cannot be expected to plead the details (including the amount) of the shortfall at this stage and prior to discovery. As regards pleading "*the fact of ... the shortfalls*", the shortfalls are relevant because they are said to have made Mr Naqvi's statements false. They are pleaded as having existed and having done so. Nothing more is needed at this stage.

21. *Paragraph 29 contains the sole allegation of falsity. However, it appears that Mr Jafar [is] in no position to provide particulars to support that assertion beyond reliance on allegations made by a different party in different proceedings. The GHF Parties do not accept that this is an acceptable way to plead a material allegation i.e., falsity. Moreover, Mr Jafar also considers the "precise nature of the unsound financial affairs and misgovernance is not material to Mr. Jafar's understanding or reliance upon what was said in relation to them." Regardless of whether that is right (the GHF Parties take no position on that for present purposes), the particulars of, "the unsound financial affairs and misgovernance" are relevant: (i) to whether or not such unsoundness existed as a matter of fact; and (ii) to what is otherwise a bare assertion of falsity, and no particulars have been provided (other than by reference to allegations made in a different set proceedings).*

Four points arise:

(a). paragraph 29 of the Concise Statement of Claim is in following terms:

> "*The financial affairs and management (and governance) of AIML, AH, the Healthcare Fund and APEF IV from March – December 2017 were not materially sound or proper. It is noted that AH has positively averred that this was the case: in proceedings FSD 150 of 2020, at the Writ of Summons, paragraphs 17-28; and in proceedings FSD 158 of 2020, at the Writ of Summons, paragraphs 12 – 19. The precise nature of the unsound financial affairs and misgovernance is not material to Mr Jafar's understanding or reliance upon what was said in relation to them.*"

(b). there are two complaints. First, that particulars of falsity are provided only by reference to the averments and allegations made by the JOLs in their pleadings in the other related

proceedings and that this is insufficient and impermissible. Secondly, that further particulars must be given of how the financial affairs and management (and governance) of the entities referred to were unsound and improper. The GHF Parties say that the Plaintiff is wrong to assert that details of the problems with the financial affairs and governance of the identified entities are irrelevant to his claim and therefore do not need to be provided ("*The precise nature of the unsound financial affairs and misgovernance is not material*").

(c). the first complaint is unjustified. Particulars are not provided solely by reference to the averments and allegations made by the JOLs in their pleadings in the other related proceedings. There is a prior and independent averment that the statements made and understanding created by Mr Naqvi were untrue because the "*financial affairs and management (and governance) of [the relevant entities] were not materially sound or proper.*" The reference to the averments in the JOLs' pleadings is prefaced by the words "*It is noted that*." This appears to me to be a place holder for the time being to record that the JOLs have also alleged that there were shortfalls in the assets of and urgent funding needs in the relevant Abraaj entities which had resulted from mismanagement and failures of governance and which Mr Naqvi sought to remedy by various fund-raising efforts including borrowing from the Plaintiff. Clearly, following discovery, the Plaintiff will need to identify the material facts and documents that *he* relies on to show that the "*financial affairs and management (and governance) of [the relevant entities] were not materially sound or proper*" and will be unable to rely on the pleaded case of the JOLs (in other proceedings) for this purpose.

(d). as regards the second complaint, while I accept the Plaintiff's submission once again (for the reasons I have already given) that further particulars are not needed before discovery, I do regard the current drafting of the first sentence of paragraph 29 to be unjustifiably vague and imprecise. In my view, even accepting that the Plaintiff needs to see the documents produced on discovery in order to identify the precise financial difficulties and misgovernance to which AIML, AH, the Healthcare Fund and APEF IV were subject in the relevant period, the underlined words in the statement that "*The financial affairs and management (and governance) of [these entities] <u>were not materially sound or proper</u>*" are so vague as to fail, even at this stage, to state the facts alleged in a manner that allows the GHF Parties (and the other Defendants) to understand the case they have to meet. I also

