# Exhibit O

23-01165-mew Doc 84-19 Filed 01/23/25 Entered 01/23/25 23:21:56 Exhibit O - Re Maidstone Buildings Provisions Ltd [1971] 1 WLR 1085 Pg 2 of 11


A authorising him to bring an appeal would be entitled to a dispensation because he would say: "I have got my certificate. That shows I have a prima facie case. Also, the legal aid committee have assessed my contribution. That is the end of it. I cannot be made to pay anything more."

That argument would in my judgment be putting the case too high. The question however is where one draws the line, and *In re Cohen, A*
B *Bankrupt* [1961] Ch. 246 does not help, because there is nothing in the report of that case to show on what basis the Court of Appeal proceeded, save only that it shows there may be cases in which there ought not to be a dispensation.

In the present case, the evidence in support of the application is very brief. The bankrupt says that payment of such a sum would occasion
C him "serious hardship." He does not say "Unless I have a dispensation, my case cannot go on at all." Having regard to the authorities that mere inability to pay is not enough, real hardship must be shown.

Mr. Lightman also spoke of the merits of an appeal, but that seems to me to be not a very helpful line of country from his point of view, since as I understand it, there is an authority directly in point against him. There are, I am told, dicta of the Court of Appeal which throw
D doubt upon it, but they may not be binding on this court. Certainly the position might be different elsewhere, but if one is going to appeal on the merits—apart from a legal aid committee having said that it is a proper case to bring on—that line of approach is not very helpful in these circumstances.

For these reasons, it seems to me that the bankrupt has failed to show
E that his is a special case within rule 129 of the Bankruptcy Rules 1952, and for my part, I would not dispense with the security for costs of the appeal.

FOSTER J. I agree.

*Order accordingly.*

F Solicitors: *Sharpe, Pritchard & Co. for William Bains, Brigg; Solicitor, Department of Trade and Industry.*

K. N. B.

---

[CHANCERY DIVISION]

G * *In re* MAIDSTONE BUILDINGS PROVISIONS LTD.

1971 April 29, 30 — Pennycuick V.-C.

*Company—Winding up—Fraud—Secretary of company—Liquidator's claim for declaration of liability—"Parties to the carrying on of the business"—Whether applicable to company secretary—Companies Act* 1948 (11 & 12 *Geo.* 6, *c.* 38),
H *s.* 332 (1)

A chartered accountant, who was a partner in the firm which acted as auditors of an incorporated company, was appointed secretary of that company in March 1960. He ceased to be secretary in November 1962 but was re-appointed in December 1962. At a meeting of the board of

---

[Reported by MRS. F. ALLEN MCLEAN, Barrister-at-Law]

23-01265-mew Doc 84-19 Filed 01/23/25 Entered 01/23/25 23:21:56 Exhibit O - Re Maidstone Buildings Provisions Ltd [1971] 1 WLR 1085 Pg 3 of 11


directors in March 1961 the draft figures which he presented showed a considerable loss. The secretary, or his staff, continued until November 1962 to prepare monthly and quarterly written statements of the company's finances, and advised the board of directors as to the position indicated by those figures. Except for one directors' meeting held in September 1962, the secretary was present or in attendance at all meetings held from March 1961 until he resigned in April 1965. The company's finances were discussed at directors' meetings subsequent to that of March 1961 and resolutions were passed to effect certain economies. However the company continued to trade at a heavy loss, incurring debts without any reasonable prospect of being able to pay them. In June 1965 a resolution was passed at an extraordinary general meeting that the company be wound up voluntarily. The liquidator sought an order against the directors and also against the secretary making them personally liable for the liabilities of the company pursuant to section 332 of the Companies Act 1948.[1]

On an application by the secretary for the proceedings to be dismissed on the grounds that they disclosed no reasonable cause of action:—

*Held*, that the expression " party to " in section 332 of the Companies Act 1948 indicated no more than " participates in," " takes part in " or " concurs in " and involved some positive steps (post, p. 1092F). Mere omission by the secretary to give certain advice to the directors was not being a party to carrying on the business in a fraudulent manner and, accordingly, the proceedings against him would be dismissed.

The following case is referred to in the judgment:

*Leitch (William C.) Bros. Ltd., In re* [1932] 2 Ch. 71.

The following additional cases were cited in argument:

*Barnett* v. *South London Tramways Co.* (1887) 18 Q.B.D. 815, C.A.

