# Exhibit P

MAUGHAM J.

1933

March 14, 15.

# *In re* PATRICK AND LYON, LIMITED.

[00704 of 1932.]

*Company—Winding Up—No Trading Profit—Debentures issued to Director—Winding Up just over Six Months later—"Fraud"—"Fraudulent Purpose"—Dishonesty Essential—Companies Act,* 1929 (19 *&* 20 *Geo.* 5, *c.* 23), *s.* 265, *sub-s.* 1; *s.* 266; *s.* 275, *sub-ss.* 1, 2.

By s. 265, sub-s. 1, of the Companies Act, 1929: "Any . . . . act relating to property which would, if made or done by or against an individual, be deemed in his bankruptcy a fraudulent preference, shall, if made or done by or against a company, be deemed, in the event of its being wound up, a fraudulent preference of its creditors, and be invalid accordingly."

By s. 266: "Where a company is being wound up, a floating charge on the undertaking or property of the company created within six months of the commencement of the winding up shall, unless it is proved that the company immediately after the creation of the charge was solvent, be invalid, . . . ."

By s. 275, sub-s. 1: "If in the course of the winding up of a company it appears that any business of the company has been carried on with intent to defraud creditors of the company or . . . . for any fraudulent purpose, the court, on the application of the official receiver, or the liquidator or any creditor or contributory . . . . may, . . . . declare that any of the directors, . . . . of the company who were knowingly parties to the carrying on of the business in manner aforesaid shall be personally responsible, without any limitation of liability, for all or any of the debts or other liabilities of the company as the court may direct."

By sub-s. 2: "Where the court makes any such declaration, it may . . . . make provision for making the liability of any such director under the declaration a charge on any debt or obligation due from the company to him, . . . ."

By sub-s. 6: ". . . . where the declaration under subsection (1) of this section is made in the case of a winding up in England, the declaration shall be deemed to be a final judgment within the meaning of paragraph (*g*) of subsection (1) of section one of the Bankruptcy Act, 1914":—

*Held*, (1.) that in s. 275 the references to "intent to defraud" and to "fraudulent purpose," unlike the words "fraudulent preference" in s. 265, import actual dishonesty;

(2.) that for the purposes of s. 266 a company is not solvent if it is unable to pay its debts as they become due.

*Ex parte Russell* (1882) 19 Ch. D. 588 and *London and Counties Assets Co.* v. *Brighton Grand Concert Hall and Picture Palace, Ld.* [1915] 2 K. B. 493 followed.

MISFEASANCE SUMMONS.

The applicants were creditors of the company, which was in liquidation. The first respondent had been a director of

the company since its incorporation on June 17, 1929, till July 22, 1932, and his wife was also a director. His son was its secretary and became a director after his father's retirement. The company never made a trading profit. In January, 1932, it was indebted to the first respondent and his wife, and it was arranged that the first respondent should advance to the company 400*l.*, out of which the moneys owing should be discharged. On February 3, 1932, the company authorized the issue of a series of debentures of a total amount of 1000*l.* On February 11, 1932, the company drew a cheque in favour of the first respondent for 339*l.* 16*s.* 7*d.*, and another in favour of his wife for 51*l.* 8*s.* 4*d.* On February 12, 1932, the first respondent paid to the company by cheque 400*l.*, and on the same day four debentures of 100*l.* each, constituting a floating charge, were issued to him. On August 13, 1932, he appointed the second respondent to be receiver under the debentures, and on the same day notices were sent to the company's creditors convening a meeting for August 22 to consider a resolution to wind up. The second respondent had been appointed by the shareholders as liquidator, and at the meeting on August 22 the creditors confirmed the appointment. By this summons, which was issued on October 18, 1932, the applicants asked (inter alia): (1.) for a declaration that the first respondent be personally responsible without any limitation of liability for all the debts or other liabilities of the company or for such part thereof as the Court might direct, on the ground that he had been a party to carrying on the company's business with intent to defraud its creditors; (2.) that provision might be made that any such liability be made a charge on any debt or obligation due from the company to the first respondent; and (3.) that the liquidator might be directed to do all such things as might give effect to any order under paragraph (1.) or paragraph (2.) of the summons. The relief was sought under s. 275 of the Companies Act, 1929. The applicants alleged that after July 1, 1931, the results of trading became progressively worse, and that after February 12, 1932, the company's life was continued, not genuinely for trading

purposes, but solely in order to validate the debentures which had been issued to the first respondent, and that the first respondent was a party to the continuance for that purpose. The first respondent denied those allegations. The liquidator submitted to act in all respects as the Court might direct.

