UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>IIG Global Trade Finance Fund Ltd. (in Official Liquidation), *et al.*,<br><br>Debtors. | Case No. 20-10132 (MEW)<br><br>Chapter 15<br><br>Jointly Administered |
| IIG Global Trade Finance Fund Limited (in Official Liquidation), *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>International Investment Group L.L.C., *et al.*,<br><br>Defendants. | Adv. Pro. No. 23-01165 (MEW) |

# REPLY DECLARATION OF THOMAS LOWE KC

1. I am the same Thomas Lowe KC who previously swore declarations in these proceedings on March 22, 2024 ("**March 2024 Declaration**") (ECF No. 67) and January 23, 2025 ("**January 2025 Declaration**") (ECF No. 84).

2. I have been asked to review the Declaration of Tom Smith KC (the "**Smith Declaration**") (ECF No. 88) and make this further Declaration to reply to certain points in the Smith Declaration. This Declaration is intended to supplement and be read together with my previous Declarations. Unless otherwise stated, I adopt the definitions from my January 2025 Declaration.

3. Based on my review of the Smith Declaration, Mr Smith and I appear to agree on several key points of Cayman Islands law. Our points of agreement are listed below:

   (a) Mr Smith and I agree that these proceedings are governed by the

pleading rules adopted by the US Court.[1] I understand US counsel to both parties have confirmed that Federal Rule of Civil Procedure 9(b) provides the applicable pleading standard.

(b) I confirm that I largely agree with Mr Smith's analysis of the Cayman Islands court system and the position that English cases are considered persuasive in Cayman legal proceedings.[2] I provided a similar outline in my March 2024 Declaration.[3]

(c) Mr Smith and I agree that the English Court of Appeal decision in *Bilta (UK) Ltd (in liquidation) and others v Tradition Financial Services Ltd* [2023] EWCA Civ 112 ("***Bilta***") (ECF No. 84-7), is presently the leading case on fraudulent trading.[4]

(d) Mr Smith and I agree that, in order to prove that a defendant participated in fraudulent trading, the defendant's conduct must involve "*positive steps*";[5] "*mere inertia*" or "*concurrence*" is insufficient.[6] The Court of Appeal in *Bilta* recognized the same.

(e) Mr Smith and I also agree that, to establish that a corporate entity had knowledge for the purposes of the fraudulent trading provision, it is necessary to allege that a natural person at the corporate entity had

---

[1] Smith Declaration at [29]. At the direction of US Counsel, my January 2025 Declaration addressed Cayman Islands pleading rules in paragraphs [14] to [19] should the US Court decide that they apply; it was not intended to suggest that Cayman Islands pleading rules ought to apply. In any event, the Smith Declaration does not materially diverge from my discussion concerning the heightened requirement of particularisation for pleading fraud under Cayman Islands law. However, in paragraphs [31] to [40] of his Declaration, Mr Smith disputes the proposition, in paragraphs [18] and [19] of my January 2025 Declaration, that the facts pleaded in a fraud claim must be consistent with dishonesty, and it will not be sufficient to plead facts that are consistent with negligence. This assertion is based on flawed attempts to downplay Millett LJ's dissenting judgment in *Three Rivers DC v Bank of England (No.3)* [2003] 2 AC 1 ("***Three Rivers***"), which fails because Lord Millett's judgment is influential and has been cited in subsequent English cases including an English Court of Appeals case relied on by Mr Smith: see *Sofer v Swissindependent Trustees SA* [2020] EWCA Civ 699 at [23]-[24] (ECF No. 88-1 at 1403). In my view, *Three Rivers* is also consistent with the subsequent case of *JSC Bank of Moscow v Kekhman* [2015] EWHC 3073 (ECF No. 88-1 at 1189), on which Mr Smith relies.

[2] Smith Declaration at [12]-[28].

[3] March 2024 Declaration at [19]-[23].

[4] Smith Declaration at [63]; January 2025 Declaration at [20].

[5] Smith Declaration at [53]-[54], [69]

[6] Smith Declaration at [67], [70]-[71].

knowledge of the fraud.[7] Mr Smith does not dispute that the person in question must be sufficiently senior at the corporate entity for their knowledge to be capable of being attributed to the entity, nor does he dispute that it is impermissible to aggregate the knowledge of multiple individuals.

