# Clerk & Lindsell on Torst (24th Ed 2022)

# Exhibit 9

> "to suggest today that acts done by one street-corner grocer in concert with a second are more oppressive and dangerous to a competitor than the same acts done by a string of supermarkets under a single ownership or that a multinational conglomerate … does not exercise greater power than any combination of small businesses."[494]

However, the fact that every gang is not more dangerous than every individual does not provide a conclusive reason for thinking it absurd to impose special limits on those who are minded to participate in gangs with the purpose of causing harm to others: the frequency with which gangs prove to be oppressive or coercive may identify them as deserving special attention. In any case, the lawful means form of the tort, although arguably "anomalous", is too well-established to be "discarded".[495]

## The combination

## 23-103

The tort requires an agreement, combination, understanding, or concert to injure, involving two or more persons. Of the various words used to describe a conspiracy, "combination" has been preferred to "agreement" on the ground that "agreement" might be thought to require some agreement of a contractual kind, whereas all that is needed is a combination and common intention.[496] The tort has also been said to require "concerted action taken pursuant to agreement"[497]; but this is only because "a tortious conspiracy, like most other tortious acts, must have caused loss to the claimant, or the cause of action will be incomplete."[498] Because: "It is a rare case where there is evidence of an agreement", in most cases, "it will be necessary to scrutinise the acts relied upon in order to see what inferences can be drawn as to the existence or otherwise of the alleged conspiracy or combination".[499] Neither form of conspiracy is simply a variety of joint tortfeasance, though there may clearly be situations where a defendant will have simultaneously committed the conspiracy tort and acted so as to be jointly liable for a separate tort as a result of participation in a "common design" to commit it[500]; both forms of conspiracy tort impose primary liability for a wrong that imposes liability for having combined with another to injure the claimant without a just cause or excuse.[501] A previous edition of this work suggested that "the question whether a person is a party to a combination constituting a conspiracy is essentially the same as whether he is liable as a joint tortfeasor in procuring a wrong, by reason of a common design".[502] Recent cases, however, have tended to deny any association with joint tortfeasance and to emphasise that participation in an actionable conspiracy is a form of *primary* wrongdoing. Moreover, there are two further reasons why it may be appropriate not to rely too closely on authorities relating to joint tortfeasance through "common design" when seeking to determine whether a defendant's alliance with another amounts to a "combination": in instances of lawful means conspiracy there need not be any civil wrong that the conspirators could have jointly committed and, in any case, the requirements for establishing joint tortfeasance vary depending on the nature of the tort that is alleged to have been committed pursuant to a "common design".[503]

## 23-104

Husband and wife were once thought to be one person in the eyes of the common law and, therefore, to be incapable of conspiring together.[504] This is still the case in criminal conspiracy, indeed in this context the anomaly has been extended to civil partners, though it ceases to apply if the combination includes a third person.[505] However, it has been held that, in the absence of binding authority, and of a compelling rationale or public policy, the primitive maxim that spouses are one person should not be imported into the tort of conspiracy.[506]

## 23-105

It is not clear whether a trade union can be party to a conspiracy. In *EETPU v Times Newspapers Ltd*, O'Connor J held that a union had no separate "personality" because what is now TULRCA 1992 s.10(2) states that "a trade union shall not be, or be treated as if it were, a body corporate".[507] While that suggests that it cannot be party to a conspiracy, later decisions making a trade union liable in tort suggest that it can be a party.[508]

496. *Belmont Finance Corp v Williams Furniture Ltd (No.2) [1980] 1 All E.R. 393* at 404 per Buckley LJ; cf. *Crofter Hand Woven Harris Tweed Co Ltd v Veitch [1942] A.C.435* at 439–440 and 461 per Viscount Simon and Lord Wright. cf. *Douglas v Hello! Ltd (No.3) [2003] EWHC 786; [2003] 3 All E.R. 996* where conspiracy allegations failed, inter alia, because there was "no common plan or intent" between those said to be involved. cf. *Phillips v News Group Newspapers Ltd [2010] UKSC 28; [2013] 1 A.C. 1* at [44] where Lord Walker said that the crime of conspiracy "involved an agreement, express or implied." See also *Energy Renewals Ltd v Borg [2014] EWHC 2166 (Ch); [2014] I.R.L.R. 73* at [61]–[62]; and *JSC BTA Bank v Ablyazov (No.14) [2018] UKSC 19; [2020] A.C. 727*.

497. *Lonrho Ltd v Shell Petroleum Co Ltd (No.2) [1982] A.C. 173* at 188 per Lord Diplock.

498. *JSC BTA Bank v Ablyazov (No.14) [2018] UKSC 19; [2020] A.C. 727* at [9].

499. *Racing Partnership Ltd v Done Brothers (Cash Betting) Ltd [2019] EWHC 1156 (Ch); [2020] Ch. 289* at [257]; quoting *Kuwait Oil Tanker Company SAK v Al-Bader [2000] 2 All E.R. (Comm) 271 CA* at [112]. (On appeal, there was no challenge to Zacaroli J's finding as to the combination in the *Racing Partnership* case: *[2020] EWCA Civ 1300; [2021] Ch. 233 CA* at [18].)

