# Colchester Estates (Cardiff) v Carlton Industries plc [1986] 1 Ch 80

# Exhibit 10

01165-mew Doc 106-11 Filed 07/03/25 Entered 07/03/25 17:38:30 Exhibit
Pg 2 of 8


In my judgment, accordingly, the defendants are entitled to the A immunity provided by section 13 of the Act of 1974. It follows that the plaintiffs have not shown an arguable case against these defendants and I dismiss the application against them.

*Injunctions accordingly.*
*Plaintiffs to have three quarters of costs as against first defendant.* B
*Eighth to twenty-first defendants to have costs against plaintiffs.*

*Solicitors: Spicketts, Pontypridd; Brian Thompson & Partners; Seifert Sedley & Co.*

C

T. C. C. B.

---

D

## COLCHESTER ESTATES (CARDIFF) v. CARLTON INDUSTRIES PLC.

[1983 C. No. 5893] E

1984 March 28, 29, 30 Nourse J.

*Judicial Precedent—Decisions at first instance—Conflicting decisions—Courts of co-ordinate jurisdiction—Later decision reached after full consideration of earlier one—Whether latter to be followed* F

To ensure certainty in the law, where there are two conflicting decisions of the High Court, the latter decision is to be preferred, provided it was reached after full consideration of the earlier decision, unless the third judge is convinced that the second was wrong in not following the first (post, p. 85C–D, G–H). G

Where, therefore, a landlord sought leave to take proceedings under section 1(3) of the Leasehold Property (Repairs) Act 1938 for damages for breach of a repairing covenant empowering him to make good wants of repair, or, alternatively, a declaration that leave was not required for recovery of the cost of repairs and where there had been conflicting decisions of High Court judges at first instance on whether leave was required:—

*Held*, that the latter decision, having been arrived at after a H full consideration of the earlier one and of further authorities, was not wrong and should be followed and, accordingly, a declaration that leave was not required should be granted.

*Hamilton v. Martell Securities Ltd.* [1984] Ch. 266 followed.

*Swallow Securities Ltd. v. Brand* (1981) 45 P. & C.R. 328 not followed.

Dictum of Denning J. in *Minister of Pensions v. Higham* [1948] 2 K.B. 153, 155 applied.

The following cases are referred to in the judgment:

*Bader Properties Ltd. v. Linley Property Investments Ltd.* (1967) 19 P. & C.R. 620
*Hamilton v. Martell Securities Ltd.* [1984] Ch. 266; [1984] 2 W.L.R. 699; [1984] 1 All E.R. 665
*Middlegate Properties Ltd. v. Gidlow-Jackson* (1977) 34 P. & C.R. 4, C.A.
*Minister of Pensions v. Higham* [1948] 2 K.B. 153; [1948] 1 All E.R. 863
*Police Authority for Huddersfield v. Watson* [1947] K.B. 842; [1947] 2 All E.R. 193, D.C.
*S.E.D.A.C. Investments Ltd. v. Tanner* [1982] 1 W.L.R. 1342; [1982] 3 All E.R. 646
*Sidnell v. Wilson* [1966] 2 Q.B. 67; [1966] 2 W.L.R. 560; [1966] 1 All E.R. 681, C.A.
*Swallow Securities Ltd. v. Brand* (1981) 45 P. & C.R. 328

The following additional cases were cited in argument:

*Helby v. Matthews* [1894] 2 Q.B. 262, C.A.; [1895] A.C. 471, H.L.(E.)
*Land Securities Plc. v. Receiver for the Metropolitan Police District* [1983] 1 W.L.R. 439; [1983] 2 All E.R. 254
*Lep Air Services Ltd. v. Rolloswin Investments Ltd.* [1971] 1 W.L.R. 934; [1971] 3 All E.R. 45, C.A.; [1973] A.C. 331; [1972] 2 W.L.R. 1175; [1972] 2 All E.R. 393, H.L.(E.)
*Moss' Empires Ltd. v. Olympia (Liverpool) Ltd.* [1939] A.C. 544; [1939] 3 All E.R. 460, H.L.(E.)
*Lock v. Pearce* [1892] 2 Ch. 328; [1893] 2 Ch. 271, C.A.
*Photo Productions Ltd. v. Securicor Transport Ltd.* [1978] 1 W.L.R. 856; [1978] 3 All E.R. 146, C.A.; [1980] A.C. 827; [1980] 2 W.L.R. 283; [1980] 1 All E.R. 556, H.L.(E.)
*Plummer v. Ramsey* (1934) 78 S.J. 175
*Starrokate Ltd. v. Burry* (1982) 265 E.G. 871, C.A.

