# In re Bank of Credit and Commerce International SA
# [2002] BCC 407

# Exhibit 26

# Re Bank of Credit and Commerce International SA & Anor. Banque Arabe Internationale D'Investissement SA v Morris & Ors.

Chancery Division.
Neuberger J.
Judgment delivered 18 October 2000.

*Winding up – Fraudulent trading – Application by liquidators for contribution against company for participation in wrongful trading by companies in liquidation – Whether respondent knowingly party to fraudulent trading – Preliminary issue – Whether liability limited to persons who performed a managerial or controlling role within company or its business – Test for whether preliminary issue should be heard – Delay in bringing preliminary issue – Insolvency Act 1986, s. 213.*

**This was an application for the determination of a preliminary issue as to whether it was necessary for a person to come within the ambit of a claim for fraudulent trading under s. 213 of the Insolvency Act 1986 for that person to perform a managing on controlling role within the company or its business.**

**The liquidators of certain companies in the insolvent Bank of Credit and Commerce International ('BCCI') group alleged that the business of the companies was effectively carried on as a single business. They alleged that BCCI was heavily insolvent caused by a poor loan book, concealed acquisitions of other banking businesses, artificial inflation of earnings and other fraudulent and irregular conduct. The liquidators claimed that the respondent to the fraudulent trading claim, 'BAII', had (1) knowingly participated in BCCI's secret and illegal acquisitions and/or financing of shares in an American bank, (2) knowingly participated in BCCI's secret and illegal acquisition and/or financing of the acquisition of an American bank, and (3) knowingly participated in BCCI's fraudulent overstatement of assets and earnings by assisting BCCI artificially to service certain non-performing loans in its books thereby avoiding having to make any provision for the loan. The liquidators sought a contribution to the assets of BCCI from BAII under s. 213(2) of the Insolvency Act 1986 as persons 'who were knowingly parties to the carrying on of the business' of BCCI with the necessary intent under s. 213(1) to defraud creditors or for any fraudulent purpose. BAII applied for the determination of a preliminary issue as to whether a person was within the ambit of s. 213(2) if he had participated in the fraudulent act(s) or whether it was necessary that such a person carried on or assisted in the carrying on of the company's business. BAII submitted that the latter interpretation was correct. The issue was reformulated during argument so as to relate to participation in the management function of a company. The liquidators resisted the application on the basis that it was brought too late since 35 months had passed since the liquidators' points of claim were served and the preliminary issue could have been raised at that juncture, that the issue formulated by BAII could not helpfully be determined at least without findings of fact and as formulated was unlikely to enable the court to determine any useful point and that if the formulation could be improved so as to be useful BAII's argument was wrong in principle and would stand no reasonable chance of success.**

*Held*, **refusing the application:**

**1. The mere fact that the preliminary issue could and should have been raised earlier was of little if any weight on its own. If determination of the point preliminarily could result in a substantial reduction in the length of the eventual hearing, it would require unusual circumstances before it would be right to turn down the opportunity to decide it. However the fact that the issue was raised so late meant that its determination could dislocate the orderly preparation towards trial in accordance with directions already given, and even the projected trial date. The fact that BAII delayed so long before seeking**

**to raise the preliminary issue merely emphasised the need to investigate particularly carefully the question of whether the issue was one which should be determined as a preliminary one.** A

**2. The court would not be prepared to order a preliminary issue as sought by BAII unless it was satisfied that (i) the issue was so formulated that it could be answered without making any significant artificial findings of fact, (ii) it would, if determined one way, enable the court the court to dismiss at least one of the three claims involved, and (iii) as so formulated the preliminary point raised a reasonably arguable issue.** B

**3. As a matter of ordinary language, the ambit of s. 213(2) was not limited to those who performed a managerial or controlling role within the company concerned. The language of s. 213(2) was a little unusual and if anything it was a more natural reference to persons who were not employed by the company at all but were third parties to the company. Although it was obviously wrong to construe s. 213(2) so as to cast its net so wide as to risk stultifying normal business transactions, that was not a good reason for preventing a liquidator from pursuing a person who actively and dishonestly assisted, and/or benefited from, the company in adopting a dishonest course of conduct, which led to lenders or shareholders of the company being defrauded.** C