accept the GHF Parties' submission that the Plaintiff cannot simply say that any problems, of an unspecified nature, are enough to falsify what Mr Naqvi said or led the Plaintiff to understand (the Plaintiff appears to be asserting that all he has to show or at least at this stage be required to aver is that the entities' financial affairs were "*unsound*" in some way and to some extent and that there was misgovernance of some kind). At this stage, the Plaintiff needs to identify (and draft the paragraph in a manner which identifies) at least in general terms what he says the problems were which if known to Mr Naqvi, made what Mr Naqvi told the Plaintiff, or gave him to understand, untrue. It appears from the Concise Statement of Claim read as a whole (including paragraph 30) that the Plaintiff is alleging that the management, and those in control, of the identified entities were acting in breach of duty or otherwise failing to protect the interests of the entities and their creditors and that the entities were facing financial difficulties and potential asset shortfalls by reason of such mismanagement or failures of governance, which Mr Naqvi was aware of and sought to conceal. In my view, even before seeing the documents produced on disclosure, and taking into account the difficulty the Plaintiff has in making specific allegations without them, the Plaintiff can and should be clearer about and formulate with greater precision that state of the financial affairs, management, and governance which he avers to have existed and the way in which they were deficient. Drafting which more clearly focusses, even in general terms, on the status, condition and conduct of the affairs of the entities which is said to result in Mr Naqvi's statements being false, is needed in order to give the Defendants a target at which to aim.

22. *The particulars of Mr Naqvi's knowledge in paragraphs 30(1)-(3) are inadequate for the reasons set out in paragraph 25(a)-(c) of the 4 November 2021 Letter. As to paragraph 30(1), and the cross-reference to paragraphs 10 and 11 of the CSOC, paragraph 10 of the CSOC is assertion. As to paragraph 11 of the CSOC, see paragraph 1 above. As to paragraph 30(2), no particulars of Mr Naqvi's procurement of the Air Arabia loans are pleaded in that paragraph (nor in paragraphs 13 or 17 of the CSOC: as to which, see Revised Schedule 3). Finally, the purported particulars said to be contained in/comprise the matters referred to in paragraph 30(3) are particularly obtuse. Paragraph 26 of the 4 November 2021 Letter further explained that the GHF Parties would be unable to plead to the ASOC without first making, and receiving responses to, further RFBPs and that the stated deficiencies ought to be rectified before there can be any question of the GHF Parties acceding to the proposed amendments. Mr Jafar has failed to do this in the CSOC.*

The following points arise:

(a) paragraph 30(1)-(3) is in the following terms (underlining added):

*"30. Mr. Naqvi knew that what he told Mr. Jafar, or gave Mr. Jafar to understand, was untrue.*

***PARTICULARS OF MR. NAQVI'S KNOWLEDGE***

*(1) The unsound financial position of AH, the Healthcare Fund and APEF IV would have been apparent from materials with which Mr. Naqvi would be expected to have acquainted himself in his roles as pleaded in paragraphs 10 and 11 above and it is inferred and averred that Mr. Naqvi did so.*

*(2) Grave shortcomings in the governance of AH, the Healthcare Fund and APEF IV were apparent to Mr. Naqvi as a result of his involvement and directions in them; including his instructions to change APEF IV's year end in June 2017 and his procuring of circular loans from Air Arabia to the Former Healthcare GP in June 2017 and December 2017 to conceal serious cash shortfalls faced by the Healthcare Fund.*

*(3) In or about the period March to December 2017, Mr. Naqvi received information and issued directions concerning the financial affairs and governance of AH, AIML, the Healthcare Fund and APEF IV by emails and other means of messaging. It is inferred and averred that the facts and matters relied on in the Particulars of Falsity are disclosed in those messages."*

(b) the GHF Parties complain that no particulars are provided of "*the materials*"; of what these materials are alleged to have shown; of how the allegedly "*unsound financial position*" of the entities would have been apparent from these materials; the basis on which Mr Naqvi would have been "*expected to have acquainted himself*" with the materials; of Mr Naqvi's "*involvement and directions [given]*"; how the "*grave shortcomings*" were apparent to Mr Naqvi as a result of his involvement and of Mr Naqvi's relevant knowledge.

(c) once again, I can see the force of the concerns expressed by the GHF Parties. The drafting referred to is in need of clarification. But once again, save for one point, in my view the further particulars can wait until after discovery. It seems to me that the GHF Parties (and the other Defendants) are entitled at this stage to have some particulars, even in general terms, of the types of materials referred to in paragraph 30(1). I do not see why the Plaintiff cannot at least say "*materials [including for example] [such as].*" He must have in mind and be referring at least to broad categories of documents. The term "*materials*" is vague and will need to be properly particularised after discovery. It also seems to me that the further details that the GHF Parties seek can also wait until and be provided in a more particularised pleading after discovery.