*Bradford Third Equitable Benefit Building Society* v. *Borders* [1941] 2 All E.R. 205, H.L.(E.).

*Cross* v. *Earl Howe* (1892) 62 L.J.Ch. 342.

*Cullen* v. *Thomson* (1862) 6 L.T. 870, H.L.(Sc.).

*Joint Stock Discount Co.* v. *Brown* (1869) L.R. 8 Eq. 376.

*Registrar of Restrictive Trading Agreements* v. *W. H. Smith & Son Ltd.* (1969) L.R. 7 R.P. 122; [1969] 1 W.L.R. 1460; [1969] 3 All E.R. 1065, C.A.

SUMMONS

In December 1959 a company was incorporated with the name Merfeels Ltd. for the purpose of carrying on the business of general and manufacturers' agents, producers, manufacturers, importers, exporters and dealers in canned goods of all kinds. It had a share capital of £100. The company's name was later changed to Stock, Dehn and Spear Ltd. and finally to Maidstone Buildings Provisions Ltd. In 1960 the authorised share capital was increased to £10,000, the paid up, or credited paid up, capital being £8,000. The registered holders of the shares were Stuart John Stock, Kurt Otto Dehn and Wilfred John Spear who became directors when trading began in March 1960. Ronald Frederick Penney, a partner in the firm of F. G. Jenkins Wood & Co., the company's auditors, became a director and was appointed secretary. He resigned as director in July 1960 but continued as secretary. A Mr. C. A. Smith

[1] Companies Act 1948, s. 332 (1): see post, p. 1088C–E.

was appointed secretary in November but died shortly afterwards and Mr. Penney consented in December to act as interim secretary until his successor was appointed. The expenses of promoting the company had been heavy and the company traded at very narrow margins. In March 1961 the figures Mr. Penney put before the board of directors showed that the company had been trading at a considerable loss. The board resolved to effect certain economies and to reduce the directors' salaries by £500 each per annum. In November 1962, in view of the serious situation of the company's finances, further economies were agreed on. The company continued to trade at a loss until 1965, obtaining goods on credit, incurring debts for wages, salaries, commissions, rent, heating, advertising, travel and entertainment and otherwise. In June 1965 when it was resolved to go into voluntary liquidation, the company's debts stood at approximately £99,000. The liquidator sought an order against the three directors Messrs. Stock, Dehn and Spear and also against Mr. Penney, making them personally responsible for the liabilities of the company pursuant to section 332 of the Companies Act 1948. It was common ground that the issue raised against Mr. Penney was quite different from that raised against the directors. The contention of the liquidator was that Mr. Penney, in his capacity of secretary and as a chartered accountant, who was a member of the firm acting as the company's auditors, and who acted as a sort of financial adviser, was knowingly a party to the carrying on of the business of the company. He owed a duty to the company to give advice and he should have taken positive steps to ensure that the company ceased fraudulent trading. Whilst section 275 of the Companies Act 1929 applied only to directors, section 332 of the Companies Act 1948 applied to any persons. Mr. Penney contended that, as company secretary, he was a servant and could not be held liable under section 332 unless a clear case of complicity in fraudulent trading was pleaded. He applied for dismissal of the proceedings against him in that the points of claim made by the liquidator disclosed no reasonable cause of action.

*D. M. Burton* for the former company secretary.
*M. K. I. Kennedy* for the liquidator.

PENNYCUICK V.-C. I have before me an application by Mr. Ronald Frederick Penney in a matter entitled In re Maidstone Buildings Provisions Ltd. and In re the Companies Act 1948. That matter is a summons brought pursuant to section 332 of the Companies Act 1948 by the liquidator of the company whereby he seeks an order against certain directors of the company and also against the present applicant, Mr. Penney, making them personally responsible for the liabilities of the company pursuant to the section. Mr. Penney was not at any relevant time a director of the company but was for some time its secretary.

The liquidator has come to terms with one of the director respondents. As regards another, the summons has been stood over with a view to a compromise. I am not sure what the position is as regards the third; it does not matter.

It is not in dispute that the issue raised against Mr. Penney is quite different from that raised against the directors so that there is no reason why the summons should not be dealt with as between the liquidator and Mr. Penney separately from the directors.