*A. Grant K.C.* and *E. Milner Holland* for the applicants. After the debentures had been issued to the first respondent the company was kept alive, as the first respondent well knew and intended, solely in order to validate them. From the point of view of commercial interests and commercial morality, it would be lamentable if the transaction were allowed to go unpunished. The object of it was to prefer the first respondent. All transactions of that kind have been stigmatized by the Legislature in s. 265 of the Companies Act, 1929, as fraudulent preferences.

*J. Norman Daynes K.C.* and *Philip J. Sykes* for the first respondent. The declaration for which s. 275, sub-s. 1, of the Companies Act, 1929, provides is merely a declaration that any director coming within the sub-section shall be personally responsible as therein mentioned. In the argument before Eve J. in *In re William C. Leitch Brothers, Ld.* (*No.* 2) (1), two points were raised by counsel for creditors whose debts were incurred between the earliest date at which the company had no means of paying its debts and the date of the winding up. The first point was that it is not necessary under the section to prove that any particular creditor has been defrauded, and the second, that if the money obtained under the section is not applied in payment of defrauded creditors the director will still be personally liable for the fraud and will continue to be so until the company has paid twenty shillings in the pound. Eve J. did not deal in his judgment with either of those points. The suggestion that the debentures in the present case would be validated by the company's being kept alive for six months after they were issued depends upon the answers to the questions

(1) Ante, p. 261, 263.

whether the company was solvent on February 12, 1932, and whether the debentures were new money within *In re Matthew Ellis, Ld.* (1) It is for the applicants to prove that the debentures required validating, whether on the ground that the company was insolvent when they were issued or on the ground that they were not a payment in cash: *In re Hayman, Christy & Lilly, Ld.* (2) Sect. 275 of the Companies Act, 1929, is directed solely against fraudulent trading, and there is no evidence in the present case that business has been carried on with intent to defraud. The first respondent is not well versed in business affairs, and all he was concerned to do was to obtain an occupation for his son. There is no evidence that he was a party to the carrying on of the business.

*G. P. Coldstream* for the liquidator. The liquidator submits to act as the Court shall direct, and the Court is asked to make provision for his costs.

*A. Grant K.C.* in reply. This is an unusual case. The only inference to be drawn from the facts is that there was a scheme to defraud creditors by unduly prolonging the life of the company at a time when there was no reason for doing so. The company lost money from the beginning, never made a profit, and by the end of 1931 had exhausted its reserves. Before then it had been pressed by the creditors and compelled to promise weekly payments. By January, 1932, it could not carry on without fresh capital. The test imposed by s. 44 of the Bankruptcy Act, 1914, is whether persons can pay their debts as they fall due, and that test is adopted in s. 265 of the Companies Act, 1929. If the company had gone into liquidation in January, 1932, there would not have been twenty shillings in the pound for the creditors. Sect. 275 was purposely framed to give the Court the widest possible powers to deal with transactions that will not bear investigation.

MAUGHAM J. I will begin by stating that s. 275 of the Companies Act, 1929, under which relief is claimed, is a

(1) Ante, p. 458. (2) [1917] 1 Ch. 283.

MAUGHAM J.

1933

PATRICK AND LYON, LD., *In re.*

very remarkable section and one which is by no means easy to construe. I have myself dealt with one aspect of it in *In re William C. Leitch Brothers, Ld.* (1), and my brother Eve has dealt with a second branch of it in *In re William C. Leitch Brothers, Ld.* (*No.* 2). (2) Without repeating anything which my brother Eve has said or I have said in either of those cases, I will express the opinion that the words "defraud" and "fraudulent purpose," where they appear in the section in question, are words which connote actual dishonesty involving, according to current notions of fair trading among commercial men, real moral blame. No judge, I think, has ever been willing to define "fraud," and I am attempting no definition. I am merely stating what, in my opinion, must be one of the elements of the word as used in this section. In my opinion it is not used in the same sense as that in which the word "fraud" is used in s. 265 of the Act. There, following the example set by s. 44 of the Bankruptcy Act, 1914, and by s. 92 of the Bankruptcy Act, 1869, both of which deal with the avoidance of fraudulent preferences, the Legislature has thought fit to state that certain acts are to be deemed a fraudulent preference and to be invalid accordingly. A fraudulent preference within the meaning of the Companies Act, 1929, or the Bankruptcy Act, 1914, whether in the case of a company or of an individual, possibly may not involve moral blame at all. For example, there may be a discrimination between creditors, irrespective of pressure, on grounds with which most people would sympathize. Again, there is nothing in the language of s. 266 of the Companies Act, 1929 (which enables a floating charge created within six months of a winding up to be attacked in certain circumstances), to indicate that the Legislature took the view that the creation of such a charge when the company is insolvent is fraudulent, however blameworthy it may be. That appears from the fact that the right to attack such a floating charge is limited to cases where the company goes into liquidation within six months of the creation of it. Coming to the present case, I think that in exercising