4. However, in my view there are a number of issues on which the Smith Declaration is incorrect. The balance of this Declaration deals with my points of disagreement under two separate headings. Section I responds to inaccuracies in the Smith Declaration regarding the participation requirement for fraudulent trading. Section II responds to what the Smith Declaration says about the requirement to attribute a sufficiently senior natural person's knowledge to a corporation.

## I. THE PARTICIPATION REQUIREMENT FOR FRAUDULENT TRADING

5. I disagree with the Smith Declaration's interpretation of the participation requirement for the fraudulent trading provision at paragraphs [49] to [72], primarily because it relies heavily on a 47-year old lower court decision that is out of line with the latest decisions of higher courts. A Cayman Court would interpret English law using the most authoritative precedent within the English court system. Where two English courts differ on an issue, a Cayman Court would defer to the one with higher authority.[8] The Smith Declaration overlooks this fact, which gives rise to its adopting what I regard to be an inaccurate statement as to the legal standard.

---

[7] Smith Declaration at [90], [96].

[8] On this point, I also believe that Mr Smith's position at [22] (to the effect that there would be no distinction between the approach of the English and Cayman Courts regarding fraudulent trading) is an overstatement. As stated in my January 2025 Declaration, the Cayman Court is likely to treat the fraudulent trading provision in Section 147 of the Cayman Companies Act in the same way as the provision in Section 213 of the UK Insolvency Act 1986 (given that Section 147 was modelled on Section 213) and therefore apply the relevant English cases (in this case, the latest and highest court decisions) to its interpretation of Section 147. January 2025 Declaration at [10]. However, since English cases are not binding on the Cayman Court, the Cayman Court can choose not to follow them if it believes there is a clear reason to consider such decisions to be wrong. In any event, the Cayman Court has not yet considered Section 147 following a fully contested hearing.

6. I therefore also further disagree with the Smith Declaration's application of the legal requirement of participation to the Plaintiffs' allegations, at paragraphs [100] to [101], primarily because, with very limited analysis and without consideration of particularisation, he reaches conclusions that are contrary to the relevant standards.

**(1) *Bilta* and the pending effect of UK Supreme Court appeal**

7. First, the Smith Declaration suggests that the English Court of Appeal took a "wide" view of the participation element in *Bilta*.[9] This is misleading. The question presented to the English Court of Appeal in *Bilta* (and in many cases preceding it) was the following:

> '*Does Section 147 apply only to those in a position of management or control (such as directors and senior officers) or does the scope of the provision also apply to outsiders to the company?*' (the "**Insider/Outsider Question**").[10]

8. The 'wide' view referenced by Mr Smith in *Bilta* is put forward in respect of the Insider/Outsider Question. The case is not about the *level* of involvement required for insiders or outsiders under Section 147 to satisfy the "participation" element.[11]

9. Secondly, the Smith Declaration accuses me of trying to "*get around the conclusions*" of the Court of Appeal in *Bilta* and "*diminish the importance of the judgment*."[12] To the contrary: in my January 2025 Declaration I merely noted that *Bilta* had been appealed to the UK Supreme Court and that a

---

[9] Smith Declaration at [65].

[10] This is confirmed at paragraph [118] of the judgment where the Lewison LJ (with whom Stuart-Smith LJ and Falk LJ agreed) said: "*All that we are asked to decide is whether a person cannot fall within the scope of section 213 unless he has a controlling or managerial function within the company.*" As such, the references by the Court of Appeal to a "narrow" and "broad" approach must be viewed as responding to that inquiry, rather than the extent of participation.

[11] In their Motion to Dismiss, I understand the Noteholder Managers do not dispute that the fraudulent trading provision applies to outsiders until that question is resolved by the UK Supreme Court in *Bilta*. What is in dispute is what level of involvement the outsider needs to have before they are considered to be "party to" the fraudulent trading and therefore caught by the provision.