500. Liability for a tort as a result of participation in a common design is discussed above, para.4-03.

501. *JSC BTA Bank v Ablyazov (No.14) [2018] UKSC 19; [2020] A.C. 727* at [10] (emphasis in the original): "A person has a right to advance his own interests by lawful means even if the foreseeable consequence is to damage the interests of others. The existence of that right affords a just cause or excuse. Where, on the other hand, he seeks to advance his interests by unlawful means he has no such right. The position is the same where the means used are lawful but the predominant intention of the defendant was to injure the claimant rather than to further some legitimate interest of his own … In either case, there is no just cause or excuse *for the combination*."

502. 22nd edn (2018), para.24-97. This approach reflected the frequency with which judgments, particularly before the decision of the House of Lords in *Revenue & Customs Commissioners v Total Network SL [2008] UKHL 19; [2008] 1 A.C. 1174*, intermingled principles associated with conspiracy and joint tortfeasance.

503. In *Vestergaard Frandsen A/S v Bestnet Europe Ltd [2013] UKSC 31; [2013] 1 W.L.R. 1556* at [34], Lord Neuberger adopted a proposition advanced by Lord Sumption in argument, to the effect that "in order for a defendant to be party to a common design, she must share with the other party, or parties, to the design, each of the features of the design which make it wrongful." Later in his judgment, at [36]–[37], he treated this as importing that a party can be party to a common design to commit a strict liability wrong, such as patent infringement, without knowing that the acts are wrongful, but can only be liable for a common design to commit a conscience-based wrong, such as misuse of a trade secret, if she knows that a conscience-based wrong is to be committed. The question whether a defendant can commit the tort of unlawful means conspiracy without knowing that the means are unlawful has become controversial, and is discussed below at para.23-124.

504. *DPP v Blady [1912] 2 K.B. 89* at 92 (Lush J, dissenting on other matters); *Mawji v R. [1957] A.C. 126* (polygamous marriage; the point was conceded).

505. Criminal Law Act 1977 s.2(2)(a). See also *R. v Lovick (Sylvia) [1993] Crim. L.R. 890*.

506. *Midland Bank Trust Co Ltd v Green (No.3) [1979] Ch. 496* at 527 per Oliver J; affirmed *[1982] Ch. 529 CA* at 538 per Lord Denning MR, and at 541 per Fox LJ.

507. *[1980] Q.B. 585*. The relevant statutory provision was then TULRA 1974 s.2(1).

508. e.g. *Dimbleby & Sons Ltd v NUJ [1984] 1 W.L.R. 427 HL*. On international and foreign "persons" see *International Tin Council, Re [1990] 2 A.C. 418 HL*; *Arab Monetary Fund v Hashim (No.3) [1991] 2 A.C. 114 HL*; Foreign Corporations Act 1991. On the Crown, see *Folland v Ontario (2003) 225 D.L.R. (4th) 50 (Ont. CA)*, where the court refused to strike out a claim for conspiracy to injure against the Crown, rejecting the submission that an action for malicious prosecution was the only possible claim against the Crown for prosecutorial misconduct.

509. per Lord Wright in *Crofter Hand Woven Harris Tweed Co v Veitch [1942] A.C. 435* at 468; (Viscount Simon LC seems to take the opposite view at 441, but it is suggested that Lord Wright's view is more consistent with the rule in *Said v Butt [1920] 3 K.B. 497*); discussed at para.23-44.

510. *Belmont Finance Corp v Williams Furniture Ltd (No.2) [1980] 1 All E.R. 393 CA*; *Prudential Assurance Co Ltd v Newman Industries Ltd (No.2) [1982] Ch. 204 CA* (in both of which the knowledge of directors was imputed to their companies); *Digicel (St Lucia) Ltd v Cable & Wireless Plc [2010] EWHC 774 (Ch)* at Annex I, [77].

511. The "directing mind and will" of the company may be found in different persons for different purposes as its "alter ego": *El Ajou v Dollar Land Holdings Plc [1994] 2 All E.R. 685 CA* esp. per Nourse LJ at 693–698 per Rose and Hoffmann LJJ at 699 and 705–706 (seeking out the person having de facto control); *Meridian Global Funds Ltd v Securities Commission [1995] 2 A.C. 500 HL*; cf. *Tesco Supermarkets Ltd v Nattrass [1972] A.C. 153 HL* (distinguished in *Supply of Ready Mixed Concrete (No.2), Re [1995] 1 A.C. 456 HL*). In *Belmont Finance Corp v Williams Furniture Ltd (No.2) [1980] 1 All E.R. 393* at 404, Buckley LJ stated that a company has imputed to it the knowledge of a director under a duty to disclose to the company; but where the director would disclose his own breach of duty in disclosing the information, the company is not in possession of it: *Houghton v Nothard [1928] A.C. 1 HL*; cf. Wedderburn (1984) 47 M.L.R. 345 (how does a company forget?). So, too, where directors acquire information in another, private capacity and do not disclose it: *Lagunas Nitrate Co v Lagunas Syndicate [1899] 2 Ch. 392* at 431 per Lindley LJ. Similarly, the knowledge of an agent is not necessarily that of the principal: *El Ajou v Dollar Land Holdings Plc [1994] 2 All E.R. 685 CA* at 702–703 per Hoffmann LJ; *David Payne & Co Ltd, Re [1904] 2 Ch. 608 CA*. In *The*