ORIGINATING SUMMONS

By an originating summons dated 15 February 1984 the plaintiff landlord, Colchester Estates (Cardiff), an unlimited company, sought, inter alia, (1) an order giving it leave pursuant to section 1(3) of the Leasehold Property (Repairs) Act 1938 to take proceedings for damages for breach by the defendant tenant, Carlton Industries Plc., of covenants to repair contained in a lease dated 13 April 1964 and assigned to the defendant on 25 June 1980 with over six years to run; (2) a direction under section 2 of the Act of 1938 that the plaintiff should have the benefit of section 146(3) of the Law of Property Act 1925 in relation to the costs and expenses incurred in reference to the breach; (2A) alternatively a declaration that leave was not required by the plaintiff to commence proceedings for the recovery of the costs incurred by it of making good defects, decays and wants of repair under the covenant to repair.

The facts are stated in the judgment.

01165-mew Doc 106-11 Filed 07/03/25 Entered 07/03/25 17:38:30 Exhibit
Pg 4 of 8

*Christopher Bathurst Q.C.* and *Michael Brindle* for the plaintiff.
*Michael Barnes Q.C.* and *Patrick Talbot* for the defendant.

NOURSE J. This case is concerned with a provision in a lease which empowers the landlord to enter and make good at his own cost wants of repair for which the tenant is liable and then to claim repayment of the cost from the tenant. Provisions of that kind have commonly been included in leases since the early part of this century, if not before. The primary question here is whether, before the landlord can take proceedings for the recovery of the cost, the leave of the court is required pursuant to section 1(3) of the Leasehold Property (Repairs) Act 1938. The outcome of that question depends on whether the proceedings are properly to be regarded as proceedings for damages for breach of a covenant to repair, in which case leave is required, or as proceedings for recovery of a debt, in which case it is not.

The plaintiff is an unlimited company called Colchester Estates (Cardiff). The defendant, Carlton Industries Plc., is the tenant of certain leasehold factory premises on the Colchester Trading Estate in Cardiff which it holds of the plaintiff under a lease dated 13 April 1964 made between the plaintiff of the first part, the defendant's predecessor in title of the second part and a guarantor of the third part. That lease was for a term of 27 years from 1 December 1963 at a rent which is currently £25,000 per annum. The term will therefore expire at the end of 1990 and still has more than six years to run. The tenant's covenants are contained in clause 2 of the lease. Sub-clauses (c) and (d) contain covenants to paint the exterior and the interior respectively of the demised premises. Sub-clause (f) contains a full repairing covenant (damage by fire, storm or tempest excepted). Sub-clause (i), which contains the provision with which this case is concerned, is in these terms:

> "To permit the lessors or their agents at all reasonable and convenient times by appointment to enter the demised premises and examine the state of repair and condition thereof and to check and take inventories of the lessors' fixtures therein and that the lessees will repair and make good all defects decays and wants of repair thereto of which notice in writing shall be given by the lessors to the lessees and for which the lessees may be liable hereunder within three months after the giving of such notice provided that in case of default by the lessees the lessors may make good such defects decays and wants of repair and the cost of the same shall be repayable by the lessees to the lessors on demand."

Sub-clause (s) contains a covenant to pay all reasonable and proper costs and charges and expenses incurred by the landlord in relation to any notice under section 146 of the Law of Property Act 1925.

The assignment of the lease to the defendant was made on 25 June 1980. Between October of that year and the summer of 1983 various notices under clause 2(i) or section 146 were given to the defendant by the plaintiff in respect of alleged wants of repair. There were various meetings and negotiations which do not seem to have led to much work

01165-mew Doc 106-11 Filed 07/03/25 Entered 07/03/25 17:38:30 Exhibit
Pg 5 of 8


A being done. In any event the plaintiff was not satisfied. Accordingly, on
19 August 1983, it served two further alternative notices, the first of
which was intended to take effect under clause 2(i) of the lease if section
146 and the Act of 1938 do not apply, and the second of which was
intended to take effect if they do. Those notices related to what the
plaintiff says are wants of repair which have now become urgent and of
which the aggregate cost is put at £173,000. On 1 September 1983 the
B defendant served a counter-notice under section 1(2) of the Act of 1938.
By its originating summons issued on 22 December 1983 the plaintiff
effectively seeks leave under section 1(3) to commence proceedings for
the recovery of the cost of the work in accordance with clause 2(i) of the
lease, but without prejudice to its claim that leave is not required. That
claim has been raised by an amendment which seeks a declaration that
C the leave of the court

> "is not required by the plaintiff to commence proceedings for the recovery of the costs incurred by the plaintiff of making good defects, decays and wants of repair under clause 2(i) of the said lease."