**4. Although tracing the legislative history of a statutory provision could be a dangerous exercise when considering the meaning of that provision, especially, as here, where the statutory language has changed (by substitution of 'directors' by 'persons'), the legislature appeared to have adopted a recommendation to broaden the ambit of s. 213(2) beyond directors to other persons who were knowingly parties to fraud.** D

**5. Just as an employee of a company who merely carried out orders did not fall within s. 213(2) whereas someone who orchestrated, organised or could seize of the business did fall within the section, so a company or other entity which carried on a bona fide business with the company did not fall within s. 213(2), but a company which was involved in and assisted and benefited from the offending business, and did so knowingly and therefore dishonestly, did or at least could fall within s. 213(2).** E

The following cases were referred to in the judgment:

*Augustus Barnett & Son Ltd, Re* (1986) 2 BCC 98,904.
*Gerald Cooper Chemicals Ltd, Re* [1978] Ch 262.
*Lonrho plc v Fayed* [1991] BCC 641; [1992] 1 AC 448.
*Maidstone Building Provisions Ltd, Re* [1971] 1 WLR 1085. F
*R v Grantham* (1984) 1 BCC 99,075; [1984] QB 675.
*R v Kellard* [1995] 2 Cr App R 134.
*R v Miles* [1992] Crim LR 657.

Richard Adkins QC and Roxanne Ismail (instructed by Travis Smith Braithwaite) for Banque Arabe Internationale D'Investissement SA.

Richard Sheldon QC and Dr Fidelis Oditah (instructed by Lovells) for the liquidators. G

JUDGMENT

**Neuberger J:** This is an application by the respondent, Banque Arabe Internationale D'Investissement SA ('BAII') for the determination of a preliminary point.

The claim against BAII is brought by the liquidators of Bank of Credit and Commerce International SA and Bank of Credit and Commerce International Overseas Limited (together 'BCCI'), both wholly owned subsidiaries of BCCI Holdings (Luxembourg) SA, whose businesses were allegedly carried on effectively as a single business. The claim by the liquidators is for relief against BAII under s. 213 of the *Insolvency Act* 1986. H

BCCI carried on a banking business between about 1979 and 1991. In July 1991 petitions were presented to wind up BCCI on the grounds that it was just and equitable, and winding-up

© 2002 Sweet and Maxwell Ltd

A orders were made in January 1992. The liquidators allege that BCCI was heavily insolvent by July 1991 and that this was caused by a poor loan book, concealed acquisitions of other banking businesses, artificial inflation of earnings, and other fraudulent and irregular conduct of its business.

In summary the liquidators make three claims against BAII, to the effect that it participated in three separate frauds in the carrying on of the business of BCCI. First, it is alleged that in B March 1982 BAII knowingly participated in BCCI's secret and illegal acquisition and/or financing of the acquisition of shares in an American banking company known as First American Bank ('FAB'), deceiving state regulators and the US regulators.

Secondly, it is said that in August 1985 BAII knowingly participated in BCCI's secret and illegal acquisition and/or financing of the acquisition of Independent Bank ('Independent'), deceiving BCCI's regulators and the US regulators.

C Thirdly, between 1985 and 1989, it is pleaded that BAII knowingly participated in BCCI's fraudulent overstatement of assets and earnings by assisting BCCI to service artificially certain non-performing loans in books thereby avoiding having to make any provisions for the loan. BAII does not admit BCCI's business was carried on fraudulently and, if it was, denies any knowledge of the frauds.

The liquidators' claim is for a contribution pursuant to s. 213 of the 1986 Act, which provides:

D '(1) If in the course of the winding up of a company it appears that any business of the company has been carried on with intent to defraud the creditors of the company or creditors of any other person, or for any fraudulent purpose, the following has effect.