23. *Paragraphs 48 and 51 should be deleted, they are irrelevant.*

Paragraphs 48 and 51 are in the following terms:

> "*48. Mr. Jafar does not rely on any civilly or criminally wrongful conduct apart from that which is pleaded above.*
>
> *51. Mr. Jafar does not maintain a positive case as to whether or not he has any claims against any Abraaj Group entities beside AH, AHG, the Healthcare Fund and APEF IV.*"

The GHF Parties say that these paragraphs add nothing and have no place in the pleading. The Plaintiff argues that they are intended to be of assistance in clarifying his case and do no harm, so that they should be retained. I agree with the Plaintiff.

*The GHF Parties' objections – the category 3 objections*

24. The GHF Parties identified a further ten objections, arguing that the proposed amendments needed to be better particularised.

25. I have reviewed and carefully considered each of the objections and the related pleading and do not propose to identify and discuss each and every one of these. I have concluded that it is inappropriate and disproportionate to require the Plaintiff to provide further particulars at this stage and I accept the Plaintiff's submissions on these objections.

*The Fourth Defendant's objection to paragraph 49 of the Concise Statement of Claim*

26. I have noted above that the Fourth Defendant argued that the Plaintiff should be required to clarify and amend his pleading in paragraph 49 of the Concise Statement of Claim and that if he failed to agree to the amendment required by the Fourth Defendant, leave to amend should only be granted on the condition that the Plaintiff made a suitable amendment. Following the hearing, the Plaintiff and the Fourth Defendant have agreed on the required amendment. Paragraph 49 is to be amended to read as follows:

> *"Mr. Jafar does not maintain a positive case as regards his retention or exercise of any right to rescind the loans he made to AH and AIML on 21 and 27 December 2017. Should any Defendant ask the Court to assume that Mr. Jafar affirmed either or both of those*

> *loans, Mr. Jafar will not dispute that the Court may proceed on that assumption(s) for the purpose of these proceedings."*

*The Draft Order for Directions*

27. On 8 December 2021 the parties filed with the Court a form of order, signed on behalf of all parties, setting out the orders made at the hearing on 29-30 November 2021 both with respect to the Plaintiff's application for leave to amend his SOC and other case management matters. As regards the Plaintiff's application for leave to amend, the following orders were included (in the expectation that my decision on the application would be available at the beginning of this week and would not require the Plaintiff to make any material amendments to the Concise Statement of Claim or the ASOC):

> *"5. If the Court grants leave to do so, Mr Jafar shall file and serve his Amended Statement of Claim in the form directed by the Court by 5pm on Monday, 13 December 2021.*
> *6. The Defendants in the Jafar Proceedings shall file and serve their Amended (or Re-Amended) Defences by 5pm on Friday, 7 January 2022.*
> *7. Mr Jafar shall file and serve his Amended Replies in the Jafar Proceedings by 5pm on Friday, 21 January 2022.*
> *8. Costs of the Amended Summons reserved (pending the Court's determination of the Amended Summons)."*

28. In view of my decision that the Plaintiff does need to make some, albeit minor, amendments to paragraphs 29 and 30(1) of the Concise Statement of Claim, and the fact that this judgment is being handed down after the 13 December 2021 deadline referred to in paragraph 5 of the order, that deadline and the subsequent deadlines in paragraphs 6 and 7 of the order need to be amended. I do not consider that the Plaintiff will need more than a short period to make the necessary amendments but will leave it to the parties to seek to agree appropriate revised deadlines (and to consider whether any consequential amendments are needed to other deadlines) and to prepare and file with the Court a revised form of order for my approval and sealing. If the parties cannot agree such new dates and deadlines by next Wednesday (22 December 2021) they should file with the Court details of the different dates contended for and I shall settle the dates and make an order incorporating the dates I consider to be appropriate. I would also like the parties to defer

filing submissions on the costs order to be made on the Amended Summons until after my costs judgment has been handed down.

**Mr Justice Segal**
**Judge of the Grand Court, Cayman Islands**
**20 December 2021**