The application before me today is one by Mr. Penney that the proceedings issued against him be dismissed on the ground that the points

of claim disclose no reasonable cause of action. I should mention at this A
stage that the present application has been made at a very late date. The summons has actually been set down for hearing. Moreover, the issues raised by the summons are certainly such as to admit of serious argument. In those circumstances it may well be that there would be insuperable difficulty in making an order upon the present summons to dismiss on the ground that the summons discloses no reasonable cause of action.

Counsel for the liquidator has, however, very properly accepted that I B
should deal with this summons on its merits. That is clearly desirable because if my decision goes in favour of Mr. Penney, that puts an end to the whole matter. If I were to refuse to hear the present application or dismiss it because it was too late or because there was an arguable point, the only result would be that there would be further delay and expense, and then the identical point would come before another judge. I say C
" the identical point " because the point which I have to deal with depends on the construction of section 332 and its application as construed to a certain state of facts as alleged by the liquidator, or as admitted by the respondent. I am not concerned to adjudicate upon any issues of fact.

It will be convenient first to read section 332 (1):

> " If in the course of the winding up of a company it appears that any D
> business of the company has been carried on with intent to defraud creditors of the company or creditors of any other person or for any fraudulent purpose, the court, on the application of the official receiver, or the liquidator or any creditor or contributory of the company, may, if it thinks proper so to do, declare that any persons who were knowingly parties to the carrying on of the business in manner aforesaid shall be personally responsible, without any limita- E
> tion of liability, for all or any of the debts or other liabilities of the company as the court may direct. . . ."

It is worth pointing out that section 332 reproduces section 275 in the Act of 1929 which is in identical terms except that there the persons who could be made liable were confined to directors whether past or present whereas the present section applies to any person. F

Subsection (3) of the section imposes, apart from the civil liability, a punishment, including imprisonment or fine. There is, therefore, no question but that section 332 is a penal section.

I propose now to read the relevant passages in the pleadings and particulars, making certain comments on them as I go on. The liquidator delivered points of claim to the following effect:

G

> " (1) The . . . company . . . was incorporated . . . for the purpose of carrying on the business of general and manufacturers' agents, producers manufacturers importers, exporters and dealers in canned goods of all kinds. . . ."

(2) deals with changes in the company's name; (3) states that the company's authorised share capital was increased in 1960 to £10,000 and the H
issued capital at £8,000. Then the three named individuals, Dehn, Stock and Spear, are the registered holders of those shares. (4) sets out that at an extraordinary general meeting of the company the company went into voluntary liquidation and that the present liquidator, Mr. Norman Barrington Cork, was appointed the liquidator.

> " (5) The company is hopelessly insolvent and the deficit on the said winding up is likely to exceed £99,000. (6) The company commenced

to trade in or about March 1960. On March 25, 1960, the respondent Ronald Frederick Penney became secretary of the company and on July 1, 1960, the respondents Stock, Dehn and Spear became directors of the company. [Then it deals with their salaries.] (7) At the meeting of the board of directors held on March 8, 1961, it was resolved that, as the draft figures showed a considerable loss for the period from the commencement of trading to January 31, 1961, considerable economies be effected. It was further resolved that the respondents drawings as directors be reduced immediately by £500 each per annum. (8) At the meeting of the board of directors held on November 21, 1962, the respondents recognised the seriousness of the company's financial position and agreed to prune overheads wherever possible. [Then there are particulars of the reduction of the directors' remuneration.] The financial position of the company was further discussed at subsequent meetings of the board of directors. (9) At all times after the said meeting held on March 8, 1961, the respondents knew or ought to have known that the company was trading at a heavy loss and was insolvent. But the respondents regularly caused the company to purchase goods on credit and to incur other debts without any reasonable prospect of being able to pay for the said goods or to satisfy its other debtors."

Those words are an echo of the judgment of Maugham J. in *In re William C. Leitch Bros. Ltd.* [1932] 2 Ch. 71 a decision under the corresponding section of the earlier Act.

"(10) In the premises the respondents were knowingly parties to the carrying on of the business of the company with intent to defraud creditors of the company and for other fraudulent purposes."

So that is an almost entirely unparticularised allegation, so far as Mr. Penney is concerned, of fraudulent trading within the terms of section 332. I need not read the rest of the points of claim.