(1) [1932] 2 Ch. 71. (2) Ante, p. 261.

jurisdiction under s. 275 the Court, however little it may approve of the conduct of the director who is being attacked, is bound to consider whether he has been guilty of a dishonest fraud, and it is hardly necessary for me to point out that the onus is upon the person who seeks to make good the charge, whether he be the official receiver, or the liquidator, or a creditor, or a contributory.

I now turn to the facts. [His Lordship then stated the facts and continued :] A question has been raised as to what "solvent" means in s. 266 of the Companies Act, 1929. It is to be observed that the onus of proving the company's solvency lies upon the debenture holder who is endeavouring to support his floating charge. It is not necessary to say that "solvent" there is limited to one meaning; but in my opinion a company is not solvent within the meaning of s. 266 unless it can pay its debts as they become due. It has been urged that "solvent" means "commercially solvent," and that if, upon balance-sheet figures, a company's assets exceed its liabilities, the company is solvent. I do not accept that view, and in support of my rejection of it I will refer to *Ex parte Russell* (1) and *London and Counties Assets Co.* v. *Brighton Grand Concert Hall and Picture Palace, Ld.* (2) The word "solvent" is used in s. 266 of the Companies Act, 1929, immediately after a section dealing with fraudulent preference, and in construing it the Court has to bear in mind s. 44 of the Bankruptcy Act, 1914, where the preference is defined in relation to a thing done or suffered by a person "unable to pay his debts as they become due from his own money." My opinion, therefore, is that under s. 266 the debentures in the present case might well have been attacked if the liquidation had commenced at a date within the period of six months from their creation, and there is evidence to support the view that, during the latter part of the period in question, the persons in charge of the company's destinies were deliberately delaying sending out notices to wind up the company, in order that the period of six months should so expire. That is, no doubt, not a high-minded course of

(1) 19 Ch. D. 588. (2) [1915] 2 K. B. 493.

MAUGHAM J.

1933

PATRICK AND LYON, LD., *In re.*

action. On the other hand, it is not high-minded for a person who is forming a company to form it with a very small share capital and to cause the company to purchase his stock in trade by an issue of debentures to himself; but that has never yet been held to be fraud, and for some reason which I do not understand it has not been prohibited by the Companies Acts.

The question which I have to determine is whether, within the meaning of s. 275 of the Companies Act, 1929, and construing the reference therein to fraud as I construe it, the business of the company was carried on for a fraudulent purpose. In my opinion, on the whole, I am not justified in coming to such a conclusion. The business of the company, so far as it was carried on during the latter part of its career, was carried on in order to clear up the position by getting in debts and by effecting sales of stock, and not with a view to securing by purchases on credit assets available as security for debentures. I am not clear in my mind that the first respondent was deliberately intending to carry out any fraudulent purpose or to defraud creditors. That is a matter which cannot be left to conjecture. I must be perfectly satisfied that there is enough evidence to justify the charge. To my mind the case has not been made out and I dismiss the summons.

With regard to the costs, I do not accept all the first respondent's answers. He was defending himself, but the precise truth would have been better than rash statements. Further, it was not a proper act on his part to procure payment of his director's fees by an issue of debentures when the company could not pay even small sums to its creditors. Accordingly, it seems to me a case in which the summons should be dismissed as regards him without costs. The applicants, however, must pay the liquidator's costs.

Solicitors: *J. C. Fox, Gamble & Son; Collyer-Bristow & Co., for Forsyth, Bettinson & Co., Birmingham.*

K. R. A. H.