[12] Smith Declaration at [65].

judgment would be delivered in the next few months.[13] I expect the judgment to be given very soon after this Declaration is sworn. The pending appeal before the UK Supreme Court concerns the Insider/Outsider Question and the threshold matter of whether an outsider of a company may be liable under section 213 of the UK Insolvency Act 1986. If the UK Supreme Court were to overturn the English Court of Appeal and find that an outsider is not subject to a fraudulent trading claim under Section 213 of the UK Insolvency Act 1986, it would mean that a Cayman Court would be very unlikely to find the Noteholder Managers (all of whom are outsiders to the Debtor companies here) capable of liability under the analogous Section 147 of the Cayman Companies Act. Although obviously I cannot predict what decision the UK Supreme Court will reach, should *Bilta* be overturned I would consider it my duty to update this Honourable Court as to the development.[14]

10. In any case, I affirmatively rely on the English Court of Appeal's analysis regarding the participation element for the fraudulent trading provision in each of my March 2024 Declaration, my January 2025 Declaration, and this Declaration. As stated above, Mr Smith and I agree that *Bilta* is presently the leading case on that requirement.

**(2) The appropriate threshold for participation consistent with *Bilta***

11. The Smith Declaration expresses the view that "*the threshold for 'participation' is a low one.*"[15] That conclusion is not supported by the case law. The Smith Declaration provides no direct support in the law for a 'low' threshold. I also cannot see any description of what this supposedly "*low*" threshold entails. In reaching this conclusion the Smith Declaration relies only on a single case, *Re Gerald Cooper Chemicals Ltd (in liquidation)* [1978] ("***Gerald Cooper***") (ECF No. 88-1 at 21). However, on this point *Gerald Cooper* is, in my view, an outlier case where the lower court's conclusions as to the level and nature of the participation requirement are incompatible with

---

[13] January 2025 Declaration at [20].

[14] While the appeal was argued primarily on the Insider/Outsider Question, the UK Supreme Court may also address the requirements necessary to be "party to" fraudulent trading.

[15] Smith Declaration at [52].

cases decided both before and after it, such as *Re Maidstone Buildings Provisions Ltd* [1971] Ch 262 1 WLR 1085 ("***Maidstone***") (ECF No. 84-19), and subsequent decisions by higher courts, such as *R v Miles* [1992] Crim LR 657 ("***Miles***") (ECF No. 84-18), and *Bilta* [2023]. In light of that, a Cayman Islands court would follow the precedents that are more authoritative within the English court system—that is, *Miles* and *Bilta*—over an earlier lower court decision—that is, *Gerald Cooper*.

12. The earliest relevant decision on fraudulent trading, as explained in the January 2025 Declaration, is the English High Court case of *Maidstone* [1971].[16] *Maidstone* is authority for the proposition that, to satisfy the participation standard, a defendant has to take positive steps in furtherance of the fraud and that "*mere inertia*" vis-à-vis the fraud cannot be considered to be participation.[17] The Smith Declaration asserts that the decision in *Maidstone* is "*considered an outlier decision based on extreme facts*."[18] But I do not see where the Smith Declaration cites any relevant authority that suggests *Maidstone* is an outlier,[19] and *Maidstone* has been followed in later decisions similarly requiring "*positive steps*" in participation of a fraud. Indeed, Mr Smith recognises that *Bilta* relies directly on the articulation of the "*positive steps*" standard set forth in *Maidstone*.[20] It is thus not clear to me why he considers the facts of *Maidstone* to be "*extreme.*" In any case, unlike *Gerald Cooper*, *Maidstone* continues to be cited with approval by the English courts on this relevant principle.[21]

---

[16] *Maidstone* is discussed in paragraphs [21] to [24] of my January 2025 Declaration.

[17] *Maidstone* at 1093.

[18] Smith Declaration at [66].

[19] The Smith Declaration cites *Bank of Credit and Commerce International SA, Re; Banque Arabe Internationale D'Investissement SA v Morris* [2002] BCC 407 ("***BOC***") (ECF No. 88-1 at 109), in support of the proposition but the quote relied on is concerned with differentiating the facts of *Maidstone* from the facts in that case given that *Maidstone* involved a person who was an employee whereas *Morris* involved a true outsider to the company (a bank).

[20] Smith Declaration at [69]. Although arguably taking a broader position than *Maidstone*, the *Gerald Cooper* decision neither cites nor explicitly disagrees with *Maidstone*.

[21] An earlier iteration of the fraudulent trading provision was contained in section 332 of the English Companies Act 1948. Although both provisions contained similar language, section 332 carried both civil and criminal liability. The Smith Declaration argues that *Maidstone* needs to be read in light of the

13. The next relevant decision on fraudulent trading, as explained in my January 2025 Declaration at paragraphs [26] to [27], is *Miles* [1992]. In *Miles*, the English Court of Appeal[22] cited *Maidstone* and took exception to a jury direction that participation might involve merely "*concurring*" in a fraudulent trade.[23] The standard the English Court of Appeal articulated required taking an active part in the fraud.[24] The Smith Declaration does not mention *Miles* nor attempt to reconcile it with its approach.