D On the primary question the plaintiff contends that leave to
commence proceedings for the recovery of the cost of the work is not
required and the defendant contends that it is. If that question is
determined in favour of the plaintiff, that will be an end of the matter.
If, on the other hand, it is determined in favour of the defendant, then
the defendant contends that the court has no power to grant leave to
commence the proceedings, first, because the plaintiff has not yet
E incurred any cost which is recoverable under clause 2(i) and, secondly,
because the notice served by it under section 146 of the Act of 1925 is in
any event defective in a particular respect. If both those contentions fail,
then it is agreed that the application for leave will have to be heard on
its merits, but it is also agreed that that exercise cannot be embarked
upon today.

I turn therefore to the primary question, which is by no means free
F from authority. In *Swallow Securities Ltd. v. Brand* (1981) 45 P. & C.R.
328 McNeill J. held that a right conferred on a landlord by a provision
comparable with clause 2(i) was a right to recover damages for breach of
a covenant to repair and that the leave of the court to commence
proceedings for the enforcement of that right was accordingly required.
However, in *Hamilton v. Martell Securities Ltd.* [1984] Ch. 266 Vinelott
G J. declined to follow the decision of McNeill J. and held the opposite. In
the later case the material provision was nearer in form to clause 2(i)
than that in the earlier one, but it is agreed that that is not a distinction
of any importance. What may be of importance is that Vinelott J. was
referred to certain authorities which were not cited to McNeill J. Of
these the one to which Vinelott J. attached the greatest weight was the
decision of the Court of Appeal in *Middlegate Properties Ltd. v. Gidlow-*
H *Jackson* (1977) 34 P. & C.R. 4 in which the earlier decision of Roskill J.
in *Bader Properties Ltd. v. Linley Property Investments Ltd.* (1967) 19 P.
& C.R. 620 was approved. In each of those cases it was held that the
right conferred on a landlord by a covenant on the part of his tenant to

01165-mew Doc 106-11 Filed 07/03/25 Entered 07/03/25 17:38:30 Exhibit Pg 6 of 8

pay all expenses incurred by him in relation to any section 146 notice or the like was a right to recover not damages but a debt due from the tenant. Accordingly, the Act of 1938 did not apply and the leave of the court to take proceedings for the recovery of the amount of the expenses was not required.

In *Hamilton v. Martell Securities Ltd.* [1984] Ch. 266 Vinelott J., having said that the decision of the Court of Appeal in *Middlegate Properties Ltd. v. Gidlow-Jackson,* 34 P. & C.R. 4 was binding on him, expressed the view that it compelled the conclusion that in the case before him the landlord's right to recover the costs of the repairs was not a right to recover damages for breach of a covenant to repair within section 1(1) and (2) of the Act of 1938: see [1984] 2 W.L.R. 699, 711. He then said that neither that decision nor the decision of Roskill J. in the *Bader* case, 19 P. & C.R. 620, nor the decision of the Court of Appeal in *Sidnell v. Wilson* [1966] 2 Q.B. 67 had been cited to McNeill J. in *Swallow Securities Ltd. v. Brand,* 45 P. & C.R. 328. In *Sidnell v. Wilson* [1966] 2 Q.B. 67, 76, 79 both Lord Denning M.R. and Harman L.J. had described the mischief which the Act of 1938 was intended to defeat. Earlier in his judgment Vinelott J. had gone into that matter in some detail with a view of showing that it was at the least doubtful whether the Act of 1938 was intended to operate on a case of this kind: see [1984] Ch. 266, 277–278. Finally, Vinelott J. pointed out that the attention of McNeill J. was also not drawn to the difficulties which later emerged as a result of the decision of Mr. Michael Wheeler Q.C. in *S.E.D.A.C. Investments Ltd. v. Tanner* [1982] 1 W.L.R. 1342 in applying section 1(5) of the Act of 1938 to a case where a want of repair has actually been remedied by the landlord, nor to the difficulties which would seem equally to confront a landlord who sought leave to bring proceedings to recover the cost of carrying out repairs before he had actually carried them out.

On this state of the authorities both Mr. Bathurst for the plaintiff and Mr. Barnes for the defendant submitted that the existence of two conflicting decisions of judges of co-ordinate jurisdiction meant that I was entirely free to choose between them and should not start with any preference for one over the other. While I readily accepted that that would be the position where the second decision was given, for example, in ignorance of the first, I was troubled at the suggestion that it would necessarily be the same where the second was given after a full consideration of the first. Since this is a question on which the court has an interest of its own, I thought it right to make an independent research. That led me to the decision of Denning J. in *Minister of Pensions v. Higham* [1948] 2 K.B. 153. I put that case to counsel during the course of argument yesterday afternoon and I hope and believe that they both had an opportunity of saying what they wanted to say about it.