> (2) The court, on the application of the liquidator may declare that any persons who were knowingly parties to the carrying on of the business in the manner above-mentioned are to be liable to make such contributions (if any) to the company's assets as the court E thinks proper.'

The issue which BAII has formulated as being appropriate for determination of the preliminary issue is this:

> 'Is a person within the ambit of s. 213(2) of the *Insolvency Act* 1986 if he has participated in the fraudulent acts of the company in liquidation, or is it necessary that such a person carried on or assisted in the carrying on of the company's business?'

F BAII would submit that the latter interpretation is correct. Mr Richard Adkins QC, who appears with Miss Roxanne Ismail for BAII, accepts that the wording of this proposed preliminary issue might be capable of improvement. If it can be improved so as to express an appropriate preliminary issue, then I agree with him that the fact that it needs amending, or could be improved by amending, should certainly not prevent a preliminary issue being ordered.

G Mr Richard Sheldon QC, who appears for the liquidators with Dr Fidelis Oditah, opposes the ordering of such a preliminary issue. First, he points to the lateness of the application. The liquidators' points of claim in their original form were served some 35 months ago and the preliminary point could have been raised at that juncture. We are now at a point where detailed directions have been given and the trial is fixed for some eight to ten weeks starting in some six months time. Secondly, he says that the issue formulated by BAII is one which cannot helpfully be determined at least without findings of fact, and as formulated it is unlikely to enable the H court to determine any useful point, which it would have to consider in any event when deciding whether BAII was liable under s. 213(2). In so far as the formulation can be improved so as to be useful, he contends that BAII's argument would be wrong in principle and would stand no reasonable chance of success and, therefore, no preliminary issue should be ordered.

The determination of a preliminary point can be very valuable. In an ideal case it will determine the outcome of the overall dispute whichever way it is determined. More frequently,

it will determine the outcome of the overall dispute if it is determined one way. Sometimes the determination of a point may do no more than cut down the areas of dispute or evidence. Even in such a case it may be worthwhile to order the point to be determined at a preliminary stage. In the *Chancery Guide* one sees this at para. 5.7: A

> 'Costs can sometimes be saved by identifying decisive issues or potentially decisive issues and ordering that they are tried first. The decision of one issue, though not itself decisive in law of the whole case, may enable the parties to settle the remainder of the dispute. In such cases a preliminary issue may be appropriate.' B

The same point is echoed in the *Commercial Court Guide*, D10(1):

> 'Costs can sometimes be saved by identifying decisive or potentially decisive issues and ordering they be tried first. The decision in one issue may enable the parties to settle the remainder of the dispute.'

However, as has been observed on more than one occasion, the ordering of a preliminary issue which may seem sensible at the time can often merely serve to delay, confuse, or increase expense. The court should always take care to ensure that it is not ordering the determination of a point which is only of arid legal interest or which cannot sensibly be assessed without first making at least some findings of fact. As Lord Bridge of Harwich said in *Lonrho plc v Fayed* [1991] BCC 641; [1992] 1 AC 448 at p. 649; 47B–E: C

> 'It is important to remember how frequently the House has protested, where parties have agreed the terms of a preliminary question of law, at being required to answer difficult questions of law on hypothetical and disputed facts stated in general terms. ... Lord Wilberforce said in Allen v Gulf Oil Refining Ltd [1981] AC 1001 at pp. 1010–1011: D
>
> > "My Lords, I and other of your Lordships have often protested against the procedure of bringing, except in clear and simple cases, points of law for preliminary decision. The procedure indeed exists and is sometimes useful. In other cases, and this is frequently so where they reach this House, they do not serve the cause of justice. The present is such an example ... The fact is that the result of the case must depend upon the impact of detailed and complex findings of fact upon principles of law which are themselves flexible. There are too many variables to admit of a clear-cut solution in advance."' E