In the points of defence Mr. Penney makes a number of admissions and denials which I need not read. He states in paragraph 3 that he "was appointed secretary of the company on March 25, 1960, and ceased to be secretary of the company on November 21, 1962; he was reappointed secretary on December 13, 1962." Then paragraph 4

"As to paragraphs 7–10 inclusive of the points of claim (a) this respondent was not concerned with the management of the company or the direction of its policy which was wholly under the control of the respondents Stock, Dehn and Spear. This respondent advised the said respondents in 1961 and 1962 of the company's actual financial position: but he was not a party to carrying on the business of the company. In particular, this respondent at no time caused the company to purchase goods or incur credit. (b) This respondent admits the proceedings of the meetings of directors on March 8, and November 21, 1962. On November 21, 1962, the directors resolved that this respondent should be replaced as secretary of the company by one C. A. Smith. The said C. A. Smith died on December 1, 1962, and this respondent was requested by the directors to become secretary of the company on an interim basis until they found a permanent successor to the said C. A. Smith, which he agreed to do and was appointed secretary on December 13, 1962. (c) The function of this respondent was at all times solely to advise

> the board of directors of the company and to carry out such duties as the board deputed to him. He says he was not knowingly a party to the carrying on of the business of the company with intent to defraud creditors of the company or for other fraudulent purposes and is not liable as alleged or at all." A

The liquidator made a request for particulars under paragraph 4 (a) of the advice alleged to have been given by the respondent, Mr. Penney, to the respondents Stock, Dehn and Spear stating the nature of such advice and the date or dates on which such advice is alleged to have been given; whether such advice is alleged to have been given to each of the said respondents individually or to them collectively and if advice was given in writing identifying the document or documents. B

The answers to the particulars given pursuant to that request were as follows: C

> "This respondent or his staff from March 25, 1960, to November 1962 prepared monthly and quarterly written statements of the financial position of the company which were submitted to board meetings of the company: and this respondent or Endicott, a member of his staff, at such meetings orally advised the directors present as to the position appearing from such statements. From March 1961 onwards to November 1962 the nature of the advice given was that the company's overheads ought to be reduced and/or that sales should be expanded. After December 1962 this respondent's duties did not include the giving of general financial advice, but he was as auditor of the company consulted on specific occasions to advise: . . ." D

In fact, Mr. Penney was not the auditor of the company. He was a partner in a firm of accountants who were the auditors of the company. Then he deals with certain particular matters on which he was consulted. E

Mr. Penney in turn sought further particulars of the points of claim, the particulars sought under paragraph 9 being as follows:

> "Particularly each and every occasion on which it is alleged that this respondent caused the company to purchase goods on credit and stating the manner in which it is alleged this respondent caused the company to purchase goods on credit and the goods so purchased: Particularly each and every occasion on which it is alleged this respondent caused the company to incur other debts and stating the manner in which it is alleged this respondent caused the company to incur the debts relied on and stating the amount of each such debt and the creditor concerned." And under paragraph 10: "Particularly every fact relied on in support of the allegations of fraud made in this paragraph." F G

In response to that request he received particulars in these terms:

> "Under paragraph 9 and 10: Such goods were bought on credit after March 8, 1961 (being the date of the meeting of the board of directors referred to in paragraph 7 of the points of claim). Such debts were incurred after the said March 8, 1961, in respect of wages, salaries, commissions, rent, light and heating, advertising, travelling and entertainment expenses, indebtedness to Westminster Bank and C. H. Donner. The only other particulars known to the applicant sufficiently appear from the books of account of the company all of H

23-01165-mew Doc 84-19 Filed 01/23/25 Entered 01/23/25 23:21:56 Exhibit O - Re Maidstone Buildings Provisions Ltd [1971] 1 WLR 1085 Pg 8 of 11


which have been made available to this respondent upon discovery and upon which the applicant will rely at the trial.

"Save as above the best particulars which the applicant can give of the manner in which this respondent caused the company to purchase such goods on credit and to incur such other debts are that the respondent Penney was at all material times an officer of the company and knowingly a party to the carrying on of the business of the company under the circumstances set out in paragraph 9 of the points of claim and thereby rendering himself liable under the provisions of section 332 of the Companies Act 1948."

Mr. Penney was perhaps not unnaturally not content with those particulars. He sought an order for further particulars and on October 13, 1970, Mr. Registrar Berkeley made an order that the liquidator deliver to the applicant the following further and better particulars under paragraph 9 of the points of claim, namely:

"Whether it is alleged that the respondent Ronald Frederick Penney caused the said company to purchase the goods and incur the debts referred to in the particulars dated July 7, 1970, only by reason of his being the secretary of the company and as such having knowledge of the business of the company or whether it is alleged that he was in any other and if so what way knowingly a party to the purchase of such goods and incurring of such debts and in the latter event giving full particulars of the facts relied on."