14. Lastly,[25] although the primary legal issue in *Bilta* [2023] addressed the Insider/Outsider Question, it is nevertheless clear that the Court favoured the approach in *Maidstone* as expanded in *Miles*. When the English Court of Appeal in *Bilta* found at paragraph [63] that "*concurrence is not enough*" for liability for fraudulent trading, that conclusion was part of its *ratio decidendi*.

15. As noted in my January 2025 Declaration, the principle that I believe is to be derived from these cases is that participation must include positive steps which further or facilitate the fraudulent business.[26] With respect to this, I note that Mr Smith writes that there is no support in the authorities for the principle that participation "*must rise to the level of furthering or facilitating the fraudulent business*."[27] He is incorrect in this. It is in fact derived from a direct quotation

---

fact that the relevant provision at the time (section 332) included both criminal and civil liability, such that the narrow approach adopted to outsider liability reflects a concern about expanding criminal liability too broadly (see Smith Declaration at [67]-[68)]. This ignores what the Court in *Bilta* said at paragraph [63] of that decision, which drew no distinction between the two: "*I consider that we can accept that in the context of civil liability as well as criminal liability, concurrence is not enough*."

[22] The English Court of Appeal hears appeals from the English High Court and its decisions are binding on the English High Court. Accordingly, in the event of any inconsistency between these Courts, an English Court would be required to follow a decision of the Court of Appeal over a decision of the High Court.

[23] ECF No. 84-18 at 6.

[24] The Court of Appeal neither cited nor relied upon *Gerald Cooper*.

[25] There are two intervening cases cited by Mr Smith: *BOC*, an English High Court decision, and *Bank of India v Morris* [2005] BCC 739 ("***BOI***") (ECF No. 84-15), an English Court of Appeal decision. Neither endorsed nor relied upon the articulation of participation in *Gerald Cooper* and are thus of limited relevance as to the question of the appropriate bar for participation. Moreover, as the Smith Declaration notes, Neuberger J in the *BOC* decision expressly contemplates that participation requires "**active**" assistance. Smith Declaration at [59]. Finally, I note that Mr Smith highlights no language from *BOI* concerning participation, only excerpting a statement that the Insider/Outsider Question should be "wider." Smith Declaration at [63].

[26] January 2025 Declaration at [28].

[27] Smith Declaration at [72].

by the Court of Appeal in *Bilta*.[28] The Smith Declaration also fails to acknowledge the requirement that the "positive steps" must be in participation of the fraud—that is, furthering or facilitating it.

16. In contrast, in my view, *Gerald Cooper* is an outlier decision of a lower English court than the court that decided *Miles* and *Bilta*. In *Gerald Cooper*, the purported act of participation was the knowing receipt of funds from a fraudulent business. Templeman J of the English High Court refused an application to strike out (akin to a demurrer or motion to dismiss) for a claim under a predecessor statute, section 332 of the English Companies Act 1948, on the basis that the matter should proceed to trial and establish the facts. *Gerald Cooper* does not itself state that the threshold for participation should be "*low*," nor does any other case upon which the Smith Declaration relies. Rather, Mr Smith appears to derive this principle from his characterisation of the passive receipt of funds as a 'low' threshold.

17. I see no attempt in the Smith Declaration to reconcile *Gerald Cooper* with later contrary decisions (including those of higher courts), nor to explain how the mere passive receipt of funds in *Gerald Cooper* could constitute "positive steps" which further or facilitate the fraud (which fraud, necessarily in this case, took place prior to the alleged receipt of funds). Indeed, the receipt of funds from a fraudulent business without solicitation is no more than the "*mere inertia*" or, at most, "*concurrence*" rejected by *Miles* and *Bilta*. The Smith Declaration agrees "*mere inertia*" or "*concurrence*" is insufficient. I have not identified, nor does the Smith Declaration cite or describe, any subsequent cases in which the purportedly low threshold of *Gerald Cooper* has been followed by a court in the 47 years since the decision.