*Minister of Pensions v. Higham* was a case where Denning J., who was then the judge nominated to hear appeals from the Pensions Appeals Tribunals in England, was faced with a conflict between a dictum in an earlier case of his own and a decision of the Court of Session on an appeal from one of the Pensions Appeals Tribunals in

Scotland. In the later case the Court of Session, having considered the dictum in the earlier one and having no doubt considered it fully, said that they were unable to agree with it. Denning J., having stated the special position in which he was there placed, said [1948] 2 K.B. 153, 155:

> "I lay down for myself therefore the rule that, where the Court of Session have felt compelled to depart from a previous decision of this court, that is a strong reason for my reconsidering the matter: and if on reconsideration I am left in doubt of the correctness of my own decision, then I shall be prepared to follow the decision of the Court of Session, at any rate in those cases when it is in favour of the man, because he should be given the benefit of the doubt."

Had the judge stopped there, I might well have agreed with counsel that the case could not, by reason of its special features, be treated as being of any general value. However, he went on to say:

> "In this respect I follow the general rule that where there are conflicting decisions of courts of co-ordinate jurisdiction, the later decision is to be preferred, if it is reached after full consideration of the earlier decision."

That unqualified statement of a general rule comes from a source to which the greatest possible respect is due. It is fortuitous that my own instinct should have coincided with it. However diffident I might have been in relying on instinct alone, the coincidence encourages me to suggest a reason for the rule. It is that it is desirable that the law, at whatever level it is declared, should generally be certain. If a decision of this court, reached after full consideration of an earlier one which went the other way, is normally to be open to review on a third occasion when the same point arises for decision at the same level, there will be no end of it. Why not in a fourth, fifth or sixth case as well? Mr. Barnes had to face that prospect with equanimity or, perhaps to be fairer to him, with resignation. I decline to join him, especially in times when the cost of litigation and the pressure of work on the courts are so great. There must come a time when a point is normally to be treated as having been settled at first instance. I think that that should be when the earlier decision has been fully considered, but not followed, in a later one. Consistently with the modern approach of the judges of this court to an earlier decision of one of their number (see, e.g., *Police Authority for Huddersfield v. Watson* [1947] K.B. 842, 848, *per* Lord Goddard C.J.), I would make an exception only in the case, which must be rare, where the third judge is convinced that the second was wrong in not following the first. An obvious example is where some binding or persuasive authority has not been cited in either of the first two cases. If that is the rule then, unless the party interested seriously intends to submit that it falls within the exception, the hearing at first instance in the third case will, so far as the point in question is concerned, be a formality, with any argument upon it reserved to the Court of Appeal.

Applying the rule to the present case, first, I am satisfied that the decision of Vinelott J. was reached after full consideration of the

decision of McNeill J. Secondly, I am not convinced that Vinelott J. was A wrong in not following McNeill J. I have had full and careful arguments on both sides, each of which was almost certainly fuller than the argument on the same side in either of the earlier cases. I think it inappropriate either that I should examine those arguments or express any further view of my own. That implies no disrespect or ingratitude to counsel. Indeed, the contrary is the case. Whatever may be thought appropriate on any other occasion, this is a question upon which it is in B my judgment inappropriate that there should be any further debate or expression of judicial view below the level of the Court of Appeal. In the circumstances I need say only that I propose to follow and apply the decision of Vinelott J. in *Hamilton v. Martell Securities Ltd.* [1984] 2 W.L.R. 699.

The plaintiff therefore succeeds on the primary question. I will grant C it a declaration in the form sought in paragraph 2A of the amended originating summons.

*Solicitors: Ward Bowie for Phoenix Walters & Co., Cardiff; Stones Porter & Co.*

[Reported by IAN SAXTON, Barrister-at-Law] D

---

## *In re* MEMCO ENGINEERING LTD. E

[No. 00151 of 1982]

1985 June 13, 14, 19, 21; 27 Mervyn Davies J.

*Company—Winding up—Distress—Unpaid value added tax—Distress levied before winding up—Winding up order within three months F of distress before sale of distrained goods—Whether distress void as against liquidator—Whether distrainers entitled to proceeds—Whether preferential creditors entitled to charge on distress fund when goods sold—Priority of charges—Companies Act 1948 (11 & 12 Geo. 6, c. 38), ss. 231, 319(7)*[1]

On 20 October 1982 the applicants levied distress on the company's goods and having agreed not to remove them a G walking possession agreement was executed on behalf of the company on the same day. Following the presentation of a petition on 13 December 1982 an order for the company's winding up was made on 28 February 1983. By an informal agreement between the applicants and the respondent liquidator the goods were sold by auction in May 1983 and the net proceeds, amounting to £27,080, were held to their joint account. The applicants refused to accept the liquidator's view H that the £27,080 should be released to him and sought a

[1] Companies Act 1948, s. 231: see post p. 93H.
S. 319(7): see post p. 96F–G.