The liquidators' first argument which I shall consider is that it is far too late to raise a preliminary point in these proceedings. As a point of principle for rejecting BAII's application I disagree with it. If I were satisfied that the determination of a point of principle, which would take no more than a day at the outside, could result in an eight-week hearing, with its concomitant costs and court effort and court time, being avoided, then the facts would have to be quite exceptional before I rejected the opportunity to determine the point. Even if determination of the point preliminarily could result in a substantial reduction in the length of the eventual hearing, it seems to me that it would require fairly unusual circumstances before I would think it right to turn down the opportunity to decide it. F G

The mere fact that the preliminary point could and should have been raised earlier is of little if any weight on its own, therefore. However, the fact that it is raised so late does mean that its determination could dislocate the orderly preparation towards trial in accordance with the directions already given, and even the projected trial date. This is principally because any determination of a preliminary point could be subject to an appeal. In my judgment in the present case, this leads to the conclusion that the fact that BAII have delayed before seeking to raise the preliminary point merely emphasises the need to investigate particularly carefully the question of whether the point is one which should be determined as a preliminary one. H

So far as the substance of the matter is concerned I would not be prepared to order a preliminary point as sought by BAII unless the following requirements were satisfied. First,

© 2002 Sweet and Maxwell Ltd

that it was so formulated that it could be answered without making any significant artificial findings of fact i.e. findings of fact which are not agreed and are disputed. Secondly, that it would, if determined one way, enable the court to dismiss at least one of the three claims I have summarised. Thirdly, that as so formulated the preliminary point raises a reasonably arguable issue.

As to the first requirement it seems to me that if it was not satisfied, at least in this case, the determination of the preliminary point would not obviate a fairly full trial. It would therefore be a waste of time and money and likely to be disruptive if I were to order it. In this connection I agree with Mr Sheldon that, at any rate as formulated, there is a very substantial risk that BAII's proposed preliminary point is not likely to produce a helpful result. The concept of 'assisted in the carrying on of the company's business' could arguably raise the same sort of question as the concept of being 'knowingly parties to the carrying on of the [company's] business'. Accordingly, one may well have to make assumptions of fact for the purpose of answering the preliminary point as formulated which are not common ground. Similarly, it seems to me that the second requirement would not be satisfied in relation to the preliminary point as formulated for the same reason.

However, as the argument before me developed it became apparent that the issue might well be capable of being reformulated so as to answer these two objections. In effect, Mr Adkins's contention on behalf of BAII is that a person cannot fall within s. 213(2) unless he 'exercised a controlling or managerial function within the company concerned, and that as there is no allegation in the points of claim in their original form or as amended that BAII had any managerial function or any control over the business of BCCI within that company the claim is bound to fail.'

As I see it, at least on the face of it, that is a contention which satisfies the first two requirements. The point I propose to consider, therefore, is whether it satisfied the third requirement. In this connection it is germane to refer to the allegations against BAII in the amended points of claim in a little, but only a little, more detail. In relation to Independent, it is not merely alleged that BAII had made loans and documents available for BCCI's benefit, but that BAII knowingly and, effectively, dishonestly acted as a 'front' for BCCI to conceal from the US Federal Deposit Insurance Corporation and the Californian State Banking Department certain illicit activities of BCCI and, indeed, the role of BCCI in connection with the acquisition of Independent.

In relation to FAB it is contended that BAII knowingly and dishonestly provided funding contrary to representations to FAB shareholders and the US Securities and Exchange Commission ('SEC') and made false representations to the US Federal Reserve Board and to the SEC, all for the benefit of BCCI.

As to the fraudulent trading claims, it is said that BAII dishonestly entered into transactions with BCCI to enable BCCI to reroute funds in an effectively circular way for the purpose of concealing them from BCCI's auditors, with a view to misrepresenting to a significant extent BCCI's year-end position, and that the transactions concerned had no bona fide commercial basis.

In my judgment, it is not arguable that these activities, if established, could not result in BAII falling within s. 213(2) merely because it was not performing a managerial or controlling function within BCCI. In reaching that conclusion I take into account the following matters.