Pursuant to that order the liquidator delivered further particulars. It is clear from the form of the particulars which he delivered that he was then quite properly setting out afresh the full particulars upon which he relied in support of his allegation in the points of claim. The particulars run as follows:

"The applicant will rely upon the following facts and matters in support of the allegation that this respondent was knowingly a party to the carrying-on of the business of the company: (a) At all times after March 8, 1961 the respondent knew that the company was trading at a heavy loss and was insolvent."

I break off to observe that counsel for the liquidator states that the words "the respondent knew that the company was insolvent" are intended in the context to mean not only that he knew the company was insolvent, but that he knew there was no reasonable prospect of the company ever being able to pay its debts, and I will proceed on the basis that that is so. To continue:

"(i) This respondent was appointed a director and the secretary of the company on March 25, 1960. On July 1, 1960, he resigned as director." I interpose that it is accepted there was no fraudulent trading up to that date. "On November 21, 1962, he resigned as secretary but was reappointed as secretary on December 13, 1962, and continued in office until his resignation on April 20, 1965.

"(ii) At the first meeting of the directors of the company held on March 25, 1960, Messrs. Jenkins, Wood & Co. were appointed auditors and accountants to the company. This respondent was at all material times a partner in the said firm and assisted in the preparation of the company's accounts for the 18 months ending on December 31, 1961, and for the year ending on December 31, 1962, and draft

accounts for the six months ending on June 30, 1963. The applicant A will rely upon the fact that the following letters concerning the company's accounts . . ." I need not refer to the particulars of those letters.

"(iii) This respondent was present or in attendance at all meetings of the board of directors (save for the meeting held on September 27, 1962) which were held between March 25, 1960, and his said resignation on April 20, 1965. Such meetings included the meetings of B the board of directors held on March 8, 1961, and November 21, 1962, and referred to in paragraphs 7 and 8 of the points of claim, and a meeting of the board of directors held on March 5, 1964, at which the financial position of the company was discussed.

"(b) Despite such knowledge as aforesaid of the company's insolvency, this respondent took no steps, or alternatively took no C effective steps, to prevent the company from purchasing the goods on credit and incurring the other debts, described in paragraph 9 of the points of claim and the particulars thereof. The steps that this respondent should have taken, but did not take, were to advise the respondents Stock, Dehn and Spear at or after the said meeting of the board of directors held on March 8, 1961, that the company was insolvent and should cease to trade." D

So the effect of those particulars is that it is alleged that Mr. Penney, in addition to being the secretary of the company, acted in some sense as its financial adviser; in that dual capacity, although he knew that the company was insolvent, he omitted to take the steps which he should have taken to prevent the company continuing to trade, the steps being to give certain advice to the directors; and that, it is said, brings him within E section 332.

Counsel for Mr. Penney contends that upon the points of claim particularised in that way there is no cause of action against him. He contends that, assuming all the facts alleged are made out, upon those facts he was not a party to the carrying on of the company's business in manner aforesaid, that is with intent to defraud creditors of the company or for any F other fraudulent purpose.

The expression "parties to the carrying on of the business" is not, I think, a very familiar one, but so far as I can see, the expression "party to" must on its natural meaning indicate no more than "participates in," "takes part in" or "concurs in." And that, it seems to me, involves some positive steps of some nature. I do not think it can be said G that someone is party to carrying on a business if he takes no positive steps at all. So in order to bring a person within the section you must show that he is taking some positive steps in the carrying on of the company's business in a fraudulent manner.

So far as the position of a secretary as such is concerned, it is established beyond all question that a secretary, while merely performing the duties appropriate to the office of secretary, is not concerned in the management H in the company. Equally I think he is not concerned in carrying on the business of the company. On the other hand, it is equally well established, indeed it is obvious, that a person who holds the office of secretary may in some other capacity be concerned in the management of the company's business.

I was referred to certain authorities on these points, but I do not think it would be useful to cite them. There is quite a neat statement of

A the position in *Palmer's Company Law*, 21st ed. (1968), p. 603, where he says:

> "The position of secretary in a company has altered out of recognition during the past 75 years. From being a humble clerk he has become, in most large companies, an officer of the company having important duties and responsibilities and often with considerable influence. He
> B remains, however, in the eyes of the law what he was originally intended to be, namely, an officer in a ministerial and administrative capacity: he has no managerial functions, and it would, normally, be unwise for an outsider to assume that he has any managerial powers, which are, prima facie, vested in the directors and any managing directors. In practice the functions of the secretary often exceed those contemplated by the Acts and he is sometimes given considerable
> C managerial responsibility."