18. Accordingly, in my view, to the extent *Gerald Cooper* ever provided the applicable standard for participation under Section 213 of the English Companies Law, it has been superseded by the later, higher court decisions to which I refer above and which reject the "*mere inertia*" relied on by the *Gerald Cooper* court. I regard it as highly unlikely that an English or Cayman Court

---

[28] *Bilta* at [93].

would follow the decision of *Gerald Cooper* with respect to the threshold for participation in light of these later decisions of higher courts. Rather, the Cayman Court is likely to require some positive steps to further or facilitate the fraudulent business, as the English Court of Appeal stated in 2023 in *Bilta*.

**(3) Mr Smith misapplies the participation standard to Plaintiffs' allegations**

19. Since Mr Smith and I do not agree on the law, it is not surprising that I do not agree with his application of those propositions of law to the Plaintiffs' allegations. To the extent that as a foreign law expert my view of pleadings is relevant and because I have been asked to express a view, I disagree with the Smith Declaration's conclusion that all of Plaintiffs' allegations satisfy the requirements of participation as set out below.

20. For one, Mr Smith construes the standards for participation to incorporate the explicit failure to act. Specifically, at paragraphs [100] and [101(c)], the Smith Declaration asserts that the Noteholder Managers' receipt of a teaser "*without seeking a correction or warning the new investors*," satisfies the requirements for participation. As I have sought to demonstrate above, this inaction would not constitute 'participation' consistent with *Bilta*, which endorsed and adopted the view of *Maidstone* that "*some positive steps*" in furtherance of the fraud were required[29] and "*concurrence is not enough*."[30] Mr Smith offers no explanation for his conclusion that "*not seeking a correction*" constitutes "*positive steps*" in participation under the law. This is particularly so given, as Mr Smith accepts, that the Noteholder Managers had no positive duty[31] to warn any investor and owed no fiduciary or contractual duties to the investors.[32] It is not credible to me to assert that a Cayman Court would find this factual allegation sufficient to plead participation.

---

[29] *Bilta* at [47]-[48].

[30] *Bilta* at [63].

[31] In the present facts, the Noteholder Managers are even further removed from the company than in *Maidstone*, where Mr Penney was the company secretary, who was alleged to be a participant in fraudulent trading by failing to give advice to the company which could have prevented the fraudulent trading. The Court found that a mere omission to give advice could not be regarded as being a party to fraudulent trading. *Maidstone* at 1093.

[32] January 2025 Declaration at [46].

21. Similarly, Mr Smith asserts that the receipt of the DBTCA Transfer also exceeded "'*mere inertia' or 'concurrence*'" because in addition to the "*mere passive receipt of proceeds*," DBTCA purportedly took a "*key role in the fraudulent scheme*."[33] I believe this analysis is misconstrued for two reasons. First, it apparently concedes that the receipt of funds is merely passive. As I have said, this is insufficient. This also contradicts the Smith Declaration's reliance on *Gerald Cooper*. Secondly, this paragraph does not identify positive steps which the Noteholder Managers took, but only potential steps taken by DBTCA.[34] Neither the Smith Declaration nor the Plaintiffs' Amended Complaint explains why purportedly positive steps taken by DBTCA should be ascribed to the Noteholder Managers.[35]

22. Mr Smith further states it is "*nonsensical*" to describe the Noteholder Managers' forbearance as an omission or "*mere inertia*."[36] I do not understand how forbearance from action when there is no duty to act can be anything other than the "*mere inertia*" described in *Maidstone* and *Bilta*. In my opinion a Cayman Court would find this allegation wanting. As I understand this Honourable Court has already noted in the context of claims pleaded under New York law, forbearance is akin to inaction and thus does not suggest positive steps in furthering the Debtors' fraudulent businesses.[37]

23. Finally, Mr Smith does not address the many failures in particularisation in these and other allegations, nor does he argue that the allegations are sufficiently particularised. The requirement of taking positive steps cannot be separated from the requirement of particularity. For instance, the Plaintiffs' allegation that the Noteholder Managers "*pressured*" IIG has no details as to the identity of the individuals involved, the means, and the manner in which

---

[33] Smith Declaration at [101(a)].

[34] This is not to say the Smith Declaration identifies affirmative steps taken by DBTCA. For instance, it cites that DBTCA allegedly "refrained 'from questioning the many irregularities with the CLO's accounts.'" Smith Declaration at [101(a)]. For the reasons previously identified, refraining from taking action is not a 'positive step.'