First, as a matter of ordinary language, the ambit of s. 213(2) is not limited to those who perform a managerial or controlling role within the company concerned. Although I accept that the language of s. 213(2) is a little unusual, it appears to me that the concept of being 'parties to the carrying on' by a company of a type of business, or of a business in a certain way, is not limited to the person who actually directs or manages the business concerned. If anything it is a more natural reference to people who are not employed by the company at all, but who are third parties to the company.

Secondly, there is a question of policy. It is obviously wrong to construe s. 213(2) so as to cast its net so wide as to risk stultifying normal business transactions. It appears to me, however, that that is not a good reason for preventing a liquidator from pursuing a person who actively and dishonestly assisted, and/or benefited from, the company in adopting a dishonest course of conduct, which predictably led to lenders to, or shareholders of, the company being defrauded. A

Thirdly, the wording of s. 213(2) can be contrasted with the immediately preceding s. 212 and immediately succeeding s. 214. Section 212 is concerned with remedies against people who have misapplied or retained money of a company in liquidation, or who have been guilty of any misfeasance or breach of duty to the company. It extends not only to an officer, a liquidator, an administrator or a receiver, but to a person who 'has been concerned, or has taken part, in the promotion, formation or management of the company'. B

Section 214 is, of course, concerned with wrongful trading. It only applies to someone who is or has been a director of the company (see s. 214(1)) and who knew or ought to have concluded that there was no reasonable prospect that the company would avoid going into insolvent liquidation (see s. 214(2)(b)). C

As Mr Adkins points out, these two sections have different syntactical and verbal structure and a different legislative history from s. 213. Nonetheless, I think it proper to take into account the way in which they describe persons who fall within their respective ambits, and in particular the reference in s. 212(1)(c) to persons who have been concerned in the management of the company. D

In effect, BAII's contention on the preliminary point would amount to the apparently much wider words of s. 213(2) having the same effect as what appear to be the narrower words of s. 212(1)(c).

Fourthly, there is the legislative history of s. 213. Section 275(1) of the *Companies Act* 1929 referred to 'directors of the company who were knowingly parties to the carrying on of the business in the relevant manner'. It had a subs. (3) which provided for criminal sanction against such directors. This section was amended by the *Companies Act* 1947 which was then consolidated into the *Companies Act* 1948 (s. 332) so that the word 'directors' was replaced with the word 'persons'. With the advent of the *Companies Act* 1985 and the *Insolvency Act* 1985 and *Insolvency Act* 1986, subs. (3) was effectively detached from the first two subsections. Subsection (3) is now s. 458 of the *Companies Act* 1985 and subs. (1) and (2) are now of course s. 213 of the *Insolvency Act* 1986. E F

Tracing the legislative history of a statutory provision can be a dangerous exercise when considering the meaning of that provision. If, as here, the statutory language has changed, one can get into arguments about what the legislature had in mind when making the change rather than concentrating on the centrally relevant issue, namely, the meaning of the word of the present provision in their current context. Nonetheless, in some circumstances as authorities show, consideration of statutory predecessors can assist. The replacement of 'directors' in the 1929 Act by 'persons' in the 1947 Act was effectively pursuant to the recommendations of the *Report of the Committee on Company Law Amendment*, the Cohen Committee, in June 1945 (Cmd. 6659). In para. 149 the Committee referred to s. 275, and said this: G

> 'We think that the subsections should be extended so as to apply not only to directors but also to other persons who were knowingly parties to the frauds ...' H

In their recommendation, at p. 97, para. X, they suggested that section 275 be amended by the addition of the words 'or any other persons' after the reference to 'directors'.

It seems to me that Mr Sheldon is right to say that the legislature appears to have adopted that recommendation, albeit that its reformulation by simply replacing 'directors' with 'persons' was a simpler solution than the addition suggested by the Cohen Committee.

© 2002 Sweet and Maxwell Ltd

A While it is dangerous to draw too much from that, I believe that Mr Sheldon is justified in saying that the observations of the Cohen Committee do tend to support his contention here.