So, says counsel for Mr. Penney, the mere fact that Mr. Penney was the secretary clearly does not bring him within the terms of this section. As secretary he was not a party to the carrying on of the business of the company. Then, he says, although it is alleged that he occupied one other position in relation to the company, in effect, that of financial
D adviser, when one looks at the particulars, no positive action of any kind on his part is alleged. All that is alleged is his omission to take steps to prevent the company trading fraudulently. The steps he omitted to take were to give certain advice to the directors.

It seems to me impossible to say that that mere inertia on the part of Mr. Penney, and that is all that is alleged against him, could represent
E being a party to the carrying on of the business of the company, and if that is right, it is the end of the matter.

Counsel for the liquidator does not, I think, contend that the expression "party to" covers everyone who has notice that the business of the company is being carried on fraudulently. That contention, if it were right, would lead to impossible results. But what he does say—I think this is the substance of his argument—is that Mr. Penney in his position as
F secretary and financial adviser of the company and also member of the firm of the company's auditors owed a duty to the company to give them certain advice and that his omission to give that advice rendered him a party to carrying on the business of the company.

I find it impossible to accept that contention. Whatever duty Mr. Penney may have owed to the company, I do not think mere omission
G to give advice could be regarded as amounting to being a party to carrying on the business of the company.

I would add to avoid misunderstanding that if any given individual does owe a duty to another party to give advice, his omission to give that advice may well represent negligence for which he could be made accountable at the instance of the person to whom he owes the duty. Again
H there are, I think, circumstances in which a party remaining silent where he ought to speak may be held to be implicated in a fraud, but that is not what this section requires. This section requires that the person concerned should be a party to the carrying on of the business in a fraudulent manner. I find it impossible to say, whatever duty to give advice Mr. Penney may have owed to the company, that mere silence and omission to give advice could make him a party to the carrying on of the company's business.

It is worth while to mention again in this connection that this is a penal section. The principle on which the courts now act as regards penal enactments is stated in *Halsbury's Laws of England*, 3rd ed., vol. 36 (1961), p. 415, para. 631: A

> " It is a general rule that penal enactments are to be construed strictly, and not extended beyond their clear meaning. At the present day, this general rule means no more than that if, after the ordinary rules of construction have first been applied, as they must be, there remains any doubt or ambiguity, the person against whom the penalty is sought to be enforced is entitled to the benefit of the doubt." B

I myself do not feel any doubt or ambiguity of the construction of section 332 in the present context. If there were any doubt, it would have to be resolved in favour of the respondent. C

For the reasons which I have given it seems to me that the allegation of fraudulent participation against Mr. Penney as alleged in the points of claim and expanded in the particulars has not been made out even on the footing that every matter of fact raised in the pleadings is decided in favour of the liquidator.

That being the position, the result is that the proceedings issued by the liquidator disclose no reasonable cause of action against Mr. Penney and that I should make the order sought upon Mr. Penney's application. D

*Order accordingly.*

Solicitors: *Chamberlain & Co.; Simmons & Simmons.*

E

---

[QUEEN'S BENCH DIVISION]

## * SECRETARY OF STATE FOR EMPLOYMENT AND PRODUCTIVITY *v.* CLARKE CHAPMAN & CO. LTD. F

1971 March 24 — Lord Parker C.J., Widgery L.J. and Bean J.

*Revenue—Selective employment tax—Premium—Manufacturers of electrical units—Installation at site separate from main establishment over four- or five-year period—Temporary buildings erected at site—Head office retaining control—Whether separate site "establishment"—Whether employment on site "in, or carried out from" main establishment—Selective Employment Payments Act* 1966 (*c.* 32), *s.* 1 (2) (*a*) G

The employers were electrical engineers engaged in the manufacture and installation of large electrical units. At site F four 500-megawatt generating units were being installed over a period of four or five years. Buildings were erected as general accommodation for the men working on the site, but they were built with the knowledge that they would be there for a period of only five years and were of a kind which could be removed and used elsewhere. The employers' head office was at G, from where the whole administration of the company was carried out. H

---

[Reported by MRS. CELIA FOX, Barrister-at-Law]