[35] In any event, I understand from US Counsel that in Opposition to the Noteholder Manager's motion, Plaintiffs do not include the receipt of funds as one of their arguments in favor of participation.

[36] Smith Declaration at [101(d)].

[37] Memorandum Opinion (ECF No. 74) at 83-84.

such activity might have furthered or facilitated the fraud. Nor does the Smith Declaration explain how the preparation of the Fourth Supplemental Indenture concerned the Debtors' businesses or furthered their frauds, when such steps (at most) merely removed an obstacle and permitted (but did not require) sale of the CLO assets. Here, I see no particulars that identify how the alleged acts constituted participation "*in the Debtors' businesses*"—in the Amended Complaint such allegations relate only to IIG. I understand from US Counsel that certain of these acts even predate the existence of one of the Debtors. For the reasons I articulated at paragraphs [41] to [50] of my January 2025 Declaration, I do not believe a Cayman Court would consider that the Plaintiff has sufficiently pleaded participation given the lack of particularity, and Mr Smith does not rebut those assertions.

## II. THE REQUIREMENT TO ALLEGE AN APPROPRIATE NATURAL PERSON'S KNOWLEDGE TO A CORPORATION

24. The Smith Declaration deals with the knowledge element of a Section 147 claim between paragraphs [73] to [99]. However, in my view, the Smith Declaration does not accurately summarise the position as a matter of Cayman Islands law.

25. Both my January 2025 Declaration and the Smith Declaration are in agreement that knowledge needs to be held by a particular individual in order to be attributed to a corporation.[38] While this person need not be a member of the board of directors, the knowledge of a sufficiently senior employee of the corporate entity might be attributed to a corporate entity depending on the facts of the specific case.[39] Mr Smith does not dispute this point either. It is also impermissible to aggregate the knowledge of multiple individuals (although the Smith Declaration does not mention this).

26. However, the Smith Declaration states that the Plaintiffs' failure to identify

---

[38] January 2025 Declaration at [33]; Smith Declaration at [90], [96]. See *Armstrong v Strain* [1952] 1 KB 232 (ECF No. 84-01); *Stanford International Bank Ltd (in liquidation) v HSBC Bank plc* [2021] EWCA Civ 535 (ECF No. 84-22).

[39] January 2025 Declaration at [30]-[33]

individual directors, officers or employees who had the requisite knowledge of fraud is excusable at this stage of these proceedings due to "*the present imbalance of information*" between the Plaintiffs and the Noteholder Managers.[40] I understand from US Counsel that this is factually incorrect, as there was extensive pre-action and intra-action discovery provided to Plaintiffs. In any event knowledge is an essential element of a Section 147 claim, and an allegation which does not explain the means of knowledge is insufficient under the law of the Cayman Islands. A Cayman Court would be unlikely to temporarily relieve this requirement for establishing knowledge.[41]

27. As to the specific cases relied on in the Smith Declaration between paragraphs [91] and [99], I note that all of them are distinguishable on the basis that they all involve applications to strike out pleadings (akin to motions to dismiss) at early stages of the proceedings before any significant discovery was completed. In litigation before the Cayman or English Courts, such applications may be dismissed on the basis that the Court has to be cognizant of what may emerge during discovery. Once discovery has been provided, a plaintiff generally has no excuse for an insufficiently particularised pleading as the Defendant must understand the case it has to meet at trial. If the plaintiff is unable to provide sufficient particulars even after discovery is provided, this makes it more likely that the claim would be struck out. Where, like here, there has been significant discovery and a prior opportunity to amend, a strike out motion for lack of particularised allegations is more likely to succeed.

28. Below I further distinguish each of the cases relied upon by Mr Smith. To begin with, caution is needed as in England the procedure is governed by different rules (the Civil Procedure Rules) to those that govern the Grand Court (the Grand Court Rules). This means that there are different case management rules in England which do not apply in the Cayman Islands:

(a) Mr Smith cites paragraph [32] of the English Court of Appeal case of

---

[40] Smith Declaration at [99].

[41] I note the decision of *Jafar v Abraaj Holdings (in official liquidation)* (Unreported, Segal J, 20 December 2021) referred to in paragraph [16] of my January 2025 Declaration where Segal J held that even when there is an information disparity (which I am instructed is not the case here), this does not justify vague pleadings.