Fifthly, my conclusion is consistent with such first instance authority as there is. In *Re Gerald Cooper Chemicals Ltd* [1978] Ch 262 the court declined to strike out a claim under s. 332(1) of the 1948 Act which was, of course, identically worded to s. 213(1) of the 1986 Act. In that case the respondent allegedly had accepted as part repayment of a debt owing by the insolvent companies money which he knew had been obtained by fraud on another creditor. B Templeman J said this at p. 268F:

> 'In my judgment a creditor is party to the carrying on of a business with intent to defraud creditors if he accepts money which he knows full well has in fact been procured by carrying on the business with intent to defraud creditors for the very purpose of making the payment. Mr. Evans-Lombe said truly that s. 332 creates a criminal offence and should be strictly construed. But a man who warms himself with the fire of fraud cannot C complain if he is singed.'

The point was also considered in passing by Hoffmann J in *Re Augustus Barnett & Son Ltd* (1986) 2 BCC 98,904, a case which was also brought under s. 332(1) of the 1948 Act. At p. 98,907 Hoffmann J said this:

> 'The words "persons ... parties to" may be wide enough to cover outsiders who could not be said to have carried on or even assisted the carrying on of the company's business D but who nevertheless in some way participated in the fraudulent acts. For an example, see *Re Gerald Cooper Chemicals Ltd* ...'

The first sentence taken on its own, more naturally indicates that, because he did not have to decide it, Hoffmann J was leaving the point open. However, it is capable of meaning that the sort of participation he is contemplating may be caught depending on the facts. In light of his reference to *Cooper* I think that is the right reading.

E Neither of those two decisions, particularly the latter where the point is obiter and (with due respect to Hoffmann J not entirely clear) is binding on me. However, the observations and decision in *Cooper* has stood for over 20 years and did not lead to the legislature amending the wording of the section when it was reenacted in 1985 and 1986.

Sixthly, Mr Adkins argues that these decisions are inconsistent with later decisions of the Court of Appeal (Criminal Division) which are binding on me and which indicate that s. 213 or, F more accurately, s. 458 of the 1985 Act, is to be construed as he contends. I accept, of course, that decisions of the Court of Appeal (Criminal Division) are binding on me. I also accept that decisions as to the meaning of s. 458 of the 1985 Act are to be applied to s. 213 of the 1986 Act. The people to whom those two sections apply and the way in which they are expressed are identical and, as I have indicated, they have the same legislative history.

However, I do not consider that the decisions upon which Mr Adkins relies in this G connection assist BAII's contention as to the proper construction of s. 213. The cases in question are *R v Grantham* (1984) 1 BCC 99,075; [1984] QB 675, *R v Miles* [1992] Crim LR 657, and *R v Kellard* [1995] 2 Cr App R 134. All three cases involve consideration of a defendant who was employed by, or acted for, a company carrying on activities which were caught by the equivalent of s. 213(1).

The issue before the court in each case was effectively whether there was evidence that, or an effective direction to the jury that there must be a finding to the effect that, the defendant had H managed or controlled the business rather than being a mere employee of the business. The point is probably best made by considering para. (i) in the headnote in *Miles* (at p. 658), which accurately reflects the judgment of Tasker Watkins LJ of which I have helpfully been provided a full copy. I read from the headnote:

> 'Section 458 was designed to include those who exercise a controlling or managerial function or who are running the business to use the words of Lord Lane CJ in *Grantham*.

> Circumstances would vary infinitely, but where there was an issue as to whether or not a defendant came within the section that issue should be put to the jury together with clear guidance, appropriate to the facts of the case, as to the meaning of "party to the carrying on of the business of the company". In this case, which had been presented on the basis of the appellant had a managerial role while he contended that he was merely a salesman acting under orders, the words used in the summing up, particularly "concurring in the trade which is involved in the business of the company", may well have had the effect of broadening the scope of the offence charged in the minds of the jury.'