*Sofer v Swissindependent Trustees SA* [2020] EWCA Civ 699 (ECF No. 88-1 at 1403).[42] However, it was clear in that case that the defendants were being accused of (making false and dishonest payments in breach of the relevant trust documents). Here, by contrast, the Noteholder Managers would be entitled to additional sufficient particulars of knowledge to allow them to understand what is being alleged against them. In addition, paragraph [32] of *Sofer* refers to the unreported extempore case of *Rigby v Decorating Den Systems Ltd*. In that case, Peter Gibson LJ found that it was unnecessary for a pleading to expressly state particulars of knowledge to withstand a strike out application. The Court of Appeal agreed with Peter Gibson LJ, but it ultimately acknowledged that there were situations in which *"the claimant's unwillingness or inability to give such particulars when requested to do so justifies striking out."* (emphasis added).

(b) The Smith Declaration also cites *Cayman Music Ltd v Blue Mountain Music Ltd* [2022] EWHC 1469 (ECF No. 88-1 at 1494), a copyright dispute where the defendant argued that the documents purporting to assign the copyright were forgeries. The plaintiff sought to strike out the defence on the basis that it did not identify the persons who had engaged in the forgery. Judge Hacon ultimately found that, for allegations of forgery, "*an inability on the part of the party raising the allegation to identify the individuals responsible for the forgery means necessarily that the allegation must be struck out.*" This left open the possibility that strike out over failure to identify a responsible individual *could* be proper in certain instances. This case is also factually distinguishable because: (i) it involved historical allegations of forgery; (ii) forgery is an action which is, by its very nature, more clandestine than participation in fraudulent trading; and (iii) the allegations of forgery were made by way of defence.

(c) Mr Smith also relies to *Publishers Representatives Ltd v UBS (CI) Ltd* [2000] CILR 473 (ECF No. 88-1 at 87), for the proposition that "*the*

[42] Smith Declaration at [99].

*fact that the pleading may not identify individual directors, officers or employees who had the requisite knowledge does not have the consequence that the claim has not been sufficiently pleaded*."[43] This plaintiff sought to impose liability on the corporate defendant for failing to disclose the existence of a fraud. The plaintiff had particularised that a certain employee had knowledge of the fraud and this knowledge could be attributed to the company. However, the plaintiff had not particularised who at the company made the decision not to disclose the fraud. Nevertheless, the Court refused to strike out the claim on the grounds that the plaintiffs could not identify who made the decision at the pleadings stage. The case is factually distinguishable because the pleading did involve particularisation of knowledge of the fraud in an individual (albeit that it failed to particularise who made the decision not to disclose).

(d) Mr Smith refers to *Crypton Digital v Blockchain* [2021] EWHC 3194, *Cunningham v Ellis* [2018] EWHC 3188 (ECF No. 88-1 at 1447); *Palladian Partners LP v The Republic of Argentina* [2020] EWHC 1946 (ECF No. 88-1 at 1422); and *Enigma Diagnostics Ltd (in Liquidation) v Boulter* (Unreported, Doyle J, 8 February 2022) (ECF No. 88-1 at 1547). None of these cases involved allegations of failure to particularise knowledge of individuals to be attributed to the company, so they do not contribute to the analysis of corporate attribution.[44]

29. In my view, all the above cases are either factually distinguishable or irrelevant on the question of whether it is acceptable for the Amended Complaint not to have identified the individuals appointed at each of the Noteholder Managers who held the relevant knowledge nor detail why such knowledge should be attributable to the Noteholder Managers. Given the extensive pre-action and intra-action discovery which I understand already has been provided, if the

[43] Smith Declaration at [99].

[44] I otherwise note that relevant excerpts from *Enigma Diagnostics* strongly concurs with the summation of the law offered in my prior declarations as Doyle J finds that: "*[t]hose making serious allegations of fraud cannot proceed on [the] optimistic belief that something will turn up*" (see paragraph [10]).

Amended Complaint were before a Cayman Court, I consider it likely that the Court would require further particulars of knowledge of the individuals appointed to the Noteholder Managers to allow them to understand the case they have to answer.

[*Signature on following page*]

Respectfully submitted,

Dated: March 10, 2025

Thomas Lowe KC