I do not consider that these cases assist BAII's argument because they were concerned each with the position of an employee or consultant of the company. Mr Sheldon understandably draws attention to the word 'include ' at the beginning of the passage in the headnote which reflects the judgment and, to my mind, rightly so. The court's mind was in none of these cases directed to the sort of point raised in the present case.

Further, I do not consider that those decisions of the Court of Appeal (Criminal Division) assist BAII's contention even by analogy. One can well see how a person who is merely an employee of the company, carrying out his functions in the context of a business whose existence or modus operandi is determined by a manager or director, should not as a matter of language or policy fall within s. 213(2), whereas the manager or director should do so. The analogy seems to me to be, if anything, more happily considered by reference to the *Re Maidstone Building Provisions Ltd* [1971] 1 WLR 1085, another first-instance decision cited with apparent approval in *Miles*. In that case Sir John Pennycuick V-C dismissed a claim under s. 332 of the 1948 Act against a company secretary in circumstances where the company's business had allegedly been carried on in a way which fell within s. 213(1). He said this at p. 1092F–H:

> 'The expression "parties to the carrying on of the business" is not, I think, a very familiar one but, so far as I can see, the expression "party to" must on its natural meaning indicate no more than "participates in", "takes part in", or "concurs in ". And that, it seems to me, involves some positive steps of some nature. I do not think it can be said that someone is party to carrying on a business if he takes no positive steps at all. So in order to bring a person within the section you must show that he has taken some positive steps in the carrying on of the company's business in a fraudulent manner. So far as the position of a secretary as such is concerned, it is established beyond all question that a secretary, while merely performing the duties appropriate to the office of secretary, is not concerned in the management of the company. Equally I think he is not concerned in carrying on the business of the company.
>
> On the other hand, it is equally well established, indeed it is obvious, that a person who holds the office of secretary may in some other capacity be concerned in the management of the company's business.'

In so far as those observations could be said in to assist Mr Adkins' argument, it seems to me that once again one has to remind oneself that they were made in the context of someone who was undoubtedly an employee or agent of the company in circumstances where the company was allegedly carrying on a business falling within s. 213. The court was not there concerned with a person who was not employed or agent for the company.

In my judgment, just as an employee of the company who was merely carrying out orders does not fall within s. 213(2) whereas somebody who orchestrates, organises or can seize of the business concerned does fall within the section, so a company or other entity which carries on (so far as it is concerned) a bona fide business with the company, does not fall within s. 213(2), but a company which is involved in, and assists and benefits from, the offending business, or the business carried on in an offending way, and does so knowingly and, therefore, dishonestly does fall or at least can fall within s. 213(2).

© 2002 Sweet and Maxwell Ltd

A I have concentrated on the third requirement, but I am by no means convinced that even if Mr Adkins' formulation is correct that that would mean that the claim should be dismissed. It seems to me that the allegations made against BAII are such that it could be said that BAII operated as agent for, or in some other way acted for BCCI, in particular in relation to the matter concerning Independent, in a manner which meant that in the loose sense it had some controlling or managerial function. It seems to me that that is another and quite separate indication of the risk of pursuing a preliminary point of the sort which BAII understandably B wishes to raise at this stage.

Having determined the preliminary issue in BAII's favour, which for the reasons I have indicated I would not anticipate doing, one might then have to consider whether on the basis of a reformulation of s. 213(2), which in a sense is what the preliminary issue would involve, BAII's activities could in relation to one or more of the claims actually be said to fall within that reformulation. I believe, that even if I considered that BAII's contention in relation to the C preliminary issue was correct, that would still leave open the liquidators' claim and would necessitate, or at least would be likely to necessitate, a hearing to investigate the facts.

Naturally if there is any real possibility of a one-day hearing resulting in the avoidance of an eight-week trial the court should, as I have indicated, be eager to grasp it. In this case, sadly, I have come to the conclusion for the reasons given that that could not be achieved and therefore I propose to dismiss the application for the determination of a preliminary issue.

D

(*Application dismissed*)

E

F

G

H